No. 14-17501

# United States Court of Appeals
# for the Ninth Circuit

In re: TESLA MOTORS, INC. SECURITIES LITIGATION,

KAZIM ACAR, WILLIAM LANDRUM, PANKAJ MODI, M.D., Ph.D.,
On Behalf of Themselves and All Others Similarly Situated,

*Plaintiffs-Appellants,*

– v. –

TESLA MOTORS, INC., ELON MUSK,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO
IN CASE NO. 3:13-CV-05216-CRB, HON. CHARLES R. BREYER

## BRIEF FOR PLAINTIFFS-APPELLANTS

POMERANTZ LLP
600 Third Avenue
New York, New York 10016
(212) 661-1100

– and –

GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150

*Attorneys for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

I.     STATEMENT OF JURISDICTION ........................................... 1

II.    ISSUES PRESENTED ................................................................ 2

III.   STATEMENT OF THE CASE .................................................... 3

      A.    Nature Of The Case ......................................................... 3

      B.    Procedural History ........................................................... 4

      C.    Statement Of Facts .......................................................... 7

            1.    Tesla Is A Startup With A Small Vehicle Fleet. ................... 7

            2.    Musk Dominates Tesla And Dictated Engineering Outcomes. ................................................................. 7

            3.    Musk's 300 Miles-Per-Charge Mandate For The Model S Caused The Decisions Compromising Safety. ...................... 8

            4.    Several Pre-Class Period Fires Showed Defendants The Serious Risks Posed By These Decisions. ........................... 9

            5.    Defendants Made Material Misrepresentations And Omissions In Violation Of §10(b) During The Class Period. ...................................................................... 10

            6.    Partial Corrective Events, Including Three Model S Fires And Later Remedial Measures, Revealed Defendants' Fraud. .................................................................... 15

            7.    Defendants Acted With Scienter. ......................................... 16

             8.    The District Court Held That "Plaintiffs' Factual Contentions Have Full Evidentiary Support." ...................... 17

            9.    Plaintiffs Identified For the District Court The Additional Facts They Would Allege In An Amended Pleading. ........... 18

      D.    Rulings Submitted For Review ......................................... 18

IV.   STANDARD OF REVIEW ...................................................... 19

V.    SUMMARY OF ARGUMENT ................................................ 20

VI.   ARGUMENT ............................................................................. 28

A.     The SAC Adequately Pled False And Misleading Statements And Omissions In Violation Of §10(b). ................................................... 28

     1.     Defendants' Omissions Regarding The Decisions Compromising Safety Violated §10(b). ................................ 28

     2.     Defendants' Omissions And Misrepresentations Regarding The Pre-Class Period Fires Violated §10(b). ........................ 32

         a.     Omissions Regarding The Pre-Class Period Fires ...... 32

         b.     Affirmative Misrepresentations Regarding The Pre-Class Period Fires. ....................................... 38

     3.     Defendants' Omissions Regarding The Model S Fire In Mexico Violated §10(b). ....................................... 41

     4.     Defendants' Misrepresentations As To The Lack Of A Need For Or Possibility Of A Model S Recall Violated §10(b). ................................................................... 46

B.     The SAC Adequately Pled Defendants' Scienter. ......................... 49

C.     The SAC Adequately Pled A §20(a) Claim. ................................... 53

D.     The District Court Erred In Denying Leave To Amend. ................ 53

VII.     CONCLUSION ............................................................................. 59

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) .............. 61

STATEMENT OF RELATED CASES ............................................................... 62

CERTIFICATE OF SERVICE ......................................................................... 63

REQUEST FOR ORAL ARGUMENT ............................................................. 64

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Asher v. Baxter Int'l, Inc.*,
    377 F.3d 727 (7th Cir. 2004) ........................................................ 24, 45

*Avila v. Los Angeles Police Dept.*,
    758 F.3d 1096 (9th Cir. 2014) ......................................... 20, 29, 33, 51

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) .............................. 21, 22, 23, 31, 34, 42

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) .............................. 21, 22, 23, 32, 34, 42

*Desai v. City of Los Angeles*,
    602 Fed. Appx. 392 (9th Cir. 2015) ........................................... *passim*

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................... 19, 26, 27, 28, 53, 55, 59

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................... 27, 53, 54

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000) ........................................................ 24, 45

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996) ........................................................ 34, 38

*Greater Los Angeles Agency of Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ....................................................... 26, 52

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................... 21, 22, 23, 32, 34, 42, 45

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) ................................................................19

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ................................................... 22, 34

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ..............................................................19

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...................... 21, 22, 32, 33, 34

*In re Hoopai*,
    581 F.3d 1090 (9th Cir. 2009) ..................................................... 26, 52

*In re Pfizer, Inc. Sec. Litig.*,
    584 F. Supp. 2d 621 (S.D.N.Y. 2008)..................................................34

*In re Saxman*,
    325 F.3d 1168 (9th Cir. 2003) ..................................................... 26, 52

*In re Verifone Holdings, Inc. Sec. Litig.*,
    794 F.3d 694 (9th Cir. 2012)..................................................19

*Loos v Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014)..................................................... 27, 55

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S. Ct. 1309 (2011) ....................................... 21, 22, 23, 31, 34, 42

*McKay v. Ingleson*,
    558 F.3d 888 (9th Cir. 2009)...................................... 20, 29, 33, 51

*Nault v. Colvin*,
    593 Fed. Appx. 722 (9th Cir. 2015)........................................... *passim*

*New Mexico State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) ...........................................................19

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ........................................... 24, 45, 46

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009)..................................................... 26, 52

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................ 19, 26, 52

*Thompson v. Paul*,
    547 F.3d 1055 (9th Cir. 2008) ..................................................... 26, 52

*U.S. v. Ortiz*,
    776 F.3d 1042 (9th Cir. 2015)........................................... *passim*

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)..................................... 20, 25, 28, 49, 52

## STATUTES

15 U.S.C. §78aa ...................................................................................1

15 U.S.C. §78j(b) .................................................................................2

15 U.S.C. §78t(a) ................................................................................1

15 U.S.C. §78u-4(b)(1)............................................................. 25, 28, 49

28 U.S.C. §1291 ...................................................................................1

28 U.S.C. §1331 ...................................................................................1

## RULES

Fed. R. App. P. 32(a)(7).....................................................................61

Fed. R. Civ. P. 11 ..............................................................................54

Fed. R. Civ. P. 15 ......................................................................... 53, 55

Fed. R. Civ. P. 15(a)...................................................................... 27, 53

Fed. R. Civ. P. 59(e)................................................................... 6, 10, 18

Ninth Circuit Rule 28.........................................................................62

## REGULATIONS

17 C.F.R. §240.10b-5.........................................................................1

v

# I.  STATEMENT OF JURISDICTION

This is an appeal from the District Court's (J. Breyer, Charles R.) Order that was entered December 5, 2014 (ER6-23) and its Judgment that was entered December 5, 2014 (ER5) and reaffirmed by Order entered March 23, 2015 (ER1-4), which together dismissed the Second Amended Class Action Complaint ("SAC") (ER344-454) filed by Plaintiffs-Appellants Kazim Acar, William Landrum, and Dr. Pankaj Modi (altogether, "Plaintiffs").

While the Defendants-Appellees Tesla Motors, Inc. ("Tesla") and Elon Musk ("Musk") (collectively, "Defendants") thereafter pursued a motion requesting that the District Court amend its Judgment, after extensive briefing and supplementation of the record by the parties, the District Court denied such motion and reaffirmed its Judgment in its Order entered March 23, 2015 (ER1-4).  Thus, the District Court has disposed of all parties' claims.

The District Court had subject matter jurisdiction under §27 of the Securities Exchange Act of 1934 ('the Exchange Act"), 15 U.S.C. §78aa and 28 U.S.C. §1331, as the claims asserted in the SAC arose under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  Plaintiffs filed a timely notice of appeal on December 19, 2014 (ER227-230).  This Court has jurisdiction under 28 U.S.C. §1291.

## II.    ISSUES PRESENTED

1.    Whether the District Court erred in holding that the SAC failed to sufficiently plead that Defendants' failure to disclose their pre-production design decisions to increase the Model S's safety risks in order to increase its driving range (the "Decisions Compromising Safety") rendered their Class Period statements false or misleading in violation of §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

2.    Whether the District Court erred in holding that the SAC failed to sufficiently plead that Defendants' failure to disclose the existence and the intensity of multiple battery fires at Tesla facilities during pre-production of the Model S (the "Pre-Class Period Fires") and their affirmative misrepresentations regarding the purported lack of any prior fires in the Model S and its battery rendered their Class Period statements false or misleading in violation of Exchange Act §10(b) and Rule 10b-5.

3.    Whether the District Court erred in holding that the SAC failed to sufficiently plead that Defendants' failure to disclose a Model S fire that occurred in Mexico on October 18, 2013 rendered their statements on October 22 and 24, 2013 false or misleading in violation of Exchange Act §10(b) and Rule 10b-5.

4.    Whether the District Court erred in holding that the SAC failed to sufficiently plead that Defendants' affirmative misrepresentations on November 12,

2013 indicating that there was no need for a Model S recall and that one would not occur were false or misleading in violation of Exchange Act §10(b) and Rule 10b-5.

5.     Whether the District Court erred in failing to address the SAC's scienter allegations and failing to hold that they satisfied applicable pleading standards.

6.     Whether the District Court erred in dismissing the SAC's claim under Exchange Act §20(a).

7.     Whether the District Court erred in dismissing the action with prejudice and without leave to amend based on its ruling that further amendment would be futile because "the complaint could not be saved by any amendment."

## III.   STATEMENT OF THE CASE

### A.   Nature Of The Case

This is a securities fraud class action lawsuit brought on behalf of a class of investors (the "Class") who purchased Tesla securities between August 19, 2013 and November 17, 2013, inclusive (the "Class Period").  The SAC asserts claims under Exchange Act §§10(b) and 20(a) against Defendant Tesla and its Chief Executive Officer, Defendant Musk.  It identifies with particularity Defendants' allegedly false or misleading statements and omissions, the alleged bases for scienter, and the causal connections to nine partial corrective events that drove total declines in Tesla's stock price of $87.64 per share, during a timeframe when Tesla's market capitalization plummeted nearly ***$9 billion*** from its Class Period trading high.

3

At issue is whether Tesla's stock price was inflated during the Class Period by Defendants' false and misleading statements and omissions about Tesla's Model S electric car – as it was marketed and sold **then**, as Tesla's sole product, **before** remedial safety modifications that were made later, post-Class Period. (*See, e.g.,* ER347¶6; ER351¶15; ER378¶106). With the core facts essentially undisputed, liability hinges upon what Defendants chose to publicly *say* or *refrain from saying*, regarding the Model S, and whether they were under a duty to say what they failed to disclose. This is not a product defects case, and the outcome does not turn on proving that the Model S was or is categorically "safe" or "unsafe" as a black-and-white dichotomy – as Defendants will attempt to frame it.

## B.    Procedural History

This litigation was initiated by Plaintiff Robert Rahimi via a 32-page Class Action Complaint filed November 8, 2013 (ER575-607).

After multiple investors initially sought to be appointed lead plaintiff (*see* ER613[Dkt. Nos. 16-17]), the District Court entered its Minute Order appointing Kazim Acar as Lead Plaintiff on February 14, 2014 (ER574).

Lead Plaintiff Acar, along with Plaintiff Rahimi, filed the 86-page Amended Class Action Complaint ("FAC") on April 15, 2014 (ER464-573), which set forth, *inter alia*, allegations based on the statements of fourteen Confidential Witnesses

4

("CW"s) and multiple reports by the fire departments dispatched to extinguish the Pre-Class Period Fires.

On June 11, 2014, Lead Plaintiff filed a motion seeking leave to file the SAC, for primarily administrative reasons including removal of non-lead Plaintiff Rahimi, recaptioning the action, and adding non-lead Plaintiffs Landrum and Modi (ER457-463).

The District Court granted this request by Order dated June 16, 2014 (ER455-456).

Lead Plaintiff Acar, along with Plaintiffs Landrum and Modi, filed the SAC, which was nearly identical to the FAC, on June 16, 2014 (ER344-454).

Defendants filed a motion to dismiss ("MTD") on June 16, 2014 (ER310-343), simultaneously seeking judicial notice of certain materials (ER616).

On August 7, 2014, Plaintiffs filed their opposition to Defendants' MTD (ER256-300) ("MTD Opposition").

Oral argument on Defendants' MTD was held before the District Court on September 26, 2014 (ER616[Dkt. No. 53]) (the "MTD Hearing"), with a transcript docketed September 30, 2014 (ER231-255).

The District Court entered its Order (ER6-23) and Judgement (ER5) on December 5, 2014, granting Defendants' MTD and dismissing the action with prejudice and without leave to amend.

5

On December 18, 2014, Defendants moved to amend the Judgment under Fed. R. Civ. P. 59(e) (ER617[Dkt. No. 59]) (the "Rule 59(e) Motion"), asking the District Court to make additional findings under the Private Securities Litigation Reform Act ("PSLRA"). This Court stayed the appellate proceedings to permit resolution of Defendants' Rule 59(e) Motion. *See* Appellate Dkt. No. 11. Plaintiffs responded to the Rule 59(e) Motion (*see* ER195-226), both sides supplemented the factual record with additional declarations and exhibits (ER617-619[Dkt. Nos. 59, 75-77, 79, 81]; ER24-194), including substantive materials pertinent to this appeal, and both sides filed reply briefs (ER618-619[Dkt. Nos. 79, 83]).

After considering all of these materials, the District Court denied the Rule 59(e) Motion and reaffirmed its Judgment in an Order entered March 23, 2015 (ER1-4). The March 23, 2015 Order expressly held that Plaintiffs had pursued this litigation in "good faith" and that their "factual contentions have full evidentiary support. (*Id.*) However, the District Court did not amend its Judgment to permit Plaintiffs leave to amend. (*Id.*)

Thereafter, the Plaintiffs filed a status report (*see* Appellate Dkt. No. 13), and this Court lifted the appellate stay. *See* Appellate Dkt. No. 14.

### C.   Statement Of Facts

### 1.   Tesla Is A Startup With A Small Vehicle Fleet.

Tesla is an electric car company founded in July 2003 and taken public in June 2010 (ER345-346¶2), which faced significant proof-of-concept hurdles (ER361¶55) and ongoing unprofitability (ER358¶48) amid shrinking revenues from government credits (ER359-360¶¶51-53). Tesla had sold just 2,500 of its first car, the Roadster, between 2008 and January 2012, when it was discontinued. (ER346¶3). Deliveries of its successor, the Model S, began in June 2012. (ER346¶4). However, as of the beginning of the Class Period in August 2013, when the Model S was Tesla's sole vehicle (ER360¶53), just 13,000 had been sold, a number that rose to only 25,000 cars by December 31, 2013 (six weeks after the Class Period ended). (ER346¶4). To survive, Tesla needed to sell more Model S cars. (ER360¶53).

### 2.   Musk Dominates Tesla And Dictated Engineering Outcomes.

Musk exerts total control over Tesla and closely oversees all its operations, including engineering, design, and vehicle safety. (ER346¶3; ER357¶45). Though he lacks any advanced engineering degree or auto industry background (ER346¶3; ER349¶10), Musk dictated not only unrealistic Model S production timelines (ER348-349¶9; ER361¶56), but also key engineering decisions, even when doing so meant rejecting the recommendations of Tesla's engineers or causing them to leave Tesla. (ER349¶10; ER367-369¶¶74-80).

7

### 3. Musk's 300 Miles-Per-Charge Mandate For The Model S Caused The Decisions Compromising Safety.

Significantly, Musk arbitrarily dictated that the Model S needed a range of 300 miles per battery charge ("MPC") to sell. (ER348-349¶9; ER369-370¶¶81-82). To meet this edict, Musk and Tesla balanced safety against the 300 MPC range (ER371-372¶¶85-87) and decided to: (a) use higher-energy Panasonic batteries (ER371¶85), which they knew were more volatile (ER371¶84; ER371-372¶87; ER375¶98) and caused more violent fires if ignited (*e.g.*, ER372-374¶91-94); (b) preserve the existing battery pack configuration along the floor of the Model S (ER370¶83, ER375¶98; ER377¶102); (c) end use of individual battery protective sleeves that had been used in the Roadster to prevent the spread of fires (ER376¶101); (d) not use available, patented, stronger undercarriage shielding (to reduce weight) (ER377-378¶¶103-105); and (e) program the Model S to lower at highway speeds (to reduce drag) (ER378¶106). Unbeknownst to investors, these "Decisions Compromising Safety" rendered the Model S more vulnerable to catastrophic damage from a road debris puncture of the undercarriage that could ignite a hard-to-extinguish, high-intensity battery fire that would destroy the vehicle in a matter of minutes (*e.g.,* ER349¶10).

8

### 4. Several Pre-Class Period Fires Showed Defendants The Serious Risks Posed By These Decisions.

These risks were highlighted to Defendants, but not investors, by a series of undisclosed "Pre-Class Period Fires" at Tesla facilities during pre-production of the Model S. (ER347-348¶7; ER372-375¶¶88-97). At least three specific fires occurred, as evidenced by the statements of multiple CWs and the reports of multiple fire departments called upon to extinguish them: (i) an internal thermal event within a prototype Model S battery pack at Tesla's factory in September/October 2011 (ER372¶90); (ii) a December 19, 2011 fire at Tesla's factory – which Tesla sought to conceal from employees – in a fully-installed Model S battery pack that spun wildly out of control, destroyed the car, and required 23 first responders from 9 units to extinguish, whose report described the event as a "crash fire test on a veh[icle]" that became an inferno due to "failure of equipment" (ER372-374¶¶91-94; ER432-439[SAC Exh. 1]); and (iii) a January 11, 2012 fire at Tesla's headquarters caused by a battery, as evidenced by another fire department report stating that the fire occurred in "the Tesla cell test facility," involved materials with "a hazardous by-product," and caused water used to extinguish the fire to measure "10 on the PH test meaning alkaline." (ER374-375¶96; ER440-448[SAC Exh. 2]). In addition, according to a high-placed CW, following these specific incidents, "there were more cases of strong fires as time went on" (ER374¶95) – meaning that fires *continued occurring* past January 2012.

9

The SAC pleads a strong inference that these fires involved the same batteries, in the same battery pack design, as used in Model S cars sold to the public when deliveries began in June 2012 (ER346¶4), just six months after the December 19, 2011 conflagration. Multiple CWs stated that once Musk decided to use the higher-energy Panasonic batteries, so as to meet his 300 MPC range requirement, those batteries *were* used in the Model S, in the *same* number and battery pack configuration as had already been designed for lower-energy batteries. (ER370¶83; ER371¶85; ER377¶102). Multiple CWs stated that Tesla secretly employed other untested, preliminary parts in Model S cars sold to the public, even when the parts in question (*e.g.*, an inverter) caught fire during testing. (ER362-364¶¶59-64; ER365-367¶¶67-73). One CW stated that *a few months before* Model S deliveries began, Tesla's top engineer told him that he had instructed all Tesla engineers to "put their pencils down" so that Musk's strict production deadlines could be met. (ER366¶69). The record, even as copiously augmented by Defendants in support of their MTD and Rule 59(e) Motion (*see* ER616-617[Dkt. Nos. 44, 59]), is devoid of *any* documented substitution of a different battery or any alternative battery pack design.

### 5. Defendants Made Material Misrepresentations And Omissions In Violation Of §10(b) During The Class Period.

In this context, Defendants made the following groups of statements at issue:

10

(a) Defendants' early Class Period statements, *inter alia*, touted the Model S's safety profile and purported status as the "Safest Car in America," credited the Model S battery pack's placement below the floor plan as ensuring "exceptional safety," and boasted that the Model S lithium-battery had never caught fire "before, during or after NHTSA testing" or "throughout all [its] crash tests" in statements on August 19, 2013 (ER380-384¶¶113-124), August 20, 2013 (ER386-387¶¶130-132), and September 14, 2013 (ER397¶133);

(b) After the first of three Class Period Model S fires, a high-profile fire in Washington state, occurred on October 2, 2013, Defendants tried to quell investor concerns by, *inter alia*, calling the Washington fire the "first fire," saying the Model S was five times less likely to have a fire than a gas-powered car, and stating that only rare and "uncommon" circumstances would lead to a Model S undercarriage puncture and fire, which they described as "very peculiar" and "extremely hard to do" in statements on October 3, 2013 (ER393-394¶¶142-144), October 4, 2013 (ER394-396¶¶145-150), October 22, 2013 (ER398-399¶¶156-159; ER183-188[Transcript excerpt]), October 24, 2013 (ER399-400¶¶160-161; ER189-194[Transcript]); and

(c) Toward the end of the Class Period, after investors knew of all three Model S fires that occurred during the Class Period (the other two happening in Mexico and Tennessee), Defendants made several statements on November 12, 2013 refuting the

need for or possibility of a Model S recall, going so far as to say there "definitely" would not be a recall (ER410-412¶¶181-186).

These statements were false and misleading for four principal reasons:

First, they all failed to disclose the Decisions Compromising Safety, which had **substantially increased the risks** of Model S undercarriage punctures capable of igniting catastrophic, car-destroying fires like those that later occurred during the Class Period. (*See* ER382-383¶120; ER383-384¶124, ER386-387¶132; ER387¶133; ER393-394¶144; ER396¶150; ER399¶159; ER400¶161; ER412¶186).

Second, all of these statements also failed to disclose both the **existence** and the **intensity** of the Pre-Class Period Fires, which illustrated the risks of catastrophic, car-destroying fires in the high-energy Panasonic lithium-ion batteries, particularly as configured in the Model S battery pack along its undercarriage. *See* (ER382-383¶120; ER383-384¶¶124; ER386-387¶132; ER387¶133; ER393-394¶144; ER396¶¶149-150; ER399¶¶158-159; ER400¶161; ER412¶186).

Moreover, certain of these statements affirmatively misrepresented a purported *lack* of *any* prior fires, with egregious examples including: (i) the August 19, 2013 statement that "**The Model S lithium-ion battery did not catch fire at any**

12

*time before*, during, or after *NHTSA testing*."[1] (ER382¶119);[2] (ii) the August 20, 2013 statement that "*Throughout all our crash tests…never once has there been a fire*." (ER347-348¶7; ER386¶¶130-131), which was directly contradicted by the Fremont Fire Department report discussed *supra* (ER373-374¶¶92-93; ER432-439[SAC Exh. 1]); and (iii) the October 3, 2013 statement, a day after the Washington fire, that "*[T]his is the first fire*." (ER347-348¶7; ER393¶¶142-143).

Third, Musk's statements on October 22, 2013 and October 24, 2013, which discussed at length the Washington fire on October 2, 2013 and downplayed its significance (ER398¶¶156-157; ER399-400¶160), and which even included Musk's statement, when asked why the Chairman of Volkswagen had expressed shock at the Tesla fire in Washington, "VW has thousands of car fires every year… So I'm not sure why he'd be startled by *one* in an electric car" (ER189-194[Transcript]), failed to disclose that, unbeknownst to investors, a *second* Class Period fire had *already occurred*, in Mexico, on October 18, 2013.  (ER401¶164).  While this second fire was not widely reported by the media until October 28, 2013, when it caused a $7.32 (4.3%) drop in Tesla's stock on heavy volume (ER401-403¶¶165-167), in actuality

---

[1]  Unless otherwise noted herein, all emphasis in quoted text has been added.

[2]  The NHTSA is the U.S. Department of Transportation's National Highway Traffic Safety Administration (ER346-347¶5).

– as stated by multiple CWs and as admitted by Musk – it was known to Defendants immediately after it occurred and well before Musk spoke (ER403-404¶¶167-171).

Fourth, in several interviews on November 12, 2013 intended to assuage investor concerns, Musk continued to tout the Model S's safety while denying that there was any reason for a recall (ER410-412¶¶181-186), an outcome that Tesla desperately wanted to avoid given its three prior recalls (ER360-361¶¶54-55). He went so far as to rule a recall out altogether, stating "*[T]here definitely won't be a Model S recall*." (ER410¶181). These statements were revealed to have been false and misleading shortly after, when Musk's November 18, 2013 blog post announced that Tesla had issued an over-the-air update to increase the Model S's ground clearance at highway speeds and was amending its warranty to cover fire damage. (ER412-414¶¶187-190). This announcement caused a single-day drop in Tesla's stock price of $13.87 per share (10.2%). (ER414¶190). After the NHTSA opened an investigation on November 19, 2013 (and refuted Musk's claim that they did so at Tesla's request, *see* ER414-415¶192), Tesla agreed, during a March 10, 2014 meeting with ODI,[3] to free retrofitting of Model S cars with stronger undercarriage shielding (ER351¶17; ER415-416¶¶193-197). Altogether, these remedial measures were tantamount to a recall of the Model S (ER378¶107; ER415¶194). Only after

---

[3] ODI is NHTSA's Office of Defects Investigation.

they were implemented did regulators close their investigation, making clear: "The closing of the investigation *does not constitute a finding* by NHTSA that a safety-related defect does not exist…." (ER416-417¶¶198-200; ER304-306[ODI Report]).

### 6. Partial Corrective Events, Including Three Model S Fires And Later Remedial Measures, Revealed Defendants' Fraud.

A series of partial corrective events revealed Defendants' fraud and removed the inflation from Tesla's stock price (ER349-351¶¶11-17; ER384-385¶¶126-128; ER387-393¶¶134-140; ER397-398¶¶152-154; ER401-410 ¶¶165-179; ER412-414¶¶187-191). They included, *inter alia*: (a) the Washington state Model S fire on October 2, 2013 (ER349-350¶¶11-12; ER387-193¶¶134-137), which caused Tesla's stock price to fall $12.05 (over 6%) on high volume on October 2, 2013 (ER391¶138), while ensuing reports and analysis of the Washington fire caused the stock to fall another $7.64 (4.2%) on October 3, 2013 (ER392-393¶140); (b) the Mexico Model S fire (ER350¶¶13; ER401-404¶¶165-171), which caused a $7.32 (4.3%) drop in Tesla's stock price when it was widely reported on October 28, 2013 (ten days after it occurred); (c) the Tennessee Model S fire on November 7, 2013 (ER350¶14; ER404-410¶¶173-179), which caused a $11.39 (7.5%) drop in Tesla's stock price (ER410¶179); and (d) Tesla's announcement of its software update raising the Model S driving height and its warranty expansion to cover

15

fires. (ER351¶¶15-16; ER412-414¶¶187-190), which caused a $13.87 (10.2%) drop in Tesla's stock price (ER414¶ 190).

Significantly, the Washington and Tennessee fires manifested the ***exact*** risks of the Decisions Compromising Safety and the Pre-Class Period Fires, *i.e.* a road debris strike at normal driving speeds punctured the undercarriage and ignited a difficult-to-extinguish blaze that destroyed the vehicle. (ER349-350¶11; ER350¶14; ER387-391¶¶134-137; ER404-410¶¶173-177; ER410¶180).

### 7. Defendants Acted With Scienter.

The SAC extensively pled the bases for Defendants' scienter, based on both their actual knowledge and, at minimum, their recklessness (*see, e.g.,* ER346¶3; ER349¶10; ER351¶15; ER357¶45; ER367-378¶¶74-107; ER404¶¶167-171; ER421-422¶¶213-215). The Pre-Class Period Fires, several of which involved significant first responder presences on-site to extinguish, occurred at Tesla's *headquarters* or at its *sole factory* (ER372-375¶¶88-96). Defendant Musk dictated the 300 MPC range requirement (ER348-349¶9; (ER369-370¶81) and oversaw work by Tesla's engineers to meet it (*e.g.,* ER370¶82), including regular meetings and discussions regarding safety tradeoffs (ER371¶86), which led to the Decisions Compromising Safety (ER376-378¶¶101-106). Musk himself also made most the alleged misstatements at issue (*e.g.,* ER386¶130; ER396¶¶145-148; ER398¶¶156-157; ER399-400¶160; ER410-411¶¶181-183). The SAC also pled scienter based on

16

motive and opportunity (ER422-425¶¶216-220), including, *inter alia*, Musk's admissions that Defendants "were quite worried" about the "significant drop in demand" after the Class Period Model S fires and that their public statements at issue succeeded in quelling consumer fears and causing sales to "improve[ ] steadily" (ER422¶217).

### 8. The District Court Held That "Plaintiffs' Factual Contentions Have Full Evidentiary Support."

The foregoing alleged facts, corroborated in the SAC by extensive statements from fourteen CWs,[4] were essentially uncontested by Defendants. Indeed, the District Court, in its Order reaffirming its Judgment so held:

> ***Plaintiffs' factual contentions have full evidentiary support***, as far as the Court and the parties can tell at this stage. Competent evidence supports the allegations that Tesla and Musk did make the various press releases, and did conduct the various battery tests, and that the Model S did experience a series of fires caused by road debris – all generally in the form and substance and sequence the Complaint alleges. The strictly factual aspects of Plaintiffs' Complaint were supported by a lengthy and thorough investigation, which included extensive witness interviews, a detailed history of the engineering and development of the Roadster and Model S Tesla vehicles, and reviews of public documents, conference calls, press releases, financial filings, and stock performance. By and large, the underlying events appear to have occurred much in the way Plaintiffs alleged.

---

[4] *See, e.g.,* ER348-349¶¶8-10; ER350¶13; ER354-357¶¶29-44; ER361-367¶¶57-73; ER367-372¶¶74-87; ER372-373¶¶89-91; ER374¶¶94-95; ER375-376¶99; ER376-377¶¶101-104; ER378¶106; ER380¶111; ER382¶119; ER386¶131; ER393¶143; ER403-404¶¶169-170; ER413-414¶188; ER415¶193. As discussed in §VI.D. below, Plaintiffs would include statements from ***three more*** CWs in an amended pleading.

> ***Tesla does not really argue otherwise***. Rather, Tesla takes umbrage at the legal conclusions that Plaintiffs advanced in light of this factual backdrop….

(ER3) (emphasis added).

### 9. Plaintiffs Identified For the District Court The Additional Facts They Would Allege In An Amended Pleading.

During the parties' briefing regarding potential amendment to the District Court's Judgment under Fed. R. Civ. P. 59(e), Plaintiffs supplemented the record with additional evidence they would include in an amended complaint, including statements by three additional CWs and certain documentary evidence. (ER208-210; ER27¶¶20-23; ER36-37¶¶44-46; ER126-182. These facts, which are detailed in §VI.D. *infra*, buttress, *inter alia*, the SAC's allegations regarding: (a) the Decisions Compromising Safety; (b) the fact that the Model S battery pack was not changed between the Pre-Class Period Fires and deliveries of Model S cars to consumers; and (c) Tesla's use of Post-Class Period remedial measures that were tantamount to a recall so as to avoid initiation of a formal recall by NHTSA.

### D. Rulings Submitted For Review

Defendants' MTD challenged only two of the required pleading elements under §10(b) and Rule 10b-5: falsity and scienter. (ER323-341). The District Court dismissed Plaintiffs' §10(b) claim based solely on an evaluation as to the falsity pleading (ER12-22), expressly failing to reach Defendants' scienter arguments. (ER12) ("Because this Court found that Plaintiffs utterly failed to plead facts

sufficient to establish a false or misleading statement, it is unnecessary to reach the issue of scienter."). It dismissed the SAC's §20(a) claim for the sole reason that it dismissed the §10(b) claim. (ER22). The District Court also denied Plaintiffs leave to amend, on futility grounds. (ER22-23) ("Because it is clear at this stage that 'the complaint could not be saved by any amendment,' this Court DENIED LEAVE TO AMEND.")

## IV.   STANDARD OF REVIEW

The decisions of a district court on motions to dismiss are reviewed *de novo*. *See, e.g., In re Verifone Holdings, Inc. Sec. Litig.*, 794 F.3d 694, 700-701 (9th Cir. 2012); *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). Courts must accept all factual allegations in the complaint as true and must construe the facts alleged in the light most favorable to the plaintiffs. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005). The *de novo* standard of review also applies to dismissals without leave to amend and denials of leave to amend on grounds of futility. *In re Daou*, 411 F.3d at 1013 ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.") (quotation omitted); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052, (9th Cir. 2003) (same); *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) ("We review *de novo* a district court's denial of

leave to amend on grounds of futility"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (same).

## V.    SUMMARY OF ARGUMENT

***False and Misleading Statements.***  In ruling that the SAC failed to adequately allege any false or misleading statement in violation of Exchange Act §10(b) and Rule 10b-5, the District Court committed several reversible errors:

First, the District Court had no basis to dismiss the §10(b) claim to the extent that it is premised on the SAC's allegations of Defendants' failure to disclose the Decisions Compromising Safety.  Defendants' MTD failed to raise ***any*** challenge to those allegations (ER310-343), and thus waived them, as Plaintiffs' MTD Opposition repeatedly highlighted (ER279 (citing *Avila v. Los Angeles Police Dept.*, 758 F.3d 1096, 1101 (9th Cir. 2014) ("Arguments 'not raised clearly and distinctly in the opening brief' are waived.") (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009)); ER281).  Having waived the argument below, Defendants cannot pursue it before this Court.  *See Desai v. City of Los Angeles*, 602 Fed. Appx. 392, 394 n.2 (9th Cir. 2015); *Nault v. Colvin*, 593 Fed. Appx. 722, 723 (9th Cir. 2015); *U.S. v. Ortiz*, 776 F.3d 1042, 1044 n.3 (9th Cir. 2015) (party waived argument by failing to raise it before district court).

The District Court improperly ignored this waiver argument (ER21-22). Having done so, it also misconstrued the SAC's allegations as "an invitation to

second-guess Tesla's engineering decisions" rather than as pled *omissions* of material information withheld from investors, and failed to apply or even discuss (*see* ER22) the binding precedent evidencing Defendants' disclosure duty that Plaintiffs cited in their MTD Opposition (ER280-281) (citing/quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318-1323 (2011); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1052 (9th Cir. 2008)).  By not disclosing the Decisions Compromising Safety, Defendants breached that duty and violated §10(b).

Second, in dismissing the §10(b) claim as based on *omissions* regarding the Pre-Class Period Fires, the District Court improperly based its ruling on a fact not established by the record – that Tesla somehow changed the Model S battery in some meaningful way between the time of those fires and deliveries of Model S cars to consumers months later (ER15-17).  At most, this was a disputed fact, inappropriate for resolution at this stage, which the District Court impermissibly resolved in *Defendants'* favor by narrowly focusing on the vague statement of just one CW. However, the great weight of evidence, including statements by **six** CWs ignored by the District Court, taken together, makes clear that neither the Model S's battery nor its battery pack were materially changed between the Pre-Class Period Fires

21

(specific examples of which occurred in September/October 2011 through January 2012, with "more cases of strong fires as time went on" thereafter) and the delivery of Model S cars to consumers in June 2012. The District Court also failed to address (*see* ER15-17) the extensive case law Plaintiffs cited establishing the duty to disclose such pre-production problems. (ER280-281) (citing/quoting, *inter alia*, *Matrixx*, 131 S. Ct. at 1318-1323; *Berson*, 527 F.3d at 987; *Brody*, 280 F.3d at 1006; *Hanon*, 976 F.2d at 502-503, 504; *In re Gilead*, 536 F.3d at 1052; *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989)).

The District Court committed these same errors in addressing Defendants' affirmative *misrepresentations* about the lack of prior fires (*e.g.* ER15-17). It mischaracterized one such statement ("***The Model S lithium-ion battery did not catch fire at any time before***, *during, or after* ***NHTSA testing***") as limited to "production" batteries when it was not so limited and illogically said that Plaintiffs "concede that this statement is true" when the SAC called it an "outright lie." *Compare* ER15 *with* ER382¶119. The District Court also failed to address Plaintiffs' falsity arguments altogether regarding another misstatement ("***Throughout all our crash tests***,… ***never once has there been a fire***") (ER17). It thus ignored that such statement was directly refuted by a fire department report (terming one Pre-Class Period Fire a "***crash fire test on a veh[icle]***" that spun out of control due to "failure of equipment" (ER372-374¶¶91-94; ER432-439[SAC Exh.

22

1])), the authenticity and contents of which was ***undisputed*** by Defendants in their MTD, as Plaintiffs indicated in a waiver argument to the District Court (*see* ER279, ER280). *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3. It based dismissal of a third such statement ("***[T]his is the first fire***"), made after the first Model S fire during the Class Period occurred in Washington state, on the same flawed conclusion, discussed *supra*, that the Model S battery had somehow been changed between the time of the Pre-Class Period Fires and the deliveries of Model S cars to consumers.

Third, the District Court erred in holding that Musk's failure to disclose a second Model S fire during the Class Period, which occurred in Mexico on October 18, 2013, during interviews he gave about the earlier Washington fire on October 22 and 24, 2013 did not violate §10(b). During the MTD Hearing (ER244-247) and in its Order (ER14-15), the District Court disregarded binding case law that Plaintiffs cited in their MTD Opposition (ER288) and at oral argument (ER246-247) giving rise to a disclosure duty, including *Matrixx*, 131 S. Ct. at 1318-1323; *Berson*, 527 F.3d at 987; *Brody*, 280 F.3d at 1006; and *Hanon*, 976 F.2d at 504.[5]

---

[5] The only case cited by Plaintiffs that the District Court referenced was *Brody*, which it cited for the separate proposition that to survive a motion to dismiss, a securities fraud plaintiff must plead the reasons why alleged misstatements were misleading or untrue, as opposed to simply incomplete. *See* ER20. As discussed herein, the SAC readily meets that standard.

Compounding its error, in reaching its erroneous conclusion that the market was not misled by Musk's omission (*See* ER20-21), the District Court ignored the SAC's allegations that the Mexico fire was not widely reported until October 28, 2013, when it caused a $7.32 drop (4.3%) in Tesla's stock price (ER401-402¶¶165-166). It also improperly conjured up a truth-on-the-market defense, not briefed or argued by the parties (*see* ER310-343; ER256-300; ER231-255) by: (i) failing to discuss or apply the stringent standards for such a defense, on which *Defendants* bear the burden (*see, e.g., Provenz v. Miller*, 102 F.3d 1478, 1492-1493 (9th Cir. 1996)); (ii) viewing the facts in the light most favorable to *Defendants* and claiming the market was alerted by an obscure Mexican news article, completely in Spanish and devoid of the phrase "Model S," that published photos and a cell phone video later picked up by the global press on October 28, 2013 (*see* ER20-21); and (iii) illogically citing the online view count of that video as of ***October 29, 2013*** – the day ***_after_*** the SAC pleads that the Mexico fire was widely reported – to draw an inference that it was known by investors ***5 - 7 days earlier*** (*id.*). Beyond these deep analytical flaws, the District Court also ignored that such a defense is wholly inappropriate for resolution at this stage, even if Defendants had raised it. *See, e.g., Asher v. Baxter Int'l. Inc.*, 377 F.3d 727, 734 (7th Cir. 2004); *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000); *Provenz*, 102 F.3d at 1492-1493.

Fourth, regarding Musk's November 12, 2013 statements that there was no need for a Model S recall and there "definitely" would not be one, Defendants failed to address them in their MTD (*see* ER324-336), and Plaintiffs highlighted this waiver in their MTD Opposition (ER279, ER288).  The District Court ignored this waiver.  (ER21).  In evaluating these statements, it failed to assess whether they were *misleading* when made.  *Id.*  Instead, without any discussion of the case law, it held that Tesla's software upgrade lifting the Model S driving height (a week after Musk spoke) and its retrofitting with stronger undercarriage shielding did not render his statements *false* and dismissed the §10(b) claim.  *Id.*  In doing so, the District Court not only misapplied the standard (*see, e.g., Zucco*, 552 F.3d at 990-991; 15 U.S.C. §78u-4(b)(1)), it also ignored the SAC's pleading of a huge drop in Tesla's stock when the software upgrade (along with Tesla's extension of its warranty to cover vehicle fires) was announced.  *Id.*

**_Scienter._**  The District Court failed to reach the issue of Defendants' scienter, (ER12).  It was error not to do so, given both the clarity of the pleadings, which must be accepted as true and construed in Plaintiffs' favor, and given Defendants' failure to challenge in their MTD opening brief the scienter pleading as based on their *recklessness* (as opposed to their *knowledge*) (ER336-341).  Plaintiffs repeatedly highlighted this waiver to the District Court in their MTD Opposition (ER279; ER293; ER294), which precludes Defendants from arguing the issue before this

25

Court. *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3. Moreover, waiver aside, the SAC's allegations regarding Musk's total control over Tesla and the bases for his actual knowledge went almost entirely undisputed. Defendants only quibbled, briefly, as to the timing of his knowledge of the Mexico fire, but the SAC's allegations make clear that it was immediate (ER403-404¶¶167-171). Thus, this Court should decide the scienter issue now, in the interest of judicial economy. *See, e.g., Thompson v. Paul*, 547 F.3d 1055, 1063 (9th Cir. 2008); *Greater Los Angeles Agency of Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); *In re Hoopai*, 581 F.3d 1090, 1095-1096 (9th Cir. 2009); *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir. 2003). In doing so, it should hold that the applicable pleading standards have been met, such that the SAC's allegations, viewed holistically, pled a strong inference of scienter, cogent and at least as compelling as any competing inference. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1180 (9th Cir. 2009); *Tellabs*, 551 U.S. at 324.

**§20(a) Claim.** The District Court dismissed the §20(a) claim for the sole reason that it held that the SAC failed to sufficiently allege falsity so as to plead a §10(b) claim. Because the District Court erred in dismissing the §10(b) claim, it should be reversed as well regarding its dismissal of the §20(a) claim.

**Leave to Amend.** The Ninth Circuit applies Fed. R. Civ. P. 15 with "extreme liberality." *Eminence Capital*, 316 F.3d at 1051. Absent prejudice or a strong

showing of the other *Foman* factors, there is a *presumption* under Rule 15(a) favoring amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs requested leave to amend in their MTD opposition brief (ER299), which the District Court denied on grounds of futility (ER22-23). In doing so, it erroneously believed Plaintiffs had "twice" been granted leave to amend (ER22). In actuality, Plaintiffs had only sought leave once, for largely administrative reasons (ER457-463), to replace the FAC with the nearly identical SAC, which removed and added certain non-lead plaintiffs and recaptioned the case. (ER38-126[redline of SAC against FAC]). The District Court also overlooked the fact that Plaintiffs *never* had the chance to amend to remedy the substantive deficiencies identified by the District Court at the motion to dismiss stage. *Eminence Capital*, 316 F.3d at 1052; *Loos v Immersion Corp.*, 762 F.3d 880, 883-884 (9th Cir. 2014).

Moreover, when Defendants asked the District Court to amend its Judgment under Rule 59(e), Plaintiffs set forth extensive additional facts they would include in an amended pleading, including statements by three additional CWs and certain documentary evidence, which directly address many of the concerns articulated by the District Court in its dismissal order. (ER208-210; ER27¶¶20-23, 36-37 ER27¶¶44-46; ER126-182; §VI.D. *infra*). The District Court correctly reviewed this evidence as part of the record in deciding that Plaintiffs' factual allegations had "full evidentiary support" (ER3). However, in reaffirming its Judgment without any

alteration (ER4), it erroneously failed to recognize these additional facts disproved its prior conclusion that "the complaint could not be saved by any amendment." Particularly where the District Court expressly held that the SAC's allegations were nonfrivolous and had been pursued in good faith (ER1, ER3), Plaintiffs should have been given leave to amend. *See, e.g., Eminence Capital*, 316 F.3d at 1051-1053.

## VI.   ARGUMENT

### A.   The SAC Adequately Pled False And Misleading Statements And Omissions In Violation Of §10(b).

To state a claim under §10(b) and Rule 10b-5, a plaintiff must allege, *inter alia*, that a defendant made a false or *misleading* statement. "[T]o properly allege falsity, a securities fraud complaint must…'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, … state with particularity all facts on which that belief is formed.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-991 (9th Cir. 2009) (quoting 15 U.S.C. §78u-4(b)(1)). The SAC readily meets this standard.

### 1.   Defendants' Omissions Regarding The Decisions Compromising Safety Violated §10(b).

As discussed in §III.C. *supra*, the SAC clearly and repeatedly pled that Defendants' statements touting the Model S's safety profile and ratings as the "Safest Car in America" (ER380-384¶¶113-124; ER386-387¶¶130-133) and, later, their statements regarding the purportedly highly unusual nature of the first Class

Period fire in Washington, where road debris struck at normal highway speed punctured the undercarriage and ignited a high-intensity fire that was difficult to extinguish and destroyed the car (ER393-396¶¶142-150; ER398-400¶¶156-161; ER183-188[Transcript excerpt]; ER189-194[Transcript]) and their statements that a Model S recall was not needed and would not occur (ER410-411¶¶181-183), were false and misleading for failure to disclose the Decisions Compromising Safety. *See* ER382-383¶120; ER383-384¶124, ER386-387¶132; ER387¶133; ER393-394¶144; ER396¶150; ER399¶159; ER400¶161; ER412¶186.

The District Court committed reversible error in dismissing the §10(b) claim to the extent premised on these omissions. Defendants' MTD failed to raise ***any*** challenge to the SAC's allegations of the §10(b) claim premised on their failure to disclose the Decisions Compromising Safety (ER310-343), and thus waived any such argument at this stage. *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2 (party waived additional arguments in their appellate opening brief by not raising them before the district court); *Nault*, 593 Fed. Appx. at 723 (party waived argument for appeal by failing to argue it in opening brief in the district court); *Ortiz*, 776 F.3d at 1044 n.3 (party waived argument by failing to raise it before district court). Plaintiffs' MTD Opposition repeatedly highlighted this waiver, both in a section specifically dedicated to Defendants' waived arguments (ER279) (citing *Avila*, 758 F.3d at 1101 (quoting *McKay*, 558 F.3d at 891)) and in a section devoted to the

Decisions Compromising Safety (ER281). The District Court improperly ignored this waiver argument (ER21-22) and should be reversed on that basis alone.

Even assuming, *arguendo*, that the waiver argument is not dispositive, the District Court's decision was wrong on the merits. The District Court incorrectly misconstrued the SAC's allegations as "an invitation to second-guess Tesla's engineering decisions" rather than as pled **omissions** of material information withheld from investors and, having done so, failed to apply or even discuss (*see* ER22) the binding case law regarding Defendants' disclosure duty that Plaintiffs cited in their MTD Opposition (ER280-281).

To the contrary, while failing to disclose the Decisions Compromising Safety, Defendants, *inter alia*: (i) attributed positive Model S safety test results to the safety provided by its battery pack design and location (*see, e.g.,* ER381¶117) ("The reason for such a good [NHTSA test] outcome is that **the battery pack is mounted below the floor plan**, providing a very low center of gravity, **which** simultaneously **ensures exceptional…safety**"); (ii) touted Tesla's internal testing, above and beyond NHTSA tests, purportedly ensuring that even the "weakest" points of the Model S would not impact its safety (ER381-382¶118) (After NHTSA testing "Tesla then analyzed the Model S to determine the weakest points in the car and retested at those locations until the car achieved 5 stars no matter how the test equipment was configured"); (iii) emphasized the lack of any prior fires "before, during or after

30

NHTSA testing," "throughout all our crash tests" or in production vehicles (*see, e.g.,* ER382¶119, E386¶130); and, following the Washington Model S fire, (iv) called it the "first fire" (ER383¶142), emphasized its highly unlikely nature (*e.g.,* ER394¶145; ER395-396¶148; ER398¶157; ER399-400¶160), minimized its severity (ER395¶147; ER398¶157), and touted the Model S's safety profile against gas-powered cars (*e.g.,* ER394-395¶¶146; ER398¶157) (*see also* ER183-188[Transcript excerpt]; ER189-194[Transcript]). As discussed in §III.C. *supra*, the SAC linked these omissions to nine partial corrective disclosures, with respect to which Defendants did not challenge loss causation (*see* ER310-343), thereby waiving any such argument (*see* ER279). *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3.

On these facts, under binding precedent that Plaintiffs cited to the District Court (*see* (ER280-281), Defendants were under a duty to disclose the Decisions Compromising Safety when they chose to make these statements and to discuss these topics. *See Matrixx*, 131 S. Ct. at 1318-1323 (omitted facts must be disclosed where "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available'" and "when necessary 'to make … statements made, in the light of the circumstances under which they were made, not misleading'"); *Berson*, 527 F.3d at 987 (once defendants chose to speak, they

31

"were bound to do so in a manner that wouldn't mislead investors"); *Brody*, 280 F.3d at 1006 (omissions actionable when they are misleading and "create an impression of a state of affairs that differs in a material way from the one that actually exists"); *Hanon*, 976 F.2d at 504 ("Rule 10b-5 imposes a duty to disclose material facts…necessary to make disclosed statements, whether mandatory or volunteered, not misleading."); *In re Gilead*, 536 F.3d at 1052 ("Omitting the role of [prohibited] off-label marketing in a press release highlighting the drug's success made a true statement (that demand was strong) also a misleading one."). Defendants breached that duty, in violation of §10(b).

For these reasons, the District Court's holding should be reversed.

### 2. Defendants' Omissions And Misrepresentations Regarding The Pre-Class Period Fires Violated §10(b).

#### a. Omissions Regarding The Pre-Class Period Fires

As discussed in §III.C. *supra*, the SAC also clearly and repeatedly pled that Defendants' very same statements touting the Model S's safety profile and ratings as the "Safest Car in America" (ER380-384 ¶¶113-124; ER386-387 ¶¶130-133) and, later, regarding the purportedly unusual nature of the Washington Model S fire (ER393-396¶¶142-150; ER398-400¶¶156-161; ER183-188[Transcript excerpt]; ER189-194[Transcript]) and the lack of a need for any Model S recall (ER410-411¶¶181-183), were also false and misleading for their additional failure to disclose both the ***existence*** and the ***intensity*** of the Pre-Class Period Fires, which illustrated

32

to Defendants the risks of catastrophic, car-destroying fires in the high-energy Panasonic lithium-ion batteries used in the Model S, particularly as configured in the Model S battery pack along its undercarriage. *See* ER382-383¶120; ER383-384¶¶124; ER386-387¶132; ER387¶133; ER393-394¶144; ER396¶¶149-150; ER399¶¶158-159; ER400¶161; ER412¶186.

As corroborated by multiple CWs and two fire department reports, Defendants knew of *at least three* specific, serious battery fires during pre-production of the Model S between September/October 2011 and January 2012, and even "*more cases of strong fires as time went on*" thereafter (ER347-348 ¶7; ER372-375¶¶88-97) – none of which were disclosed to investors. One such fire, at Tesla's factory on December 19, 2011, which Tesla sought to conceal even from its own employees, involved a fully-installed Model S battery pack and was memorialized in a report by the 23 first responders from nine units that had to be dispatched to extinguish it. (ER372-374¶¶91-94; ER432-439[SAC Exh. 1]). Their report described the event as a "*crash fire test* on a veh[icle]" that became a car-destroying inferno due to "*failure of equipment*." *Id.* Significantly, Defendants failed to challenge authenticity or contents of this report in their MTD opening brief (*see* ER310-343), a waiver that Plaintiffs highlighted for the District Court in their MTD Opposition (*see* ER279) (citing *Avila*, 758 F.3d at 1101 (quoting *McKay*, 558 F.3d at 891)). Just six months later, Tesla was delivering Model S cars to consumers (ER346¶4).

On these facts, for the same reasons as set forth in the preceding §VI.A.1., Defendants were likewise under a duty to disclose both the *existence* and the *intensity* of the Pre-Class Period Fires when they chose to make the statements listed above and to discuss those topics, such that Defendants' ***omissions*** regarding the Pre-Class Period Fires from their statements rendered them false or misleading under §10(b). *See Matrixx*, 131 S. Ct. at 1318-1323; *Berson*, 527 F.3d at 987; *Brody*, 280 F.3d at 1006; *Hanon*, 976 F.2d at 504; *In re Gilead*, 536 F.3d at 1052). Moreover, a specific duty to disclose testing and developmental data can and often does arise under circumstances like those at bar. *See, e.g., Hanon*, 976 F.2d at 502-503 (noting "difference between knowing any product-in-development may run into a few snags, and knowing that a particular product has already developed problems" and rejecting summary judgment because jury could find company's failure to disclose a product's technical problems had material effect on its stock price) (quoting *In re Apple*, 886 F.2d at 1115 (whether company's internal tests indicating slowness and unreliability of product in development stage rendered public optimistic statements about the product materially misleading is question of fact for jury inappropriate for summary judgment)).[6]

---

[6] *Cf. also, e.g., Glassman v. Computervision Corp.*, 90 F.3d 617, 635 (1st Cir. 1996) ("A duty to disclose technical or developmental problems with a product may arise where a company makes strongly optimistic or concrete statements about that product that are in stark contrast to its internal reports."); *In re Pfizer, Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 629-630, 635-636 (S.D.N.Y. 2008) (motion to dismiss a

Plaintiffs cited all of this precedent to the District Court. *See* ER288-290. However, the District Court, in reaching its decision that the Pre-Class Period Fires need not have been disclosed, ignored these cases and altogether failed to address them. *See, e.g.,* ER15-17.

Instead, it erroneously chose to base its dismissal ruling on a fact not established by the record – that Tesla somehow changed the Model S "battery" between the time of the Pre-Class Period Fires and deliveries of Model S cars to consumers months later (ER15-17). At most, this was a disputed fact, inappropriate for resolution at this stage, which the District Court impermissibly resolved in *Defendants'* favor. To do so, it focused on the statement of one CW (CW7) who said that "in the months prior to the start of Model S production," many parts were undergoing changes, including the motor and the "battery" (ER15-16). Notably, CW7 did not specify what "months" meant – *e.g.,* whether CW7 meant four months (*i.e.*, just after the December 19, 2011 Pre-Class Period Fire) or eight months (*i.e.*, two months *before* that fire). *See* ER361¶57. Nor did CW7 say what, if any, changes occurred to the "***battery***," *i.e.*, the higher-energy Panasonic battery that Tesla decided to use for the Model S (indeed, the record, even as copiously augmented by

---

complaint is not an appropriate vehicle for determining weight of evidence, expert or otherwise, such as the statistical significance of three studies alleged to have alerted defendants to adverse drug effects from a very early date).

Defendants in seeking dismissal and in later seeking to have the Judgment amended, is **devoid** of **any** evidence that the "*battery*" was ever altered).

From among the countervailing evidence, the District Court chose to analyze, in isolation, the statement of just **one** of the **many** CWs who spoke to Tesla's continued use of the higher-energy Panasonic batteries and its non-alteration of the Model S battery pack design. Specifically, the District Court examined the statements by CW5. (ER16). In doing so, the District Court ignored that CW5's job as a senior CAD designer at Tesla, from October 2005 through April 2013 (encompassing the **entire** pre-production period of the Model S and the first 10 months of its production), was to edit and refine computer models done by engineers and to make drawings of the models for production, in which capacity CW5 worked mainly on drawings of the Model S battery pack and power train (ER355¶34). Those facts provide important context for CW5's statement that CW5 could not recall any major changes to the Model S battery pack after Tesla decided to use the higher-energy Panasonic batteries (ER377¶102), which caught fire in the Pre-Class Period Fires. Yet, as an apparent penalty for failing to conclusively prove a negative, the District Court disregarded CW5's statement, finding that CW5 "did not affirmatively allege that the battery design did not change, nor offer any time line relative to the alleged prototype fires." (ER16 (citing 377¶102)).

36

The District Court committed reversible error in taking such a narrow, incomplete view of the record, in the light most favorable to *Defendants*. It ignored corroborating statements by multiple CWs, which together establish a far stronger inference that neither the Panasonic battery nor the Model S battery pack were changed between the time of the Pre-Class Period Fires and deliveries of Model S cars to consumers in June 2012. For instance, CW1 (ER370¶83), whose statements are specifically referenced as being corroborated by CW5 *in the very paragraph* of the SAC that the District Court discussed (*see* ER377¶102 (referencing ER370¶83)) *also* said that Tesla preserved its pre-existing battery pack design and configuration after adoption of the higher-energy Panasonic batteries – as Plaintiffs indicated to the District Court. (ER279-280). Moreover, multiple CWs (CW3, CW8, CW9, and CW12) stated that Tesla secretly employed other untested or preliminary parts in Model S cars sold to the public, even when the parts in question (*e.g.,* an inverter) had caught fire during testing (ER362-364 ¶¶59-64; ER365-367¶¶67-73). One CW (CW13) stated that *a few months before* Model S deliveries began (*i.e.*, the March 2013 time frame), Tesla's top engineer told him that he had instructed all Tesla engineers to "put their pencils down" – meaning no further design modifications – so that Musk's strict production deadlines could be met (ER366¶69). These facts, taken as true and combined with CW5's statements, lead to the strong inference that neither the Panasonic battery nor the Model S battery pack design were altered in

any material way following the Pre-Class Period Fires. Thus, the District Court's ruling should be reversed.[7]

### b. Affirmative Misrepresentations Regarding The Pre-Class Period Fires.

The District Court committed even clearer errors in dismissing the §10(b) claim to the extent premised on Defendants' affirmative *misrepresentations* about Tesla's purported lack of prior fires. Specifically:

First, the SAC based its §10(b) claim on these August 19, 2013 statements:

> *The Model S lithium-ion battery did not catch fire at any time before*, *during, or after NHTSA testing*. It is worth mentioning that no production Tesla lithium-ion battery has ever caught fire in the Model S or Roadster, despite several high speed impacts.

(ER382¶119). The SAC termed the *first sentence* quoted above "an outright lie," directly refuted by the Pre-Class Period Fires as evidenced by the statements of multiple CWs and by uncontested fire department reports. *Id*. *See also* ER283. Yet, the District Court erroneously asserted that "Plaintiffs concede that the statement is true but assert it was misleading." (ER15). The District Court also observed "the statement explicitly referred to production batteries" and thereafter dismissed on the flawed theory that the Model S battery was changed after the Pre-Class Period Fires

---

[7] Moreover, as discussed in §VI.D. *infra*, statements by *multiple* additional CWs, which Plaintiffs would have included in an amended pleading, establish quite clearly that the battery was *not* changed between the Pre-Class Period Fires and beginning of Model S deliveries five months later.

(which fails for reasons discussed in §VI.A.2.a., *supra*). *Id.* The District Court's observation as to the limitation to "production" batteries is true for the ***second sentence*** quoted above, which the SAC nevertheless pleads was misleading (see ER382¶119), but it is facially untrue as regards the first sentence. Thus, at least as regards the District Court's dismissal of the §10(b) claim arising from *the first sentence* quoted above, its reasoning wholly lacks merit. Undeniably, that sentence was false when uttered.

Second, the SAC based its §10(b) claim on this August 20, 2013 statement: "***Throughout all our crash tests…never once has there been a fire***." (ER386¶130). The SAC alleged that it was false and misleading because Tesla's batteries caught fire numerous times before the Class Period, including during Tesla's own crash testing (ER386¶131) which was done on a fully installed Model S battery pack on December 19, 2011. (ER372-374¶¶91-94). Indeed, the statement is directly refuted by the accounts of multiple CWs and by a fire department report terming the Pre-Class Period fire on December 19, 2011 a "***crash fire test on a veh[icle]***" that spun out of control due to "***failure of equipment***," thereby requiring 23 first responders from nine units to extinguish. (ER373¶¶92-93; ER432-439[SAC Exh. 1]). Plaintiffs argued to the District Court that this statement was false (*see* ER283-284) and that Defendants had waived any challenge to the fire department report (ER280). Yet, after referencing this statement, the District Court ***entirely failed to substantively***

*address Plaintiffs' arguments* and gave just one irrelevant reason to support its dismissal ruling: that the statement predated the three fires that occurred later during the Class Period. *See* ER17. That fact, while true, does nothing to undercut the SAC's allegations and Plaintiffs' arguments.

Third, the SAC based its §10(b) claim on Tesla's statements on October 3, 2013 regarding the Washington Model S fire: "*[T]his is the first fire*" and "*This is the first known fire caused by a Model S battery*." (ER393¶142; ER307-309). The SAC alleged these were false and misleading because Model S batteries caught fire numerous times before the Class Period, as evidenced by the multiple CW statements and fire department reports detailing the Pre-Class Period Fires. (ER393¶143). The District Court's dismissal ruling regarding the October 3, 2013 statements was based entirely on its same flawed conclusion that the Model S "battery" changed between the time of the Pre-Class Period Fires (in September/October 2011 through January 2012) and deliveries of production Model S vehicles to consumers five months later (in June 2012). (ER17). Thus, this ruling should also be reversed, for the same reasons set forth in §VI.A.2.a. *supra*. Moreover, even assuming, *arguendo*, that Tesla made certain as-yet-undescribed changes to the battery pack before Model S deliveries began months after the Pre-Class Period Fires, Defendants' statements regarding the non-existence of previous fires nevertheless remain false.

40

For all these reasons, the District Court's rulings should be reversed.

### 3. Defendants' Omissions Regarding The Model S Fire In Mexico Violated §10(b).

The SAC's §10(b) claim is also based on Musk's statements on October 22, 2013 and October 24, 2013, during which he discussed the first Model S fire during the Class Period, which had occurred in Washington on October 2, 2013, without disclosing that a *second* Model S fire had occurred during the Class Period, unbeknownst to investors, in Mexico on October 18, 2013 (ER398¶¶156-157; ER399-400¶160, ER401¶164). Musk's statements were intended to assuage the markets, downplayed the significance of the Washington fire, and touted the Model S's safety profile. (*Id.*). He even stated, when asked why the Chairman of Volkswagen had expressed shock at the Tesla fire in Washington, "VW has thousands of car fires every year… So I'm not sure why he'd be startled by *one* in an electric car" (ER191-192[Transcript]).

The SAC conclusively demonstrates Defendants' knowledge of the Mexico crash and fire *before* Musk spoke. Citing statements by a Tesla spokesperson, by two CWs (one a former Tesla service technician and the other the buyer of the Model S that was destroyed in the Mexico fire), and by Musk himself, the SAC establishes that Defendants knew about the Mexico crash and fire immediately (via electronic signals automatically transmitted by the car's computer to Tesla), Tesla had an

investigation team on-site the next day, and Tesla concluded its on-site investigation in two days (ER403-404¶¶167-171).

On these facts, under binding case law, Musk's choice to discuss the first Model S Class Period fire (including his comment about the "one" fire in a Model S electric car) gave rise to his duty to not omit disclosure of facts (the occurrence of a second Class Period Model S fire in Mexico just days before) necessary to make his remarks not misleading. *See Matrixx*, 131 S. Ct. at 1318-1323; *Berson*, 527 F.3d at 987; *Brody*, 280 F.3d at 1006; *Hanon*, 976 F.2d at 504. Plaintiffs cited this case law to the District Court in their MTD Opposition (ER288) and during the MTD Hearing (ER246-247).

However, at oral argument (ER246-247) and in its Order (ER19-20), the District Court utterly ***disregarded*** this binding case law. It did so consciously – when Plaintiffs' counsel highlighted these cases during the MTD Hearing, the District Court brushed them aside (and then failed to address them in its Order):

> Plaintiffs' Counsel: Under *Berson*, when [Musk] chooses to speak, he's bound to do so in a manner –
>
> District Court: I'm well aware of that. And everybody in this courtroom is well aware of that - - and well aware of my attitude towards that.

(*See* ER246-247). The District Court never explained its "attitude" – but whatever it is, it does not trump this Court's binding precedent.

42

Compounding its error, the District Court drew an erroneous conclusion, not supported by the facts, that the market was not misled by Musk's omissions (*see* ER20-21) ("Plaintiffs fail to plead with particularity any reasons supporting an inference that Musk's answers to questions about the Washington fire misled investors about the Mexico fire."). This ruling ***ignored*** the SAC's well-pled allegations that the markets did not know about the Mexico Model S fire until October 28, 2013, when it was widely reported in the media, causing a $7.32 (4.3%) drop in Tesla's stock on heavy volume (ER401-403¶¶165-167). Significantly, Defendants did not challenge loss causation regarding this alleged corrective event (ER310-343), a waiver which Plaintiffs highlighted to the District Court (ER279). *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3. The District Court's disregard of these allegations was conscious – Plaintiffs highlighted them not only in their MTD Opposition (*see* ER287-288), but also at oral argument, where the District Court reacted dismissively:

> [Discussion of the Mexico non-disclosure]
>
> District Court:       To   which   I   say,   "So   what?"
>
> Plaintiffs' Counsel:  Well the market thought differently, because when the---
>
> District Court:  The market.  The market.  I know about the market.

* * *

> Plaintiffs' Counsel: … The Washington fire shaved 10 percent off Tesla's stock price; 10 percent over two days. He knows that there's another fire that's occurred. Now, in his mind, he's saying, "Well, [the Mexico fire] is very different  You know, I'll just keep one in the vest pocket. It then gets disclosed after his time talking, and another four-and-a-half percent comes off.

(ER244-247).

The District Court also committed reversible error in manufacturing, from whole cloth, a truth-on-the-market defense *that was not raised by Defendants*. To do so, it improperly viewed the facts in the light most favorable to *Defendants*, and misconstrued some of them altogether. Specifically, the District Court pointed to an obscure Mexican news article, completely in Spanish and devoid of the phrase "Model S," that published a short report of the Mexico crash with photos and a cell phone video that were *later* picked up by the global press on October 28, 2013 (the date of the alleged corrective disclosure). *See* ER20-21.[8] It also cited the view count of that video as of *October 29, 2013* – the day *after* the SAC pleads that the Mexico fire was widely reported – to draw an illogical inference that the Mexico fire was

---

[8]  The District Court stated, "A fiery crash on a public street is not secret insider knowledge." ER20. Yet, in so ruling, the District Court erroneously made findings of *fact* that are not supported by even the article it cited in support, which, in Spanish, describes the crash as occurring in the "madrugada" (early morning hours), contains photographs of the car on deserted streets in the dark of night, and states that the police and firefighters took control of the car "minutos" (minutes) after the crash occurred. *See* ER20 at n.1 (containing link to full article). In every respect, it had the look and feel of a local news piece.

44

known to the market *five to seven days earlier*, when Musk spoke on October 22 and 24, 2013. *Id.*[9] This distorted view of the facts is contradicted by the SAC's allegations, including the stock price decline on October 28, 2013 discussed *supra*. Yet, the District Court relied on these erroneous conclusions to conjure up, *sua sponte*, a truth-on-the-market defense that it employed to dismiss the §10(b) claim as based on Musk's failure to disclose the Mexico fire. *Id.*

However, such a defense is inappropriate for resolution at this stage. *See, e.g., Asher*, 377 F.3d at 734 ("A 'truth-on-the-market' defense is available in principle, … but not at the pleading stage."); *Ganino*, 228 F.3d at 167 ("The truth-on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismissing a §10(b) complaint…."); *c.f., Provenz*, 102 F.3d at 1492-1493 (addressing truth-on-the-market defense on summary judgment). Even if such a defense could be validly stated at this juncture, the District Court improperly failed to acknowledge, discuss or apply the stringent standards for such a defense, on which **Defendants** bear the "heavy burden" (*see, e.g., Provenz*, 102 F.3d at 1493).[10] *See*

---

[9] Literally every one of those video views could have been registered on October 29, 2013 itself. In any event, the most plausible inference is that the vast majority of them occurred *after* the global press reported the Mexican fire on October 28, 2013.

[10] Specifically:

[B]efore the "truth-on-the-market" doctrine can be applied the defendants must prove that the information that was withheld or misrepresented was "transmitted to the public with a degree of intensity and credibility sufficient

ER20-21. Moreover, Defendants failed altogether to raise such a defense in their MTD, which was not briefed or argued by either party (*see* ER310-343; ER256-300; ER231-255). Defendants have thus waived such an argument at this stage. *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3.

For all these reasons, the District Court's rulings should be reversed.

### 4. Defendants' Misrepresentations As To The Lack Of A Need For Or Possibility Of A Model S Recall Violated §10(b).

The SAC's §10(b) claim is further based on several interviews Defendant Musk gave on November 12, 2013, in which he continued to tout the Model S's safety while downplaying the need for a recall (ER410-412 ¶¶181-186), an outcome that Tesla desperately wanted to avoid given their three prior recalls (ER360-361¶¶54-55). Musk said, *inter alia*: (i) "***If we thought that a recall was warranted, we would do it immediately***" (ER411¶183); (ii) ***there was no need for a Model S***

---

to effectively counterbalance any misleading impression created by insider's one-sided representations."

The defendants bear a heavy burden of proof. Summary judgment is proper only if they show that "no rational jury could find" that the market was misled. If the "evidence presents a sufficient disagreement to require submission to the jury," summary judgment should be denied.

*Provenz*, 102 F.3d at 1492-1493 (internal quotations omitted) (refusing to apply the truth-on-the-market defense at the summary judgment stage).

*recall* (ER411¶182); and finally (iii) "*[T]here definitely won't be a Model S recall*." (ER410¶181).

These statements were revealed to have been false and misleading on November 18, 2013, when a Musk blog post announced that Tesla had issued an over-the-air update to increase the Model S's ground clearance at highway speeds so as to "reduc[e] the chances of underbody impact damage" and was amending its warranty to cover fire damage because, among other reasons, if Tesla was "wrong" about the safety of the Model S as it then-existed then "the right thing is for Tesla to bear the cost rather than the car buyer." (ER412-414 ¶¶187-190). Musk also said (falsely) that Tesla had asked the NHTSA to open an investigation. (ER412-413¶187). This announcement caused a single-day drop in Tesla's stock price of $13.87 per share (10.2%) (ER414¶190).

The NHTSA opened an investigation on November 19, 2013, immediately denying that Tesla had requested it do so (ER414-415¶192), at which point Tesla was engaged in a "hurried" effort to identify additional remedial measures to protect the battery pack (ER415¶193). Tesla later agreed, during a March 10, 2014 meeting with regulators, to provide free retrofitting of Model S cars with stronger undercarriage shielding (ER351¶17; ER415-416¶¶193-197). Together with the software update increasing driving height, these steps directly addressed the risks caused by the Decisions Compromising Safety, which had been highlighted for

47

Defendants by the Pre-Class Period Fires and which publicly manifested in the Model S fires during the Class Period, and were tantamount to a Model S recall (ER378¶107; ER415¶194). Only *after* they were implemented did NHTSA close its investigation, clarifying that doing so "does *not* constitute a finding by NHTSA that a safety-related defect does not exist...." (ER416-417¶¶198-200; ER306[ODI Report]) (emphasis added).

Defendants' MTD failed to challenge the actionability of Musk's November 12, 2013 statements regarding the lack of a need for a Model S recall (*see* ER310-343), and Plaintiffs highlighted this waiver in their MTD Opposition (ER279, ER288). Defendants also failed to challenge loss causation regarding the November 18, 2013 corrective disclosure (ER310-343), which waiver Plaintiffs also highlighted (ER279). *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3.

The District Court improperly ignored Plaintiffs' arguments and chose to evaluate the sufficiency of Musk's statements. (ER21). In doing so, it failed to assess whether his statements were ***misleading*** when made. *Id.* Instead, without any discussion of the applicable pleading standard, it held that Tesla's software upgrade lifting the Model S driving height (less than *one week* after Musk spoke) and its retrofitting of Model S cars with stronger undercarriage shielding did not render his statements ***false*** and dismissed the §10(b) claim. *Id.* In doing so, the

48

District Court misapplied the standard for a §10(b) claim, pursuant to which such claim can be based upon *misleading* statements (*see, e.g., Zucco*, 552 F.3d at 990-991; 15 U.S.C. §78u-4(b)(1)); ignored the SAC's allegation of a huge drop in Tesla's stock price on November 18, 2013 (ER414¶190); and made an improper and erroneous finding of fact that Tesla's actions were "not 'tantamount to a recall'" (ER21) despite a public notification, a company-issued software update to avoid undercarriage strikes, an extension of the warranty policy to cover fires, and the free retrofitting of vehicles with increased shielding against undercarriage strikes during return service appointments.

For these reasons, the District Court's ruling should be reversed.[11]

## B.    The SAC Adequately Pled Defendants' Scienter.

The SAC extensively pled the bases for Defendants' scienter, based on both their actual knowledge and, at minimum, their recklessness (*see, e.g.,* ER346¶3; ER349¶10; ER351¶15; ER357¶45; ER367-378¶¶74-107; ER403-404¶¶167-171; ER421-422¶¶213-215).   The Pre-Class Period Fires, several of which involved significant first responder presences to extinguish, occurred at Tesla's ***headquarters*** or at its ***sole factory*** (ER372-375¶¶88-96).  Defendant Musk dictated the 300 MPC range requirement (ER348-349¶9; (ER369-370¶81) and thereafter ***personally***

---

[11]   As discussed in §VI.D. *infra*, the allegation that Defendants' actions were tantamount to a recall is strongly corroborated by other evidence that Plaintiffs would include in a future amended complaint.

oversaw work by Tesla's engineers to meet it (*e.g.,* ER370¶82), including regular meetings and discussions with engineers regarding the tradeoff between safety and other engineering considerations (ER371¶86), which led to the Decisions Compromising Safety (ER376-378¶¶101-106). Defendant Musk himself also either made most the alleged misstatements at issue (*e.g.,* ER386¶130; ER394-396¶¶145-148; ER398¶¶156-157; ER399-400¶160; ER410-411¶¶181-183) or authorized them (*e.g.,* ER383¶121). The SAC also pled scienter based on motive and opportunity (ER422-425¶¶216-220), including, *inter alia*, Musk's admissions that Defendants "were quite worried" about the "significant drop in demand" after the Class Period Model S fires and that their public statements at issue herein caused consumer fears to subside and sales to "improve[ ] steadily" (ER422¶217).

Simply put, given Musk's total domination over Tesla and his deep involvement in its day-to-day operations, Defendants cannot credibly dispute their actual knowledge of the facts contradicting their allegedly false and misleading statements. Even if they tried, the same allegations, at minimum, clearly establish their recklessness.

Yet, the District Court chose not to reach the clear-cut issue of Defendants' scienter (ER12). This decision was clearly erroneous, given both the clarity of the pleadings, which must be accepted as true and construed in Plaintiffs' favor, and given Defendants' failure to challenge in their MTD opening brief the *recklessness*

50

scienter pleading (ER336-341). Plaintiffs repeatedly highlighted this waiver to the District Court in their MTD Opposition (ER279 (citing *Avila*, 758 F.3d at 1101 (quoting *McKay*, 558 F.3d at 891)); ER293; ER294). On this basis alone, in light of the SAC's allegations, the District Court should have held that scienter was adequately pled. *See, e.g., Desai*, 602 Fed. Appx. at 394 n.2; *Nault*, 593 Fed. Appx. at 723; *Ortiz*, 776 F.3d at 1044 n.3.

Even assuming, *arguendo*, the waiver argument was non-determinative, the SAC's allegations regarding Musk's total control over Tesla and the bases for his actual knowledge went almost entirely undisputed. Defendants only quibbled, briefly, as to the timing of his knowledge regarding the Mexico fire, but the SAC's allegations make clear that it was immediate (ER403-404 ¶¶167-171). Thus, this Court should evaluate the scienter pleading now, in the interest of judicial economy. There is ample precedent for this Court's doing so. For instance:

> Because the district court concluded, incorrectly, that Thompson's Section 10(b) claim had to be dismissed based on Arizona law, the court did not reach the question of whether the complaint satisfies the heightened pleading requirements of the PSLRA. … In the interest of judicial efficiency, we decide that question now rather than remand to the district court. … Thompson's complaint, pleading a violation of Section 10(b), satisfies the heightened standard of the PSLRA.

51

*Thompson*, 547 F.3d at 1063 (reversing the district court's dismissal under Rule 12(b)(6) of plaintiff's §10(b) claim).[12]

For all these reasons, Plaintiffs respectfully request that this Court reach and decide the issue of whether the SAC adequately pleads Defendants' scienter. "To establish scienter, 'a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness."'" *Siracusano*, 585 F.3d at 1180 (quoting, *inter alia*, *Zucco*, 552 F.3d at 991). The allegations are to be viewed holistically. *Id.* "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324. Instead, a complaint survives "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* The SAC's scienter allegations, as set forth *supra*, readily satisfy these standards.

---

[12] *Cf. also Greater Los Angeles Agency of Deafness*, 742 F.3d at 425 ("Although the magistrate judge did not reach the second step of the [anti-SLAPP] analysis, … in the spirit of judicial economy, we exercise our discretion to decide this legal issue in the first instance"); *In re Hoopai*, 581 F.3d at 1095-1096 ("if the matters on remand concern primarily factual issues about which there is no dispute, and the appeal concerns a question of law" then "the policies of judicial efficiency and finality are best served by our resolving the question now") (citations and quotations omitted); *In re Saxman*, 325 F.3d at 1172 (same).

### C.  The SAC Adequately Pled A §20(a) Claim.

The District Court dismissed the SAC's §20(a) claim solely for failure to state a claim under §10(b) (*see* ER22), in language copied, verbatim, from Defendants' MTD (ER341).  As Plaintiffs argued below, Defendants conceded the factual issue of Musk's control over Tesla (ER299).  Thus, if this Court revives the SAC's §10(b) claim, in whole or in part, it should also revive the §20(a) claim.

### D.  The District Court Erred In Denying Leave To Amend.

In the Ninth Circuit, the policy of Fed. R. Civ. P. 15 that leave to amend shall be freely given when justice so requires is "to be applied with extreme liberality." *Eminence Capital*, 316 F.3d at 1051 (quotations omitted).  From among the *Foman* factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052 (citing *Foman*, 371 U.S. at 182).  "[T]he party opposing amendment bears the burden of showing prejudice." *Id.* (quotation omitted). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis original).

Plaintiffs expressly requested leave to amend in their MTD Opposition (ER299).  In seeking dismissal, Defendants made no argument whatsoever regarding any prejudice to them if leave to amend were granted.  (ER342).  The only *Foman*

factor they argued was futility.  *Id.*[13]  The District Court held that amendment would be futile.  (ER22-23).

The District Court's ruling should be reversed.  It was based largely on the erroneous proposition that Plaintiffs failed to adequately plead falsity despite "***twice being granted leave to amend***."  (ER22).  In actuality, Plaintiffs amended once as of ***right***, and thereafter only sought *leave* to amend ***once***, for largely administrative reasons.  (ER615-616[Dkt. Nos. 35, 42]).  Indeed, the 32-page initial complaint, which preceded the PSLRA lead plaintiff process, was filed by original Plaintiff Rahimi (ER575-607).  The second pleading, the 86-page FAC, was the first filed by the court-appointed Lead Plaintiff and set forth nearly all the substance, including all CW allegations and fire department reports, ultimately examined by the Court (ER464-573).  The 87-page SAC (ER344-454) was nearly identical to the FAC (*see* ER26¶11; ER38-125[redline of SAC against FAC]) and was filed primarily to remove original Plaintiff Rahimi, add additional named non-lead plaintiffs, and recaption the litigation.  *See* ER457-463; ER455-456.

---

[13]  Indeed, Defendants could not possibly establish prejudice, or any other *Foman* factor aside from futility, given their own misguided, unsuccessful campaign to seek Fed. R. Civ. P. 11 sanctions against Plaintiffs, which delayed this appeal and extended the litigation before the District Court for several months.  *See* ER617-619[Dkt. Nos. 59-83].

The District Court also justified its dismissal without leave to amend by noting that it had "admonished" Plaintiffs that the amended pleading should comply with the PSLRA. *See* ER22. Yet, that remark was made early in the litigation, at the hearing on the lead plaintiff motion. Both the FAC and the SAC were filed after that remark and, critically, ***before*** Defendants' MTD was briefed and ruled upon by the District Court (*see* ER614-615[Dkt. No. 31]), and thus, both preceded the point where Plaintiffs received any specific ***substantive*** guidance by the District Court regarding their pleading. As this Court has noted:

> Adherence to [Rule 15] principles is especially important in the context of the PSLRA. … The acid test is a motion to dismiss. We need to bear in mind that we are not operating in the world of notice pleadings. In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.

*Eminence Capital*, 316 F.3d at 1052. *Cf. Loos*, 762 F.3d at 883-884 (dismissing without leave to amend only after plaintiffs failed to remedy defects identified in first round of motion to dismiss briefing and court's first motion to dismiss order, as revealed by second motion to dismiss).

Moreover, when Defendants asked the District Court to review and amend its Judgment (ER617[Dkt. No. 59]), prompting both sides to file multiple briefs and to supplement the record with substantial factual submissions (ER617-618[Dkt. Nos. 59, 74-77, 79, 83]), Plaintiffs detailed for the District Court the additional allegations they would include in an amended pleading (ER208-210; ER27, ER36-37; ER126-

55

182).    These   additional   facts,   many   obtained   from   Supplemental   CWs
("SUPPCW"s)   corroborated   some   of   the   SAC's   most   critical   allegations   and
directly addressed some of the District Court's articulated concerns in its MTD
rulings.  For example:

- SUPPCW15,   a   former   Tesla   Shock/Vibration/Durability   Lead
Engineer who did durability tests on batteries and battery modules, said Tesla failed
to do proper durability testing on the first 1,000 Model S cars produced, making
them a safety hazard (ER36¶44).  CW15 participated in mid-2012 meetings where
the battery pack team manager disagreed with the decision to put the battery pack
into production as then-designed, due to structural flaws.  *Id.*  CW15 said Tesla
engineers   were   concerned   the   battery   pack   was   not   strong   enough,   but   were
constrained by drag, weight, and mileage concerns. *Id.*  CW15 said engineers voiced
"strong opposition" and "were concerned about safety," but Defendant Musk
"brushed it off and went into production."  *Id.*  CW 15 recalled a battery fire in late
2011/early 2012 and said all fires were reported to Tesla's Environmental, Health
and Safety Department.  *Id.*  CW15's statements support Plaintiffs' contention that
the battery pack was ***not*** changed following the Pre-Class Period Fires – an issue
upon which the District Court based several of its dismissal rulings.[14]

---

[14]  SUPPCW15's statements also corroborate, *inter alia*, the following allegations in
the   SAC:   ER347-349¶¶6-10,   ER362¶59,   ER366¶¶69-70,   ER367-368¶¶73-78,
ER369-372¶¶81-87,    ER372-374¶¶91-96,    ER376-378¶¶100-106,    ER382¶120,

- SUPPCW16, a former Tesla Associate Manager, Engineering CNC, said that the Model S battery pack design would have been finalized ***six months pre-production***, due to the design steps involved and the fact that it was a structural component, such that any changes would have required resubmission to the NHTSA for new crash testing. (ER36¶45). CW16 strongly corroborates Plaintiffs' argument, based on the statements of the numerous CWs cited in the SAC (*see* discussion in §VI.A.2.a., *supra*), that the Model S battery pack was essentially unchanged between the December 19, 2011 conflagration (ER373-374¶¶92-94) and delivery of Model S cars to customers in June 2012 (ER346¶4). This is critical, because the District Court based its dismissal of the §10(b) claim alleging failure to disclose the Pre-Class Period Fires on its view that the SAC's CW allegations "did not affirmatively allege that the battery design did not change, nor offer any time line relative to the alleged prototype fires." (ER15-16).[15]

- SUPPCW17, a former Tesla Production Associate, stated that after the Class Period fires, Tesla asked owners to come in for system updates or routine

---

ER383-384¶124, ER393-394¶¶132-133, ER394-395¶144, ER396¶150, ER399¶159, ER400¶161, ER412¶186, and ER413-414¶188.

[15] SUPPCW16's statements corroborate the following allegations in the SAC: ER362-364¶¶59-64, ER365-367¶¶67-73, ER370¶83, ER377¶102.

checks, only to have a rework team do *undisclosed* battery pack change-outs, which CW17 saw as Tesla trying to avoid an official recall. (ER36-37¶46).[16]

•    Plaintiffs also identified documents bolstering the SAC's allegations that Tesla's remedial measures were tantamount to a recall.[17] (ER36-37¶46; ER126-182). Chief among them is a scathing Congressional report, dated September 16, 2014, criticizing the NHTSA's chronic, "inexcusable" failure to identify and explore potential car defects, which Congress attributed to NHTSA's staff being "blinded by outdated perceptions" and the "chasm" in its understanding of advanced technologies. (ER171, ER182). Indeed, NHTSA's investigation unit receives just 1% of its budget and has just 50 staff members overseeing 200 million U.S. vehicles, including ones it is ill-equipped to grasp. (ER133-134). Nearly all recalls are done by automakers voluntarily, with some "influenced" by NHTSA defect probes. *Id.*

The District Court considered *all* this information before deciding, correctly, that Plaintiffs' factual allegations had "full evidentiary support" (ER3). However, in **_reaffirming_** its Judgment of dismissal with prejudice as originally entered (ER4), after review of these additional facts, it erroneously failed to recognize that they

---

[16]   SUPPCW17's statements corroborate the following allegations in the SAC: ER351¶17, ER363¶¶61-62, ER397¶153, ER415¶¶193-194.

[17]   These documents corroborate, *inter alia*, ER351¶¶17, ER375¶99, ER378-380¶¶107-111, ER397¶¶152-153, ER400-401¶163, ER409-410¶¶177-178, ER412-414¶¶187-189, and ER414-417¶¶192-200.

disproved its prior conclusion that "the complaint could not be saved by any amendment" (*id.*).

Under circumstances like those at bar, where the District Court expressly found that Plaintiffs' allegations were "proper, nonfrivolous, and factually supported" (ER1) and that Plaintiffs' made "good faith" arguments that Defendants' statements were misleading (ER3), and where the record reflects that Plaintiffs have a "reasonable chance of successfully stating a claim if given another opportunity," a dismissal without leave to amend should be reversed. *Eminence Capital*, 316 F.3d at 1053.

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court hold that the SAC adequately pled claims against the Defendants under Exchange Act §§10(b) and 20(a), that it reverse the District Court's Judgment and Order dismissing the SAC, and that it remand this action to the District Court for further proceedings.  Alternatively, Plaintiffs respectfully request that this Court reverse the District Court's dismissal with prejudice and remand so that they may pursue an amended complaint.

Dated:   August 20, 2015   Respectfully submitted,
            **POMERANTZ LLP**

            ***/s/ Matthew L. Tuccillo***
            Jeremy A. Lieberman
            Matthew L. Tuccillo
            600 Third Avenue
            New York, New York 10016
            Telephone: (212) 661-1100
            Facsimile: (212) 661-8665

            **GLANCY PRONGAY & MURRAY LLP**
            Lionel Z. Glancy
            Robert V. Prongay
            1925 Century Park East, Suite 2100
            Los Angeles, California 90067
            Telephone: (310) 201-9150
            Facsimile: (310) 201-9160

            ***Counsel for Plaintiffs-Appellants***
            ***Kazim Acar, William Landrum, and***
            ***Dr. Pankaj Modi***

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

Pursuant to Fed. R. App. P. 32(a)(7)(C), Plaintiff-Appellants Kazim Acar, William Landrum, and Dr. Pankaj Modi respectfully submit this Certificate of Compliance with Fed. R. App. P. 32(a)(7) to certify that the foregoing brief complies with the type-volume limitation set forth therein, is written in 14-point Times New Roman proportional font, and contains 13,647 words, as measured by the word count of the word-processing system used to prepare the brief.

Dated:   August 20, 2015

Respectfully submitted,
**POMERANTZ LLP**

***/s/ Matthew L. Tuccillo***
Jeremy A. Lieberman
Matthew L. Tuccillo
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

***Counsel for Plaintiffs-Appellants***
***Kazim Acar, William Landrum, and***
***Dr. Pankaj Modi***

61

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellants Kazim Acar, William Landrum, and Dr. Pankaj Modi respectfully state that this case is not related to any appeals pending in this Court.

Dated:   August 20, 2015                         Respectfully submitted,
**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*
Jeremy A. Lieberman
Matthew L. Tuccillo
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiffs-Appellants*
*Kazim Acar, William Landrum, and*
*Dr. Pankaj Modi*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 20, 2015, which will send notification of such filing to the following:

David Siegel
Charles E. Elder
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA  90067-4276
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
***Counsel for the Defendants-Appellees***
***Tesla Motors, Inc. and Elon Musk***


Dated:  August 20, 2015            */s/ Matthew L. Tuccillo*
                                   Matthew L. Tuccillo

                                   ***Counsel for Plaintiffs-Appellants***
                                   ***Kazim Acar, William Landrum,***
                                   ***and Dr. Pankaj Modi***

63

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiffs-Appellants Kazim Acar, William Landrum, and Dr. Pankaj Modi respectfully request that oral argument be allowed in this matter.