**No. 14-56101**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

IN RE ROBERT RADCLIFFE, CHESTER CARTER, MARIA FALCON,
CLIFTON C. SEALE, III, and ARTHUR E. LOVELL,

*Appellants,*

vs.

EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, LLC, TRANS UNION LLC,

*Appellee-Defendants,*

vs.

JOSE HERNANDEZ, ROBERT RANDALL,
BERTRAM ROBISON, KATHRYN PIKE,

_____
*Appellee-Plaintiffs.*
_____

Case No. 05-CV-1070 DOC (MLGx) (Lead Case) and Related Cases Listed on Inside Cover
Honorable David O. Carter, United States District Judge
_____

## APPELLANTS' REPLY BRIEF
_____

**BOIES SCHILLER & FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
30 South Pearl Street
Albany, NY 12207
Telephone: 518.434.0600
Email: *gcarpinello@bsfllp.com*
     *ashaw@bsfllp.com*

**DANIEL WOLF LAW OFFICES**
Daniel Wolf
1220 N. Street, NW, Suite PH2
Washington, DC 20005
Telephone: 202.842.2170
Email: *dan@danielwolflaw.com*

**CHARLES JUNTIKKA &
ASSOCIATES LLP**
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY 10001
Telephone: 212.315.3755
Email: *charles@cjalaw.com*

*Attorneys for Appellants Robert Radcliffe, Chester Carter,
Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell*

## **RELATED CASES**

- *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. 05-cv-1070 (Lead Case)

- *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. 05-cv-7821

- *Terri N. White, et al. v. TransUnion LLC*, Case No. 05-cv-1073

- *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. 06-cv-3924

- *Jose L. Acosta et al. v. TransUnion LLC, et al.*, Case No. 06-cv-5060

- *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. 05-cv-1172

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellants are individuals with no corporate affiliations.

# <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................. 1

Argument ...................................................................................................... 3

I.    Settling Plaintiffs Have Failed to Show That California Law Does
Not Mandate Settling Counsel's Automatic Disqualification ......................... 3

II.   Federal Law Requires Disqualification Under These Facts ............................ 8

III.  Neither *Rodriguez II* Nor *Radcliffe I* Support Settling Plaintiffs' Contention
That California's Automatic Disqualification Rule Is Inapplicable Here ...... 11

IV.  Settling Counsel Cannot Serve as Class Counsel Under Fed. R. Civ. P. 23(g)
After Having Breached Their Duty of Loyalty to the Class ........................... 16

       A.    As Settling Counsel's Breach of Their Duty of Loyalty Has Created
a Continuing Taint That Renders Them Unable to Satisfy Rule 23's
Adequacy Requirement ..................................................................... 16

       B.    Settling Counsel's Failure to Recognize the Existence of the
Conflict Establishes Their Inability to Satisfy Rule 23's
Adequacy Requirement ..................................................................... 20

       C.    Settling Counsel's Breach of Their Fiduciary Duty of Loyalty
to the Class Has Spawned New Conflicts That Render Them
Unable to Satisfy Rule 23's Adequacy Requirement ......................... 23

V.   Settling Plaintiffs Have Failed to Show That the District Court Acted
Within Its Discretion In Finding That Settling Counsel Were the Counsel
Best Able to Represent the Class Under Fed. R. Civ. P. 23(g)(2) ............. 25

Conclusion ................................................................................................. 28

Certification of Compliance Pursuant to Fed. R. App. Proc. 32(a)(7)(C)
and Circuit Rule 32.1 ................................................................................ 30

Statement of Related Cases ........................................................................ 31

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ace Heating & Plumbing Co. v. Crane Co.*,
  453 F.2d 30 (3d Cir. 1971) ...............................................................................21

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)......................................................................27

*Conservatorship of the Pers. & Estate of Gdowski*,
  2011 Cal. App. Unpub., LEXIS 5116 (July 7, 2011) ......................................13

*Creative Montessori Learning Center v. Ashford Gear*,
  662 F.3d 913 (7th Cir. 2011) ............................................................................16

*Del Campo v. Mealing*,
  2011 WL 6176223 (N.D. Cal. Dec. 7, 2011).....................................................6

*Elliot v. Sperry Rand Corp.*,
  680 F.2d 1225 (8th Cir. 1982) ..........................................................................21

*Forte v. Lichtenegger*,
  2011 WL 324274 (Cal.App.Unpub. Feb. 3, 2011) ...........................................23

*In re Agent Orange Products Liability Litigation*,
  800 F.2d 14 (2d Cir. 1986) ......................................................................4, 9, 10

*In re Corn Derivatives Antitrust Litigation*,
  748 F.2d 157 (3d Cir. 1984) ...............................................................................9

*Kullar v. Foot Locker Retail, Inc.*,
  191 Cal.App.4th 1201 (2011) .............................................................................5

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997)..................................................................21

*Martin v. Foster Wheeler Energy Corp.*,
  2008 U.S. Dist. LEXIS 25712 (M.D. Pa. Mar. 31, 2008) ...............................21

*Moreno v. Autozone, Inc.*,
  2007 WL 4287517 (N.D. Cal. Dec. 6, 2007).........................................6, 10, 11

iv

*Pierce v. Lyman,*
    1 Cal.App.4th 1093 (1991) ...............................................................23

*Rodriguez v. Disner (Rodriguez II),*
    688 F.3d 645 (9th Cir. 2012) ...........................................8, 12, 13

*Rodriguez v. West Publishing Co. (Rodriguez I),*
    563 F.3d 948 (9th Cir. 2009) ...................................................8, 16

*Sharp v. Next Entertainment, Inc.*,
    163 Cal.App.4th 410 (2008) .......................................................5, 6

*Smith v. Levine Leichtman Capital Ptrs. Inc.,* No. C 10-00010 JSW
    (N.D. Cal. Mar. 9, 2011) .................................................................6

## Statutes

28 U.S.C. § 1292(b) .............................................................................31

## Rules

California Rule of Professional Conduct 3-310...............................3, 6, 7

Fed. R. App. Proc. 32(A)(7) ...............................................................30

Fed. R. Civ. P. 23(F) ..........................................................................31

Fed. R. Civ. P. 23(G) ................................................................. *passim*

## <u>PRELIMINARY STATEMENT</u>

In their answering papers, Settling Counsel acknowledge that *Radcliffe I* held that they violated California's simultaneous representation rule and they do not dispute the fact that such a violation, in the context of an individual action, would automatically disqualify them from further participation in the action. Yet, Settling Counsel argue that, because this is a class action, this Court, under either California or federal law, should adopt a "flexible" approach and excuse their misconduct.

Settling Counsel are wrong for several reasons. <u>First</u>, California law applies to the disqualification issue and this ethical violation requires automatic disqualification. None of the California cases create an exception for class actions. The cases Settling Counsel cite are cases in which the court was engaged in determining whether ethical violations had occurred at all. Here, that issue has already been determined.

<u>Second</u>, the ethical violations committed here are not some technical rules of conflict of interest that may be incompatible with the nature of class actions. What Settling Counsel did here was to breach their fundamental obligations to the class by corrupting class representatives so that they could no longer perform the important role of assessing the adequacy of the proposed settlement.

1

Third, even if federal law applied, none of the federal cases Settling Counsel cite support their position. The *Agent Orange* progeny of cases all dealt with the question of whether rules relating to conflict of interest should be applied mechanistically in the class action context. This Court does not have to engage in that process because *Radcliffe I* has already determined that Settling Counsel had committed a conflict and that the conflict went to the very heart of Settling Counsel's obligations as class counsel. None of the cases cited by Settling Counsel implicated the fundamental obligation of class counsel to assiduously protect the interests of the class. In this case, Settling Counsel's conflicts struck at the heart of their duty to protect the interests of that class.

Finally, Settling Counsel argue that their ethical transgressions are merely one of many factors to be considered by the court in determining whether they should be reappointed as class counsel. That is clearly wrong. The case law makes it amply clear that the kind of ethical violation Settling Counsel committed makes them inherently incapable of acting as conscientious fiduciaries for the class. And that is true whatever their claimed motivation. This Court already found in *Radcliffe I* that Settling Counsel intentionally used the incentive awards to essentially bribe the class representatives to accept the settlement and to attempt to

2

coerce the objecting representatives to drop their opposition.  Under any standard, that conduct should be disqualifying.[1]

## ARGUMENT

### I.     Settling Plaintiffs Have Failed to Show That California Law Does Not Mandate Settling Counsel's Automatic Disqualification.

The District Court erred in failing to disqualify Settling Counsel because: (1) in *Radcliffe I*, this Court conclusively determined that Settling Counsel had violated Rule 3-310 of the California Rules of Professional Conduct, prohibiting simultaneous representation of clients with conflicting interests; and (2) under California law, which is controlling on the issue, the consequence of violating that prohibition is automatic disqualification.

In their opposition, Settling Plaintiffs acknowledge that *Radcliffe I's* holding that they violated California's simultaneous representation rule constitutes the law of the case.  Further, Settling Plaintiffs do not dispute that, had that violation occurred in the context of an individual action, they would be automatically

---

[1]  In an attempt to deflect attention from their own misconduct, Settling Plaintiffs seek to paint *White* Counsel as the real villains, asserting (at 23) that this appeal is part of their "relentless campaign to . . . take control of this litigation" and variously accusing (at 6-9) the two *White* Counsel who were involved with it from the beginning of yearning for a "big dollar" fee, regarding injunctive relief as "useless," demanding that any settlement "exceed a billion dollars," and sabotaging a settlement opportunity that did not meet that demand to the detriment of the class. *White* Plaintiffs will not waste space responding to these wholly irrelevant allegations about their motives and conduct, which as set forth in *White* Counsel's declarations and the many exhibits in support thereof (RER 31-52), are all demonstrably false and misleading.

disqualified, regardless of any wrongful intent and regardless of whether the conflict had been cured. Rather, Settling Plaintiffs argue that Settling Counsel are not subject to disqualification because the automatic disqualification rule does not apply in class actions.

*White* Plaintiffs explained why this argument is wrong in their opening brief (at 23-28): if anything, the case for automatic disqualification is stronger in the class context than an individual one because of the need for vigilance in protecting the due process rights of absent class members and the correspondingly heightened fiduciary duties that are owed them by class counsel. That is especially so here where the conflict was created by Settling Counsel and was fundamentally at odds with the special obligations those Counsel owed the Class.

Settling Plaintiffs argue (at 17-19), however, that the California courts apply a flexible approach to disqualification in class actions as was supposedly employed by the federal courts in *In re Agent Orange Products Liability Litigation*, 800 F.2d 14, 19 (2d Cir. 1986). Settling Plaintiffs' argument is wrong for two reasons.

First, as set forth in *White* Plaintiffs' opening brief (at 24-25), to the extent that the California courts employ a flexible approach in the class action setting, they do so only for purposes of determining whether counsel have violated the conflict rules *in the first place*. That issue, however, is not before this Court because *Radcliffe I* already conclusively determined that Settling Counsel have

4

violated those rules. No California court has applied a so-called "flexible approach" for purposes of determining whether class counsel who have already been found to have committed a violation of the rule of simultaneous representation should be disqualified.

In *Kullar v. Foot Locker Retail, Inc.*, 191 Cal.App.4th 1201 (2011), for example, class counsel sought disqualification of counsel representing objectors to a class settlement on grounds that those same counsel were simultaneously representing a plaintiff class in another case that included many class members who supported the settlement in *Kullar*. *Id.* at 1204-05. Applying the kind of "pragmatic" approach Settling Plaintiffs urge (at 22) this Court to apply here, the *Kullar* Court found *there was no conflict of interest*, reasoning that:

> The putative class members favoring the proposed *Kullar* settlement may be adverse to objectors in the sense that they disagree as to the adequacy of the settlement and in their desire to have it approved or rejected, but their common interests in the outcome of th[is] litigation are unaffected by that disagreement.

191 Cal App.4th at 1207 (citations omitted).

Similarly, in *Sharp v. Next Entertainment, Inc.*, 163 Cal.App.4th 410 (2008), the defendants sought disqualification of counsel for a putative class based on their simultaneous, and allegedly conflicting, representation of the plaintiff employees in that action and their union in other unrelated matters. *Id.* at 424. Applying a pragmatic approach, the *Sharp* Court held that putative class counsel had not

5

violated Rule 3-310 (C), because, in the class setting, the named plaintiffs act as representatives for the entire class and they provided "their informed written consent." *Id.* at 431-33.

As set forth in *White* Plaintiffs' opening brief (at 24-25), none of the other California cases cited by Settling Plaintiffs involve situations in which a court employed a "flexible" approach in determining whether to disqualify class counsel ***after*** having found that they had, in fact, violated the prohibition on simultaneous representation. On the other hand, all three courts that have actually addressed the issue have squarely held that the California rule mandating the automatic disqualification of counsel who *have* violated that prohibition is fully applicable in the class action context. *White* Plaintiffs Br. at 25-26 (citing *Del Campo v. Mealing*, 2011 WL 6176223, at *2 (N.D. Cal. Dec. 7, 2011), *mandamus denied,* No. 12-70141 (9th Cir. Oct. 21, 2012); *Smith v. Levine Leichtman Capital Ptrs. Inc.,* No. C 10-00010 JSW (N.D. Cal. Mar. 9, 2011) (ER 313-27); *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *20 (N.D. Cal. Dec. 6, 2007)).

Settling Plaintiffs seek (at 28-29) to distinguish *Del Campo*, *Moreno* and *Smith* on the ground that they involved counsel who represented competing classes in two separate actions and "the only way" the conflict could be removed would be for counsel to drop one of those two classes as clients, thereby, prejudicing the other. Thus, according to Settling Plaintiffs (at 29), the conflicts in those two cases

6

continued "indefinitely" – making them "factually distinct" from the supposedly temporary conflict at issue here.

But the California rule is not limited to cases where the attorney cannot drop one client in favor of another. In every case where counsel violates Rule 3-310, the California courts find disqualification whether the conflict can be "cured" or not. And, in any event, in this case, the conflict cannot be cured for the reasons set forth below.

Second, even if a "flexible" approach applied, Settling Counsel would still be disqualified because what Settling Counsel did was not some "technical" violation that arose because of an incompatibility of the conflict rules with the nature of class actions. Rather, what Settling Counsel did struck at the core of a class action attorney's fiduciary duty to the class. They corrupted the ability of the class representatives to act in the best interest of the class by offering them a substantial bounty, but only if they would support the settlement that Settling Counsel wanted – and which gave Settling Counsel a handsome fee not at all commensurate with the recovery that the class would receive. Rubenstein Declarations, SER 1247-1252; 454-476.

## II. Federal Law Requires Disqualification Under These Facts.

As the *White* Plaintiffs pointed out in their opening brief (at 21), California law, not federal law, governs whether Settling Counsel should be disqualified. But

even if federal law of disqualification applied, the result would be the same.

In *Rodriguez v. West Publishing Co. (Rodriguez I)*, 563 F.3d 948,958-59 (9th Cir. 2009), and *Rodriguez v. Disner (Rodriguez II)*, 688 F.3d 645, 655 (9th Cir. 2012), this Court explained that the federal courts draw a vital distinction between "technical" conflicts that arise because the ethical rules are incompatible with the nature of class action and material conflicts that arise because class counsel have violated rules that seriously affect the legitimate interests of the class. There is no question where this case falls.

As *Rodriguez I* and *II* make clear, "technical conflicts" are those that arise from natural divisions among class members and that, by definition, are an unavoidable component of class action litigation:

> We realize that conflicts of interest among class members are not uncommon and arise for many different reasons. However, the conflict of interest inhering in the incentive agreements did not just happen, nor was it a conflict that developed beyond the control or perception of class counsel. It was inserted into the retainer agreement.

563 F.3d at 968; *see also* 688 F.3d at 655. Thus, *Rodriguez I* and *II* distinguish technical conflicts from avoidable conflicts that are a creature of counsel's own "creation" and, therefore, in no sense inherent to the class action device. 563 F.3d at 966; 688 F.3d at 657. That the courts sometimes "might tolerate" the former species of conflict does not by any means suggest that they would ever tolerate the latter. 688 F.3d at 655.

It should, therefore, come as no surprise that each of the cases cited by Settling Plaintiffs in which the courts applied a "flexible" approach in resolving the conflict issue involved technical conflicts of the kind identified in *Rodriguez I* and *II*. That is, they all involved efforts to disqualify counsel who sought either to continue representing: (1) dissident named plaintiffs after having withdrawn from representation of other named plaintiffs who supported a class settlement, *Agent Orange*, 800 F.2d at 17; *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 163 (3d Cir. 1984); or (2) a class and named plaintiffs who supported a class settlement after having withdrawn from representation of other named plaintiffs who opposed the settlement. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999).

In each of these cases, the court was focused on determining whether a technical conflict rose to the level of a disqualifying one and, in each case, the court found that it did not because the conflict did not implicate the fundamental obligation of class counsel to assiduously protect the interests of the class. In this case, by contrast, this Court has already found that there was a conflict; that the conflict was created by counsel; that the conflict struck at the heart of counsel's duty to protect the interest of the class; and that the conflict was so egregious that the Settlement had to be vacated. Judge Haddon, who concurred, went even further, noting that Settling Counsel acted solely in their own interest and were

9

utterly indifferent to the interests of the class. ER 96. Thus, this is decidedly not a case, like *Agent Orange*, where a "technical conflict" arose from the application of traditional conflict rules that were developed "outside the class action context." 800 F.2d at 19. This is a case of a conflict that went to the core of counsel's obligations to the class.

Settling Plaintiffs also assert (at 28) that the conflict presented here was nothing more than a disagreement among plaintiffs and their counsel "about whether a settlement was best for a class." That contention is frivolous.

As *Radcliffe I* makes clear, this case involves a "patent divergence of interests between the named representatives and the class" that Settling Counsel created when they inserted the conditional incentive award provision into the Settlement to bribe class representatives to agree to it. ER 80.

Settling Plaintiffs' federal authorities are distinguishable from the situation that obtains here for another and independent reason. That is, each of them involved counsel who represented parties who supported or opposed a class settlement only ***after*** those counsel had represented plaintiffs taking a contrary position. As one district court correctly observed, that situation is entirely different from one, as here, in which counsel "simultaneously represent[ed] two different sets of clients that actively have adverse interests." *Moreno*, 2007 WL 4287517, at *20. In other words, the cases cited by Settling Plaintiffs "do not intimate, let

10

alone hold, that such **concurrent** representation of adverse interests could be appropriate." *Id.* at *19-20 (emphasis added).

### III. Neither *Rodriguez II* Nor *Radcliffe I* Support Settling Plaintiffs' Contention That California's Automatic Disqualification Rule Is Inapplicable Here.

Settling Plaintiffs argue that both *Rodriguez II* and *Radcliffe I* resolve the issue whether Settling Counsel are disqualified from participating in this matter in their favor. Nothing could be further from the truth.

*Rodriguez II:* Settling Plaintiffs' *Rodriguez II* argument (at 25-27) is based entirely on a footnote on the last page of the opinion, wherein this Court ruled that the district court acted within its discretion in issuing McGuireWoods a *quantum meruit* award of $500,000 for services that firm performed subsequent to the district court's order invalidating the incentive agreements in that case. The affirmance of that award is, however, irrelevant because no party ever sought McGuireWoods' disqualification (RER 7) and, hence, the *Rodriguez I* Court never addressed the issue whether McGuireWoods was or should have been automatically disqualified.

Settling Plaintiffs assert (at 27) that the *Rodriguez II* Court's failure to address that issue does not matter because the conclusion that McGuireWoods could not have been "been subject to 'automatic' disqualification" is implicit in its finding that McGuireWoods' post-conflict services were "properly performed" for

11

fee purposes. Settling Plaintiffs read far too much into the *Rodriguez II* Court's two-sentence footnote addressing the issue of post-conflict fees.

The *Rodriguez II* Court wrote that two-sentence footnote in the context of a 14-page opinion, explaining the basis for its affirmance of the district court's order denying McGuireWoods any fees whatever for the services it rendered during the period of its conflicted representation. 688 F.3d at 660. The *Rodriguez* II Court's footnote affirming the district court's separate order finding that McGuireWoods was entitled to some fees during a much briefer post-conflict period has no bearing on whether Settling Counsel are disqualified here for at least two reasons.

*First*, the standard for determining whether Settling Counsel are disqualified by virtue of their having violated the simultaneous representation rule is not the same as the standard for determining whether McGuireWoods was entitled to *quantum meruit* fees in *Rodriguez II*. As set forth in *White* Plaintiffs' opening brief (at 22-23, 26-27), counsel who violate that rule are automatically disqualified, even in cases in which the conflict has been "cured," both because of the irreparable damage that such representation causes to the attorney-client relationship and the continuing taint that it creates for the legal profession. By contrast, the determination whether McGuireWoods was entitled to attorneys' fee for its services (including the predicate determination whether those services "properly performed") in *Rodriguez II* was a matter within the "equitable discretion" of the

12

district court. As the *Rodriguez II* Court explained, the scope of that discretion was so broad that the district court could have properly concluded that "McGuireWoods was entitled to some attorneys' fees for its efforts" even *during the conflicted period* – that is, a period in which McGuireWoods would indisputably have been disqualified from engaging in such efforts under California law. 688 F.3d at 658. *A fortiori*, the district court in *Rodriquez II* could have properly concluded that McGuireWoods was entitled to some fees on account of services "properly performed" *after the conflicted period*, regardless of whether McGuireWoods should have been disqualified prior to such performance. Accordingly, *Rodriguez II* in no way suggests that Settling Counsel are not automatically disqualified here.

*Second,* Settling Plaintiffs' argument to the contrary also ignores the impact of the fact that none of the parties in that case had ever moved for disqualification. Indeed, in its brief on appeal, McGuireWoods' specifically argued that having "fail[ed] to seek disqualification" and having "receiv[ed] the benefit of the firm's services, the Objectors cannot now seek to avoid payment for those services." RER 7. As that was the sum total of what McGuireWoods had to say on the subject, it is logical to infer that it provides the explanation for why the *Rodriguez II* affirmed that the district court's finding that McGuireWoods' was entitled to a post-conflict fee award. *See, e.g., Conservatorship of the Pers. & Estate of*

13

*Gdowski*, 2011 Cal. App. Unpub. LEXIS 5116, at *23 (July 7, 2011) (rejecting argument that a party who failed to timely seek disqualification of counsel could "still seek forfeiture of his earned fees after the litigation is over"). Accordingly, *Rodriguez II* says nothing about whether McGuireWoods should have been automatically disqualified in that case or whether Settling Counsel are automatically disqualified in this one.

    ***Radcliffe I:*** Settling Plaintiffs' argument that *Radcliffe I* resolved the disqualification issue in Settling Counsel's favor is based on this Court's instruction that the District Court determine on remand "when the conflict arose and if the conflict continues under any future settlement agreement." ER 94. Taking that sentence out of context, Settling Plaintiffs assert (at 17, 27) that it would have "zero import" if this Court did not contemplate the possibility of their continuing to represent the class and advancing a settlement similar to that vacated by the *Radcliffe I* Court.

    As the very next sentence of the *Radcliffe I* opinion makes clear, the reason this Court instructed the District Court to resolve the temporal scope of the conflict was so that it could determine "whether, and to what extent," Settling Counsel might be "entitled to fees under the common-fund doctrine" were a future settlement negotiated by whatever set of counsel was later appointed to represent the class. ER 94. As in *Rodriguez II*, the issue whether Settling Counsel should

14

receive *quantum meruit* fees for any services they rendered to the class is separate and distinct from the question whether they are disqualified from participating in this matter. But inasmuch as the issue of whether Settling Counsel should be disqualified under California law was neither presented to nor considered by the *Radcliffe I* Court, its opinion cannot be construed as having resolved that issue.[2]

The notion that *Radcliffe I* constitutes a holding that disqualification is unwarranted in this case would come as news to Judge Haddon who, in his concurrence, expressed the views that Settling Counsel (1) "orchestrat[ed] and advocat[ed] the disparate incentive award scenario without any concern for, or even recognition of, the obvious conflicts," (2) were "singularly committed to doing whatever was expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees," and (3) "should be disqualified from participation in any fee award ultimately approved by the district court." ER 96. Given those views, it strains credulity to believe that Judge Haddon would have joined the *Radcliffe I* opinion (as he did) if it foreclosed the

---

[2] Settling Plaintiffs assert (at 3) that the disqualification issue "was properly before" the *Radcliffe I* Court "because *White* Counsel had asked the district court for 'automatic' disqualification in their motion for reconsideration." In fact, that motion argued that the existence of a completely different conflict warranted Settling Plaintiffs' automatic disqualification. SER 1912-16. However, *White* Plaintiffs never *moved* for disqualification of Settling Counsel on any basis and, hence, that issue was never before the *Radcliffe I* Court.

15

possibility of Settling Counsel being disqualified from further participation in this matter – either as class counsel or otherwise.

**IV.   Settling Counsel Cannot Serve as Class Counsel Under Fed. R. Civ. P. 23(g) After Having Breached Their Duty of Loyalty to the Class.**

**A.   Settling Counsel's Breach of Their Duty of Loyalty Has Created a Continuing Taint That Renders Them Unable to Satisfy Rule 23's Adequacy Requirement.**

In their opening brief, *White* Plaintiffs explained that counsel who, like Settling Counsel, have breached their duty of loyalty to a class cannot satisfy Rule 23(g)'s adequacy requirement because (1) they are inherently incapable of showing that "they will act as conscientious fiduciaries of the [same] class" in the future (*White* Plfs. Br. at 29 (citing *Creative Montessori Learning Center v. Ashford Gear,* 662 F.3d 913, 918-19 (7th Cir. 2011)); and (2) they cannot continue to represent that class without creating at least an "appearance of divided loyalties" – an appearance that Rule 23 "does not permit." *White* Plfs. Br. at 32 (citing *Rodriguez,* 563 F.3d at 968).

Settling Plaintiffs do not take issue with either proposition. Instead, they fall back on their argument that the conflict at issue here is akin to the kind of technical conflict at issue in *Agent Orange* and, hence, that a "balancing of interests" approach must be applied in determining whether Settling Counsel are adequate under Rule 23(g). That argument is fully addressed in Point II above. Suffice to

16

say here that by expressly conditioning $5,000 incentive awards on support for the Settlement, Settling Counsel corrupted the class representatives and committed an egregious violation of the ethical rules that goes to the heart of the duty of loyalty.

Consequently, everything Settling Counsel have to say about their motivations in concocting the conditional incentive provision and the impact of their conduct on Settling Plaintiffs' decisions is irrelevant and can be safely ignored.[3] However, given that Settling Counsel spill so much ink seeking to cast their betrayal of loyalty in the best possible light, *White* Plaintiffs feel compelled to point out that the representations they make in support of this effort are in direct conflict with the *Radcliffe I* Court's findings, Settling Counsel's prior representations and the uncontroverted record.

For instance, Settling Counsel argue (at 32-37) that their insertion of the conditional incentive provision into the Settlement does not "reflect badly" on their ethics because it was Settling Counsel's understanding of the law that dissident named plaintiffs were not eligible to receive incentive awards. Settling Counsel's

---

[3]  In any event, the *Radcliffe I* Court already decided the issue of Settling Counsel's intent:  it found that they knowingly used the incentive awards in an effort to bribe the objecting class representatives to accept the settlement.  The Court found their protestations of innocence to be utterly disingenuous.  ER 51-52.  Indeed, their claim (RER 2) that the inclusion of the incentive language was inadvertent is itself a demonstration of Settling Counsel's utter lack of candor and unfitness to represent the best interests of the class.  Similarly, their contention that they did not cause harm to the class is ridiculous.  They have caused years of delay to the class by pressing for a settlement that this Court found to be fully corrupted by their own conduct.

argument that they thought they had no choice but *to make the incentive awards conditional* starkly contradicts their prior representations (1) to this Court that "The Settlement Agreement *Does Not Condition* The Possibility Of An Incentive Award On A Plaintiff's Approval Of The Settlement" (RER 5) (emphasis added), and (2) to the District Court that they *"never intended" for them to be "conditioned upon the class representatives' acceptance of the settlement."* RER 2 (emphasis added).

Likewise, Settling Counsel's representation (at 39) that they did not draft or use the conditional incentive provision to pressure named plaintiffs into supporting the Settlement conflicts with both the record and the *Radcliffe I* Court's findings. Settling Counsel base that representation largely on the timing of that provision, asserting (at 39) that its "late addition" into the Settlement on April 14, 2009 demonstrates "how little attention Settling Counsel had focused on incentive awards." In fact, however, the uncontroverted record establishes that (1) within just 24 hours of their having reached agreement with Defendants on a settlement amount, Settling Counsel raised the prospect of being paid $5,000 incentive awards with each of the named plaintiffs (ER 315; SER 1197-1198; SER 1193-1194), and (2) just five days after receiving *White* Plaintiffs' letter declaring their opposition to the Settlement (ER 321-22, 331-35), and just two days before their meeting with two of the *White* Plaintiffs, Settling Counsel inserted into the Settlement what,

18

according to the *Radcliffe I* Court, was a highly unusual, if not unprecedented, provision that "explicitly conditions" named plaintiffs' eligibility for incentive awards on their support for the Settlement. ER 86.

Settling Counsel's contention that this timing somehow supports their claim that they did not intend for that provision to influence anyone's decision also ignores the *Radcliffe I* Court's findings: (1) that during their meeting, they instructed those two *White* Plaintiffs that they didn't "see a way" that they could be paid the $5,000 incentive award if they did not support the Settlement (ER 87),[4] and (2) that several days later they called one of those *White* Plaintiffs to warn him that he would "jeopardize" his $5,000 incentive award if he did not support the Settlement. ER 87.

Settling Plaintiffs' assertion that the conditional incentive provision could not have influenced their decision to support the Settlement is no more credible. That assertion is based on Settling Plaintiffs' representation (at 6, 10, 12) that they made their decision to support the Settlement on February 6, 2009 – over two months before the conditional incentive award provision was added to the

---

[4] Settling Counsel falsely represent (at 33, n.23) that they admitted to making this statement "in a hearing involving the issue of whether Settling Counsel should have applied for an incentive award for the *White* Plaintiffs." There was, in fact, never a hearing on that issue because *White* Plaintiffs never made that contention. The hearing concerned *White* Plaintiffs' argument that the conditional incentive award created a conflict of interest that rendered Settling Counsel inadequate to represent the class.

Settlement on April 14.  Settling Plaintiffs' representation is flatly inconsistent

with the chronology of the settlement negotiations[5] and Settling Plaintiffs' own

declarations attesting that they did not finally approve the Settlement until after

they reviewed it for the first time on April 24.  RER 18, 22, 26, 30; RER 14-15.

### B. Settling Counsel's Failure to Recognize the Existence of the Conflict Establishes Their Inability to Satisfy Rule 23's Adequacy Requirement.

Even if Settling Counsel's past betrayal of loyalty did not by itself preclude

them from satisfying Rule 23(g)'s adequacy requirement, which it does, Settling

Counsel still cannot establish that they will faithfully represent the class going

forward because, to this day, they continue to deny the very existence of the

conflict they created.

Settling Counsel do not dispute that, post-*Radcliffe I*, they have repeatedly

insisted in statements to the press and in their new co-counsel agreement that the

Settlement "presented no conflict of interest" and that they did "nothing wrong."

*White* Plaintiffs Br. at 34.  Indeed, while Settling Counsel accept that this Court

found that their conditional incentive provision created a conflict of interest, they

have never admitted that it did so in fact.

---

[5]  The record establishes that Settling Plaintiffs could not have approved the Settlement on February 6, 2009 because many of the Settlement's key terms, including its allocation provisions, were not negotiated until long after.  SER 1455, 1457; RER 13-15.

To the contrary, Settling Counsel's assertion that they acted with a pure heart and, hence, that they can still be deemed adequate under Rule 23(g) is premised on their representations (at 32-37) that they acted in accordance with their understanding that the law forbade payment of incentive awards to dissident named plaintiffs. According to Settling Counsel, that understanding (if, in fact, it was their understanding) was based on the absence of any pre-*Radcliffe I* case law suggesting that it was improper to make incentive awards conditional on support for a settlement.[6]

Settling Counsel, however, should not have needed to resort to case law to inform themselves that for class counsel to impose that condition would be to create a fundamental disconnect between the interests of their named plaintiff clients and the class. As *Radcliffe I* makes clear, the existence of that conflict was

---

[6] Settling Plaintiffs' assertion that no such case law existed overlooks that in the proceedings below they cited two cases in which named plaintiff objectors were granted incentive awards. *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 324-25 (W.D. Pa. 1997); *Martin v. Foster Wheeler Energy Corp.*, 2008 U.S. Dist. LEXIS 25712, at *23-24 (M.D. Pa. Mar. 31, 2008). Further, both the Third and Eighth Circuits had held that named plaintiffs who became objectors were entitled to be reimbursed for the pre-objection legal fees they had incurred. *Elliot v. Sperry Rand Corp.*, 680 F.2d 1225, 1227 (8th Cir. 1982); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 35 (3d Cir. 1971). While Settling Plaintiffs are correct in stating (at 34) that these cases did not involve incentive awards, there is no logical basis for drawing a distinction between the right of dissident named plaintiffs to reimbursement for their pre-objection services on behalf of the class and their right to reimbursement for their pre-objection legal fees.

21

immediately obvious to this Court, just as it was to *White* Counsel from the moment they learned of the conditional incentive provision.

Far from supporting their argument that they can be trusted to faithfully represent the class, Setting Counsel's failure to recognize the existence of the "patent" and "obvious" conflict (ER 80, 96) they had created – both at the time they crafted the conditional incentive provision and to this day – establishes that they cannot be so trusted. That is the case whether the reason for such failure is what Judge Haddon characterized as Settling Counsel's "singular[] commit[ment]" to their own "self-interest" ER 96, or they are just being obtuse. Whatever the reason, if Settling Counsel do not know an obvious conflict when they see one, a court can have no confidence that they will not walk into another conflict in the future.[7]

### C. Settling Counsel's Breach of Their Fiduciary Duty of Loyalty to the Class Has Spawned New Conflicts That Render Them Unable to Satisfy Rule 23's Adequacy Requirement.

In their opening brief (at 35-37), *White* Plaintiffs showed that Settling Counsel's breach of their fiduciary duties to the class has spawned a continuing

---

[7] Settling Counsel also argue (at 33-34) that it was proper for them to make incentive awards conditional because, prior to *Radcliffe I*, "it was extremely uncommon" for class settlements to provide for incentive awards to dissident named plaintiffs. To the extent that is true, it is only because it was extremely uncommon for named plaintiffs to object to class settlements in the first place. What should have been far more telling to Settling Counsel is that provisions explicitly conditioning incentive awards on support for class settlements were, according to the *Radcliffe I* Court, rare to non-existent. ER 87-88.

conflict by exposing them to civil liability to every class member.

Settling Plaintiffs do not dispute that to the extent their counsel's violation of the rule against simultaneous representation has spawned a new and continuing conflict between them and the class, the existence of that conflict would render Settling Counsel inadequate to represent that class under Rule 23(g). Nor do Settling Plaintiffs dispute that if Settling Counsel are, in fact, civilly liable to the class, their interests and those of the class would be in conflict.

Rather, Settling Plaintiffs argue (at 44) that there is no such continuing conflict because Settling Counsel "believed in good faith" that named plaintiffs who opposed the Settlement were not entitled to incentive awards and, hence, that they cannot be liable for having breached their fiduciary duties. That is a *non-sequitor*.

Wrongful intent is not an element of a fiduciary duty claim. *Forte v. Lichtenegger*, 2011 WL 324274, at *6 (Cal.App.Unpub. Feb. 3, 2011). Rather, the sole elements of that claim are "the existence of a fiduciary relationship, the breach of a duty encompassed by that relationship, and damages caused thereby." *Id.* (citing *Pierce v. Lyman,* 1 Cal.App.4th 1093, 1101-1102 (1991)). Accordingly, Settling Counsel's ability to show that they acted in good faith would not have the slightest bearing upon the ability of class members to show that they violated their fiduciary duty. Indeed, *Radcliffe I* conclusively establishes the existence of that

23

violation and would collaterally estop Settling Counsel from arguing otherwise in any action the class might bring against them.[8]

As set forth in *White* Plaintiffs' opening brief (at 37-38), leaving aside the issue of their civil liability, Settling Counsel's violation of their fiduciary duty of loyalty still gives rise to a continuing conflict between Settling Counsel and the class because it puts their right to be paid attorneys' fees in grave jeopardy.  With their fees in jeopardy, Settling Counsel would have no incentive to rigorously pursue this action.  Settling Plaintiffs' response to this argument is to ignore it. Yet, the fact that at least one judge on the *Radcliffe* panel believed that Settling Counsel "should be disqualified" from receiving any fees (ER 96), and their knowledge that they may well, in fact, be so disqualified, creates a lack of congruity between their interests and those of the class.

**V.    Settling Plaintiffs Have Failed to Show That the District Court Acted Within Its Discretion In Finding That Settling Counsel Were the Counsel Best Able to Represent the Class Under Fed. R. Civ. P. 23(g)(2).**

Settling Plaintiffs do not challenge the District Court's finding that *White* Counsel satisfy Rule 23(g)(1)'s adequacy of representation requirement.  Thus, if this Court holds that Settling Counsel cannot represent the class, it should vacate

---

[8]  Ironically, Settling Plaintiffs assert (at 44, n.29) that a finding by this Court that Settling Counsel are adequate would estop anyone "from litigating the adequacy of counsel elsewhere."  That is, of course, irrelevant.  The issue in any civil action the class might bring against Settling Counsel would be whether they had breached their fiduciary duty prior to *Radcliffe I*'s invalidation of the Settlement, not whether they were adequate to represent the class afterwards.

the District Court's order denying *White* Plaintiffs' motion to have their counsel appointed interim class counsel and order that appointment be made. *White* Plfs. Br. at 39-42.

In the event, however, that this Court finds that Settling Counsel can represent the class – their breach of their fiduciary duty notwithstanding – this Court should still reverse the District Court's interim class counsel order because its determination that Settling Counsel are better able to represent the class than *White* Counsel constitutes a clear abuse of its discretion under Rule 23(g)(2).

Settling Plaintiffs' defense of that determination is based largely on their argument (at 46-49) that the District Court: (1) considered the Rule 23(g)(1)(A) factors; (2) found that two factors (*i.e.*, "experience in handling class actions" and "knowledge of the applicable law") favor Settling Counsel; and (3) concluded that those two factors outweighed any countervailing considerations, thereby making Settling Counsel best able to represent the class.[9]

This defense of the District Court's "best counsel" finding ignores the principal basis for *White* Plaintiffs' challenge to that finding – namely, that it regards this Court's finding that Settling Counsel have betrayed the class by

---

[9] Settling Plaintiffs assert (at 46) that *White* Plaintiffs "grossly misrepresent the record in claiming the district court did not consider the Rule 23(g) factors." In fact, *White* Plaintiffs never stated that it failed to consider those factors.

25

engaging in conflicted representation as just one factor to consider among many, without giving that factor any particular weight. That is a clear error of law.

As set forth in Point II.A above, this Court regards counsel's fiduciary duty of loyalty to the absent class as so sacrosanct that it "does not permit even the appearance of divided loyalty." It, therefore, stands to reason that to the extent counsel who have violated that duty may ever be deemed adequate, which they cannot, they must, at a minimum, bear an extremely heavy burden of establishing that they are the counsel "best able" to represent a class under Rule 23(g)(2).

Nowhere in its opinion does the District Court acknowledge the existence of that burden, which would be slight to non-existent if all that such disloyal counsel had to do to meet it was show that they had more experience with class actions and the applicable law. Indeed, to say experience trumps loyalty would be to give the most experienced counsel a virtual license to put their interests above those of the class, secure in the knowledge that whatever disloyal acts they might commit would not jeopardize their ability to act as class counsel. In reality, however, in order to represent a class, counsel must demonstrate that they are both sufficiently experienced and unflinchingly loyal. Accordingly, the District Court's findings that Rule 23(g)(1)'s experience factors favor Settling Counsel could not possibly justify its conclusion that they are better able to represent the class than *White* Counsel.

And, in fact, the District Court's "best counsel" determination did not turn on those findings. Rather, as its opinion makes clear, that determination turned on its disagreement with *White* Counsel's valuation of this case for settlement purposes. As set forth in *White* Plaintiffs' opening brief (at 44-46), however, the existence of such disagreement is not something a court may properly consider in determining which counsel should be appointed as class counsel – much less a basis upon which to find that the heavy presumption against appointing counsel who have acted disloyally to the class has been overcome.[10]

Settling Plaintiffs' sole response is to assert (at 47) that a judge's assessment of the reasonableness of counsel's settlement positions is a proper consideration under Rule 23(g). Settling Plaintiffs are, however, unable to cite a single case for that proposition. Nor do they explain how judges could base their class counsel appointment decisions on their assessment of counsel's settlement positions without running afoul of the rule that prohibits them from acting in any manner

---

[10]  *White* Plaintiffs' opening brief explains (at 46-48) why each of the litigation "risks" that the District Court identified as supporting its conclusion that *White* Counsel have an unrealistic view of the settlement value of this case has no legal basis. Settling Plaintiffs only response is to assert (at 50) that *White* Counsel have "valued this case in in the billions." If that statement is a reference to *White* Counsel's view of a reasonable settlement, it is completely unsubstantiated in the record (RER 49-50) and, in any event, is entirely irrelevant. If it is a reference to Defendants' actual exposure, then such an estimate is completely consistent with the District Court's own conclusion that  each Defendant's statutory damages exposure is approximately $1 billion. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 389 (C.D. Cal. 2007).

27

that coerces settlement. *White* Plfs. Br. at 44-45. Indeed, as explained in *White* Plaintiffs' opening brief (at 48-50), the District Court judge's willingness to re-appoint counsel who had betrayed the class over counsel who disagreed with his settlement position raises a question as to whether his desire for settlement is so strong as to create at least an appearance of partiality.[11]

## <u>CONCLUSION</u>

This Court should vacate the District Court's orders regarding appointment of class counsel, and issue an order directing that court both to disqualify Settling Counsel and to appoint *White* Counsel as interim class counsel.

---

[11] *White* Plaintiffs' opening brief (at 49-50) lists six highly questionable orders and pronouncements that illustrate the extent of the District Court judge's commitment to settlement, including his order approving the Settlement, which failed to address their argument that the conditional incentive award creates a disabling conflict. Settling Plaintiffs contend otherwise (at 51), but the order speaks for itself and, as Judge Wardlaw stated at oral argument in *Radcliffe I*, the fact is "he didn't address" that issue. SER 637.

Dated:  January 30, 2015      **BOIES, SCHILLER & FLEXNER LLP**
George F. Carpinello
Adam R. Shaw

**DANIEL WOLF LAW OFFICES**
Daniel Wolf

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka

By:   /s/ Daniel Wolf
Daniel Wolf

*Attorneys for Appellants Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell*

29

## CERTIFICATION OF COMPLIANCE PURSUANT TO
## <u>FED. R. APP. PROC. 32(a)(7)(C) AND CIRCUIT RULE 32-1</u>

I certify that this brief complies with the type-volume limitation of Fed. R.

App. Proc. 32(a)(7)(B) because this brief contains 6,944 words, excluding the

parts of the brief exempt by Fed. R. App. Proc. 32(a)(7)(B)(iii).

Dated:  January 30, 2015          **BOIES, SCHILLER & FLEXNER LLP**
George F. Carpinello
Adam R. Shaw

**DANIEL WOLF LAW OFFICES**
Daniel Wolf

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka

By:   /s/ Daniel Wolf
Daniel Wolf

*Attorneys for Appellants Robert Radcliffe, Chester*
*Carter, Maria Falcon, Clifton C. Seale, III, Arnold*
*E. Lovell*

30

## <u>STATEMENT OF RELATED CASES</u>

This case is related to the following cases:

1. *Radcliffe v. Experian Information Solutions, Inc., et al.,* No. 14-80073 (prior petition for immediate appeal under 28 U.S.C. § 1292(b)).

2. *Radcliffe v. United States District Court for the Central District of California (Hernandez, et al.)*, No. 14-71217 (prior petition for mandamus regarding disqualification of counsel).

3. *Radcliffe v. Experian Information Solutions, Inc., et al.,* No. 11-56376 (prior appeal reversing settlement and fee award in this action because of conflicts of interest).

4. *Radcliffe v. United States District Court for the Central District of California (Hernandez et al.),* No. 09-71928 (prior petition for mandamus regarding conflicts of interest in this case).

5. *Radcliffe v. Experian Information Solutions, Inc., et al.,* No. 09-80112 (prior petition for relief under Fed. R. Civ. P. 23(f) in this case).

31