No. 14-15781

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CHINATOWN NEIGHBORHOOD ASSOCIATION, a nonprofit corporation and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT, a political action committee,

Plaintiffs-Appellants,

v.

KAMALA HARRIS, Attorney General of the State of California; *et al*.,

Defendants-Appellees,

THE HUMANE SOCIETY OF THE UNITED STATES; *et al*.,

Intervenors-Defendants-Appellees.

---

On Appeal from the United States District Court
For the Northern District of California
Case No. 12-cv-03759 WHO
The Honorable William H. Orrick, District Judge.

---

REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

Joseph M. Breall
BREALL & BREALL LLP
1550 Bryant Street, Suite 575
San Francisco, California 94103
(415) 345-0545

Counsel for Plaintiffs-Appellants CHINATOWN NEIGHBORHOOD ASSOCIATION and ASIAN AMERICANS FOR POLITICAL ADVANCEMENT.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................... i

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION ................................................................. 1

SUMMARY OF THE ARGUMENT ............................................ 5

ARGUMENT ....................................................................... 7

    I. Defendants Fail To Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Supremacy Clause Claim ........... 7

        A. *Statutory Framework* ................................................... 7

        B. *The Shark Fin Law Conflicts With Federal Laws, Regulations And Plans By Infringing Upon Federal Authority Over Fisheries And Defendants Have Not Shown Otherwise* ..................................................... 9

        C. *The Shark Fin Law Presents An Obstacle To The Achievement Of Objectives Advanced By Federal Laws, Regulations And Plans And Defendants Have Not Shown Otherwise* ....................................... 14

    II. Defendants Fail To Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Equal Protection Clause Claim 18

        A. *The Shark Fin Law Implicates the Doctrine of Proxy Discrimination And Defendants Have Not Shown Otherwise* ....................................... 19

        B. *Plaintiffs Sufficiently Plead Discriminatory Purpose and Defendants Have Not Shown Otherwise* ...................................................... 20

        C. *The District Court Erred In Failing To Apply Strict Scrutiny And Defendants Have Not Shown Otherwise* .......................................... 24

    III. Defendants Fail to Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Commerce Clause Claim ......... 24

        A. *The Shark Fin Law Regulates Extraterritorially In Violation Of The Commerce Clause And Defendants Have Not Shown Otherwise* ................. 24

        B. *The Shark Fin Law Fails The Pike Test And Defendants Have Not Shown Otherwise* ........................................................... 26

    IV. Defendants Make No Substantive Argument Regarding Plaintiffs' § 1983 Claim ............................................................................. 28

    V. Conclusion ............................................................... 29

CERTIFICATE OF COMPLIANCE ........................................... 30

## TABLE OF AUTHORITIES

### CASES

*Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n,* 461 U.S. 375 (1983) --------- 12

*Bateman v. Gardner*, 716 F. Supp. 595 (S.D. Fla.1989), *aff'd* 922 F.2d 847 (11th Cir. 1990) ------------------------------------------------------------------------------- 12

*Batson v. Ky.*, 476 U.S. 79 (1986) ------------------------------------------------------ 20

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ------------------------------------------------------------------------------------------ 27

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) 21, 23

*City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155 (4th Cir. 2002) 11, 14

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ------------------- 7, 17

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) ----------------------- 16

*Gomillion v. Lightfoot*, 364 U.S. 339 (1960) ------------------------------------------ 23

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414 (9th Cir. 2014) ------------------------------------------------------------------------------------- 25, 26

*Healy v. Beer Inst.*, 491 U.S. 324 (1989) ------------------------------------------------ 25

*Loving v. Va.*, 388 U.S. 1 (1967) --------------------------------------------------------- 24

*N.C. Fisheries Ass'n v. Daley*, 27 F. Supp. 2d 650 (E.D. Va. 1998) ---------------- 16

*NRDC v. Nat'l Marine Fisheries Serv.*, 421 F.3d 872 (9th Cir. 2005) -------------- 16

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142 (9th Cir. 2013) ------------------------------------------------------------------------------------ 19, 20, 21

*Pers. Adm'r v. Feeney*, 442 U.S. 256 (1979) ------------------------------------------ 21

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ---------------------------- 26, 27, 28

*Pilot Life Ins. v. Dedeaux*, 481 U.S. 41 (1987) ----------------------------------------- 16

*Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429 (1978)------------------------- 27

*Se. Fisheries Ass'n v. Mosbacher*, 773 F. Supp. 435 (D.D.C. 1991) --------------- 10

*Se. Fisheries Ass'n v. Chiles*, 979 F.2d 1504 (11th Cir. 1992) ------------------ 10, 11

*Starr v. Baca*, 625 F.3d 1202 (9th Cir. 2011)------------------------------------------- 22

*Transcon. Gas Pipe Line Corp. v. State Oil & Gas Bd.*, 474 U.S. 409 (1986) ----- 12

*Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186 (9th Cir. 1990) -------------- 25

*Vietnamese Fishermen Ass'n v. Cal. Dep't. of Fish & Game*, 816 F. Supp. 1468 (N.D. Cal. 1993) ----------------------------------------------------------- 11, 12, 13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) -21, 22, 23

*Washington v. Davis*, 426 U.S. 229 (1976) ------------------------------------- 20, 21

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. XIV, § 1 ("Equal Protection Clause")--------------------- passim
U.S. Const., art. I § 8, cl. 3 ("Commerce Clause")------------------------------ passim
U.S. Const., art. VI, cl. 2 ("Supremacy Clause")-------------------------------- passim

## STATUTES AND REGULATIONS

Magnuson-Stevens Fisheries Management Act ("MSA")-----------------------passim
    16 U.S.C. § 1801(b)(1), (3), (4) ------------------------------------------------- 7
    16 U.S.C. § 1802(33)------------------------------------------------------- 15, 18
    16 U.S.C. § 1811(a) --------------------------------------------------------- 8, 9
    16 U.S.C. § 1851(a)(1), (4), (5) ---------------------------------------------- 8
    16 U.S.C. § 1853(a)-------------------------------------------------------------- 8

16 U.S.C. § 1853(b)(3) ------------------------------------------------------------ 8
16 U.S.C. § 1854(e) -------------------------------------------------------------- 8
16 U.S.C. § 1856(a)(1)-(2) ------------------------------------------------------ 8
16 U.S.C. § 1857(1)(P) ---------------------------------------------------------- 8
50 C.F.R. § 300.180 et seq. ---------------------------------------------------- 14
50 C.F.R. § 600.1203 ----------------------------------------------------------- 14
50 C.F.R. § 600.1204 ----------------------------------------------------------- 14
50 C.F.R. § 660.711 ------------------------------------------------------------ 14
42 U.S.C. § 1983 -------------------------------------------------------- 4, 6, 28, 29
Submerged Lands Act, 43 U.S.C. § 1301 et seq. -------------------------------- 8
Shark Finning Prohibition Act of 2000, Pub. L. 106-557 ----------------------- 8
Shark Conservation Act of 2000, Pub. L. 111-348 ----------------------------- 8
Cal Fish & Game Code § 2021 ------------------------------------------------ 1, 26
Cal Fish & Game Code § 2021.5 ------------------------------------------------ 1

## RULES

Fed. R. Civ. P. 12(b)(6) ---------------------------------------------------------- 6
Ninth Circuit Rule 28-5 ----------------------------------------------------------- 5

## LEGISLATIVE MATERIALS

156 Cong. Reg. H8790 (Dec. 21, 2010) ------------------------------------------ 8
H.R. 5461, 106th Cong. (2000) (enacted) --------------------------------- 2, 3, 17
AB 376 § 1(f), 2000 Leg. (Ca. 2011) ------------------------------------------- 22

## OTHER AUTHORITIES

ENVIRONMENTAL PROTECTION AGENCY, MERCURY STUDY REPORT TO CONGRESS
  (1997), available at http://www.epa.gov/mercury/report.htm ------------------- 2, 22


ENVIRONMENTAL PROTECTION AGENCY, CONSUMPTION ADVICE: JOINT FEDERAL
  ADVISORY FOR MERCURY IN FISH (2004), available at
  http://water.epa.gov/scitech/swguidance/fishshellfish/outreach/factsheet.cfm -- 28

General Counsel's Opinion No. 93, "Supersession and Jurisdictional Operations Under § 306 of the Magnuson Act" issued January 29, 1981 ---------------------- 10

NATIONAL MARINE FISHERIES SERVICE, ATLANTIC SHARK COMMERCIAL FISHERIES UPDATE, http://www.nmfs.noaa.gov/sfa/hms/news/news_list/2014/10/shk_landings_update_102214.html (last visited November 3, 2014) ------------------------------------- 2

NOAA FISHERIES, SHARK MYTHBUSTERS, http://www.nmfs.noaa.gov/stories/2012/08/08_13_12shark_mythbusters.html (last visited November 3, 2014) -------------------------------------------------------- 1

NOAA FISHERIES, A CLOSER LOOK AT SHARK CONSERVATION, http://www.nmfs.noaa.gov/stories/2012/08/08_13_12new_shark_week_splash_page.html (last visited November 6, 2014)--------------------------------- 1, 2, 15, 16

# **INTRODUCTION**

California's law banning the possession, sale, offer for sale, trade and distribution of shark fins, *see* Cal. Fish & Game Code §§ 2021 and 2021.5 ("Shark Fin Law" or "Law"), is an overly restrictive and duplicative statute that was enacted based on questionable reasoning and misapprehension of facts. Plaintiffs-Appellants Chinatown Neighborhood Association and Asian Americans for Political Advancement's ("Plaintiffs") factual responses to the faulty premises on which the Shark Fin Law was enacted and is sustained include the following:

1.  *Premise*: The Shark Fin Law is necessary to protect shark populations because sharks are generally endangered and/or threatened. *Factual Response*: According to the National Oceanic and Atmospheric Association ("NOAA"), the assertion that "[s]harks are an endangered species" is a "MYTH."[1] NOAA states that "[t]here are currently no shark species listed under the Endangered Species Act."[2]

2.  *Premise*: The Shark Fin Law is necessary to ensure the sustainability of shark populations. *Factual Response*: NOAA states that "[f]or nearly two decades

---

[1] NOAA FISHERIES, SHARK MYTHBUSTERS, http://www.nmfs.noaa.gov/stories/2012/08/08_13_12shark_mythbusters.html (last visited November 3, 2014).

[2] NOAA FISHERIES, A CLOSER LOOK AT SHARK CONSERVATION, http://www.nmfs.noaa.gov/stories/2012/08/08_13_12new_shark_week_splash_page.html (last visited November 6, 2014).

the United States has been a leader in managing sustainable shark fisheries and currently has some of the strongest shark management measures worldwide." SHARK CONSERVATION, *supra* note 2. For example, NOAA places stringent restrictions on shark fishing, including imposing strict quotas and specifying season opening and closing dates.[3]

3.  *Premise*: According to private studies, the Shark Fin Law is necessary because tens of millions of sharks are finned every year. *Factual Response*: Shark finning is illegal under federal law. The purpose of the federal Shark Finning Prohibition Act is to "eliminate shark-finning by addressing the problem *comprehensively* at both the national and international levels." H.R. 5461, 106th Cong. (2000) (emphasis added). Shark finning is also illegal under California law and under the laws of U.S. states and foreign jurisdictions. Shark finning does not occur in United States waters and any shark finning that does occur happens in foreign waters. United States fishers do not engage in this inhumane practice and are subject to strict penalties if they do.

4.  *Premise*: The Shark Fin Law is necessary to address public health concerns about the consumption of methylmercury. *Factual Response*: The Environmental

---

[3] *See* NATIONAL MARINE FISHERIES SERVICE, ATLANTIC SHARK COMMERCIAL FISHERIES UPDATE, http://www.nmfs.noaa.gov/sfa/hms/news/news_list/2014/10/shk_landings_update_102214.html (last visited November 3, 2014).

Protection Agency ("EPA") indicated in the Mercury Study Report to Congress (U.S. EPA, 1997) that the typical United States consumer was not in danger of consuming harmful levels of methylmercury from fish and was not advised to limit fish consumption on the basis of mercury content.[4]

5.    *Premise*: The Shark Fin Law will not harm fishers or the fishing industry because fishers may continue to possess detached shark fins.  *Factual Response*: California fishers may possess detached shark fins for their own use but they are banned from all commercial transactions involving these shark fins.  This is contrary to the objective of existing federal law (which allows full use of shark fins) to protect commercial fisheries.  It is also contrary to the stated waste reduction goal of the Shark Finning Prohibition Act, *see* H.R. 5461, 106th Cong., as California fishers must now discard shark fins since they are no longer commercially viable.  Non-California fishers also suffer harm because they may not engage in any shark fin transactions involving California.

6.    *Premise*: The Shark Fin Law does not discriminate against the cultural traditions of Chinese Californians.  *Factual Response*: Because traditional Chinese shark fin soup is the only significant end product for shark fins and the Shark Fin Law was enacted to target the market for shark fins, the Law targets Chinese

---

[4] Environmental Protection Agency, Mercury Study Report to Congress (1997), available at http://www.epa.gov/mercury/report.htm.

Californians. California lawmakers were aware that sharks are already protected under existing federal and state laws but lawmakers nonetheless enacted an overly broad statute to target a Chinese tradition that they considered irrelevant and distasteful. Because lawmakers knew that the Shark Fin Law's stated humanitarian, conservationist and health goals were illusory or already furthered by other laws and regulations, the *real intent* of enacting the Shark Fin Law was to discriminate against Chinese Californians.

In addition to being a duplicative and overly-restrictive statute, Plaintiffs contend that the Shark Fin Law implicates multiple constitutional and statutory concerns. The Law is preempted by federal laws, regulations and policies because it infringes on federal fisheries management authority and stands as an unconstitutional obstacle to federal fisheries objectives. The Shark Fin Law discriminates against Chinese Californians by suppressing the ancient cultural tradition of shark fin soup, violating Plaintiffs' members' constitutional rights to the equal protection of the laws. In practical effect, the Shark Fin Law is an unlawful extraterritorial reach and an unjustified substantial burden on interstate and foreign commerce in violation of the dormant Commerce Clause. The Shark Fin Law also deprives Plaintiffs' members of their rights, privileges and immunities under 42 U.S.C. § 1983.

Although Plaintiffs plead adequate adequate allegations to support their constitutional and statutory claims in their First Amended Complaint ("FAC"), the United States District Court, Northern District of California ("district court") failed to draw all reasonable inferences in favor of Plaintiffs, applied an inappropriately stringent legal standard and erroneously dismissed Plaintiffs' claims. In arguing in support of the district court's decision, Defendants-Appellees and Intervenors-Defendants-Appellees[5] mischaracterize Plaintiffs' positions and misinterpret the law as applied to the issues raised in this appeal. When construed in the light most favorable to Plaintiffs, Plaintiffs' constitutional and statutory claims are sufficient to survive Defendants' motions to dismiss. This Court should reverse the district court's ruling.

## SUMMARY OF THE ARGUMENT

The district court committed reversible error in dismissing with prejudice Plaintiffs' claims of constitutional and statutory violations that result from the

---

[5] Defendants-Appellees are Kamala Harris, Attorney General of the State of California and Charles H. Bonham, Director, California Department of Fish and Wildlife (collectively, "Government Defendants") and Intervenors-Defendants-Appellees are the Humane Society of the United States, the Asian Pacific American Ocean Harmony Alliance and the Monterey Bay Aquarium Foundation (collectively, "Intervenors-Defendants" and collectively with Government Defendants, "Defendants"). Although Government Defendants and Intervenors-Defendants filed separate answering briefs, pursuant to Ninth Circuit Rule 28-5, Plaintiffs file this single reply and address Defendants' arguments collectively without formal distinction unless noted otherwise.

Shark Fin Law. In their answering briefs before this Court, Defendants have failed to make a colorable showing to the contrary. Generally, Defendants have not refuted Plaintiffs' argument that the district court improperly set the bar too high for pleading the allegations in the FAC. Nor have Defendants adequately rebutted Plaintiffs' specific claims that the Shark Fin Law is 1) is preempted by federal laws, regulations and plans, including, but not limited to, the Magnuson-Stevens Fisheries Conservation and Management Act ("MSA"), and violates U.S. Const., art. VI, cl. 2 ("Supremacy Clause"); 2) violates Plaintiffs' members' rights under U.S. Const., amend. XIV, § 1 ("Equal Protection Clause"); 3) regulates commerce extraterritorially and places a burden on interstate and foreign commerce that outweighs the Shark Fin Law's putative benefits in violation of U.S. Const., art. I § 8, cl. 3 ("Commerce Clause") and; 4) deprives Plaintiffs' members of their rights, privileges, and immunities in violation of 42 U.S.C. § 1983 ("§ 1983").

The FAC adequately states claims upon which relief may be granted to survive Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court erroneously dismissed Plaintiffs' constitutional and statutory claims. Defendants have not raised sufficient arguments to discredit Plaintiffs' valid contentions in favor of affirmation of the district court's decision to dismiss with prejudice. The district court's decision dismissing the claims alleged in the FAC should be reversed.

6

## ARGUMENT

## I. Defendants Fail To Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Supremacy Clause Claim

In the FAC, Plaintiffs sufficiently plead that the Shark Fin Law violates the Supremacy Clause, and the adequacy of Plaintiffs' allegations is not refuted by Defendants' contentions to the contrary. In their answering briefs, Defendants assert multiple specious arguments to circumvent the fact that the Shark Fin Law is preempted by federal law, regulations and plans, while mischaracterizing Plaintiffs' conflict preemption claims and allegations.[6]

### A. *Statutory Framework*

As detailed in the Opening Brief of Plaintiffs-Appellants ("Opening Brief" or "Open. Br."), Congress enacted the MSA to "conserve and manage . . . fishery resources," "promote domestic commercial and recreational fishing under sound conservation and management principles," and "achieve and maintain, on a continuing basis, the optimum yield from each fishery." 16 U.S.C. § 1801(b)(1), (3), (4). Federal Fishery Management Plans ("FMPs") "prevent overfishing while

---

[6] Plaintiffs decline to respond to Government-Defendants' arguments regarding field preemption, Answering Brief of [Government] Defendants-Appellees ("Gov. Br.") 18-19, because Plaintiffs are not raising a claim of field preemption on appeal to this Court. The same is true for Government-Defendants' arguments regarding impossibility. *See* Gov. Br. 29-30. Plaintiffs do not contend that it is physically impossible to comply with both federal law and the Shark Fin Law. Plaintiffs *do* argue that the ability to comply with both state and federal law does not defeat a valid preemption claim. *C.f. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry," minimize adverse economic impacts on fishing communities, consider efficiency in the utilization of fishery resources, and comply with other substantive and procedural requirements. *See* 16 U.S.C. § 1851(a)(1), (4), (5) (National Standards); *id.* § 1853(a) (Plan Required Provisions); *id.* § 1854(e) (Rebuilding Overfished Fisheries).

The United States manages fisheries and fisheries resources within the EEZ. 16 U.S.C. § 1811(a). Fishing in the EEZ is thus subject to strict federal regulation. The MSA gives the federal government authority to regulate not only the harvesting of fish, but also possession, landing, and sale of fish catch. *See id.* § 1853(b)(3). States generally have authority over fishing within their boundaries, which for most states extend three miles seaward of the coastline. *Id.* § 1856(a)(1)-(2); *see also* Submerged Lands Act, 43 U.S.C. §1301 et seq.

The MSA, as amended by the Shark Finning Prohibition Act of 2000, Pub. L. 106-557, and the Shark Conservation Act of 2010, Pub. L. 111-348 (collectively, the "Finning Prohibition Act") prohibits removal, possession, landing and transfer of detached shark fins. 16 U.S.C. § 1857(1)(P). The Finning Prohibition Act thereby seeks to "end the wasteful and abusive practice of shark finning." 156 Cong. Reg. H8790 (Dec. 21, 2010) (Statement of Rep. Bordallo). The federal Finning Prohibition Act does not prohibit the possession, sale, or

distribution of a shark fin from a shark landed in compliance with federal law.

**B.** ***The Shark Fin Law Conflicts With Federal Laws, Regulations And Plans By Infringing Upon Federal Authority Over Fisheries And Defendants Have Not Shown Otherwise***

While acknowledging that "Congress claimed 'sovereign rights and exclusive fishery management authority over all fish' located within the EEZ, *see* 16 U.S.C. §1811(a)," Gov. Br. 23-24, Defendants gloss over Plaintiffs' claim that the Shark Fin Law infringes upon federal regulatory authority over EEZ fisheries and fisheries resources. Despite the fact that the Shark Fin Law directly controls the right to possess, sell, trade and distribute a federal fisheries resource, Government-Defendants boldly assert that "this is not a matter of federal concern." Gov. Br. 24.

Defendants make the unsupported claim that federal law is not concerned with the fate of EEZ fisheries resources, including shark fins, once a fisher has caught and landed the fisher's catch. After landing (according to Defendants), federal law turns a blind eye as to whether the fisheries product is at all commercially viable and gives states free reign to impose statutorily regulations. *See* Gov. Br. 23-29; Response Brief of Intervenors-Defendants-Appellees ("Int. Br.") 17-19. In making this argument, Defendants take a shortsighted and oversimplified view of federal fisheries laws and policies. Asserting that the federal government must relinquish control over federal fishing industries the

9

moment that a fisher lands a fisheries product is nonsensical, particularly when a state law such as the Shark Fin law is, in effect, is placing an indirect restriction on a federal EEZ fishery. *See Se. Fisheries Ass'n v. Mosbacher*, 773 F. Supp. 435, 440 n. 11 (D.D.C. 1991) (federal law supersedes conflicting direct or indirect state regulation of EEZ fishing) (citing General Counsel's Opinion No. 93, "Supersession and Jurisdictional Operations Under § 306 of the Magnuson Act" issued January 29, 1981)).

Defendants also attempt to distinguish Plaintiffs' federal preemption cases on cursory arguments regarding perceived differences as to the nature and effect of the challenged state restrictions. While it is true that *Se. Fisheries Ass'n v. Chiles,* 979 F.2d 1504 (11th Cir. 1992), pertained to port regulations for mackerel, this decision does not stand for the proposition that states may only regulate fishing within the EEZ as Government-Defendants contend. *See* Gov Br. 26. Indeed, the challenged law in *Chiles* did not regulate conduct within the physical EEZ; instead, similar to the Shark Fin Law, it placed an indirect restriction on EEZ fisheries by regulating what fishers could do with their catch once they had left the EEZ. *Chiles¸* 979 F.2d 1504 (challenged law pertained to landing of fish at Florida port). Nor do Defendants successfully counter the validity of the underlying principle articulated in *Chiles* that commercial conduct pertaining to EEZ fisheries that is

10

permitted by federal fisheries laws, regulations and plans should not be restricted by state law. *Id.*

Defendants' attack on the applicability of *City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155 (4th Cir. 2002), is similarly groundless. *Charleston*'s preemption analysis is not limited to direct conflicts between federal and state law as Defendants assert. *See* Gov. Br. 28. Instead, this case also stands for the broader proposition that a state cannot exercise its authority over state waters - and over the landing and trade of fish at its docks - in order to impose regulations on the fishing industry in federal waters that are not similarly restricted. *Charleston*, 310 F.3d at 175, 177. This is particularly true when there is an FMP in effect and state law acts to obstruct the FMP federal objectives. *See id.* at 177.

Defendants fault Plaintiffs for failing to allege in the FAC the existence of a specific Fisheries Management Plan ("FMP")[7] that requires states to permit the sale of detached shark fins, *see* Gov. Br. 29 n. 8, and further claim that explicit federal authorization of such conduct is necessary to trigger the preemption doctrine. *See* Int. Br. 13. This argument is untenable and has been rejected in lieu of the determination that silence is sufficient to create a conflict between federal and state law. *Vietnamese Fishermen Ass'n v. Cal. Dep't. of Fish & Game*, 816 F.

---

[7] In the FAC, Plaintiffs allege that shark fisheries are managed pursuant to FMPs. ER 049.

11

Supp. 1468, 1475 (N.D. Cal. 1993) (California statute prohibiting the use of gill and trammel nets to take rockfish was preempted in the EEZ by the MSA/an FMP which did not ban such use); *also Bateman v. Gardner*, 716 F. Supp. 595, 598 (S.D. Fla. 1989), *aff'd* 922 F.2d 847 (11th Cir. 1990) (state law banning shrimp harvest preempted where federal law permitted harvesting of shrimp in disputed area). In the instant case, preemption is triggered because federal law, by its silence on the use of legally obtained shark fins, promotes sustainable shark fishing and permits the full commercial use of sharks caught in the EEZ.[8] *C.f. Vietnamese Fishermen*, 816 F. Supp. at 1475 ("Despite the lengthy arguments and the surrounding rhetoric, state law prohibits gill nets and federal law permits gill nets south of 38 degrees N. latitude in federal waters. This conflict justifies preemption.").

---

[8] Defendants mischaracterize Plaintiffs' argument in that Plaintiffs do not assert that the silence of federal law in a vacuum is sufficient to implicate preemption. Instead, Plaintiffs contend that the federal government's silence on the commercial use of shark fins from sharks fished in the EEZ creates a conflict with the Shark Fin Law in light of federal objectives regarding the promotion of commercial fisheries. Because federal fisheries are highly regulated, the absence of federal regulation regarding the commercial use of shark fins is indicative of federal intent to permit such commerce. *See Transcon. Gas Pipe Line Corp. v. State Oil & Gas Bd.*, 474 U.S. 409, 422 (1986) ("'A federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision *to* regulate.'") (emphasis in original) (quoting *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 384 (1983))).

Defendants also misconstrue *Vietnamese Fishermen*, 816 F. Supp. 1468. The *Vietnamese Fishermen* court did not make a preemption determination because compliance with both state and federal law was "a physical impossibility" as Defendants assert. *See* Gov. Br. 28-29. Instead, the court noted that the *Vietnamese Fishermen* plaintiffs could not comply with both state and federal law without forgoing their rights and "that the possibility to comply with a more stringent state standard does not resolve the conflict between state and federal law." *Vietnamese Fishermen*, 816 F. Supp. at 1475. The same reasoning applies to Plaintiffs' argument regarding shark fins as a federal fisheries resource; fishers cannot comply with the Shark Fin Law without giving up their federally permitted right to the full commercial use of fins from sharks fished in the EEZ. The possibility of compliance with the more stringent Shark Fin Law does not resolve the preemption issue. *See id.*

Despite Defendants' mischaracterizations of the case law and attempts to refocus the argument on perceived largely factual differences, the overarching principle strongly supports Plaintiffs' Supremacy Clause challenge: the Shark Fin Law encroaches upon federal regulation of EEZ management of shark fisheries and fisheries resources. Federal law, including, but not limited to the MSA, clearly and

13

explicitly regulates shark fishing.[9]  *See e.g.* 50 C.F.R. §§ 600.1203; 600.1204; 660.711.[10]  Yet the MSA contains no prohibitions on landing, possessing, selling, and distributing fins from legally fished sharks with corresponding carcasses. Thus, federal law makes it *completely lawful* to engage in such activities.  By outlawing the possession and commercial use of shark fins, the Shark Fin Law conflicts with the MSA, to the extent the Law applies to sharks caught in the EEZ, as the MSA allows for possession of shark fins and commercial transactions involving shark fins in all states including California.  Because the Shark Fin Law attempts to regulate federally permissible fishing and commercial activities, California law must be preempted.  *See e.g. Charleston*, 310 F.3d at 175.

**C.  *The Shark Fin Law Presents An Obstacle To The Achievement Of Objectives Advanced By Federal Laws, Regulations And Plans And Defendants Have Not Shown Otherwise***

The Shark Fin Law presents an obstacle to the achievement of federal objectives for EEZ fisheries and Defendants' arguments to the contrary are

---

[9] Federal law also explicitly regulates international trade in shark fins.  *See* 50 C.F.R. § 300.180 et seq. (International Trade Documentation and Tracking Programs for Highly Migratory Species stating in pertinent part, "[f]ish or fish products regulated under this subpart means…shark fins" and "[a]n importer, entering for consumption fish or fish products regulated under this subpart from any ocean area in the United States, or an exporter exporting or re-exporting such product, must possess a valid trade permit issued under this section.").

[10] Listing prohibited shark species and providing incidental landing allowances for sharks caught by unauthorized gear.

14

erroneous. According to Government-Defendants, "plaintiffs have not and cannot

identify a legitimate federal objective that the Shark Fin Prohibition could

theoretically obstruct." Gov. Br. 20. Yet both the FAC and the Opening Brief are

replete with references to the federal objectives of achieving optimum

yield/maximum sustainable yield from a fishery "as reduced by any social,

economic, and ecological factors," 16 U.S.C. § 1802(33); *see also* ER 049; Open.

Br. 3, 10-11, 25, 28, 33, as well as the federal goal of promoting management of

"shark populations to maintain productive and sustainable fisheries." SHARK

CONSERVATION, *supra* note 2; *see also* ER 051; Open. Br. 15, 30. Government-

Defendants even concede that "it is true that one goal of the MSA is to minimize

negative economic effects on commercial fishing." Gov. Br. 21. This is entirely

contradictory to their claim that there are no conceivable federal objectives to

which the Shark Fin Law serves as an impediment.

Hypocritically, Defendants at worst ignore, and at best are quick to

disregard, the MSA's goal of promoting commercial fishing, instead faulting

Plaintiffs for allegedly failing to recognize the MSA's conservation goals.[11]

However, Plaintiffs explicitly identify the MSA's objectives of promoting

conservation and ensuring sustainability. Open. Br. 10, 26. Plaintiffs argue that a

---

[11] Plaintiffs never take the extreme position that federal objectives "equate to a goal of maximizing profits from fishing at all costs" as Intervenors-Defendants contend. *See* Int. Br. 17.

categorical ban on shark fins, that completely disregards whether the fin came from a sustainable fishing source, conflicts with the MSA's objective of balancing the goal of fisheries promotion and yield maximization with sustainability and social and ecological concerns.  It is Defendants who refuse to acknowledge that federal law is not myopic and single-minded as to conservation and sustainability, but instead mandates a balance of multiple interests.  *See N.C. Fisheries Ass'n v. Daley*, 27 F. Supp. 2d 650, 666 (E.D. Va. 1998) (federal law requires a "balancing of conservation interests against the economic rights of commercial fishermen and fishing communities").[12]  As this Court has recognized, federal law's economic and conservation goals are inextricably intertwined.  *C.f. NRDC v. Nat'l Marine Fisheries Serv.*, 421 F.3d 872, 879 (9th Cir. 2005) ("The Act [MSA] sets this [conservation] priority in part because the longer-term economic interests of fishing communities are aligned with the conservation goals set forth in the Act.")

---

[12] Defendants also claim that the singular purpose of federal law pertaining to shark fisheries is to protect shark populations from finning.  *See* Gov. Br. 33-34. While federal law does indeed seek to protect sharks from finning, it cannot be viewed in isolation from the other provisions of the MSA and federal regulations. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (to make preemption determination, courts must look "to 'the provisions of the whole law, and to its object and policy…'") (quoting *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 51 (1987))).  According to NOAA, federal shark fisheries policy seeks to "manage[] shark populations to maintain productive and sustainable fisheries." SHARK CONSERVATION, *supra* note 2.

16

Examining the "purpose and intended effects" of federal law in a preemption analysis, *Crosby*, 530 U.S. at 373, it is clear that the Shark Fin Law presents an obstacle to the federal objective of protecting fisheries while ensuring sustainability. Moreover, Defendants' assertion that the Shark Fin Law is consistent with federal policy goals because it "allows commercial activities involving shark fins that are still attached to whole shark carcasses" is ludicrous. *See* Gov. Br. 49. A paradoxical statute that, in theory, allows the use of the attached shark fin up until the point that an individual must detach the fin to actually use it is not prudent sustainable fishing policy. Instead it is a policy that encourages waste because it criminalizes a fisheries resource as soon as it is converted into a useable form. In practice, fishers end up dumping shark fins because they have no commercial use, but fishers may still fully utilize the remaining parts of the shark, including the meat. The dumping of shark fins is contrary to federal law which promotes the objective of preventing waste of fisheries' resources. *See* H.R. 5461, 106th Cong. (underlying goal of federal anti-finning law is to "eliminate the wasteful and unsportsmanlike practice of shark finning").

Even assuming the existence of federal objectives that are in line with the purported objectives of the Shark Fin Law, consistency in certain regulatory objectives does not save the Law from preemption. As discussed above, *see supra*

pp. 7-8, the MSA requires a consideration of social and economic needs of fishing communities in prescribing measures to achieve optimum yield from each fishery for the U.S. fishing industry on a continuing basis. 16 U.S.C. § 1802(33). Congress chose a circumscribed approach to addressing the practice of shark finning that did not include a total ban on the possession, sale, and trade of fins from sharks that were legally harvested in federal waters. The Shark Fin Law conflicts with this Congressional judgment.

The Shark Fin Law is preempted because it infringes upon federal authority over EEZ fisheries and creates an obstacle to federal fisheries goals. In the FAC, Plaintiffs sufficiently plead their claim that the Shark Fin Law violates the Supremacy Clause and the district court erred in determining otherwise.

## II.   Defendants Fail To Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Equal Protection Clause Claim

Defendants have not refuted Plaintiffs' argument that the district court's decision to dismiss Plaintiffs' Equal Protection claim should be reversed. Construed in the light most favorable to Plaintiffs, Plaintiffs adequately allege in the FAC that: 1) the Shark Fin Law is facially discriminatory; 2) the Shark Fin Law suppresses Chinese ceremonial traditions and has a disparate impact on Chinese Californians; 3) the Shark Fin Law was intended to target Chinese Californians via suppression of their ceremonial traditions; 4) a discriminatory

18

purpose underlay the passage of the Shark Fin Law; and 5) strict judicial scrutiny should apply to evaluate the constitutionality of the Shark Fin Law and the Law fails under this analysis.

### A. *The Shark Fin Law Implicates The Doctrine Of Proxy Discrimination And Defendants Have Not Shown Otherwise*

To counter Plaintiffs' contentions that the Shark Fin Law is unconstitutional because it serves as a proxy for banning a Chinese tradition, Government-Defendants argue that consumption of shark fin soup is not closely associated with Chinese culture. *See* Gov. Br. 38-39. This unsupported conclusion must fail; instead the association between Chinese culture and shark fin soup is undeniable and was even acknowledged by the district court.[13] ER 012. Defendants offer no credible basis to counter the allegations in the FAC that shark fin soup is tied specifically to Chinese culture.

Because shark fin soup is the only end product for shark fins, it is not necessary that the Shark Fin Law "regulate the consumption of shark fin soup" (as opposed to shark fins) for proxy discrimination to apply as Intervenors-Defendants appear to contend. *See* Int. Br. 25. The underlying principle of proxy

---

[13] It is true that not all Chinese Californians consider shark fin soup to be a part of their personal cultural traditions. This does not defeat Plaintiffs' argument that shark fin soup may be a proxy for Chinese national origin because shark fin soup is a tradition that is exclusively tied to Chinese culture. Similarly, not all older people have gray hair, but gray hair is generally linked to older age and may be a proxy for age discrimination. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 (9th Cir. 2013).

discrimination is that it involves "seemingly neutral criteria" that are "closely associated with the disfavored group." *Pac. Shores Props.*, 730 F.3d at 1160. It is also not significant that fishers, as suppliers of shark fins for Chinese shark fin soup, are affected by the Shark Fin Law, *see* Int. Br. 25, since the ultimate outcome of the Law is to suppress a distinctly Chinese cultural tradition. As Intervenors-Defendants point out, California fishers (most of whom do not consume shark fin soup) may continue to possess and use shark fins under the Shark Fin Law, whereas Chinese Californians who want to continue their cultural practices cannot possess and use the exact same fin. *See id.* This unequal treatment is further indication that the Shark Fin Law is a proxy for discriminating against the cultural traditions of Chinese Californians.

In the FAC, Plaintiffs allege sufficient facts supporting their facial discrimination claim and the district court erred in determining that the Shark Fin Law is facially neutral.

## B. *Plaintiffs Sufficiently Plead Discriminatory Purpose And Defendants Have Not Shown Otherwise*

If a totality of the circumstances analysis reveals that a law was enacted based on a discriminatory purpose, strict scrutiny applies to analyze whether the law violates the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 241-42 (1976); *see also Batson v. Ky.*, 476 U.S. 79, 94 (1986). A discriminatory purpose underlay the enactment of the Shark Fin Law. As noted above, *see supra*

p. 19, the discriminatory impact of the Shark Fin Law on Chinese Californians is indisputable and was acknowledged by the district court. ER 012. Not only will the Shark Fin Law eradicate the Chinese ceremonial tradition of consumption of shark fin soup in California, suppressing Chinese culture is, in fact, the Shark Fin Law's only noncommercial prohibitive impact. Because the Shark Fin Law, in effect, dramatically disparately impacts Chinese Californians who practice cultural traditions involving shark fin soup, the Law discriminates against Chinese Californians in violation of the Equal Protection Clause. *See Davis*, 426 U.S. at 242; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *Pers. Adm'r v. Feeney,* 442 U.S. 256, 275 (1979) (impact alone can evidence discrimination); *see also Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 535 (1993) ("[A]part from the text, the effect of law in its real operation is strong evidence of its object.").

Even assuming that the Shark Fin Law's disparate impact is insufficient to merit the application of strict judicial scrutiny, the Court must nonetheless apply this standard because discriminatory intent also clearly underlay the enactment of the Law. *See Davis*, 426 U.S. at 241-42 (disparate impact and discriminatory intent show discriminatory purpose). As noted in the Opening Brief, Plaintiffs plead sufficient evidence of discriminatory intent in accordance with the evidentiary factors articulated in *Arlington Heights*. Open. Br. 40; *Pac. Shores*,

730 F.3d at1158-59 (citing *Arlington Heights*, 429 U.S. at 267-68). This evidence includes the stated purpose of the Shark Fin Law to target the market for shark fins, AB 376 § 1(f), 2000 Leg. (Ca. 2011); ER 051, and the public statements made by the proponents and sponsors of the Law regarding foot binding and regulating Chinatown. ER 051-52. Plaintiffs' allegations are specific; this is not a case of Plaintiffs summarily pleading discriminatory intent as Intervenors-Defendants contend. *See* Int. Br. 29. Moreover, even if the statements of the Law's sponsors and proponents are ultimately determined to be taken "out of context" as Government-Defendants argue, *see* Gov. Br. 42, (and which Plaintiffs in no way concede), the district court nonetheless erroneously failed to comply with the motion to dismiss standard of interpreting this evidence in the light most favorable to Plaintiffs. *See Starr v. Baca*, 625 F.3d 1202, 1216-17 (9th Cir. 2011).

Underlying discriminatory intent is also evident in that the Shark Fin Law was enacted based on a flawed factual foundation, representing a departure from rational lawmaking. *See Arlington Heights*, 429 U.S. at 267. When they passed the Shark Fin Law, legislators knew that shark finning was already illegal and that many species of sharks do not have threatened populations, while overfished species are managed accordingly. EPA findings regarding the limited risk of mercury consumption, MERCURY STUDY REPORT, *supra* note 4, as well as the fact

22

that people may continue to consume other parts of the shark, also render suspect the public health rationale for the Law.

Defendants contend that Plaintiffs may not raise "public policy" issues regarding California lawmakers' decisions in the courts. *See* Int. Br. 2-3. This simplistic argument overlooks the fact that Plaintiffs validly challenge the rationale of the Shark Fin Law on the basis that the legislative enactment of the Law based on myths and misunderstandings[14] evidences intent to discriminate against Chinese Californians. *See Arlington Heights*, 429 U.S. at 267. While federal judicial deference to state government decisions is generally appropriate, there is no insulation for state actions when "used as an instrument for circumventing a federally protected right." *Gomillion*, 364 U.S. at 347-348.

Plaintiffs adequately plead that the Shark Fin Law was motivated by a discriminatory purpose in violation of the Equal Protection Clause. In finding

---

[14] The Shark Fin Law is also highly suspect in an Equal Protection Clause analysis because of both its over-inclusivity (banning the use of fins from sustainably fished sharks) and under-inclusivity (targeting a Chinese ceremonial tradition in the name of conservation and the public health while having no effect on other fish high in mercury or on the use of other parts of the shark). *See Lukumi*, 508 U.S. at 544-45. The Shark Fin Law's over-inclusive and under-inclusive contradictions, which result in the singling out of Chinese Californians, run afoul of the Equal Protection Clause. *See Gomillion v. Lightfoot*, 364 U.S. 339, 346 (1960) (unconstitutional to "single[] out a readily isolated segment of a racial minority for special discriminatory treatment").

otherwise, the district court held Plaintiffs to an unreasonably high standard on motions to dismiss.

### C. *The District Court Erred In Failing To Apply Strict Scrutiny And Defendants Have Not Shown Otherwise*

Plaintiffs adequately plead that the Shark Fin Law discriminates against Chinese Californians, warranting the application of strict judicial scrutiny. *See e.g. Loving v. Va.*, 388 U.S. 1, 11 (1967). As addressed in Plaintiffs' Opening Brief, 47-50, when strict scrutiny is applied, the Shark Fin Law cannot pass constitutional muster. Aside from summarily claiming that the Shark Fin Law "could pass any level of scrutiny," Gov. Br. 44, Defendants do not address or refute Plaintiffs' argument that the Shark Fin Law cannot survive strict scrutiny.

Plaintiffs adequately plead their Equal Protection challenge and the Court should reverse the district court's dismissal of this claim.

## III. **Defendants Fail To Successfully Counter Plaintiffs' Argument That The District Court Erred In Dismissing Plaintiffs' Commerce Clause Claim**

### A. *The Shark Fin Law Regulates Extraterritorially In Violation Of The Commerce Clause And Defendants Have Not Shown Otherwise*

The district court erred in determining that Plaintiffs did not state a claim that the Shark Fin Law violates the Commerce Clause and Defendants have not made a successful showing to the contrary. Specifically, Defendants have failed to refute Plaintiffs' argument that the Shark Fin Law improperly regulates shark fishing and the shark fin trade outside of California's borders. Defendants contend

that a statute only impermissibly regulates extraterritorially if the statute pertains to activity wholly outside of a state's borders. *See* Gov. Br. 51-52 (citing *Healy v. Beer Inst.*, 491 U.S. 324, 337 (1989)). This argument is not well-founded. Instead*,* "[t]he critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." *Healy*, 491 U.S. at 336. As this Court recently held, the Commerce Clause is implicated when "'state law directly affects transactions that take place across state lines *or* entirely outside of the state's borders.'" *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 432 (9th Cir. 2014) (emphasis added) (quoting *Valley Bank of Nev. v. Plus Sys., Inc*., 914 F.2d 1186, 1189-90 (9th Cir. 1990)).

The practical effect of the Shark Fin Law is to directly affect transactions that take place across California state lines, including shark fishing and the sale, trade, and distribution of shark fins. In fact, the Shark Fin Law was supposedly enacted as a means by which to regulate fishing practices and the shark fin trade outside of California's jurisdiction; the concern that outside jurisdictions are not subject to existing state and/or federal laws was the alleged justification for the Law. Yet Defendants now argue that the Shark Fin Law does not regulate extraterritorially. Defendants cannot take the contradictory approach that the Shark Fin Law was expressly enacted for the purpose of restricting out-of-state activities and then claim that it has no such effect.

25

Because the Shark Fin Law's practical effect is to regulate activities occurring outside of California's borders, the Law violates the Commerce Clause. *See Greater L.A. Agency*, 742 F.3d at 432. The district court improperly ignored the Law's extraterritorial reach and erroneously dismissed Plaintiffs' Commerce Clause claim.

### B. *The Shark Fin Law Fails The Pike Test And Defendants Have Not Shown Otherwise*

In the FAC, Plaintiffs sufficiently state their claim that the Shark Fin Law is an unconstitutional restriction on trade under the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), because the Law imposes a substantial burden on interstate commerce and this burden does not outweigh the Law's putative benefits. The plain language of the Shark Fin Law includes a restriction on trade, *see* Cal. Fish & Game Code § 2021, and, contrary to Defendants' mischaracterizations, the FAC includes multiple allegations regarding the Law's substantial burden on commercial transactions involving shark fins. *See* ER 047; 052, 054-55. The *Pike* test does not require the involvement of "an inherently national enterprise" as Defendants contend. *See* Gov. Br. 56. But even assuming that *Pike* did require such an enterprise, the United States fisheries market *is* inherently national, particularly as applied to commercial transactions involving EEZ fisheries resources.

26

Defendants are also inaccurate in their argument that *Pike* requires discrimination against out-of-state commerce. *See* Gov. Br. 56. Discriminatory statutes are generally *per se* invalid restrictions on interstate commerce. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). *Pike* thus exists to guide courts in a Commerce Clause challenge to non-discriminatory statutes.

What the *Pike* test does require is "that the [challenged] regulation impose a substantial burden on the interstate movement of goods." *Raymond Motor Transp., Inc. v. Rice*, 424 U.S. 429 (1978). Construing the allegations in the FAC that the Shark Fin Law unconstitutionally restricts interstate and foreign commerce in the light most favorable to Plaintiffs, Plaintiffs sufficiently allege such a burden.

Because Plaintiffs sufficiently plead the requisite *Pike* burden in the FAC, the district court improperly failed to conduct the *Pike* balancing test and weigh the Shark Fin Law's burden against its putative local benefits. *See Pike*, 397 U.S. at 142. In their Opening Brief, 53-56, Plaintiffs argue that the putative local benefits of the Shark Fin Law are speculative and illusory. However, even assuming that the Law's local benefits are valid, "then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Raymond*, 434 U.S. at 441-42.

27

By making an allowance for fins from sustainably fished sharks, the asserted conservation and humane treatment interests advanced by the Shark Fin Law unquestionably could be promoted with a lesser impact on interstate and foreign commerce. The public health concerns allegedly underlying the Shark Fin Law could also have been addressed in a manner similar to those addressing concerns about other seafood - via warnings from the EPA to potentially susceptible populations.[15] Instead of enacting rational policy mindful of minimizing economic impacts, lawmakers passed the Shark Fin Law, an overly burdensome statute that cannot pass the *Pike* test. The Court should reverse the district court's dismissal of Plaintiffs' Commerce Clause claim.

## IV.   Defendants Make No Substantive Argument Regarding Plaintiffs' § 1983 Claim

Defendants disregard Plaintiffs' § 1983 claim, making the cursory contention that they need not address this claim because Plaintiffs do not adequately plead underlying constitutional violations. *See* Gov. Br. 58-59; Int. Br. 10 n. 2. Plaintiffs reiterate their argument articulated in the Opening Brief, 56-57, that, because Plaintiffs sufficiently plead that Government Defendants under color of state law enforce the Shark Fin Law to deprive Plaintiffs of their constitutional

---

[15] *See* ENVIRONMENTAL PROTECTION AGENCY, CONSUMPTION ADVICE: JOINT FEDERAL ADVISORY FOR MERCURY IN FISH (2004), available at http://water.epa.gov/scitech/swguidance/fishshellfish/outreach/factsheet.cfm

rights, the district court erred in dismissing Plaintiffs' claim that the Law violates § 1983.

## V.    **Conclusion**

Based on the foregoing, Plaintiffs respectfully renew their request that the judgment of the district court be reversed and the case remanded for further proceedings.

Dated:  November 21, 2014

Respectfully submitted,

BREALL & BREALL LLP
Joseph M. Breall

By:  s/ Joseph M. Breall
        Joseph M. Breall

Attorney for Plaintiffs-Appellants

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that the attached reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it has 6706 words, exclusive of the matters that may be omitted under Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman.

9th Circuit Case Number(s) | 14-15781

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Nov 21, 2014 |.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Joseph M. Breall

*******************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | |.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |