**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSE MEYER, an individual, on his own behalf and on behalf of all others similarly situated,<br>   *Plaintiff-Appellee,*<br>   v.<br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company,<br>   *Defendant-Appellant,*<br>   and<br>DOES, 1-100, inclusive,<br>   *Defendant.* | No. 11-56600<br><br>D.C. No.<br>3:11-cv-01008-<br>AJB-RBB<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted
May 10, 2012—Pasadena, California

Filed October 12, 2012

Before: Dorothy W. Nelson, Raymond C. Fisher, and
Morgan Christen, Circuit Judges.

Opinion by Judge Christen

12251

## COUNSEL

Christopher W. Madel (argued) and Jennifer M. Robins, Robins, Kaplan, Miller & Ciresi LLP, Minneapolis, Minnesota; Edward D. Lodgen and Julia V. Lee, Robins, Kaplan, Miller & Ciresi LLP, Los Angeles, California, for the defendant-appellant.

Ethan Preston (argued), Preston Law Offices, Phoenix, Arizona; David C. Parisi and Suzanne Havens Beckman, Parisi & Havens LLP, Sherman Oaks, California, for the plaintiff-appellee.

## OPINION

CHRISTEN, Circuit Judge:

Portfolio Recovery Associates, LLC (PRA) appeals the September 14, 2011 district court order granting Jesse Meyer's motion for a preliminary injunction and provisional class certification. Meyer's complaint alleged that PRA's debt collection efforts violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The district court's preliminary injunction restrained PRA from using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with California area codes that PRA obtained via skip-tracing.[1]

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1). *See also Paige v. State of Cal.*, 102 F.3d 1035, 1039 (9th Cir. 1996). Having reviewed the record, we affirm.

We resolve several issues on appeal: (1) whether the district court had jurisdiction and authority to issue its September 14, 2011 order; (2) whether the district court abused its discretion by certifying a provisional class for purposes of the preliminary injunction; and (3) whether the district court abused its discretion in granting the preliminary injunction.

We review *de novo* whether a district court has authority to issue a preliminary injunction or class certification order; we review the exercise of that authority for abuse of discretion. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1140 (9th Cir. 2009). *See also Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (amended). "An abuse of discretion will be found if the district court based its decision 'on an erroneous legal standard

---

[1] Skip-tracing is the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information.

or clearly erroneous finding of fact.' " *Cottrell,* 632 F.3d at 1131 (internal citation omitted). We look to "whether the district court reaches a result that is illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 n.21 (9th Cir. 2009) (en banc). Conclusions of law are reviewed *de novo* and findings of fact for clear error. *Cottrell*, 632 F.3d at 1131.

### 1. Jurisdiction/Authority

This appeal arises from Meyer's motion for a preliminary injunction preventing PRA, a debt collection service, from contacting debtors via their cellular telephone numbers in violation of the TCPA. Meyer also moved for provisional certification of a class of debtors who were contacted by PRA on their cellular telephones. At the conclusion of the hearing on Meyer's motion, Judge Anthony J. Battaglia orally indicated that it would be denied. A minute order entered June 23, 2011 also indicated that the motion would be denied, but the minute order stated that the court would prepare a written order. Meyer filed a notice of appeal from the June 23, 2011 minute order, but on September 14, 2011, Judge Battaglia entered a written order granting a preliminary injunction and provisionally certifying the class. Judge Battaglia signed another order dated September 13, 2011 transferring this matter to another district court judge who was presiding over an earlier-filed and related case. The transfer order was entered into the docket on September 19, 2011.

PRA argues on appeal that the June 23, 2011 notice of appeal divested the district court of jurisdiction to enter its September 14, 2011 order. We disagree. The district court's June 23, 2011 minute order was not a final appealable order. *Ruby v. Sec'y of the U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966). It did not clearly evidence the judge's intention that it would be the court's final act on the matter, *Brown v. Wilshire Credit Corp. (In re Brown)*, 484 F.3d 1116, 1120 (9th Cir.

2007); in fact, it expressly stated that a written order would follow. Accordingly, the June 23, 2011 notice of appeal was premature and had no operative effect. Jurisdiction remained in the district court as of September 14, 2011.

PRA also argues that Judge Battaglia lacked authority to preside over this case after September 13, 2011, the date he signed the transfer order. This argument is unavailing because the transfer order was not effective until it was entered into the docket on September 19, 2011 and the order granting the preliminary injunction and provisional class certification was entered on September 14, 2011. The transfer order did not impair Judge Battaglia's authority to enter the September 14, 2011 order granting a preliminary injunction and provisional class certification.

*2. Provisional class certification*

**[1]** PRA argues the district court erred because the requirements of Federal Rule of Civil Procedure (FRCP) 23(a) were not met in this case. We conclude the district court acted within its discretion when it ruled that Meyer met the commonality, typicality, and adequacy requirements of FRCP 23(a) and did not abuse its discretion by granting provisional class certification.

**[2]** Meyer has the burden of meeting the threshold requirements of FRCP 23(a). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality and typicality requirements of FRCP 23(a) "tend to merge," but they "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 2551 n.5 (quotations and citation omitted). "All questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues

with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (amended). The common contention "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

The district court limited the provisional class in this case to all persons using a cellular telephone number that "(1) PRA did not obtain either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or (3) where PRA's records identify the Injunctive Class member as residing in California."

**[3]** PRA argues that individualized issues of consent should have precluded a finding of typicality or commonality because some debtors might have agreed to be contacted at any telephone number, even telephone numbers obtained after the original transaction. But the Federal Communications Commission (FCC) issued a declaratory ruling clarifying the requirement for consent in the context of the TCPA that defeats PRA's argument. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008). Pursuant to the FCC ruling, prior express consent is deemed granted only if the wireless telephone number was provided by the consumer to the creditor, and only if it was provided at the time of the transaction that resulted in the debt at issue. *Id.* at 564-65. Thus, consumers who provided their cellular telephone numbers to creditors after the time of the original transaction are not deemed to have consented to be contacted at those numbers for purposes of the TCPA.

**[4]** PRA also argues that the class is overbroad because it may include debtors who provided express consent to be contacted on their cellular telephones but whose telephone numbers were obtained via skip-tracing. But PRA does not point to a single instance where a cellular telephone number that had been given by the debtor to the original creditor was also found by PRA via skip-tracing, and the evidence before the district court suggested that cellular telephone numbers PRA found via skip-tracing were unlikely to have been given to PRA by the debtors. Specifically, PRA's securities filing shows that PRA's practice was to first attempt to contact debtors via the information received from creditors and only resort to skip-tracing if the debtors could not be reached using such information. Given this record, it was reasonable for the district court to find that cellular telephone numbers obtained via skip-tracing had not been given to the creditors in the course of the underlying consumer transactions.

**[5]** PRA also argues that Meyer failed to satisfy the requirements of FRCP 23(a) because Meyer was not an adequate class representative due to convictions for offenses involving dishonesty and because he has used multiple names in the past. PRA argues that the district court did not analyze Meyer's personal credibility and integrity. We conclude the district court acted within its discretion when it provisionally decided Meyer was an adequate class representative. The district court did consider PRA's argument that Meyer's criminal record included convictions for deceptive conduct, but it also considered that Meyer's convictions were from 1998 and 2001, more than 10 years ago,[2] and that Meyer had since taken positive steps in his life, including his graduation from the University of California. On this record we cannot say the district court abused its discretion by accepting Meyer as a provisional class representative.

---

[2]*See* Fed. R. Evid. 609(b).

PRA also argues that the district court lacked authority to certify a provisional class pursuant to FRCP 23(b)(2) because that rule only provides for final, not preliminary, injunctive relief.

**[6]** FRCP 23(b) states, "A class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The plain language of FRCP 23(b)(2) does not restrict class certification to instances when final injunctive relief issues; it only requires that final injunctive relief be appropriate. PRA did not show the district court incorrectly interpreted or applied FRCP 23(b)(2).

*3. Preliminary injunction*

**[7]** Generally, a party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**[8]** PRA first argues the district court erred by finding that Meyer demonstrated a likelihood of success on the merits. We disagree. The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1). The term "automatic telephone dialing system" means "equipment that has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). PRA argues that its dialers do not have the present capacity to store or produce numbers using a random or sequential number generator. As we explained in *Satterfield v. Simon &*

| MEYER v. PORTFOLIO RECOVERY | 12261 |
|---|---|

*Schuster, Inc.*, the clear language of the TCPA "mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' " 569 F.3d 946, 951 (9th Cir. 2009). PRA's securities filing shows that PRA uses predictive dialers. PRA does not dispute that its predictive dialers have the capacity described in the TCPA. This is sufficient to determine that PRA used an automatic telephone dialing system. *See id.* ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.").

**[9]** The FCC further defined "automatic telephone dialing system" to include predictive dialers. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091. "As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed — the *capacity* to dial numbers without human intervention." *Id.* at 14092. PRA's predictive dialers fall squarely within the FCC's definition of "automatic telephone dialing system."

PRA argues that the FCC did not have the authority to define predictive dialers as "automatic telephone dialing systems" and that the regulation reflecting this definition is therefore invalid. But PRA did not raise this argument in the district court and it did not argue any exception to the rule that arguments not raised before the district court are waived. *Bac-*

*cei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011). We therefore deem this argument waived.

PRA failed to argue in the district court that Meyer's motion should have been denied for failure to demonstrate that the injury in this case was caused by something against which the TCPA was designed to protect, that is, use of an automatic telephone dialing system to contact consumers via their cellular telephones without their consent. This argument is also deemed waived. *Id.* Moreover, even if the argument had not been waived, as discussed below, the TCPA was designed to protect against the types of calls at issue in this case. *See Satterfield*, 569 F.3d at 954.

PRA argues that the district court erred by using the wrong legal standard when it decided Meyer did not need to show irreparable harm in order to obtain a preliminary injunction. The district court's order was premised on Ninth Circuit case law approving injunctions without a showing of irreparable harm when they are sought to prevent violations of federal statutes that specifically provide for injunctive relief. *See, e.g., United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000); *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987); *Navel Orange Admin. Comm. v. Exeter Orange Co., Inc.*, 722 F.2d 449, 453 (9th Cir. 1983).

In *eBay, Inc. v. MercExchange, LLC*, the Supreme Court disapproved of the use of "categorical" rules regarding irreparable harm in patent infringement cases, concluding that such a rule "cannot be squared with the principles of equity adopted by Congress." 547 U.S. 388, 393 (2006). In *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, our Circuit applied *eBay*'s rule to a request for injunctive relief in a copyright infringement claim, reversing the Circuit's "longstanding precedent finding a plaintiff entitled to a presumption of irreparable harm on a showing of likelihood of success on the merits in a copyright infringement case." 654 F.3d 989,

MEYER v. PORTFOLIO RECOVERY   12263

998 (9th Cir. 2011). Our Circuit has not yet determined whether irreparable harm must be shown in order to obtain injunctive relief in all types of cases, but at least one decision post-*eBay* but pre-*Flexible Lifeline* reiterated the premise that "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010).

**[10]** In order to resolve this case, we need not decide whether to extend *Flexible Lifeline* to TCPA claims, because we conclude that Meyer demonstrated irreparable harm under the traditional four-part test. We reach this conclusion in the first instance because Meyer argued before the district court that he and other class members will suffer irreparable harm from PRA's continuing violations of the TCPA, which violate the class members' right to privacy, and because the district court found in its written order that PRA would continue to violate the TCPA if an injunction was not issued. *Cf. Flexible Lifeline*, 654 F.3d at 1000 (declining to affirm the district court's grant of a preliminary injunction because the district court presumed irreparable harm without making factual findings that would support a finding of likelihood of irreparable harm). We have little difficulty concluding the record supports the district court's finding that PRA would have continued to violate the TCPA if an injunction had not been issued. Between February 1 and March 31, 2011, PRA called 46,657 cellular telephone numbers with California area codes PRA obtained via skip-tracing. In response to Meyer's motion for a preliminary injunction, PRA did not acknowledge the wrongful nature of its conduct. Instead, PRA assured the court it would stop calling Meyer without making any assurance regarding other members of the provisional class. We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect. *Satterfield*, 569 F.3d at 954. Accordingly, Meyer demonstrated

12264     MEYER v. PORTFOLIO RECOVERY

that irreparable harm is likely in the absence of injunctive relief. *Winter*, 555 U.S. at 22.

**[11]** Finally, PRA briefly raises an as-applied due process challenge to the TCPA. Questions of law, including due process claims, are reviewed *de novo*. *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 921 (9th Cir. 2007). The basis for PRA's due process claim is not entirely clear, so we analyze it as a substantive and procedural due process challenge. First, to the extent PRA raises a substantive due process challenge, the property interest PRA identified is its interest in conducting a debt collection business — an economic interest. We have held that "[w]here a fundamental right is not implicated . . . governmental action need only have a rational basis to be upheld against a substantive due process attack. If a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997) (citation and internal quotations omitted). Here, Congress had several goals when it passed the TCPA, including prohibiting the use of automatic telephone dialing systems to communicate with others by telephone in a manner that invades privacy. *See Satterfield,* 569 F.3d at 954. Prohibiting the use of automatic dialers to call cellular telephones without express prior consent is a rational means of achieving this objective. To the extent PRA raises a procedural due process challenge, its argument fails because PRA has not shown that it was denied notice or an opportunity to be heard.

**AFFIRMED.**