DOCKET NOS. 13-56568 and 14-55177 (consolidated for briefing)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

VERA DRAGICEVICH,
*Plaintiff-Appellant*,

vs.

JPMORGAN CHASE BANK, N.A., individually and as
successor by merger to Chase Home Finance LLC, and
CALIFORNIA RECONVEYANCE COMPANY,
*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Central District of California,
Case No. 2:12-cv-08192-ABC-MAN, Honorable Audrey B. Collins

---

## ANSWERING BRIEF of *Defendants-Appellees* JPMORGAN CHASE BANK, N.A., individually and as successor by merger to Chase Home Finance LLC, and CALIFORNIA RECONVEYANCE COMPANY

---

Glenn J. Plattner
Andrea N. Winternitz
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401
Telephone: (310) 576-2100

Attorneys for Defendants-Appellees
JPMORGAN CHASE BANK, N.A.,
individually and as successor by merger to
Chase Home Finance LLC, and CALIFORNIA
RECONVEYANCE COMPANY

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee California Reconveyance Company is a wholly-owned subsidiary of JPMorgan Chase Bank, N.A.

Defendant-Appellee JPMorgan Chase Bank, N.A. is a wholly owned subsidiary of JPMorgan Chase & Co.

JPMorgan Chase & Co. is publicly held and traded on the New York Stock Exchange (ticker symbol "JPM").  JPMorgan Chase & Co. has no parent company, and no publicly held corporation owns ten percent (10%) or more of its stock.

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................18

I.    THE MOTION FOR ENLARGEMENT OF TIME WAS
PROPERLY DENIED.................................................................18

    A.    Dragicevich Failed to File Her Notice of Appeal By the
Deadline ...............................................................................18

    B.    The Attempt to Electronically File Her Notice of Appeal
and Her Counsel's Subsequent Email to Chase's Counsel
Does Not Establish That a Timely Appeal was Filed...............20

    C.    Dragicevich's Failure to Comply with Local Rule 7-3
Warranted Denial of Motion for Enlargement of Time............24

    D.    There Was No Showing of Good Cause or Excusable
Neglect and *Corvello* Does Not Excuse the Failure to File
a Timely Notice of Appeal......................................................27

II.    THE MOTION FOR SUMMARY JUDGMENT WAS
PROPERLY GRANTED ................................................................31

    A.    All Four Causes of Action Fail Because They Were
Based on the Assertion That Chase Breached an
Agreement To Permanently Modify Dragicevich's Loan,
But There Was No Such Agreement.........................................31

        1.    The Court Correctly Determined As A Matter of Law
That The April 16 Letter Was An Offer of a Trial Plan,
Not An Acceptance of Dragicevich's March 24 Offer to
Modify Her Loan ............................................................34

        2.    Further, The Court Correctly Held That The Variance
Between The Material Terms of the March 24 Letter And
The April 16 Letter Demonstrated There Was No Assent
To Dragicevich's Offer....................................................38

        3.    Dragicevich Did Not Comply With the Terms of the Trial
Plan and She Was Ineligible for a Loan Modification ...40

    B.    All Four Causes of Action Further Fail Because
Dragicevich Cannot Prove She Was Damaged By Chase
As A Matter Of Law ...............................................................44

III.    DRAGICEVICH'S COLLATERAL ARGUMENTS FAIL..............47

A.    There Are No Allegations in the Complaint, Nor Competent Evidence, Regarding an "Invalid" Notice of Default ........................................................................................ 47

B.    The Homeowners Bill of Rights Was Not In Effect Until After The Complaint Was Filed And Is Irrelevant as to The Conduct Alleged ............................................................. 49

C.    Discovery Disputes Are Not Appropriate Here ...................... 50

CONCLUSION ................................................................................................. 51

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

*Adriana Int'l. Corp. v. Lewis & Co.*,
    913 F.2d 1406 (9th Cir. 1990) ...........................................................................47

*Alaska Limestone Corp. v. Hodel*,
    799 F.2d 1409 (9th Cir. 1986) ............................................................ 18, 28, 29

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980) ...........................................................................22

*Alexander v. Codemasters Grp. Ltd.*,
    104 Cal. App. 4th 129 (2002) ............................................................................11

*Amaro v. Option One Mortg. Corp.*,
    No. 08-1498, 2009 U.S. Dist. LEXIS 2855, (C.D. Cal. Jan. 14, 2009) ...............9

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ...........................................................................................16

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ...........................................................................17

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) ...........................................................................17

*Browder v. Director, Dep't of Corrections*,
    434 U.S. 257 (1978) ..................................................................................... 19, 27

*Bushell v. JPMorgan Chase Bank*,
    220 Cal. App. 4th 915 (2013) ............................................................................44

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ............................................................................38

*Butler-Rupp v. Lourdeaux*,
    134 Cal. App. 4th 1220 (2005) ..........................................................................46

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) .........................................................................................32

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ...........................................................................................18

*Corvello v. Wells Fargo Bank*,
    728 F.3d 878 (9th Cir. 2013) .................................................................... passim

*Diamond v. United States Dist. Ct. for Cent. Dist. of Cal.*,
    661 F.2d 1198 (9th Cir. 1981) ...................................................................4

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) .........................................................................46

*First Commercial Mortg. Co. v. Reece*,
    89 Cal. App. 4th 731 (2001) ...............................................................33

*Greenwood v. FAA*,
    28 F.3d 971 (9th Cir. 1994)..................................................................29

*Grove v. Wells Fargo Fin. Cal., Inc.*,
    606 F.3d 577 (9th Cir. 2010)................................................................25

*Grow v. Garcia*,
    459 Fed. Appx. 678 (9th Cir. 2011).................................................28, 29

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
    652 F. Supp. 2d 1050 (N.D. Cal. 2009) ..................................................9

*Hampton-Stein v. Aviation Fin. Group, LLC*,
    472 Fed. Appx. 455 (9th Cir. 2012)......................................................24

*High Tech Gays v. Def. Indus. Sec. Clearance Office*,
    895 F.2d 563 (9th Cir. 1990)................................................................16

*In re Donnell*,
    639 F.2d 535 (9th Cir. 1981)...........................................................28, 29

*In re Sands*,
    328 B.R. 614 (Bankr. N.D.N.Y. 2005) .................................................22

*Ind. Towers of Wash. v. State of Wash.*,
    350 F.3d 925 (9th Cir. 2003).................................................................29

*Jenkins v. JPMorgan Chase Bank*,
    216 Cal. App. 4th 497 (2013) ..........................................................45, 49

*Jesinger v. Nev. Fed. Credit Union*,
    24 F.3d 1127 (9th Cir. 1994).................................................................16

*Kamjoo v. Wright (In re Wright)*,
    2010 Bankr. LEXIS 5087 (B.A.P. 9th Cir. June 10, 2010) .................21

*Kruse v. Bank of America*,
    202 Cal. App. 3d 38 (1988)...........................................................45, 46

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) .........................................................................33

*Lucas v. Dep't of Corr.*,
　66 F.3d 245 (9th Cir. 1995)................................................................51

*Meyer v. Benko*,
　55 Cal. App. 3d 937 (1976)...............................................................35

*Moncada v. West Coast Quartz Corp.*,
　221 Cal. App. 4th 768 (2013) .................................................... 35, 36

*Navellier v. Sletten*,
　106 Cal. App. 4th 763 (2003) ...........................................................46

*Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*,
　210 F.3d 1099 (9th Cir. 2000) ..........................................................16

*Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App.
　4th 1499 (2011) ................................................................. 35, 36, 41

*Oregon v. Champion Int'l Corp.*,
　680 F.2d 1300 (9th Cir. 1982) ..........................................................17

*Panagotacos v. Bank of America*,
　60 Cal. App. 4th 851 (1998) ....................................................... 38, 40

*Perry v. Accurate Staffing Consultants, Inc.*,
　2010 U.S. Dist. LEXIS 65204, (W.D.N.C. June 30, 2010) .................................21

*Peterson Dev. Co. v. Torrey Pines Bank*,
　233 Cal. App. 3d 103 (1991)..............................................................39

*Robinson v. Countrywide Home Loans, Inc.*,
　199 Cal. App. 4th 42 (2011) .............................................................49

*Rottman v. Hevener*,
　54 Cal. App. 474 (1921)..................................................................48

*Saelee v. Chater*,
　94 F.3d 520 (9th Cir. 1996); ...........................................................16

*SEC v. Colello*,
　139 F.3d 674 (9th Cir. 1998)............................................................9

*Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*,
　167 Cal. App. 4th 544 (2008) ...........................................................48

*Selph v. Council of Los Angeles*,
　593 F.2d 881 (9th Cir. 1979)............................................................28

*Sicor Ltd. v. Cetus Corp.*,
　51 F. 3d 848 n. 17 (9th Cir. 1995) .....................................................17

*Signal Cos. v. Harbor Ins. Co.*,
 27 Cal. 3d 359 (1980) ................................................................... 35, 36

*Smith v. Barry*,
 502 U.S. 244 (1992)...................................................................... 22, 23

*Sprout v. Farmers Ins. Exchange*,
 681 F.2d 587 (9th Cir. 1982)......................................................... 19, 27

*Taylor v. Sentry Life Ins. Co.*,
 729 F. 2d 652 (9th Cir. 1984)...............................................................50

*Terry v. Conlan*,
 131 Cal. App. 4th 1445 (2005) ..................................................... 33, 38

*Tri-Valley CAREs v. U.S. Dept. of Energy*,
 671 F.3d 1113 (9th Cir. 2012) ...................................................... 25, 26

*United States v. Grayson*,
 879 F.2d 620 (9th Cir. 1989).................................................................16

*United States v. Warren*,
 601 F.2d 471 (9th Cir. 1979).......................................................... 18, 24

*Valdez v. Rosenbaum*,
 302 F. 3d 1039 (9th Cir. 2002) .............................................................17

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
 435 F.3d 989 (9th Cir. 2006)..................................................... 47, 49, 50

*West v. JPMorgan Chase Bank*,
 214 Cal. App. 4th 780 (2013) ...............................................................44

*Wong v. Regents of Univ. of Cal.*,
 410 F.3d 1052 (9th Cir. 2005) ..............................................................18

## Statutes

28 U.S.C. § 1291 ....................................................................................3

28 U.S.C. § 1332......................................................................................3

28 U.S.C. § 2107(a) ........................................................................ passim

Assem. Bill No. 278 (2011–2012 Reg. Sess.) .......................................49

Cal. Civ. Code § 1550 ...........................................................................38

Cal. Civ. Code § 1565 ...........................................................................38

Cal. Civ. Code § 1580...........................................................................38

Cal. Civ. Code § 2924(a)(1)................................................................49

Cal. Civ. Code § 2924l......................................................................9

Cal. Civ. Proc. Code § 1060 ............................................................32

Cal. Civ. Proc. Code § 764.010 .......................................................32

Sen. Bill No. 900 (2011–2012 Reg. Sess.) ......................................50

<u>**Rules**</u>

9th Circuit Rule 28-2.7 .....................................................................4

C.D. Cal. R. 5-3.2.1.........................................................................20

C.D. Cal. R. 5-4.1............................................................................20

C.D. Cal. R. 5-4.1.3(5).....................................................................21

C.D. Cal. R. 5-4.7.2.........................................................................21

C.D. Cal. R. 7-3 ....................................................................... passim

Fed. R. App. P. 28(f) .........................................................................4

Fed. R. App. P. 3.............................................................................23

Fed. R. App. P. 3(a)(1).....................................................................23

Fed. R. App. P. 3(c) .........................................................................23

Fed. R. App. P. 4.............................................................................28

Fed. R. App. P. 4(a)(1)(A) .......................................................... passim

Fed. R. App. P. 4(a)(5)......................................................................13

Fed. R. Civ. P. 12(b)(6).....................................................................29

Fed. R. Civ. P. 56(c).........................................................................16

Fed. R. Civ. P. 56(e).........................................................................17

Fed. R. Civ. P. 83(a)(1).....................................................................24

## INTRODUCTION

Plaintiff-Appellant Vera Dragicevich desired to modify her loan and presented proposed terms for a modification in a March 24, 2010 letter to her loan servicer, Defendant-Appellee JPMorgan Chase Bank, N.A. ("Chase").  On April 16, 2010, Chase responded to her request for a loan modification with an offer to enter a trial plan under which she would provide trial plan payments by specified dates and would provide financial documents for Chase to review her eligibility for a loan modification.  If she successfully completed the trial plan, Chase would provide her with a permanent loan modification.

Dragicevich failed to successfully complete the trial plan because she did not make timely trial plan payments and she did not have sufficient income to qualify for a loan modification under federal programs or under Chase's in-house program. Chase informed her of the denial decision and Defendant-Appellee California Reconveyance Company ("CRC"), the trustee under the deed of trust, proceeded with nonjudicial foreclosure proceedings.

Dragicevich sued Chase and CRC, alleging that Chase had accepted the loan modification terms she proposed in her March 24 letter by sending her the trial plan offer on April 16.  She asserted claims for (1) "Declaratory Relief and Injunctive Remedy – Specific Performance"; (2) Quiet Title; (3) Breach of Contract; and (4) "Fraud and Deceptive Business Practices" all based on the theory

that Chase had breached the terms of her loan modification provided in her March 24 letter.  CRC filed a declaration of non-monetary status and is a nominal party in this action.  Chase moved for summary judgment on the grounds, *inter alia*, that there was no valid contract to modify her loan.  The District Court granted summary judgment for Chase.

Dragicevich attempted to appeal this decision, but filed her notice of appeal three days late.  Twenty-four days later, Dragicevich filed a motion for enlargement of time to appeal that was procedurally defective because she failed to meet and confer with opposing counsel prior to filing the motion.  The District Court denied her motion.  Dragicevich appealed for the second time and both appeals are consolidated in this action.

Dragicevich's Opening Brief fails to show the District Court abused its discretion in denying her motion for enlargement of time to appeal.  This Court should affirm that decision and dismiss the untimely appeal for lack of jurisdiction. If this Court finds her motion for enlargement of time to appeal should have been granted, it should affirm the grant of summary judgment because there are no disputed issues of material fact to establish Dragicevich's claims.

This Court should affirm both decisions on appeal.

## JURISDICTIONAL STATEMENT

The District Court had diversity jurisdiction over Dragicevich's claims. *See* 28 U.S.C. § 1332; Appellant's Excerpt of Records ("EOR") 253-262.

Dragicevich appeals two decisions of the District Court (Appellant's Opening Brief ("AOB" 3). In the first decision, the District Court granted Chase's motion for summary judgment and entered a final judgment on August 1, 2013 (EOR 3-4, 7-14). In order to timely appeal this judgment, Dragicevich was required to file a notice of appeal within thirty days after entry of the judgment, by September 3, 2013.[1] Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a). However, Dragicevich filed a notice of appeal of this judgment on September 6, 2013 (EOR 26, 313). Accordingly, this appeal is untimely and this appeal should be dismissed for lack of jurisdiction.

The second decision that Dragicevich appeals is the District Court's December 27, 2013 order denying Dragicevich's motion for enlargement of time to file her notice of appeal of the order granting Chase's motion for summary judgment (EOR 1-2). This order was entered on the docket on January 2, 2014, and Dragicevich timely appealed this order by filing a notice of appeal on January 30, 2014. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. *See Diamond*

---

[1] Thirty days after the entry of final judgment fell on August 31, 2013. However, since August 31, 2013 fell on a Saturday, and the following Monday was Labor Day, the notice of appeal was required to be filed by September 3, 2013. Fed. R. App. P. 26(a)(1)(C), 26(a)(6)(A) .

*v. United States Dist. Ct. for Cent. Dist. of Cal.*, 661 F.2d 1198, 1198 (9th Cir. 1981) (an order denying a motion for leave to file a late notice of appeal is an appealable order).

## ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court acted within its discretion in denying Dragicevich's motion for enlargement of time to appeal.

2.      Whether the District Court properly granted Chase's motion for summary judgment.

The Addendum to this Brief contains copies of pertinent statutes and regulations.  *See* Fed. R. App. P. 28(f); 9th Cir. R. 28-2.7.

## STATEMENT OF THE CASE AND THE FACTS

**The Loan.**  On November 3, 2005, Dragicevich borrowed $640,000 from Washington Mutual Bank, F.A. ("WaMu")  (Chase's Supplemental Excerpts of Record  ("Chase EOR") 136).  Her promissory note was secured by a deed of trust to a residential property in Ventura County, California (Chase EOR 143-170).  The deed of trust identified CRC as the trustee under the deed of trust (Chase EOR 143-170).  On September 25, 2008, Chase acquired WaMu's servicing rights and is the current servicer of the loan  (EOR 248 ¶ 10).

**Loan Modification Attempts.**  On March 23, 2010, Dragicevich met with a Chase representative at a branch office to discuss loan modification options and he asked her to submit documentation to support her request for a modification  (EOR 284 ¶¶  12-14).  On March 24, 2010, Dragicevich faxed to Chase some of the requested documentation along with a letter ("March 24 Letter") in which she explained her reduced income resulted in her being unable to make her loan payments and she proposed terms for a loan modification (EOR 285 ¶¶ 15-16).  The proposed terms included a new monthly loan payment of $2,033 (consisting of $1,363 for principal and interest, $620 for reduced property taxes, and $50 for insurance), a new principal balance of $450,000, a new loan term of 40 years, and a new interest rate of 2.00% (EOR 285 ¶ 16; 299).

On April 16, 2010, Chase sent Dragicevich a letter ("April 16 Letter") "regarding [her] recent request for a loan modification" (EOR 286 ¶ 19; 301-302). The April 16 Letter invited Dragicevich to participate in a Trial Plan while Chase reviewed her for a loan modification (EOR 301-303).  The April 16 Letter required three payments of $2,095.17 as the "Trial Plan Payment Amount" which were due on June 1, July 1, and August 1, 2010.  The letter stated "If all payments are made as scheduled, we will consider a permanent workout solution for your Loan."  The letter also stated in relevant part:

> In order for us to continue processing this workout option, we need to confirm your acceptance of the terms and conditions outlined in this Trial Plan.  To accept this Trial Plan, please review the following information, sign and date one (1) copy of the Trial Plan, and return the RMA Acknowledgement and income verification documents, as outlined in the enclosed Required Document Checklist, by fax or mail to the address provided below by **APRIL 30, 2010.**
>
> **If all documentation is not received at this address within the specified time frame, collection and/or foreclosure action may commence or continue.**
> …
> **Please note that the Trial Plan will not be valid until the first payment is received by CHASE as indicated above.**  If the first payment is not received…within the specified time frame, collection and/or foreclosure action may commence or continue.
>
> Once the Trial Plan begins on your account, if you do not meet the terms of this Plan, please remember **CHASE** may, without further notice to you, terminate the Plan and commence or continue collection and/or foreclosure proceedings according to the terms of your Note and Security Instrument.  **Note that the Trial Period Plan will not bring your account current.**
> …

> After successful completion of the Trial Plan, **CHASE** will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount.

(EOR 301-303).

On April 26, 2010, Dragicevich signed an "Acknowledgment of Borrower(s)" attached to the April 16 Letter stating "I accept and agree to the terms and provisions contained in this Trial Plan Agreement" and delivered it to Chase (EOR 287 ¶ 20; 305).

Dragicevich made her first Trial Plan Payment timely on June 1, 2010 (EOR 96-97). However, she conceded that she sent her second and third payments late, respectively on July 14, 2010 and August 9, 2010 (EOR 47, 100-107; Chase EOR 91-99).

Chase reviewed Dragicevich's loan for a modification under the federal Home Affordable Modification Program ("HAMP") and the in-house Chase Modification Program ("CMP") (Chase EOR 57-74). Chase ultimately determined that Dragicevich did not have sufficient verified income to allow Chase to create an affordable payment without changing the terms of her loan beyond the requirements of HAMP and CMP (EOR 251 ¶ 21; Chase EOR 85-88). She was sent a denial letter explaining that her application was denied because analysis of her financial information determined that the value of the unmodified loan exceeded the value of the hypothetical modified loan, known as a negative net

present value ("Negative NPV") (EOR 251 ¶ 21; Chase EOR 85-88). At Dragicevich's request, her loan modification application was escalated for a second review, but the review confirmed that her income was insufficient for a permanent loan modification (EOR 251 ¶ 22). If Dragicevich's loan modification application had met all of the criteria established by the program guidelines, including successfully completing the Trial Plan and having sufficient verified income under the program's requirements, Chase would have offered her a permanent loan modification (EOR 251 ¶ 23 ).

**The Complaint**. On January 9, 2012, Dragicevich filed this action against "Chase Home Finance LLC" in California Superior Court (EOR 280).

The Complaint alleged that Dragicevich sent the March 24 Letter to Chase as an offer to modify her loan, which Chase accepted by sending her the April 16 Letter (EOR 285-286 ¶¶ 15-16, 19). The Complaint further alleged that Dragicevich "performed all conditions whether precedent or otherwise to Chase's duty to perform" including executing the Acknowledgment and sending in three payments, which Chase accepted (EOR 287 ¶¶ 21-22). However, according to the Complaint, Chase "failed and refused" to send Dragicevich a permanent loan modification (EOR 287 ¶ 23). The Complaint claimed that Chase "[b]y its silence" and acceptance of her trial payments, "either accepted the terms of Plaintiff's Offer or is estopped from disavowing them" (EOR 288 ¶ 28).

Based on these allegations, the Complaint sought to assert causes of action for (1) "Declaratory Relief and Injunctive Remedy – Specific Performance"; (2) Quiet Title; (3) Breach of Contract; and (4) "Fraud and Deceptive Business Practices"  (EOR 280, 290-294).  The Complaint requested injunctive relief to halt the pending foreclosure sale, specific performance to implement the terms of the March 24 Letter or, alternatively, "Breach of Contract damages" in the amount of $500,000, compensatory damages including emotional distress damages, punitive damages, and attorney's fees and costs (EOR 292, 295-296).

On January 13, 2012, Dragicevich amended the Complaint by substituting Chase in the place of Doe Defendant 1, and CRC in the place of Doe Defendant 2 (EOR 277-278).

On August 21, 2012, CRC filed a declaration of non-monetary status, agreeing to be bound by any non-monetary order of judgment (EOR 265-266). Accordingly, CRC is only a nominal defendant in this action.[2]

On September 21, 2012, Chase removed the action to the Central District of California on the basis of diversity jurisdiction (EOR 253-254).

---

[2] Under California Civil Code § 2924l, a trustee under a deed of trust who files a declaration of non-monetary status in a state court proceeding before removal is transformed into a "nominal" party who is excused from participating in the action.  *See SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (a "nominal defendant," such as a trustee, "has no legitimate claim to the disputed property, he is not a real party in interest….Accordingly, there is no claim against him") (quotations omitted); *see also Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1050, 1052 (N.D. Cal. 2009); *Amaro v. Option One Mortg. Corp.*, No. 08-1498, 2009 U.S. Dist. LEXIS 2855, at *3 (C.D. Cal. Jan. 14, 2009).

**The Motion for Summary Judgment.** On April 29, 2013, Chase filed a Motion for Summary Judgment and Summary Adjudication (Chase EOR 100-135). Dragicevich filed an untimely Opposition and was admonished by the District Court (Chase EOR 56). On May 20, 2013, Chase filed a timely Reply (Chase EOR 42-55).

**The Decision on the Motion for Summary Judgment.** On July 8, 2013, the District Court granted the Motion for Summary Judgment in its entirety (EOR 7-14).

The District Court found that all of Dragicevich's causes of action were based on claims that "Chase's April 16 Letter constituted acceptance of her proposed terms for a loan modification presented in her March 24 Letter, thus permanently modifying her loan contract" (EOR 8:5-8, 9:13-16). The District Court held that there was no disputed issue of material fact because "the April 16 Letter was not an acceptance of Plaintiff's offer in her March 24 Letter" (EOR 11:13-15).

The District Court noted that the terms of the April 16 Letter invited Dragicevich "to participate in a Trial Payment Plan while Chase *considered* modifying her loan," required her to complete certain paperwork and make three monthly payments, and if she successfully completed the trial plan, "then Chase would consider a permanent workout solution for Plaintiff's loan and send a

modification agreement" (EOR 12:1-11).  Dragicevich's declaration regarding her subjective belief that the April 16 Letter was an acceptance of her March 24 offer did not raise a triable issue of fact because "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties" (EOR 13:13-17) (citing *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (2002)).  The District Court found that the language of the April 16 Letter "supports only one interpretation: that Chase offered Plaintiff the option of participating in a TPP while it considered modifying her loan.  That Plaintiff may have believed that the April 16 Letter meant something it did not say does not raise a triable issue" (EOR 13:22-26).

Further, the District Court held that the April 16 Letter could not "function as an acceptance of the offer in Plaintiff's March 24 Letter because their material terms are different" (EOR 12:13-15).  Not only were the proposed monthly payment amounts different, even if "close," but the April 16 Letter also required an application process before Dragicevich's loan could be modified (EOR 12:15-18).  Since "[a]ll of Plaintiff's claims turn on her assertion that the April 16 Letter constituted an acceptance of her proposed modification," but that assertion failed, the District Court held that all of her claims failed (EOR 14:11-15).

The District Court entered a final judgment on August 1, 2013 (EOR 3-4).

**The First Notice of Appeal.** In order to timely appeal this judgment, Dragicevich was required to file a notice of appeal within thirty days after entry of the judgment, by August 31, 2013. Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a). Since August 31, 2013 fell on a Saturday, and the following Monday was Labor Day, the notice of appeal was required to be filed by September 3, 2013. Fed. R. App. P. 26(a)(1)(C), 26(a)(6)(A).

On September 3, 2013, Dragicevich attempted, but failed, to file her Notice of Appeal, though she did manage to pay her appeal fee (EOR 19, 23, 313 Dkt. No. 38). That same day, Dragicevich's counsel sent an email to Chase's counsel stating "I have filed a Notice of Appeal in the above-referenced matter…." (EOR 25). On September 6, 2013, Dragicevich's counsel realized that the Notice of Appeal had not been filed on the docket and he contacted the ECF Help Desk who purportedly "reported a glitch as to the Notice of Appeal document" (EOR 20 ¶ 7-8). On September 6, 2013, Dragicevich resubmitted the Notice of Appeal and successfully filed it electronically (EOR 20 ¶ 8; 313 Dkt. No. 37).

On September 10, 2013, this Court filed an order to show cause why the appeal should not be dismissed for lack of jurisdiction because the appeal was not filed within thirty days after the District Court's judgment was entered on August 1, 2013 (Chase EOR 3, Dkt. No. 4).

**The Motion for Enlargement of Time.**  On September 30, 2013, Dragicevich filed a "Motion to Correct Docket Entry of Notice of Appeal, Or in the Alternative, to Extend Time to Appeal" ("Motion for Enlargement of Time") pursuant to Fed. R. App. P. 4(a)(5) (EOR 313 Dkt. No. 41; Chase EOR 21-41). Dragicevich's counsel noted that he failed to comply with Central District of California Local Rule 7-3, which requires "counsel contemplating the filing of any motion [to] first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution" prior to filing the motion (Chase EOR 21-41, 2:9-11).  He excused his failure to comply with the Local Rule "[d]ue to the threat of a U.S. government shut-down" (Chase EOR 21-41, 2:9-10).

Dragicevich argued that she timely filed the Notice of Appeal electronically via the ECF system on September 3, 2013, or alternatively, that good cause existed to extend the time to file because "the law changed" after the District Court made its ruling when the Ninth Circuit published *Corvello v. Wells Fargo Bank*, 728 F.3d 878 (9th Cir. 2013) (Chase EOR 21-41).  Further, Dragicevich argued that any failure to file a timely notice of appeal "was the result of excusable neglect" because "[e]very reasonable attempt was made to file a timely Notice of Appeal under the rules" (Chase EOR 21-41 ).  Chase filed an opposition to the motion (Chase EOR 10-20).

**The Order Denying the Motion for Enlargement of Time.**  On December 27, 2013, the District Court issued an order denying Dragicevich's Motion for Enlargement of Time ("Denial Order") (EOR 1-2).  The District Court found that it was "clear that the Notice of Appeal was untimely" because it was filed on September 6, 2013, three days after the deadline expired (EOR 1).  The District Court further found that the Motion was "procedurally improper" because Dragicevich's counsel failed to comply with Local Rule 7-3, which the District Court's standing orders repeatedly warned would be enforced (EOR 2).  The District Court found that "even in the implausible event that the threat of a government shutdown could have somehow effected Plaintiff's counsel's opportunity to meet and confer, counsel had plenty of time between September 6 and September 30 (the date he filed the instant Motion) to meet and confer with defense counsel" (EOR 2).  Moreover, the District Court noted that Dragicevich's counsel had previously "disregarded the deadlines applicable to this case" (EOR 2).  The District Court found "no reason to excuse counsel's inexplicable non-compliance with Local Rule 7-3" and denied the motion (EOR 2).  The Order was entered in the docket on January 2, 2014 (EOR 314 Dkt. No. 47).

**The Second Notice of Appeal.**  Dragicevich timely appealed this Denial Order on January 30, 2014 (EOR 15, 314 Dkt. No. 48).

## SUMMARY OF ARGUMENT

The District Court properly ruled twice in the below action—first in granting summary judgment for Chase, and second in denying Dragicevich's motion for enlargement of time to appeal.

*First*, Dragicevich's appeal of the judgment was untimely and the District Court acted within its discretion in applying its local rules in denying Dragicevich's motion for enlargement of time.

*Second*, the undisputed evidence shows that there was no agreement to provide Dragicevich a permanent loan modification, and Chase is entitled to judgment as a matter of law.

*Third*, the undisputed evidence shows that Dragicevich did not successfully complete the terms of the trial plan, upon which any offer of a permanent loan modification was conditioned, and Chase is entitled to judgment as a matter of law.

*Fourth*, the undisputed evidence shows that Dragicevich had no recoverable damages caused by Chase, and Chase is entitled to judgment as a matter of law.

*Fifth*, the Opening Brief's collateral arguments, which were not alleged in the Complaint and were not at issue at summary judgment and which range from attacks on the nonjudicial foreclosure proceedings to belated complaints of discovery abuses, are waived and are contrary to law.

## <u>STANDARD OF REVIEW</u>

**Summary Judgment Standard of Review.**  A district court's grant of summary judgment is reviewed *de novo*.  *See Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  "Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law."  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996); Fed. R. Civ. P. 56(c).  Only factual disputes which are outcome determinative will properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see United States v. Grayson*, 879 F.2d 620, 622 (9th Cir. 1989).

To obtain summary judgment, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *accord High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990) (moving party may satisfy its burden by "demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.").  To meet its burden, the moving party "may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any

affidavits, show the absence of a genuine issue of material fact." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

Once the burden has been shifted to the nonmoving party, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2009) (amended 2010). If the nonmoving party fails to demonstrate such a genuine issue, then summary judgment must be entered in favor of the moving party. *Id*.

The appellate court may affirm a summary judgment on any ground that has support in the record, whether or not relied upon by the lower court. *Sicor Ltd. v. Cetus Corp.*, 51 F. 3d 848, 860 n. 17 (9th Cir. 1995); *see Valdez v. Rosenbaum*, 302 F. 3d 1039, 1043 (9th Cir. 2002).

**Extension of Time to Appeal and Enforcing Local Rules Standards of Review.** An order denying a motion for extension of time for filing a notice of appeal is reviewed under an abuse of discretion standard. *Oregon v. Champion Int'l Corp.*, 680 F.2d 1300, 1301 (9th Cir. 1982). A district court's application of its local rules is also reviewed for an abuse of discretion. *See Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007). "A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when the record contains no evidence on which it could rationally have based its decision." *Alaska Limestone*

*Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir. 1986). The abuse of discretion standard requires appellate courts to uphold any district court determination that falls within a broad range of permissible conclusions. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990). "The abuse of discretion standard is deferential . . . since the district court needs the authority to manage the cases before it efficiently and effectively." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). "Only in rare cases will [a reviewing court] question the exercise of discretion in connection with the application of local rules." *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (per curiam).

## ARGUMENT

## I.   THE MOTION FOR ENLARGEMENT OF TIME WAS PROPERLY DENIED

The District Court properly exercised its discretion in denying Dragicevich's Motion for Enlargement of Time. (EOR 1-2). The District Court correctly found that the First Notice of Appeal was untimely filed on September 6, 2013, as shown in the docket (EOR 1, 313 Dkt. No. 37). Further, the District Court acted within its discretion in denying the Motion for Dragicevich's failure to comply with Local Rule 7-3 (EOR 2).

### A.   Dragicevich Failed to File Her Notice of Appeal By the Deadline

A notice of appeal must be filed within thirty days after entry of a judgment

from which the appeal is taken.  Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a).

"This 30-day time limit is 'mandatory and jurisdictional.'"  *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264 (1978).  This "harsh" deadline applies even where the notice is filed only one day late.  *See Sprout v. Farmers Ins. Exchange*, 681 F.2d 587, 588 (9th Cir. 1982) (per curiam).

Here, the District Court granted Chase's motion for summary judgment and entered a final judgment on August 1, 2013 (EOR 3-4, 7-14).  Accounting for weekends and the Labor Day holiday, Dragicevich was required to file her Notice of Appeal within thirty days of the judgment, by September 3, 2013.  However, as shown in the docket and as the District Court found here, the Notice of Appeal was untimely filed on September 6, 2013 (EOR 1, 313 Dkt. No. 37).  Accordingly, the Notice of Appeal was untimely filed and the underlying appeal should be dismissed in its entirety for lack of jurisdiction.

Dragicevich argues in her Opening Brief that since the appeal fee was filed on September 3, 2013 and it appears as docket number 38, the Notice of Appeal must have been filed before the appeal fee because it has docket number 37 (AOB 2-3, 8-9).  However, the sequence of docket numbers does not necessarily show their relative order of filing.  For example, in this same case, docket number 12 appears *after* docket numbers 13, 14, and 15, which were filed on December 10, 2012, because docket number 12 was filed later than those entries, on December

11, 2012 (EOR 310). Thus, a document with a lower docket number can still be filed after a document with a higher docket number. Moreover, here the docket conclusively shows that the Notice of Appeal was filed on September 6, 2013, and is therefore untimely.

### B. The Attempt to Electronically File Her Notice of Appeal and Her Counsel's Subsequent Email to Chase's Counsel Does Not Establish That a Timely Appeal was Filed

In her Opening Brief, Dragicevich argues that "[a]lthough the rules specify the notice must be 'filed' within the time allowed by FRAP 4, it is sufficient if it is *received* by the district court clerk within the specified time period" (AOB 7). She also argues that "[t]he notice in this case provided the sufficient notice to the parties and the clerk" and "notice of the fact of the filing was emailed to Bank's counsel within minutes of the filing" (AOB 7-8). These arguments lack merit.

A notice of appeal "must be *filed* with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A) (emphasis added). The Central District of California mandates that, unless excepted, "all documents filed in civil cases shall be filed electronically using the Court's CM/ECF System." Local Rule 5-4.1. When a document is electronically filed, a Notice of Electronic Filing ("NEF") is "automatically generated by the CM/ECF System and sent by e-mail to all CM/ECF Users." Local Rule 5-3.2.1.

The NEF includes the time of filing and "provides certification that the associated document(s) is a true and correct copy of the original filed with the Court." Local Rules 5-4.1.3(5) , 5-4.7.2.

Here, Dragicevich presents no NEF certifying that the Notice of Appeal was timely filed and received by the clerk. Such a document would have been "automatically generated" if the Notice had been successfully filed, and the absence of the NEF establishes that the Notice was not filed on September 3, 2013. The District Court acted within its discretion in choosing not to accept Dragicevich's counsel's contradictory assertions in his declaration that the Notice had been filed on September 3, 2013, as the docket conclusively showed that the Notice of Appeal was filed on September 6, 2013. Dragicevich's failure to ensure that the Notice of Appeal was successfully filed on the last day of the appeal deadline by checking for an NEF dooms her appeal. *See Kamjoo v. Wright (In re Wright)*, 2010 Bankr. LEXIS 5087 (B.A.P. 9th Cir. June 10, 2010) (affirming bankruptcy court's order dismissing untimely creditor complaint despite creditor's attorney's arguments that he had encountered a technical problem that prevented the timely filing); *Perry v. Accurate Staffing Consultants, Inc.*, 2010 U.S. Dist. LEXIS 65204, at *5 (W.D.N.C. June 30, 2010) ("Here, Plaintiff's counsel paid the filing fee on April 28, and received a case number, but failed to successfully upload the complaint until six days later. It also appears that a 'Notice of

Electronic Filing' was not issued on April 28, though Plaintiff's counsel received a receipt showing payment of the filing fee. Since Plaintiff did not successfully file the complaint within ninety days, her claims are barred…."); *In re Sands*, 328 B.R. 614, 618-619 (Bankr. N.D.N.Y. 2005) (debtor's bankruptcy petition was only filed through CM/ECF after Notice of Electronic Filing was created, stating the time the document was filed).

The single case cited by Dragicevich in support of her argument that her Notice of Appeal was timely received by the district court clerk in compliance with Rule 4 is inapplicable to this case.  In *Aldabe v. Aldabe*, 616 F.2d 1089, 1091 (9th Cir. 1980), a case that did not involve CM/ECF, the appellant timely delivered her notice of appeal to the district court clerk before the appeal period expired, but the clerk did not formally file the appeal until two weeks later.  The court held that the notice of appeal was timely filed because it was timely received by the clerk and "an appellant has no control over delays between receipt and filing."  *Id.*  In contrast, here Dragicevich did not ensure that the clerk timely *received* her notice of appeal because she failed to complete the filing through the CM/ECF electronic filing system, a process of which she was fully in control.

Dragicevich cites *Smith v. Barry*, 502 U.S. 244 (1992) in support of her argument that her paying an appeal fee and emailing Chase's counsel that a notice of appeal had been filed provided sufficient notice of an appeal under Rules 3 and

4 (App. Br. 6-8, 10).  *Smith* lends her no support.  In that case, an inmate prematurely filed a notice of appeal before an appealable order was finalized, and then filed an informal appellate brief after the order was finalized and within the appeal period.  *Smith*, 502 U.S. at 246-47.  The Supreme Court held that the informal appellate brief could be considered an "effective notice of appeal" because it was "filed within the time specified by Rule 4 [and] gives the notice required by Rule 3…."  *Id.* at 248-49.

In contrast with *Smith*, here Dragicevich did not file any document that provided the notice required by Rule 3 within the 30-day appeal period.  She cannot plausibly claim that her filing fee and terse email to Chase's counsel met the notice of appeal requirements of Rule 3(a), which specifies that an appeal as of right "may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4," which is "within 30 days after entry of the judgment or order appealed from."  Fed. R. App. P. 3(a)(1), 4(a)(1)(A).  Nor can Dragicevich claim that she met the content requirements of Rule 3(c) , which states that notices "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."

Because the record clearly shows that Dragicevich failed to file a notice of appeal meeting the statutory requirements within the jurisdictional appeal period,

the District Court's order denying the Motion for Enlargement of Time should be affirmed and the first appeal should be dismissed.

### C. **Dragicevich's Failure to Comply with Local Rule 7-3 Warranted Denial of Motion for Enlargement of Time**

In addition to finding that the Notice of Appeal was untimely, the District Court found that Dragicevich "admittedly failed to comply with Local Rule 7-3's meet and confer requirement before filing" the Motion for Enlargement of Time and thus it was "procedurally improper" (EOR 2). The District Court acted within its discretion in denying the Motion due to this failure to comply with Central District of California Local Rule 7-3.

Each district court is authorized to "prescribe rules for the conduct of their business." 28 U.S.C. § 2071(a); Fed. Rule Civ. P. 83(a)(1). "Only in rare cases will [a reviewing court] question the exercise of discretion in connection with the application of local rules." *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (per curiam) (affirming dismissal of indictment pursuant to local rules for failure to respond to motion to dismiss); *see also Hampton-Stein v. Aviation Fin. Group, LLC*, 472 Fed. Appx. 455, 457 (9th Cir. 2012) ("We rarely question a district judge's discretion in applying the local rules . . . .").

"Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Tri-Valley CAREs v. U.S. Dept. of*

*Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) (affirming district court's denial of

motion to augment record where party failed to include stipulation for relief or

declaration as to why stipulation could not be obtained, as required by local rules);

*see also Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010)

(affirming district court "strictly enforcing the local rules" by denying

noncompliant request for taxable costs).

     Here, the District Court acted within its discretion in denying Dragicevich's

Motion for failure to comply with Central District of California Local Rule 7-3.

This rule provides:

> ***Conference of Counsel Prior to Filing of Motions.***  In all cases
> not listed as exempt in L.R. 16-12 . . . counsel contemplating
> the filing of any motion shall first contact opposing counsel to
> discuss thoroughly, preferably in person, the substance of the
> contemplated motion and any potential resolution. The
> conference shall take place at least seven (7) days prior to the
> filing of the motion. If the parties are unable to reach a
> resolution which eliminates the necessity for a hearing, counsel
> for the moving party shall include in the notice of motion a
> statement to the following effect:

> "This motion is made following the conference of counsel
> pursuant to L.R. 7-3 which took place on (date)."

C.D. Cal. R. 7-3.

     In the Motion, Dragicevich's counsel excused his failure to comply with

Local Rule 7-3 by stating "[d]ue to the threat of a U.S. government shut-down, this

motion is brought without a meet and confer…." (Chase EOR 21-41).  The District

Court found that there was "no reason to excuse counsel's inexplicable non-compliance with Local Rule 7-3" because the parties' counsel were not employed by the government and "nothing about the 'threat' of a government shutdown could have hindered counsel's ability or opportunity to meet and confer with defense counsel" (EOR 2).

Further, the District Court noted that "Plaintiff's counsel knew by September 6 that his Notice of Appeal was untimely" and he had "plenty of time between September 6 and September 30 (the date he filed the instant Motion) to meet and confer with defense counsel" (EOR 2). The District Court also pointed out that its standing orders "repeatedly warn litigants that the Court enforces Local Rule 7-3," advising litigants that "[t]he Court strictly enforces Local Rule 7-3" and "[c]ounsel must comply with Local Rule 7-3" (EOR 2). Moreover, the District Court noted that Dragicevich's counsel had already been admonished for disregarding applicable deadlines, and the District Court declined to further excuse his failure to abide by procedural requirements (EOR 2).

As shown above, the District Court found that there was no valid excuse for Dragicevich's counsel disregarding Local Rule 7-3, despite his being previously warned to comply with procedural requirements. The District Court was justified in denying Dragicevich's Motion as procedurally improper, and acted well within its discretion. *See Tri-Valley CAREs*, 671 F.3d at 1131.

**D.**    **There Was No Showing of Good Cause or Excusable Neglect and**
**_Corvello_ Does Not Excuse the Failure to File a Timely Notice of**
**Appeal**

Dragicevich argues that, even if the notice of appeal was untimely, good cause exists for granting her Motion because "the law changed in July since the District Court made its ruling that underlies the Judgment," purportedly as a result of the publication of _Corvello v. Wells Fargo Bank_, 728 F.3d 878 (9th Cir. 2013) (AOB 10).

Not only does Dragicevich fail to provide a legal basis showing a change in the law justifies disregarding mandatory jurisdictional requirements, but _Corvello_ is inapplicable to this case.

As noted above, the thirty day time limit to file a notice of appeal is "mandatory and jurisdictional," such that an untimely appeal must be dismissed. _Browder_, 434 U.S. at 264; Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a). This "harsh" deadline applies even where the notice is filed only one day late. _Sprout_, 681 F.2d at 588 (holding district court abused discretion in granting extension of time to appeal without a showing of good cause or excusable neglect where an attorney prepared notice of appeal on the last day to file it and his secretary arrived at the clerk's office shortly after it closed).

A district court _may_ extend the time to file a notice of appeal upon a

showing of "excusable neglect or good cause" for not meeting the original deadline.  Fed. R. App. P. 4(a)(5)(A); *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir. 1986).

The standard for determining excusable neglect is "a 'strict' one."  *Selph v. Council of Los Angeles*, 593 F.2d 881, 883 (9th Cir. 1979).  "The party requesting the extension . . . must certainly show more than mere unilateral inadvertence or mistake of counsel."  *In re Donnell*, 639 F.2d 535, 539 (9th Cir. 1981).   The advisory committee's note to the 2002 amendments to Fed. R. App. P. 4 explains that the "good cause standard applies in situations in which there is no fault -- excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant . . . . [F]or example, [if] the Postal Service fails to deliver a notice of appeal, a movant might have good cause to seek a post-expiration extension."

It is not an abuse of discretion to deny an extension despite appellant's claimed failure to file a timely notice of appeal due to last minute computer problems.  *See Grow v. Garcia*, 459 Fed. Appx. 678, 679 (9th Cir. 2011) ("The district court did not clearly err in concluding that counsel's last-minute excuse regarding computer problems was manufactured, unverifiable, or implausible, and that it failed to establish either good cause based on events beyond counsel's control or otherwise constitute excusable neglect.").

Here, Dragicevich has failed to brief the issue that her notice of appeal was untimely due to "excusable neglect" and it is therefore waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). However, even if the issue was not waived, the record demonstrates that her counsel's failure to ensure that the Notice of Appeal was actually filed on September 3, 2013 is the result of nothing more than "unilateral inadvertence or mistake of counsel" and fails to meet the strict showing required for excusable neglect. *See In re Donnell*, 639 F.2d at 539. Further, Dragicevich's counsel was in control of the electronic filing of the notice of appeal and ensuring that the filing was completed by obtaining an NEF. Dragicevich's counsel's failure to do so does not establish any "good cause" excusing Dragicevich from filing her notice of appeal within the thirty day deadline. *See Grow*, 459 Fed. Appx. at 679.

Additionally, the "excusable neglect or good cause" requirements only apply to an appellant's reason "for not meeting the original deadline." *Alaska Limestone Corp.*, 799 F.2d at 1411. They do not apply, as Dragicevich contends, to the substantive merits of the appeal due to a purported change in law. Nor does *Corvello* apply to the facts of this case. *Corvello* reversed a district court's decision granting motions to dismiss complaints pursuant to Fed. R. Civ. Proc. 12(b)(6) on the grounds that the allegations established that lenders had offered

borrowers Home Affordable Modification Program ("HAMP") trial period plans, the borrowers had fully complied with the trial period plans, and the lenders breached the trial period plans by not offering a permanent modification or notifying the borrowers that they were not entitled to one, as required by the terms of the trial period plans and controlling United States Department of Treasury Guidelines. *Corvello*, 728 F.3d at 880, 884. The *Corvello* court expressly acknowledged that it was limited to evaluating *allegation*s in the complaints and was "unable to consider any such factual assertion on this record and at this stage of the proceedings," such as defenses that the lenders "did in fact determine that the plaintiffs were not qualified, and thus followed Treasury guidelines in choosing not to offer them permanent modifications." *Id.* at 885.

*Corvello* is inapplicable to this case for two reasons. First, the trial plan at issue here is a Chase Modification Program ("CMP") and not a HAMP plan, so the Treasury guidelines that imposed additional conditions regarding trial plans on lenders in *Corvello* do not apply here (EOR 94-95). Second, the District Court here was permitted to consider factual assertions and evidence in the record because it decided this case on a summary judgment motion—not on a motion to dismiss (EOR 7-14). As explained below, the record shows that Dragicevich conceded that she failed to comply with the terms of the trial plan offered by Chase, and thus was not entitled to a permanent modification (EOR 13:4-8; 47,

83).  Thus, *Corvello* is not applicable to this case and cannot establish "good cause" to excuse her late-filed notice of appeal.

Further, in ruling on the Motion for Enlargement of Time, the District Court already had the chance to consider this "change in law" argument based on *Corvello*, as both Dragicevich and Chase briefed this issue in the moving and opposition papers  (Chase EOR 21-41).  The District Court declined to find that *Corvello* constituted "good cause" to extend Dragicevich's time to appeal (EOR 1-2).

## II.     THE MOTION FOR SUMMARY JUDGMENT WAS PROPERLY GRANTED

### A.     All Four Causes of Action Fail Because They Were Based on the Assertion That Chase Breached an Agreement To Permanently Modify Dragicevich's Loan, But There Was No Such Agreement

The District Court properly held that all four causes of action failed since they all "turn on her assertion that the April 16 Letter constituted an acceptance of her proposed modification," and there was no disputed issue of material fact that "the April 16 Letter was not an acceptance of Plaintiff's offer in her March 24 Letter" for a permanent loan modification (EOR 11:13-15; 14:11-15).

First, there is no dispute that all four causes of action are based on Chase allegedly refusing to comply with the modification proposed in the March 24

Letter (AOB 5, 11, 15-18, 20). The elements and allegations regarding the causes of action are as follows:

**First Cause of Action for "Declaratory Relief and Injunctive Remedy – Specific Performance."** The basis of a request for declaratory relief is the "existence of an actual, present controversy over a proper subject." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (2002); Cal. Civ. Proc. Code § 1060. Dragicevich's Declaratory Relief claim is based on the asserted controversy that Chase accepted her modification offer in the March 24 Letter by sending her the April 16 Letter, but Chase thereafter denied its obligations under the agreement (EOR 290-291, ¶¶ 32-33). Dragicevich sought "a Declaration of Rights under the Agreement which consists of the terms and conditions in Plaintiff's Offer dated March 24, 2010…and Chase's Acceptance dated April 16, 2010" and specific performance and injunctive relief ordering Chase to "effectuate the new Agreement" and to "remove all old liens, encumbrances, trust deeds, notices of default, notices of sale…that have been filed or recorded against the Property" (EOR 291-292, ¶¶ 34-38).

**Second Cause of Action for Quiet Title.** In order to quiet title, a plaintiff must present "evidence of plaintiff's title" "against the claims of all the defendants." Cal. Civ. Proc. Code § 764.010. Dragicevich sought to quiet title to the subject property against Chase "on the date of April 16, 2010 which is the date

Chase signed the letter…thus forming the new Agreement" and sought to make "encumbrances" comply with the new Agreement (EOR 293. ¶ 42).

**Third Cause of Action for Breach of Contract.**  The elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for non-performance; (3) defendant's breach of the contract; and (4) the resulting damage to plaintiff.  *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  An enforceable contract requires a meeting of the minds between the parties involved as to all of the material terms. *Terry v. Conlan*, 131 Cal. App. 4th 1445, 1459 (2005) (finding that no contract existed due to lack of meeting of minds as to some of material terms).

Dragicevich based her breach of contract claim on the "conduct" of Chase as alleged throughout the Complaint, which consisted of Chase allegedly refusing to implement the terms of the modification proposed by Dragicevich in her March 24 Letter (EOR 286-288 ¶¶ 19-29; 294 ¶ 47).

**Fourth Cause of Action for "Fraud and Deceptive Business Practices."** The elements of a fraud claim are: "(1) misrepresentation of a material fact (concealment or non-disclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Dragicevich based her fraud claim on the "incorporated allegations" set forth throughout the Complaint, which consist of allegations regarding Chase refusing to implement a final modification (EOR 294 ¶ 49). For example, Dragicevich claims that "Chase's current refusal to follow the Agreement is evidence that Chase's business practice is to commit fraud," and "deceptive business practice includes Chase signing the contract in this case telling Plaintiff in person on March 23, 2010, inducing Plaintiff to make her written offer on March 24, 2010, and Chase accepting the offer in writing on April 16, 2010 that the new Agreement was to modify her mortgage and encumbrances permanently while Chase knew that it would deny the new Agreement at a later date" (EOR 288 ¶ 29).

1.    **The Court Correctly Determined As A Matter of Law That The April 16 Letter Was An Offer of a Trial Plan, Not An Acceptance of Dragicevich's March 24 Offer to Modify Her Loan**

The District Court correctly found that the April 16 Letter was an invitation for Dragicevich "to participate in a Trial Payment Plan while Chase *considered* modifying her loan," and not an unequivocal acceptance of her March 24 Letter offering to enter into a permanent modification with Chase (EOR 12-13).

"The interpretation of a contract is a question of law for the court unless the interpretation depends upon the credibility of extrinsic evidence." *Nungaray v.*

*Litton Loan Servicing, LP*, 200 Cal. App. 4th 1499, 1504 (2011). "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect." *Meyer v. Benko*, 55 Cal. App. 3d 937, 942 (1976). "The paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties. That intent must, in the first instance, be derived from the language of the contract--we must look to the words themselves." *Signal Cos. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 375 (1980). "The language, if clear, explicit and if it does not invoke an absurdity, controls our interpretation." *Id.* "[U]nder California law, the subjective, unexpressed beliefs of the parties do not serve as the basis for whether or not a contract is formed. Instead, the mutual assent necessary to form a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties." *Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 768, 796 (2013) (plaintiffs' "own one-sided 'understanding'" of agreement failed to show a "a meeting of the minds on the essential features" of the agreement).

Dragicevich does not dispute that her March 24 Letter was her "offer" to Chase to modify her loan (EOR 62 ¶¶ 12-13). The only "evidence" Dragicevich presents of an acceptance of her offer consists of her subjective beliefs regarding

the "agreement," the language of the April 16 Letter, and the language of a May 26, 2010 letter ("May 26 Letter") (EOR 45, 64 ¶¶ 21-24, 88-95).

Since Dragicevich presents no evidence to interpret the alleged agreement other than her inadmissible subjective beliefs and the undisputed language of letters sent by Chase, the interpretation of the alleged agreement is a question of law for the court.  *See Nungaray*, 200 Cal. App. 4th at 1504; *Moncada*, 221 Cal. App. 4th at 796.  Further, the language of the April 16 Letter and May 26 Letter controls the alleged agreement's interpretation.  *See Signal Cos.*, 27 Cal. 3d at 375. The letters clearly show that there was no agreement to enter into a permanent loan modification (EOR 88-95, Chase EOR 89-90).  Instead, the only valid agreement consisted of Chase's offer to Dragicevich to enter into a Trial Plan Agreement with terms provided in the April 16 Letter, which Plaintiff accepted (EOR 88-95, 301-305).

The language of the April 16 Letter and May 26 Letter shows that the April 16 Letter was a separate and independent "offer" by Chase of a "Trial Plan Agreement" which required her to accept the offer by returning a signed and dated copy of the Trial Plan, along with "income verification documents" and by submitting a first payment of $2,095.17 by June 1, 2010 (EOR 301-305, 88-95).

Under the "Trial Plan Agreement," Chase would "continue processing [the] workout option" of a "loan modification" to determine if she "[met] the terms of

this Plan," and would "consider a permanent workout solution for [her] Loan" if she made all three payments by June 1, July 1, and August 1, 2010 (EOR 301-305). The "Required Document Checklist" enclosed along with the April 16 Letter stated "To accept this **offer**, and **see if you qualify** for a Chase Home Affordable Modification, send in the 5 items listed below" (EOR 301, 303; Chase EOR 89-90) (emph. added).  The May 26 Letter shows that Chase reminded Dragicevich that under the "Trial Plan Offer" she was "required to make trial plan payments as a condition of approval for a permanent modification" and "[f]ailure to remit trial payments on time may impact your eligibility in the CMP or cause delays in processing your permanent modification" (EOR 45, 64 ¶¶ 21-24, 88-95).  Chase agreed to send her a permanent "Modification Agreement" only "[a]fter successful completion of the Trial Period Plan" (EOR 301-302).  Thus, Chase never accepted Dragicevich's offer of a permanent loan modification, and Chase only offered to consider her eligibility for a permanent loan modification.

**2.    Further, The Court Correctly Held That The Variance Between The Material Terms of the March 24 Letter And The April 16 Letter Demonstrated There Was No Assent To Dragicevich's Offer**

The District Court properly held that the April 16 Letter could not "function as an acceptance of the offer in Plaintiff's March 24 Letter because their material terms are different" (EOR 12:13-15).

"Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) (quoting Cal. Civ. Code §§ 1580, 1550, 1565). For acceptance of an offer to be effective (*i.e.*, to manifest assent to the terms of a contract), it must be unequivocal. *Panagotacos v. Bank of America*, 60 Cal. App. 4th 851, 855-56 (1998) ("Terms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract and a qualified acceptance amounts to a new proposal or counteroffer putting an end to the original offer.") (internal citations omitted.) An enforceable contract requires a meeting of the minds between the parties involved as to all of the material terms. *Terry*, 131 Cal. App. 4th at 1459. To be sufficiently definite, the material terms of a loan contract must include "the identity of the lender and borrower, the amount of the loan, and the terms for repayment"

including the interest rate and amortization schedule.  *Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 115 (1991).

Here, the evidence shows that there was no mutual consent because the material terms of the proposed  modification in Dragicevich's March 24 Letter did not agree with the terms of Chase's April 16 Letter.  A side-by-side comparison of the two letters shows that there was no meeting of the minds with respect to any of the material terms:

| Proposed Term | March 24 Letter | April 16 Letter |
|---|---|---|
| Loan Principal | $450,000 | Not included |
| Annual Interest Rate | 2.00% | Not included |
| Amortization Period | 40 years | Not included |
| Property Taxes and "Mello Roos" | $620 per month | Not included |
| Insurance Premiums | $50 per month | Not included |
| Monthly Principal and Interest Payment | $1,363 per month | Not included |
| Submission of Financial Documentation | Not included | Required |
| Trial Payments | Not included | 3 payments of $2,095.17 due by June 1, July 1, and August 1, 2010 |
| Meeting Financial Eligibility Requirements | Not included | Required |

(EOR 299-303; Chase EOR 89-90).

Dragicevich's argument that her proposed monthly payment amount of $2,033 (consisting of $1,363 for principal and interest, $620 for property taxes, and $50 for insurance) and the Trial Plan Payment amount of $2,095.17 are similar (AOB 16) fails.  California law requires that the material terms be "exactly" the

same. *See Panagotacos*, 60 Cal. App. 4th at 855-56. Further, to the extent Dragicevich argues that Chase would have had to modify the other terms of the loan, such as the principal balance and the interest rate, to make them consistent with the trial payment amount of $2,095.17 (AOB 16-17), this does not establish a meeting of the minds as to the necessary material terms of any proposed loan modification. Accordingly, Chase's April 16 Letter was not, as a matter of law, an acceptance of Dragicevich's March 24 Letter.

### 3.     Dragicevich Did Not Comply With the Terms of the Trial Plan and She Was Ineligible for a Loan Modification

Dragicevich's contention for the first time on appeal that Chase was obligated to provide her with a permanent loan modification because she made three trial payments fails (AOB 11, 17). Neither the terms of the Trial Plan, nor recent case law obligates Chase to offer a permanent modification because Dragicevich failed to successfully complete the Trial Plan.

The April 16 Letter expressly conditioned the offer of any permanent loan modification agreement on the fulfillment of the requirements of the Trial Plan, including timely payment of the trial payments and verification of Dragicevich's income (EOR 301, 303; Chase EOR 89-90). A bank is not required to modify a loan pursuant to a trial plan agreement where a borrower fails to successfully complete a trial plan. *See Nungaray v. Litton Loan Servicing, LP*, 200 Cal. App.

4th 1499, 1504-05.

In *Nungaray*, the Court of Appeal affirmed a trial court's decision to grant summary judgment in favor of a bank where the evidence showed that there was no contract to permanently modify a loan because the borrowers failed to comply with the terms of the trial plan. The court found that the "plain and clear language" of the trial plan provided that the loan would not be modified unless the borrowers "meet all of the conditions required for modification," including submitting trial payments and financial information to the bank who "would determine whether they 'qualif[ied] for the Offer.'" *Id.* at 1504. Although the borrowers submitted trial payments, they failed to provide all required financial information. *Id.* at 1503, 1505. The Court of Appeal held that "[a]s a matter of law, there was no contract here" to provide a permanent loan modification. *Id.* at 1504.

As in *Nungaray*, where borrowers were not contractually entitled to a permanent loan modification where they failed to satisfy all conditions of the trial plan, here Chase was not obligated to provide Dragicevich with a permanent modification because she did not successfully complete the Trial Plan. The undisputed evidence shows that she failed to make her required trial payments by their due dates and her income did not qualify her for a modification. Specifically, the Trial Plan required Dragicevich to make her second and third trial payments by July 1, 2010 and August 1, 2010, or Chase could "terminate the Plan and

commence or continue collection and/or foreclosure proceedings" (EOR 94, 302).

Dragicevich acknowledged that "successful completion of the trial period plan"

meant she was required to make the trial payments by their due dates (Chase EOR

91-99).  Dragicevich conceded that she sent her second and third payments late,

respectively on July 14, 2010 and August 9, 2010 (EOR 47, 100-107, 302; Chase

EOR 98-99).  Chase was entitled to terminate the trial plan for this reason alone

(EOR 94, 302).

Further, Chase determined, after a full review of Dragicevich's financial

information as provided in the trial plan agreement, that she did not have sufficient

verified income to allow Chase to create an affordable payment without changing

the terms of her loan beyond the requirements of HAMP and CMP (EOR 251 ¶ 21,

301, 303; Chase EOR 85-88).  Chase promptly notified Dragicevich that her

request for a loan modification was denied  because analysis of her financial

information determined that there was a negative net present value—the value of

the unmodified loan exceeded the value of the hypothetical modified loan (EOR

251 ¶ 21; Chase EOR 85-88).  At Dragicevich's request, her loan modification

application was escalated for a second review, but the review confirmed that her

income was insufficient for a permanent loan modification (EOR 251 ¶ 22).  The

undisputed evidence shows that Chase fully complied with the terms of the Trial

Plan Agreement, and that Dragicevich was not eligible for a permanent loan

modification.

Contrary to Dragicevich's contention on appeal, no California or federal case holds that a bank is obligated to provide a borrower with a permanent modification solely because a bank accepts trial plan payments (AOB 10-11). In fact, cases acknowledge that a bank is only obligated to provide a permanent modification if a borrower meets all required conditions and successfully completes a trial plan. For example, the sole case cited by Dragicevich, *Corvello*, held that a "bank was contractually required to offer the plaintiffs a permanent mortgage modification after they **complied with the requirements of a trial period plan.**" *Corvello*, 728 F.3d at 880 (emphasis added). Because *Corvello* was decided at the motion to dismiss stage, the court was limited to evaluating the allegations that the borrowers had fully complied with the trial plan, but the court acknowledged that a lender could present evidence at a later stage of proceedings showing it "did in fact determine that the plaintiffs were not qualified, and thus followed Treasury guidelines in choosing not to offer them permanent modifications." *Id.* at 885.

All California decisions that found that a lender breached a trial plan agreement by failing to provide a permanent modification were decided at the pleadings stage on demurrer, and the borrowers had alleged that they fully complied with all requirements of the trial plans. *See Bushell v. JPMorgan Chase*

*Bank*, 220 Cal. App. 4th 915, 926 (2013) (borrowers *alleged* "they 'provid[ed] all the [TPP] documents' Chase requested; they made four timely trial payments as initially called for by the TPP and…they 'qualif[ied] for the modification under HAMP'"); *West v. JPMorgan Chase Bank*, 214 Cal. App. 4th 780, 786 (2013) (borrower alleged she "complied with the terms of the TPP, and timely made every reduced monthly payment on her loan during the trial period").

These cases are inapplicable here because the District Court was not restricted to assuming the truth of Dragicevich's allegations in ruling on summary judgment and the evidence demonstrated that Dragicevich did not successfully complete the Trial Plan because she did not timely make her trial payments and she did not have sufficient income to qualify for a loan modification.

**B.** **All Four Causes of Action Further Fail Because Dragicevich Cannot Prove She Was Damaged By Chase As A Matter Of Law**

Dragicevich's damages consist entirely of expenses and labor incurred in maintaining the property and her alleged stress related to performing this maintenance. (Chase EOR 75-76). Specifically, in response to an interrogatory asking her to "describe in detail all damages that [she] is seeking in this litigation," Dragicevich responded that she is seeking compensation for "[i]mputed labor and out of pocket labor and expenses for maintain Property, guarding the Property to keep it secure from vandalism, trespass and littering,

fixing appliances such as water heater, maintaining and watering landscaping, trash and refuse collection, vermin control, inspect property for leaks, paying for insurance, pay Home Owner Association Fees" ("Maintenance Damages") (Chase EOR 77-78 at 5-6; 75-66). Dragicevich further responded to this interrogatory by stating she has suffered "[a]dditional stress from undergoing the expenses and time maintaining the Property with the impending Notice of Sale on the Property" ("Emotional Distress Damages") (*Id.*, Ex. 12 at 5-6; Ex. 13 at 3). Dragicevich even clarified that she is "not seeking recovery of medical or health professional costs she has incurred as a result of defendants' actions" (*Id.*) Dragicevich has asserted no other damages in this action.

Dragicevich cannot recover her purported Maintenance Damages as a matter of law because such "damages" were the independent and inevitable costs associated with maintaining the property and were not caused by Chase's conduct in offering her a trial plan and denying her for a permanent modification. *See Kruse v. Bank of America*, 202 Cal. App. 3d 38, 60 (1988) ("no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes"); *Jenkins v. JPMorgan Chase Bank*, 216 Cal. App. 4th 497, 523 (2013) (no causation where damages are incurred independent of defendant's conduct). In fact, Dragicevich admitted that she incurred these Maintenance Damages prior to the initiation of non-judicial foreclosure proceedings and that she continues to pay

for these expenses, despite her denial for a loan modification in 2011 (Chase EOR 79-84, 41:16-43:7, 65:16-66:9).  Accordingly, Chase's conduct could not have "caused" her to incur these expenses.  Without proof of this causal connection, Dragicevich cannot prove her Maintenance Damages as a matter of law.

Further, as a matter of law, Dragicevich cannot recover her Emotional Distress Damages based on what is essentially a breach of contract claim regarding a loan.  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 777 (2003) ("damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract in California") (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999) ("No California case has allowed recovery for emotional distress arising solely out of property damage"); *see also Butler-Rupp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1229 (damages caused by breach of lease agreement were "predicated on economic injury to plaintiff" which "precludes recovery of damages for emotional distress").

Nor can Dragicevich recover emotional distress damages on a fraud theory which is predicated on her false assertion that Chase fraudulently promised to modify her loan.  "Emotional distress is not recoverable as an element of damages for fraud."  *Kruse*, 202 Cal. App. 3d at 67 (emotional distress damages were not recoverable where plaintiff claimed bank fraudulently promised to provide long term financing but foreclosed instead); *see also Adriana Int'l. Corp. v. Lewis &*

*Co.*, 913 F.2d 1406, 1415 (9th Cir. 1990) (overturning $200,000 award of emotional distress damages based on claim defendants fraudulently entered into contract without any intention of performing).

Because Dragicevich has failed, as a matter of law, to demonstrate she can recover the element of damages caused by Chase's conduct, all of her claims fail.

## III.   DRAGICEVICH'S COLLATERAL ARGUMENTS FAIL

Rather than directly address any of the District Court's decision granting Chase's motion for summary judgment, the Opening Brief largely makes confusing, irrelevant, and unfounded arguments that fail to show any dispute of material fact.

### A.   There Are No Allegations in the Complaint, Nor Competent Evidence, Regarding an "Invalid" Notice of Default

Dragicevich argues on appeal that the "Notice of Default is invalid because no payments were due at the time defendants recorded it on May 1, 2009 due to a forbearance approved on November 25, 2008 (AOB 13). First, this argument is waived because it was not alleged in the Complaint and a party cannot oppose summary judgment by raising grounds not at issue under the pleadings. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). Second, there is no admissible evidence supporting such a claim. Dragicevich relies upon her own attorney's interpretation of servicing notes which are dated November 25,

2008 and state "RECEIVED LETTER FROM BORR. STATING THAT SHE
WAS IN AN ACCIDENT AND IS UNABLE TO WORK – SPOKE TO
MANAGER AND RECEIVED APPROVAL TO COMPLETE FORBEARANCE"
(AOB 13; EOR 114, 175).  Dragicevich also stated in her interrogatory responses
that "[i]n 2008, Plaintiff believes she made a payment on October 30, 2008. Chase
granted a Forbearance…In late April / early May, 2009 Chase recorded a Notice of
Default in violation of the Forbearance" (EOR 178).  However, Dragicevich
presents no written forbearance agreement, nor does she even introduce evidence
to show what missed monthly payment started her default, such as the Notice of
Default at issue.  Because the statute of frauds precludes an oral modification or
waiver to a deed of trust, Dragicevich cannot claim that an alleged oral forbearance
modified or waived her obligations under the written loan agreement.  *Rottman v.
Hevener*, 54 Cal. App. 474, 481-83 (1921); *see also Secrest v. Sec. Nat'l Mortg.
Loan Trust 2002-2*, 167 Cal. App. 4th 544, 555 (2008).

Further, Dragicevich attacks the Notice of Default alleging that "there are no
documents showing that any interest in the Property in question was among the
assets owned by Washington Mutual at the time Bank acquired those assets" and
Dragicevich disputes that Chase "has any legal basis to proceed with a foreclosure
in this case"  (AOB 22-23).  As set forth above, these arguments are irrelevant
because they were not pleaded in the Complaint.  *Wasco Prods., Inc.*, 435 F.3d at

991.  Further, Dragicevich fails to point to any evidence in the record to support her argument, nor can she because she conceded that she entered into a loan with WaMu, that Chase acquired WaMu's servicing rights in the loan as of September 25, 2008, and that Chase is the current servicer of her loan (EOR 42-44).  Non-judicial foreclosure proceedings can be instituted by the "trustee, mortgagee, or beneficiary, or any of their authorized agents," such as Chase.  Cal. Civ. Code § 2924(a)(1).

In any event, the statutory scheme does not permit a borrower to file suit challenging a party's standing to foreclose.  *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal. App. 4th 42, 46 (2011); *Jenkins*, 216 Cal. App. 4th at 511 ("California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure.").

B.     <u>**The Homeowners Bill of Rights Was Not In Effect Until After The Complaint Was Filed And Is Irrelevant as to The Conduct Alleged**</u>

On appeal, Dragicevich argues that Chase purportedly violated the Homeowners Bill of Rights, (Assem. Bill No. 278 (2011–2012 Reg. Sess.); Sen. Bill No. 900 (2011–2012 Reg. Sess.)) ("HOBR") by engaging in "dual tracking"

and "reassigning Homeowner's file at least 14 times" (AOB 13-14).  Not only are these arguments irrelevant because they were not pleaded in the Complaint, *Wasco Prods., Inc.*, 435 F.3d at 991, but HOBR only went into effect on January 1, 2013, almost a year after the Complaint was filed on January 9, 2012.  *See* Cal. Stats. 2012, Ch. 86.  Accordingly, this belated argument also fails.

### C.    <u>Discovery Disputes Are Not Appropriate Here</u>

In her Opening Brief, Dragicevich argues that Chase "interfered with the timely disposition of this action" by allegedly providing deficient discovery responses (AOB 14-15).  Not only is this untrue, but Dragicevich fails to show how she was entitled to further discovery, as the discovery cut-off was on April 13, 2013, and Chase filed its motion for summary judgment on April 29, 2013 (EOR 310-311).  Further, Dragicevich fails to show what facts she planned to uncover that would have raised an issue of material fact.  *Taylor v. Sentry Life Ins. Co.*, 729 F. 2d 652, 655-56 (9th Cir. 1984) (appellant "has the burden of showing the trial court what facts he hopes to discover that would raise an issue of material fact . . . . Because Taylor failed to make such a showing, the trial court was justified in granting summary judgment without further discovery.").

## <u>CONCLUSION</u>

For these reasons, this Court should affirm the District Court's decision

denying Dragicevich's motion for enlargement of time to appeal and dismiss the

untimely appeal for lack of jurisdiction.  If this Court finds her motion for

enlargement of time to appeal should have been granted, it should affirm the grant

of summary judgment because there are no disputed issues of material fact to

establish Dragicevich's claims.

Dated:  June 6, 2014                    Respectfully submitted,
                                        **BRYAN CAVE LLP**


                                        By:  s/ Andrea N. Winternitz
                                             Andrea N. Winternitz

                                        Attorneys for Defendants-Appellees
                                        JPMORGAN CHASE BANK, N.A.,
                                        individually and as successor by merger to
                                        Chase Home Finance LLC, and
                                        CALIFORNIA RECONVEYANCE
                                        COMPANY

## <u>STATEMENT OF RELATED CASES</u>

In accordance with Ninth Circuit Local Rule 28-2.6, Defendants-Appellees JPmorgan Chase Bank, N.A., individually and as successor by merger to Chase Home Finance LLC, and California Reconveyance Company hereby advise the Court that there are no cases related to this action.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 11,773 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 2003 14 point Times New Roman font.


Dated:  June 6, 2014                          **BRYAN CAVE LLP**

                                             By:  /s/ Andrea N. Winternitz
                                                   Andrea N. Winternitz

                                             Attorneys for Defendants-Appellees
                                             JPMORGAN CHASE BANK, N.A.,
                                             individually and as successor by merger to
                                             Chase Home Finance LLC, and
                                             CALIFORNIA RECONVEYANCE
                                             COMPANY

**(This page intentionally left blank)**

---

# ADDENDUM TO ANSWERING BRIEF

---

## Index of Addendum to Answering Brief

| Statutes and Rules | Page No. |
|---|---|
| 28 U.S.C. § 1291 | 3 |
| 28 U.S.C. § 1332 | 4 |
| 28 U.S.C. § 2107(a) | 10 |
| Assem. Bill No. 278 (2011–2012 Reg. Sess.) | 12 |
| Cal. Civ. Code § 1550 | 37 |
| Cal. Civ. Code § 1565 | 38 |
| Cal. Civ. Code § 1580 | 39 |
| Cal. Civ. Code § 2924(a)(1) | 40 |
| Cal. Civ. Code § 2924l | 42 |
| Cal. Civ. Proc. Code § 1060 | 44 |
| Cal. Civ. Proc. Code § 764.010 | 45 |
| Sen. Bill No. 900 (2011–2012 Reg. Sess.) | 46 |
| 9th Circuit Rule 28-2.7 | 71 |
| C.D. Cal. R. 5-3.2.1 | 72 |
| C.D. Cal. R. 5-4.1 | 73 |
| C.D. Cal. R. 5-4.1.3(5) | 74 |
| C.D. Cal. R. 5-4.7.2 | 75 |
| C.D. Cal. R. 7-3 | 76 |
| Fed. R. App. P. 28(f) | 77 |
| Fed. R. App. P. 3 | 78 |
| Fed. R. App. P. 3(a)(1) | 78 |
| Fed. R. App. P. 3(c) | 78 |
| Fed. R. App. P. 4 | 80 |

| Statutes and Rules | Page No. |
|---|---|
| Fed. R. App. P. 4(a)(1)(A) | 80 |
| Fed. R. App. P. 4(a)(5) | 81 |
| Fed. R. Civ. P. 12(b)(6) | 82 |
| Fed. R. Civ. P. 56(c) | 83 |
| Fed. R. Civ. P. 56(e) | 84 |
| Fed. R. Civ. P. 83(a)(1) | 85 |

Westlaw.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)
        → → § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

28 U.S.C.A. § 1332                                                                                                Page 1

▷

**Effective:|See Notes]**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)
        **→→ § 1332. Diversity of citizenship; amount in controversy; costs**

    <Notes of Decisions for 28 USCA § 1332 are displayed in two separate documents. Notes of Decisions for subdivisions I to X are contained in this document. For Notes of Decisions for subdivisions XI to end, see second document for 28 USCA § 1332.>

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    **(1)** citizens of different States;

    **(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

**(b)** Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

**(c)** For the purposes of this section and section 1441 of this title--

    **(1)** a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of--

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(A) every State and foreign state of which the insured is a citizen;

(B) every State and foreign state by which the insurer has been incorporated; and

(C) the State or foreign state where the insurer has its principal place of business; and

(2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d)(1) In this subsection--

(A) the term "class" means all of the class members in a class action;

(B) the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

(C) the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

(D) the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

**(E)** whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

**(F)** whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

**(4)** A district court shall decline to exercise jurisdiction under paragraph (2)--

**(A)(i)** over a class action in which--

**(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

**(II)** at least 1 defendant is a defendant--

**(aa)** from whom significant relief is sought by members of the plaintiff class;

**(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

**(cc)** who is a citizen of the State in which the action was originally filed; and

**(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

**(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

**(B)** two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

**(5)** Paragraphs (2) through (4) shall not apply to any class action in which--

**(A)** the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

**(B)** the number of members of all proposed plaintiff classes in the aggregate is less than 100.

**(6)** In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(7) Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

(8) This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

(9) Paragraph (2) shall not apply to any class action that solely involves a claim--

(A) concerning a covered security as defined under 16(f)(3) [FN1] of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)[FN2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C 78bb(f)(5)(E));

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

(10) For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

(11)(A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

(B)(i) As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

(ii) As used in subparagraph (A), the term "mass action" shall not include any civil action in which--

(I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

(II) the claims are joined upon motion of a defendant;

(III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**(IV)** the claims have been consolidated or coordinated solely for pretrial proceedings.

**(C)(i)** Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

**(ii)** This subparagraph will not apply--

**(I)** to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

**(II)** if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

**(D)** The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

**(e)** The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 930; July 26, 1956, c. 740, 70 Stat. 658; July 25, 1958, Pub.L. 85-554, § 2, 72 Stat. 415; Aug. 14, 1964, Pub.L. 88-439, § 1, 78 Stat. 445; Oct. 21, 1976, Pub.L. 94-583, § 3, 90 Stat. 2891; Nov. 19, 1988, Pub.L. 100-702, Title II, §§ 201(a), 202(a), 203(a), 102 Stat. 4646; Oct. 19, 1996, Pub.L. 104-317, Title II, § 205(a), 110 Stat. 3850; Feb. 18, 2005, Pub.L. 109-2, § 4(a), 119 Stat. 9; Pub.L. 112-63, Title I, §§ 101, 102, Dec. 7, 2011, 125 Stat. 758.)

[FN1] So in original. Reference to "16(f)(3)" probably should be preceded by "section".

[FN2] So in original. Probably should be "77p(f)(3)".

2011 Acts. Pub.L. 112-63, Title I, § 105, Dec. 7, 2011, 125 Stat. 762, provided that:

**"(a) In general.--**Subject to subsection (b), the amendments made by this title [Title I of Pub.L. 112-63, enacting 28 U.S.C.A. § 1445 and amending this section and 28 U.S.C.A. §§ 1441, 1446, and 1453] shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act [Dec. 7, 2011], and shall apply to any action or prosecution commenced on or after such effective date.

**"(b) Treatment of cases removed to Federal court.--**For purposes of subsection (a), an action or prosecution commenced in State court and removed to Federal court shall be deemed to commence on the date the action or prosecution was commenced, within the meaning of State law, in State court."

1996 Acts. Section 205(b) of Pub.L. 104-317 provided that: "The amendment made by this section [amending

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

8

this section] shall take effect 90 days after the date of enactment of this Act [Oct. 19, 1996]."

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

C

**Effective: December 1, 2011**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part V. Procedure
      Chapter 133. Review--Miscellaneous Provisions (Refs & Annos)
        →→ **§ 2107. Time for appeal to court of appeals**

**(a)** Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.

**(b)** In any such action, suit, or proceeding, the time as to all parties shall be 60 days from such entry if one of the parties is--

  **(1)** the United States;

  **(2)** a United States agency;

  **(3)** a United States officer or employee sued in an official capacity; or

  **(4)** a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States, including all instances in which the United States represents that officer or employee when the judgment, order, or decree is entered or files the appeal for that officer or employee.

**(c)** The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause. In addition, if the district court finds--

  **(1)** that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

  **(2)** that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

**(d)** This section shall not apply to bankruptcy matters or other proceedings under Title 11.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 963; May 24, 1949, c. 139, §§ 107, 108, 63 Stat. 104; Nov. 6, 1978, Pub.L. 95-598, Title II, § 248, 92 Stat. 2672; Dec. 9, 1991, Pub.L. 102-198, § 12, 105 Stat. 1627; May 7, 2009, Pub.L. 111-16, § 6(3), 123 Stat. 1608; Pub.L. 112-62, § 3, Nov. 29, 2011, 125 Stat. 757.)

Current through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14

Westlaw. (C) 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

## Assembly Bill No. 278

### CHAPTER 86

An act to amend and add Sections 2923.5 and 2923.6 of, to amend and repeal Section 2924 of, to add Sections 2920.5, 2923.4, 2923.7, 2924.17, and 2924.20 to, to add and repeal Sections 2923.55, 2924.9, 2924.10, 2924.18, and 2924.19 of, and to add, repeal, and add Sections 2924.11, 2924.12, and 2924.15 of, the Civil Code, relating to mortgages.

[Approved by Governor July 11, 2012. Filed with
Secretary of State July 11, 2012.]

#### LEGISLATIVE COUNSEL'S DIGEST

AB 278, Eng. Mortgages and deeds of trust: foreclosure.

(1) Existing law, until January 1, 2013, requires a mortgagee, trustee, beneficiary, or authorized agent to contact the borrower prior to filing a notice of default to explore options for the borrower to avoid foreclosure, as specified. Existing law requires a notice of default or, in certain circumstances, a notice of sale, to include a declaration stating that the mortgagee, trustee, beneficiary, or authorized agent has contacted the borrower, or has tried with due diligence to contact the borrower, or that no contact was required for a specified reason.

This bill would add mortgage servicers, as defined, to these provisions and would extend the operation of these provisions indefinitely, except that it would delete the requirement with respect to a notice of sale. The bill would, until January 1, 2018, additionally require the borrower, as defined, to be provided with specified information in writing prior to recordation of a notice of default and, in certain circumstances, within 5 business days after recordation. The bill would prohibit a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent from recording a notice of default or, until January 1, 2018, recording a notice of sale or conducting a trustee's sale while a complete first lien loan modification application is pending, under specified conditions. The bill would, until January 1, 2018, establish additional procedures to be followed regarding a first lien loan modification application, the denial of an application, and a borrower's right to appeal a denial.

(2) Existing law imposes various requirements that must be satisfied prior to exercising a power of sale under a mortgage or deed of trust, including, among other things, recording a notice of default and a notice of sale.

The bill would, until January 1, 2018, require a written notice to the borrower after the postponement of a foreclosure sale in order to advise the borrower of any new sale date and time, as specified. The bill would provide that an entity shall not record a notice of default or otherwise initiate the

94

foreclosure process unless it is the holder of the beneficial interest under the deed of trust, the original or substituted trustee, or the designated agent of the holder of the beneficial interest, as specified.

The bill would prohibit recordation of a notice of default or a notice of sale or the conduct of a trustee's sale if a foreclosure prevention alternative has been approved and certain conditions exist and would, until January 1, 2018, require recordation of a rescission of those notices upon execution of a permanent foreclosure prevention alternative. The bill would, until January 1, 2018, prohibit the collection of application fees and the collection of late fees while a foreclosure prevention alternative is being considered, if certain criteria are met, and would require a subsequent mortgage servicer to honor any previously approved foreclosure prevention alternative.

The bill would authorize a borrower to seek an injunction and damages for violations of certain of the provisions described above, except as specified. The bill would authorize the greater of treble actual damages or $50,000 in statutory damages if a violation of certain provisions is found to be intentional or reckless or resulted from willful misconduct, as specified. The bill would authorize the awarding of attorneys' fees for prevailing borrowers, as specified. Violations of these provisions by licensees of the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate would also be violations of those respective licensing laws. Because a violation of certain of those licensing laws is a crime, the bill would impose a state-mandated local program.

The bill would provide that the requirements imposed on mortgage servicers, and mortgagees, trustees, beneficiaries, and authorized agents, described above are applicable only to mortgages or deeds of trust secured by residential real property not exceeding 4 dwelling units that is owner-occupied, as defined, and, until January 1, 2018, only to those entities who conduct more than 175 foreclosure sales per year or annual reporting period, except as specified.

The bill would require, upon request from a borrower who requests a foreclosure prevention alternative, a mortgage servicer who conducts more than 175 foreclosure sales per year or annual reporting period to establish a single point of contact and provide the borrower with one or more direct means of communication with the single point of contact. The bill would specify various responsibilities of the single point of contact. The bill would define single point of contact for these purposes.

(3) Existing law prescribes documents that may be recorded or filed in court.

This bill would require that a specified declaration, notice of default, notice of sale, deed of trust, assignment of a deed of trust, substitution of trustee, or declaration or affidavit filed in any court relative to a foreclosure proceeding or recorded by or on behalf of a mortgage servicer shall be accurate and complete and supported by competent and reliable evidence. The bill would require that before recording or filing any of those documents, a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose,

94

—3—                                    Ch. 86

including the borrower's loan status and loan information. The bill would, until January 1, 2018, provide that any mortgage servicer that engages in multiple and repeated violations of these requirements shall be liable for a civil penalty of up to $7,500 per mortgage or deed of trust, in an action brought by specified state and local government entities, and would also authorize administrative enforcement against licensees of the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate.

The bill would authorize the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate to adopt regulations applicable to persons and entities under their respective jurisdictions for purposes of the provisions described above. The bill would provide that a violation of those regulations would be enforceable only by the regulating agency.

(4) The bill would state findings and declarations of the Legislature in relation to foreclosures in the state generally, and would state the purposes of the bill.

(5) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will

94

help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

SEC. 2.  Section 2920.5 is added to the Civil Code, to read:

2920.5.  For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c) (1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

SEC. 3.  Section 2923.4 is added to the Civil Code, to read:

2923.4.  (a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in

94

15

the act that added this section, however, shall be interpreted to require a particular result of that process.

(b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

SEC. 4.  Section 2923.5 of the Civil Code is amended to read:

2923.5.  (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower

94

occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 5.  Section 2923.5 is added to the Civil Code, to read:

2923.5.  (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

94

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with subdivision (a) of Section 2924.11, if the borrower has provided a complete application as defined in subdivision (f) of Section 2924.11.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is

94

18

answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall become operative on January 1, 2018.

SEC. 6.    Section 2923.55 is added to the Civil Code, to read:

2923.55.    (a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b) (1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Sec. 501 et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

94

**Ch. 86**

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours

94

and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 7.    Section 2923.6 of the Civil Code is amended to read:

2923.6.    (a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

94

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 8. Section 2923.6 is added to the Civil Code, to read:

2923.6. (a) The Legislature finds and declares that any duty mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

94

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall become operative on January 1, 2018.

SEC. 9.    Section 2923.7 is added to the Civil Code, to read:

2923.7.    (a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) (1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and

94

Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

SEC. 10.   Section 2924 of the Civil Code, as amended by Section 1 of Chapter 180 of the Statutes of 2010, is amended to read:

2924.   (a)  Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A)  A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B)  A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C)  A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

94

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

94

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

SEC. 11.    Section 2924 of the Civil Code, as amended by Section 2 of Chapter 180 of the Statutes of 2010, is repealed.

SEC. 12.    Section 2924.9 is added to the Civil Code, to read:

2924.9.    (a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(d) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 13.    Section 2924.10 is added to the Civil Code, to read:

2924.10.    (a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

94

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 14.    Section 2924.11 is added to the Civil Code, to read:

2924.11.    (a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and

94

proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e)  The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f)  The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g)  If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h)  This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i)  This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 15.  Section 2924.11 is added to the Civil Code, to read:

2924.11.  (a)  If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.

(b)  Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying with specificity the reasons for the denial and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer.

(c)  If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1)  The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2)  A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder,

94

and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(d) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(e) This section applies only to mortgages or deeds of trust as described in Section 2924.15.

(f) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(g) This section shall become operative on January 1, 2018.

SEC. 16.  Section 2924.12 is added to the Civil Code, to read:

2924.12.  (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

94

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 17. Section 2924.12 is added to the Civil Code, to read:

2924.12. (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or

authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c)  A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d)  A violation of Section 2923.5, 2923.7, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e)  No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f)  A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2923.7, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g)  The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h)  A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(i)  This section shall become operative on January 1, 2018.

SEC. 18.  Section 2924.15 is added to the Civil Code, to read:

2924.15.  (a)  Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 19.  Section 2924.15 is added to the Civil Code, to read:

2924.15.  (a)  Unless otherwise provided, Sections 2923.5, 2923.7, and 2924.11 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more

94

than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall become operative on January 1, 2018.

SEC. 20.   Section 2924.17 is added to the Civil Code, to read:

2924.17.   (a)  A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in Section 17204 of the Business and Professions Code, or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these entities. This subdivision shall be inoperative on January 1, 2018.

SEC. 21.   Section 2924.18 is added to the Civil Code, to read:

2924.18.   (a)  (1)  If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

(2)  If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(A)  The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B)  A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

94

**Ch. 86**

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 22.   Section 2924.19 is added to the Civil Code, to read:

94

2924.19.  (a)  (1)  If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17 or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

94

(j)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 23.   Section 2924.20 is added to the Civil Code, to read:

2924.20.   Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

SEC. 24.   The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 25.   No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

**CIVIL CODE - CIV**



**DIVISION 3. OBLIGATIONS [1427 - 3272.9]** *( Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14. )*
    **PART 2. CONTRACTS [1549 - 1701]** *( Part 2 enacted 1872. )*
      **TITLE 1. NATURE OF A CONTRACT [1549 - 1615]** *( Title 1 enacted 1872. )*

**CHAPTER 1. Definition [1549 - 1550]** *( Chapter 1 enacted 1872. )*

[1550.] It is essential to the existence of a contract that there should be:

1. Parties capable of contracting;

2. Their consent;

3. A lawful object; and,

4. A sufficient cause or consideration.

*(Enacted 1872.)*

**CIVIL CODE - CIV**



    **DIVISION 3. OBLIGATIONS [1427 - 3272.9]** *( Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14. )*
       **PART 2. CONTRACTS [1549 - 1701]** *( Part 2 enacted 1872. )*
       **TITLE 1. NATURE OF A CONTRACT [1549 - 1615]** *( Title 1 enacted 1872. )*

**CHAPTER 3. Consent [1565 - 1590]** *( Chapter 3 enacted 1872. )*

**1565.** The consent of the parties to a contract must be:

1. Free;

2. Mutual; and,

3. Communicated by each to the other.

*(Enacted 1872.)*

CIVIL CODE - CIV



**DIVISION 3. OBLIGATIONS [1427 - 3272.9]** *( Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14. )*
    **PART 2. CONTRACTS [1549 - 1701]** *( Part 2 enacted 1872. )*
        **TITLE 1. NATURE OF A CONTRACT [1549 - 1615]** *( Title 1 enacted 1872. )*

**CHAPTER 3. Consent [1565 - 1590]** *( Chapter 3 enacted 1872. )*

[1580.] Consent is not mutual, unless the parties all agree upon the same thing in the same sense. But in certain cases defined by the Chapter on Interpretation, they are to be deemed so to agree without regard to the fact.

*(Enacted 1872.)*



CIVIL CODE - CIV

**DIVISION 3. OBLIGATIONS [1427 - 3272.9]** *( Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14. )*
    **PART 4. OBLIGATIONS ARISING FROM PARTICULAR TRANSACTIONS [1738 - 3272.9]** *( Part 4 enacted 1872. )*
        **TITLE 14. LIEN [2872 - 3081]** *( Title 14 enacted 1872. )*
            **CHAPTER 2. Mortgage [2920 - 2967]** *( Chapter 2 enacted 1872. )*

ARTICLE 1. Mortgages in General [2920 - 2944.7] *( Article 1 enacted 1872. )*

2924. (a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by

subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

*(Amended (as amended by Stats. 2010, Ch. 180, Sec. 1) by Stats. 2012, Ch. 556, Sec. 2.5. Effective January 1, 2013.)*

Westlaw.

West's Ann.Cal.Civ.Code § 2924l                                                                 Page 1

C

**Effective: January 1, 2005**

West's Annotated California Codes Currentness
  Civil Code (Refs & Annos)
    Division 3. Obligations (Refs & Annos)
      Part 4. Obligations Arising from Particular Transactions (Refs & Annos)
        Title 14. Lien
          ⁘ Chapter 2. Mortgage (Refs & Annos)
            ⁘ Article 1. Mortgages in General (Refs & Annos)
              →→ **§ 2924l. Declaration of nonmonetary status; trustee named in action or proceeding in trustee capacity; objections**

(a) In the event that a trustee under a deed of trust is named in an action or proceeding in which that deed of trust is the subject, and in the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee, then, at any time, the trustee may file a declaration of nonmonetary status. The declaration shall be served on the parties in the manner set forth in Chapter 5 (commencing with Section 1010) of Title 14 of the Code of Civil Procedure.

(b) The declaration of nonmonetary status shall set forth the status of the trustee as trustee under the deed of trust that is the subject of the action or proceeding, that the trustee knows or maintains a reasonable belief that it has been named as a defendant in the proceeding solely in its capacity as a trustee under the deed of trust, its reasonable belief that it has not been named as a defendant due to any acts or omissions on its part in the performance of its duties as trustee, the basis for that knowledge or reasonable belief, and that it agrees to be bound by whatever order or judgment is issued by the court regarding the subject deed of trust.

(c) The parties who have appeared in the action or proceeding shall have 15 days from the service of the declaration by the trustee in which to object to the nonmonetary judgment status of the trustee. Any objection shall set forth the factual basis on which the objection is based and shall be served on the trustee.

(d) In the event that no objection is served within the 15-day objection period, the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards as and for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is the subject of the action or proceeding.

(e) In the event of a timely objection to the declaration of nonmonetary status, the trustee shall thereafter be required to participate in the action or proceeding.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Additionally, in the event that the parties elect not to, or fail to, timely object to the declaration of nonmonetary status, but later through discovery, or otherwise, determine that the trustee should participate in the action because of the performance of its duties as a trustee, the parties may file and serve on all parties and the trustee a motion pursuant to Section 473 of the Code of Civil Procedure that specifies the factual basis for the demand. Upon the court's granting of the motion, the trustee shall thereafter be required to participate in the action or proceeding, and the court shall provide sufficient time prior to trial for the trustee to be able to respond to the complaint, to conduct discovery, and to bring other pretrial motions in accordance with the Code of Civil Procedure.

(f) Upon the filing of the declaration of nonmonetary status, the time within which the trustee is required to file an answer or other responsive pleading shall be tolled for the period of time within which the opposing parties may respond to the declaration. Upon the timely service of an objection to the declaration on nonmonetary status, the trustee shall have 30 days from the date of service within which to file an answer or other responsive pleading to the complaint or cross-complaint.

(g) For purposes of this section, "trustee" includes any agent or employee of the trustee who performs some or all of the duties of a trustee under this article, and includes substituted trustees and agents of the beneficiary or trustee.

CREDIT(S)

(Added by Stats.1995, c. 752 (A.B.1695), § 4. Amended by Stats.1997, c. 74 (S.B.665), § 6; Stats.1999, c. 974 (A.B 431), § 13; Stats.2004, c. 177 (S.B.1277), § 4.)

Current with urgency legislation through Ch. 22 of 2014 Reg.Sess., Res. Ch. 1 of 2013-2014 2nd Ex.Sess., and all propositions on the 6/3/2014 ballot

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# CODE OF CIVIL PROCEDURE - CCP



## PART 2. OF CIVIL ACTIONS [307 - 1062.20]  *( Part 2 enacted 1872. )*
### TITLE 14. OF MISCELLANEOUS PROVISIONS [989 - 1062.20]  *( Title 14 enacted 1872. )*

**CHAPTER 8. Declaratory Relief [1060 - 1062.5]**  *( Chapter 8 added by Stats. 1921, Ch. 463. )*

**1060.**  Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

*(Amended by Stats. 2002, Ch. 784, Sec. 73. Effective January 1, 2003.)*

CODE OF CIVIL PROCEDURE - CCP



PART 2. OF CIVIL ACTIONS [307 - 1062.20]  ( Part 2 enacted 1872. )
  TITLE 10. ACTIONS IN PARTICULAR CASES [725a - 871.7]  ( Title 10 enacted 1872. )
    CHAPTER 4. Quiet Title [760.010 - 765.060]  ( Chapter 4 added by Stats. 1980, Ch. 44,
Sec. 15. )

ARTICLE 5. Judgment [764.010 - 764.080]  ( Article 5 added by Stats. 1980, Ch. 44, Sec. 15. )

764.010.  The court shall examine into and determine the plaintiff's title against the claims of all the
defendants. The court shall not enter judgment by default but shall in all cases require evidence of
plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants,
other than claims the validity of which is admitted by the plaintiff in the complaint. The court shall
render judgment in accordance with the evidence and the law.

(Added by Stats. 1980, Ch. 44, Sec. 15.)

**Senate Bill No. 900**

CHAPTER 87

An act to amend and add Sections 2923.5 and 2923.6 of, to amend and repeal Section 2924 of, to add Sections 2920.5, 2923.4, 2923.7, 2924.17, and 2924.20 to, to add and repeal Sections 2923.55, 2924.9, 2924.10, 2924.18, and 2924.19 of, and to add, repeal, and add Sections 2924.11, 2924.12, and 2924.15 of, the Civil Code, relating to mortgages.

[Approved by Governor July 11, 2012. Filed with
Secretary of State July 11, 2012.]

LEGISLATIVE COUNSEL'S DIGEST

SB 900, Leno. Mortgages and deeds of trust: foreclosure.

(1) Existing law, until January 1, 2013, requires a mortgagee, trustee, beneficiary, or authorized agent to contact the borrower prior to filing a notice of default to explore options for the borrower to avoid foreclosure, as specified. Existing law requires a notice of default or, in certain circumstances, a notice of sale, to include a declaration stating that the mortgagee, trustee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower, or that no contact was required for a specified reason.

This bill would add mortgage servicers, as defined, to these provisions and would extend the operation of these provisions indefinitely, except that it would delete the requirement with respect to a notice of sale. The bill would, until January 1, 2018, additionally require the borrower, as defined, to be provided with specified information in writing prior to recordation of a notice of default and, in certain circumstances, within 5 business days after recordation. The bill would prohibit a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent from recording a notice of default or, until January 1, 2018, recording a notice of sale or conducting a trustee's sale while a complete first lien loan modification application is pending, under specified conditions. The bill would, until January 1, 2018, establish additional procedures to be followed regarding a first lien loan modification application, the denial of an application, and a borrower's right to appeal a denial.

(2) Existing law imposes various requirements that must be satisfied prior to exercising a power of sale under a mortgage or deed of trust, including, among other things, recording a notice of default and a notice of sale.

The bill would, until January 1, 2018, require a written notice to the borrower after the postponement of a foreclosure sale in order to advise the borrower of any new sale date and time, as specified. The bill would provide that an entity shall not record a notice of default or otherwise initiate the

93

foreclosure process unless it is the holder of the beneficial interest under the deed of trust, the original or substituted trustee, or the designated agent of the holder of the beneficial interest, as specified.

The bill would prohibit recordation of a notice of default or a notice of sale or the conduct of a trustee's sale if a foreclosure prevention alternative has been approved and certain conditions exist and would, until January 1, 2018, require recordation of a rescission of those notices upon execution of a permanent foreclosure prevention alternative. The bill would until January 1, 2018, prohibit the collection of application fees and the collection of late fees while a foreclosure prevention alternative is being considered, if certain criteria are met, and would require a subsequent mortgage servicer to honor any previously approved foreclosure prevention alternative.

The bill would authorize a borrower to seek an injunction and damages for violations of certain of the provisions described above, except as specified. The bill would authorize the greater of treble actual damages or $50,000 in statutory damages if a violation of certain provisions is found to be intentional or reckless or resulted from willful misconduct, as specified. The bill would authorize the awarding of attorneys' fees for prevailing borrowers, as specified. Violations of these provisions by licensees of the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate would also be violations of those respective licensing laws. Because a violation of certain of those licensing laws is a crime, the bill would impose a state-mandated local program.

The bill would provide that the requirements imposed on mortgage servicers, and mortgagees, trustees, beneficiaries, and authorized agents, described above are applicable only to mortgages or deeds of trust secured by residential real property not exceeding 4 dwelling units that is owner-occupied, as defined, and, until January 1, 2018, only to those entities who conduct more than 175 foreclosure sales per year or annual reporting period, except as specified.

The bill would require, upon request from a borrower who requests a foreclosure prevention alternative, a mortgage servicer who conducts more than 175 foreclosure sales per year or annual reporting period to establish a single point of contact and provide the borrower with one or more direct means of communication with the single point of contact. The bill would specify various responsibilities of the single point of contact. The bill would define single point of contact for these purposes.

(3) Existing law prescribes documents that may be recorded or filed in court.

This bill would require that a specified declaration, notice of default, notice of sale, deed of trust, assignment of a deed of trust, substitution of trustee, or declaration or affidavit filed in any court relative to a foreclosure proceeding or recorded by or on behalf of a mortgage servicer shall be accurate and complete and supported by competent and reliable evidence. The bill would require that, before recording or filing any of those documents, a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to

93

foreclose, including the borrower's loan status and loan information. The bill would, until January 1, 2018, provide that any mortgage servicer that engages in multiple and repeated violations of these requirements shall be liable for a civil penalty of up to $7,500 per mortgage or deed of trust, in an action brought by specified state and local government entities, and would also authorize administrative enforcement against licensees of the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate.

The bill would authorize the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate to adopt regulations applicable to persons and entities under their respective jurisdictions for purposes of the provisions described above. The bill would provide that a violation of those regulations would be enforceable only by the regulating agency.

(4) The bill would state findings and declarations of the Legislature in relation to foreclosures in the state generally, and would state the purposes of the bill.

(5) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will

93

help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

SEC. 2. Section 2920.5 is added to the Civil Code, to read:

2920.5. For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c) (1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

SEC. 3. Section 2923.4 is added to the Civil Code, to read:

2923.4. (a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in

93

— 5 —                                              **Ch. 87**

the act that added this section, however, shall be interpreted to require a particular result of that process.

(b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

SEC. 4.   Section 2923.5 of the Civil Code is amended to read:

2923.5.   (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower

93

occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 5.   Section 2923.5 is added to the Civil Code, to read:

2923.5.  (a) (1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

93

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with subdivision (a) of Section 2924.11, if the borrower has provided a complete application as defined in subdivision (f) of Section 2924.11.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is

93

answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall become operative on January 1, 2018.

SEC. 6.   Section 2923.55 is added to the Civil Code, to read:

2923.55.   (a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b) (1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Sec. 501 et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

93

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours

93

and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 7.  Section 2923.6 of the Civil Code is amended to read:

2923.6.  (a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

93

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

93

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 8. Section 2923.6 is added to the Civil Code, to read:

2923.6. (a) The Legislature finds and declares that any duty mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

93

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall become operative on January 1, 2018.

SEC. 9.   Section 2923.7 is added to the Civil Code, to read:

2923.7.   (a)  Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) (1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and

93

Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2)  Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

SEC. 10.  Section 2924 of the Civil Code, as amended by Section 1 of Chapter 180 of the Statutes of 2010, is amended to read:

2924.  (a)  Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1)  The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A)  A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B)  A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C)  A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

93

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

SEC. 11.    Section 2924 of the Civil Code, as amended by Section 2 of Chapter 180 of the Statutes of 2010, is repealed.

SEC. 12.    Section 2924.9 is added to the Civil Code, to read:

2924.9.    (a)  Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6; within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b)  This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c)  This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(d)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 13.    Section 2924.10 is added to the Civil Code, to read:

2924.10.    (a)  When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

93

(2)  Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3)  Any expiration dates for submitted documents.

(4)  Any deficiency in the borrower's first lien loan modification application.

(b)  For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c)  This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d)  This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 14.   Section 2924.11 is added to the Civil Code, to read:

2924.11.   (a)  If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1)  The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2)  A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b)  If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(1)  The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2)  A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c)  When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d)  A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and

93

proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 15. Section 2924.11 is added to the Civil Code, to read:

2924.11. (a) If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.

(b) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying with specificity the reasons for the denial and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer.

(c) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder,

93

and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(d) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer..

(e) This section applies only to mortgages or deeds of trust as described in Section 2924.15.

(f) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(g) This section shall become operative on January 1, 2018.

SEC. 16. Section 2924.12 is added to the Civil Code, to read:

2924.12. (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

93

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 17.  Section 2924.12 is added to the Civil Code, to read:

2924.12.  (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or

93

authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2923.7, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2923.7, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(i) This section shall become operative on January 1, 2018.

SEC. 18.  Section 2924.15 is added to the Civil Code, to read:

2924.15.  (a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 19.  Section 2924.15 is added to the Civil Code, to read:

2924.15.  (a) Unless otherwise provided, Sections 2923.5, 2923.7, and 2924.11 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more

93

than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall become operative on January 1, 2018.

SEC. 20.  Section 2924.17 is added to the Civil Code, to read:

2924.17.  (a)  A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in Section 17204 of the Business and Professions Code, or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these entities. This subdivision shall be inoperative on January 1, 2018.

SEC. 21.  Section 2924.18 is added to the Civil Code, to read:

2924.18.  (a) (1)  If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

(2)  If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(A)  The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B)  A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

93

**Ch. 87**

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 22.  Section 2924.19 is added to the Civil Code, to read:

93

2924.19.  (a)  (1)  If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2)  Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b)  After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c)  A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d)  A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e)  No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f)  A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17 or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g)  The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h)  A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i)  This section shall apply only to entities described in subdivision (b) of Section 2924.18.

93

**Ch. 87**

(j)  This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

SEC. 23.  Section 2924.20 is added to the Civil Code, to read:

2924.20.   Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

SEC. 24.  The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 25.  No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

93

## 28-2.6. Statement of Related Cases

Each party shall identify in a statement on the last page of its initial brief any known related case pending in this Court. As to each such case, the statement shall include the name and Court of Appeals docket number of the related case and describe its relationship to the case being briefed. Cases are deemed related if they:

**(a)**    arise out of the same or consolidated cases in the district court or agency;

**(b)**    are cases previously heard in this Court which concern the case being briefed;

**(c)**    raise the same or closely related issues; or

**(d)**    involve the same transaction or event.

If no other cases in this Court are deemed related, a statement shall be made to that effect. The appellee need not include any case identified as related in the appellant's brief.

## 28-2.7. Addendum to Briefs

**Statutory.** Pertinent constitutional provisions, treaties, statutes, ordinances, regulations or rules must be set forth verbatim and with appropriate citation either (1) following the statement of issues presented for review or (2) in an addendum introduced by a table of contents and bound with the brief or separately; in the latter case, a statement must appear referencing the addendum after the statement of issues. If this material is included in an addendum bound with the brief, the addendum must be separated from the body of the brief (and from any other addendum) by a distinctively colored page. A party need not resubmit material included with a previous brief or addendum; if it is not repeated, a statement must appear under this heading as follows: [e]xcept for the following, all applicable statutes, etc., are contained in the brief or addendum of _____. *(Rev. 12/1/09)*

**Orders Challenged in Immigration Cases.** All opening briefs filed in counseled petitions for review of immigration cases must include an addendum comprised of the orders being challenged, including any orders of the immigration court and Board of Immigration Appeals. The addendum shall be bound with the brief but separated from the brief by a distinctively colored page. *(New 7/1/07; Rev. 12/1/09)*

## 28-2.8. Record References

Every assertion in briefs regarding matters in the record shall be supported by a reference to the location in the excerpts of record where the matter is to be found. *(Rev. 7/1/98; 12/1/09)*

## 28-2.9. Bankruptcy Appeals *[Abrogated 12/1/09]*

## *CIRCUIT ADVISORY COMMITTEE NOTE TO RULE 28-2*

*Sanctions may be imposed for failure to comply with this rule, particularly with respect to record references. See Mitchel v. General Elec. Co., 689 F.2d 877 (9th Cir. 1982).*

attached as the last page(s) of the document. The proof of service declaration must include the following information:

(a)  The day and manner of service;
(b)  Each person and/or entity served;
(c)  The title of each document served; and
(d)  The method of service employed (e.g., personal, mail, substituted, etc.).

### L.R. 5-3.2  Service of Documents Filed Electronically.

**L.R. 5-3.2.1  Service.**  Upon the electronic filing of a document, a "Notice of Electronic Filing" ("NEF") will be automatically generated by the CM/ECF System and sent by e-mail to all CM/ECF Users who have consented to receive service through the CM/ECF System and to all *pro se* parties in the case who are registered to receive service through the CM/ECF System (*see* L.R. 5-4.1.3).  Service with this electronic NEF will constitute service pursuant to the Federal Rules of Civil and Criminal Procedure, and the NEF itself will constitute proof of service for individuals so served.

Individuals not registered for the CM/ECF System, or who have not consented to receive service through the CM/ECF System, must be served in accordance with F.R.Civ.P. 5, and proof of service on such individuals must be made by declaration in the form required by L.R. 5-3.1.2.

**L.R. 5-3.2.2  Consent to Electronic Service.**  An attorney who registers as a CM/ECF User will be deemed to consent, for purposes of F.R.Civ.P. 5(b)(2)(E), to receive electronic service of documents through the CM/ECF System, unless the attorney submits a completed Central District Electronic Service Exemption Form, which may be obtained from the Court's website.

A *pro se* litigant who registers to receive service of documents through the CM/ECF System will be deemed to consent, for purposes of F.R.Civ.P. 5(b)(2)(E), to receive electronic service of documents through the CM/ECF System.

## LOCAL RULES - CENTRAL DISTRICT OF CALIFORNIA

### *L.R. 5-4  Filing Documents.*

**L.R. 5-4.1  Mandatory Electronic Filing in Civil Cases.**  Except as provided in L.R. 5-4.2, all documents filed in civil cases shall be filed electronically using the Court's CM/ECF System.  Sending a document by e-mail does not constitute an electronic filing.

**L.R. 5-4.1.1  Authorization of Electronic Filing.**  The Clerk will accept, from any filer not exempted under L.R. 5-4.2(a)(1), documents filed, signed, or verified by electronic means in compliance with this Local Rule.  Any such document constitutes a written document for the purposes of applying these Local Rules and the Federal Rules of Civil Procedure.

**L.R. 5-4.1.2  Applicability of Other Rules.**  Except as otherwise ordered in accordance with applicable statutes and rules, all Federal Rules of Civil Procedure and Local Rules shall continue to apply to cases that are subject to electronic filing.

**L.R. 5-4.1.3  Definitions.**

(1)   "CM/ECF System" refers to the automated Case Management/Electronic Case Filing system implemented by the Court.  The CM/ECF System is available at https://ecf.cacd.uscourts.gov or at such other web address as may be specified by the Clerk on the Court's website.

(2)   "CM/ECF User" is an attorney who is registered with this Court to file documents electronically through the CM/ECF System.  Registration may be completed online through the CM/ECF Website; upon completion of registration, a CM/ECF login and password are provided to the CM/ECF User. Registration as a CM/ECF User will constitute consent, for purposes of F.R.Civ.P. 5(b)(2)(E), to receive electronic service of documents through the CM/ECF System, unless the attorney submits a completed Central District Electronic Service Exemption Form, which may be obtained from the Court's website.

## LOCAL RULES - CENTRAL DISTRICT OF CALIFORNIA

Non-incarcerated litigants who are not represented by an attorney may register to receive service of documents through the CM/ECF System, but may not use the CM/ECF System to file documents. Such registration will constitute consent, for purposes of F.R.Civ.P. 5(b)(2)(E), to receive electronic service of documents through the CM/ECF System.

(3)     "CM/ECF Website" refers to the CM/ECF Website operated by this Court to provide information regarding the CM/ECF System, including procedures and instructions for using the system. The CM/ECF Website is available at www.cacd.uscourts.gov/cmecf or at such other web address as may be specified by the Clerk on the Court's website.

(4)     "Notice of CM/ECF Unavailability" refers to a Public Notice from the Clerk regarding scheduled maintenance that will make the CM/ECF System unavailable to CM/ECF Users. Such Notices are placed on the CM/ECF Website. In the event of an unscheduled system outage not preceded by a Notice of CM/ECF Unavailability, refer to L.R. 5-4.6.2.

(5)     The "Notice of Electronic Filing" ("NEF") generated pursuant to L.R. 5-3.2 for each electronically filed document will include the time of filing, the name of the parties and attorney(s) filing the document, the type of document, the text of the docket entry, the name of parties and/or attorney(s) receiving the NEF, a hyperlink to the filed document that allows recipients to retrieve the document automatically, and the names of any attorneys or parties who have appeared in the case but who are not registered to receive service through the CM/ECF System.

(6)     "PDF" refers to Portable Document Format, a specific computer file format that is the only format in which a document may be electronically filed.

6/1/14                               Chapter I - 7

## LOCAL RULES - CENTRAL DISTRICT OF CALIFORNIA

pleading or other document on the docket maintained by the Clerk under Federal Rules of Civil Procedure 58, 77, and 79.

***L.R. 5-4.7.2 Certification of Electronic Documents.*** Pursuant to Federal Rules of Civil Procedure 44(a)(1) and 44(c), the method of electronic certification described herein is deemed proof of an official court record maintained by the Clerk of Court. The NEF (see L.R. 5-3.2.1) contains the date of electronic distribution and identification of the United States District Court for the Central District of California as the sender. An encrypted verification code appears in the electronic document stamp section of the NEF. The electronic document stamp shall be used for the purpose of confirming the authenticity of the transmission and associated document(s) with the Clerk of Court, as necessary. When a document has been electronically filed in the CM/ECF System, the official record is the electronic recording of the document kept in the custody of the Clerk of Court. The NEF provides certification that the associated document(s) is a true and correct copy of the original filed with the Court.

***L.R. 5-4.7.3 Court Orders.*** Any order or other Court-issued document filed electronically without the original signature of a judge or clerk has the same force and effect as if the judge or clerk had signed a paper copy of the order.

### *L.R. 5-4.8 Maintenance of Personal Contact Information.*

***L.R. 5-4.8.1 Obligation to Maintain Personal Contact Information.*** CM/ECF Users and pro se parties registered to receive service of documents through the CM/ECF System are required to maintain and update, in the Court's CM/ECF System, their personal contact account information, including name, law firm or other affiliation, business address, telephone number, facsimile number, and e-mail address, and are required to notify the Clerk and parties to any pending cases of any change in this information in accordance with L.R. 83-2.4.

***L.R. 5-4.8.2 Obligation to Maintain Electronic Post Office Box.*** Each CM/ECF User and pro se party registered to receive

The Court may order a shorter time. Unless otherwise ordered by the Court, the Clerk shall place each motion on the Motion Day calendar for the date designated in the written notice of motion.

## III. PLEADINGS AND MOTIONS

### F.R.Civ.P. 7. PLEADINGS ALLOWED; FORMS OF MOTIONS AND OTHER PAPERS

**L.R. 7-1  *Stipulations.*** Stipulations will be recognized as binding only when made in open court, on the record at a deposition, or when filed in the proceeding. Written stipulations affecting the progress of the case shall be filed with the Court, be accompanied by a separate order as provided in L.R. 52-4.1, and will not be effective until approved by the judge, except as authorized by statute or the F.R.Civ.P.

**L.R. 7-2  *Applicability.*** The provisions of this rule shall apply to motions, applications, petitions, orders to show cause, and all other proceedings except a trial on the merits (all such being included within the term "motion" as used herein) unless otherwise ordered by the Court or provided by statute, the F.R.Civ.P., or the Local Rules.

**L.R. 7-3  *Conference of Counsel Prior to Filing of Motions.*** In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:

"This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

**L.R. 7-4  *Motions.*** The Court may decline to consider a motion unless it meets the requirements of L.R. 7-4 through 7-8. On the first page of the notice of motion and every other document filed in connection with any

**(b)** **Appellee's Brief.** The appellee's brief must conform to the requirements of Rule 28(a)(1)-(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

   **(1)** the jurisdictional statement;

   **(2)** the statement of the issues;

   **(3)** the statement of the case; and

   **(4)** the statement of the standard of review.

**(c)** **Reply Brief.** The appellant may file a brief in reply to the appellee's brief.  Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities — cases (alphabetically arranged), statutes, and other authorities — with references to the pages of the reply brief where they are cited. *(Rev. 1-1-06)*

**(d)** **References to Parties.** In briefs and at oral argument, counsel should minimize use of the terms "appellant" and "appellee." To make briefs clear, counsel should use the parties' actual names or the designations used in the lower court or agency proceeding, or such descriptive terms as "the employee," "the injured person," "the taxpayer," "the ship," "the stevedore."

**(e)** **References to the Record.** References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:

   • Answer p. 7;

   • Motion for Judgment p. 2;

   • Transcript p. 231.

   Only clear abbreviations may be used. A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

**(f)** **Reproduction of Statutes, Rules, Regulations, etc.** If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form.

**(g)** [Reserved]

**(h)** [Reserved] *(eff. 12-1-05)*

## TITLE II. Appeal from a Judgment or Order of a District Court

# FRAP 3. APPEAL AS OF RIGHT - HOW TAKEN

**(a)     Filing the Notice of Appeal.**

**(1)**     An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4. At the time of filing, the appellant must furnish the clerk with enough copies of the notice to enable the clerk to comply with Rule 3(d).

**(2)**     An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal.

**(3)**     An appeal from a judgment by a magistrate judge in a civil case is taken in the same way as an appeal from any other district court judgment.

**(4)**     An appeal by permission under 28 U.S.C. § 1292(b) or an appeal in a bankruptcy case may be taken only in the manner prescribed by Rules 5 and 6, respectively.

**(b)     Joint or Consolidated Appeals.**

**(1)**     When two or more parties are entitled to appeal from a district-court judgment or order, and their interests make joinder practicable, they may file a joint notice of appeal. They may then proceed on appeal as a single appellant.

**(2)**     When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals.

**(c)     Contents of the Notice of Appeal.**

**(1)**     The notice of appeal must:

**(A)**     specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";

**(B)**     designate the judgment, order, or part thereof being appealed; and

**(C)**     name the court to which the appeal is taken.

**(2)**     A pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise.

- 3 -

**(3)** In a class action, whether or not the class has been certified, the notice of appeal is sufficient if it names one person qualified to bring the appeal as representative of the class.

**(4)** An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

**(5)** Form 1 in the Appendix of Forms is a suggested form of a notice of appeal.

**(d)** **Serving the Notice of Appeal.**

**(1)** The district clerk must serve notice of the filing of a notice of appeal by mailing a copy to each party's counsel of record — excluding the appellant's — or, if a party is proceeding pro se, to the party's last known address. When a defendant in a criminal case appeals, the clerk must also serve a copy of the notice of appeal on the defendant, either by personal service or by mail addressed to the defendant. The clerk must promptly send a copy of the notice of appeal and of the docket entries — and any later docket entries — to the clerk of the court of appeals named in the notice. The district clerk must note, on each copy, the date when the notice of appeal was filed.

**(2)** If an inmate confined in an institution files a notice of appeal in the manner provided by Rule 4(c), the district clerk must also note the date when the clerk docketed the notice.

**(3)** The district clerk's failure to serve notice does not affect the validity of the appeal. The clerk must note on the docket the names of the parties to whom the clerk mails copies, with the date of mailing. Service is sufficient despite the death of a party or the party's counsel.

**(e)** **Payment of Fees.** Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.

(As amended Apr. 30, 1979, eff. Aug. 1, 1979; Mar. 10, 1986, eff. July 1, 1986; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 22, 1993, eff. Dec. 1, 1993; Dec. 1, 1994; May 11, 1998, eff. Dec. 1, 1998.)

# CIRCUIT RULE 3-1. FILING THE APPEAL

In appeals from the district court, appellant's counsel shall simultaneously submit to the clerk of the district court the notice of appeal, the filing fee, and the appellate docket fee. In appeals from the bankruptcy appellate panel and the Tax Court, the notice of appeal and fees shall be submitted to the Clerk of the court from which the appeal is taken. Petitions for review and applications to enforce federal agency orders, and fees for those petitions and applications, shall be submitted to the Clerk of the Court of Appeals. If the fees are not paid promptly, the Court of Appeals Clerk will dismiss the case after transmitting a warning notice. *(Rev. 12/1/09)*

# FRAP 4. APPEAL AS OF RIGHT - WHEN TAKEN

**(a)** **Appeal in a Civil Case.**

    **(1)** **Time for Filing a Notice of Appeal.**

        **(A)** In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the entry of judgment or order appealed from.

        **(B)** The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

            **(i)** the United States;

            **(ii)** a United States agency;

            **(iii)** a United States officer or employee sued in an official capacity; or

            **(iv)** a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf— including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

        **(C)** An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

    **(2)** **Filing Before Entry of Judgment.** A notice of appeal filed after the court announces a decision or order — but before the entry of the judgment or order — is treated as filed on the date of and after the entry.

    **(3)** **Multiple Appeals.** If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

    **(4)** **Effect of a Motion on a Notice of Appeal.**

        **(A)** If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

            **(i)** for judgment under Rule 50(b);

            **(ii)** to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

            **(iii)** for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

   **(iv)** to alter or amend the judgment under Rule 59;

   **(v)** for a new trial under Rule 59; or

   **(vi)** for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

  **(B)**

   **(i)** If a party files a notice of appeal after the court announces or enters a judgment —- but before it disposes of any motion listed in Rule 4(a)(4)(A) —- the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

   **(ii)** A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal — in compliance with Rule 3(c) — within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

   **(iii)** No additional fee is required to file an amended notice.

**(5)** **Motion for Extension of Time.**

  **(A)** The district court may extend the time to file a notice of appeal if:

   **(i)** a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

   **(ii)** regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

  **(B)** A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

  **(C)** No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

(3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All

entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;
    (B) determine the amount of damages;
    (C) establish the truth of any allegation by evidence; or
    (D) investigate any other matter.

(c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

(d) JUDGMENT AGAINST THE UNITED STATES. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

    (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

        (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

    (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) JUDGMENT INDEPENDENT OF THE MOTION. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) FAILING TO GRANT ALL THE REQUESTED RELIEF. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

(h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)

### Rule 57. Declaratory Judgment

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

### Rule 82. Jurisdiction and Venue Unaffected

These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts. An admiralty or maritime claim under Rule 9(h) is not a civil action for purposes of 28 U.S.C. §§ 1391–1392.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 83. Rules by District Courts; Judge's Directives

(a) LOCAL RULES.

(1) *In General.* After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit. Copies of rules and amendments must, on their adoption, be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public.

(2) *Requirement of Form.* A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.

(b) PROCEDURE WHEN THERE IS NO CONTROLLING LAW. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

(As amended Apr. 29, 1985, eff. Aug. 1, 1985; Apr. 27, 1995, eff. Dec. 1, 1995; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 84. Forms

The forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 85. Title

These rules may be cited as the Federal Rules of Civil Procedure.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 86. Effective Dates

(a) IN GENERAL. These rules and any amendments take effect at the time specified by the Supreme Court, subject to 28 U.S.C. § 2074. They govern:

(1) proceedings in an action commenced after their effective date; and

| 9th Circuit Case Number(s) | 13-56568 and 14-55177 (consolidated for briefing) |

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | June 6, 2014 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Andrea N. Winternitz |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |