**Nos. 13-55859, 13-55871, 13-55880, 13-55881, 13-55882, 13-55883, 13-55884 & 13-56028**

_____

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

INGENUITY 13, LLC,

Plaintiff-Appellant,

v.

John Doe,

Defendant-Appellee,

v.

AF HOLDINGS, LLC; PRENDA LAW, INC.; PAUL DUFFY, ESQ.; PAUL HANSMEIER, ESQ.; and JOHN STEELE, ESQ,

Additional Appellants.

_____

**REPLY BRIEF FOR APPELLANTS**
**INGENUITY 13, LLC; AF HOLDINGS, LLC; PRENDA LAW, INC.;**
**PAUL DUFFY, ESQ.; PAUL HANSMEIER, ESQ.; and JOHN STEELE, ESQ.**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
U.S.D.C. No. 2:12-cv-08333-ODW-JC
THE HONORABLE OTIS D. WRIGHT II

_____

DANIEL J. VOELKER, ESQ.
Voelker Litigation Group
311 West Superior Street
Suite 500
Chicago, Illinois 60654
312-870-5430
*Attorney for Plaintiff-Appellant and*
*Certain Additional Appellants*

## TABLE OF CONTENTS

**SECTION**                                                      **PAGE NO.**

**TABLE OF CONTENTS** .........................................................................i

**TABLE OF AUTHORITIES** ................................................................iv

**ARGUMENT** ........................................................................................1

    **I.**    **SHORT OF RE-WRITING CRIMINAL DUE PROCESS CASE LAW, THE DISTRICT COURT'S SANCTIONS VIOLATE CONSTITUTIONAL PROTECTIONS** ........................4

        **A.**    **Appellee Cannot  Justify the District Court's Imposition of Criminal Sanctions under Its Inherent Authority by Relying on Rule 11 or Bankruptcy Rule 9011(c)(2) Case Law** ................................................7

        **B.**    **Appellee's Request that the Case Be Remanded so that the District Court Can Consider Additional  Rule 11 Sanctions Is a Nullity.** ....................................9

        **C.**    **Appellee's Suggestion that the District Court's Doubling of Attorneys' Fees Can Be Sustained as a Lodestar Enhancement Is Legally and Logically Unsupportable** ......................................................11

        **D.**    **Because of the Procedural Posture of this Case, Appellee's Request that the Court Award the Compensatory Portion of Its Sanctions Is Improper** ..........12

II.   IN ATTEMPTING TO DEFEND THE DISTRICT
      COURT'S EXTENSION OF ITS INHERENT
      AUTHORITY TO THE INDIVIDUAL APPELLANTS,
      APPELLEE COMPLETELY AND TOTALLY
      MISSTATES THE HOLDING IN *HELMAC* ...............................15

      A.   *Helmac* Is Not Limited to Cases in which the
           Sanctioned Party Is Beyond the Court's Personal
           Jurisdiction. ...............................................................16

      B.   Under the *Helmac* Test, the Court's Inherent
           Authority Does Not Extend to the Individual
           Appellants. ..................................................................18

           1.   There is no admissible evidence indicating
                that the individual Appellants substantially
                participated in the proceedings............................19

           2.   There is no evidence in the record that any
                of the individual Appellants had an
                ownership interest in either AF Holdings or
                Ingenuity 13.......................................................20

III.  APPELLEE'S REQUEST FOR FEES INCURRED IN
      PURSUING SANCTIONS AND IN DEFENDING
      SANCTIONS ON APPEAL WOULD REQUIRE THIS
      COURT TO LITERALLY RE-WRITE ITS PRIOR
      HOLDINGS ...........................................................................24

IV.   APPELLEE'S ADDITIONAL FACTUAL ASSERTIONS
      HAVE NO RELEVANCE TO THIS CASE AND ARE
      LARGELY UNSUPPORTED BY THE RECORD ON
      APPEAL ...............................................................................28

      A.   Appellee's Additional Assertions Are Unrelated to
           Either the Alleged Reasons for the Sanctions Imposed
           Or to the Issues in this Appeal..................................28

      B.   Many of Appellee's Most Egregious Assertions Are
           Unsupported by Valid Citations to the Record on
           Appeal .........................................................................30

**CONCLUSION** ....................................................................................**31**

**CERTIFICATE OF COMPLIANCE** ................................................................**33**

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                              **PAGE NO.**

*AF Holdings LLC v. Doe*, Nos. 12-cv-1445-1449 (D. Minn., March 31, 2014) ..................................................................................................... 2

*Anz Advanced Techs., LLC v. Bush Hog*, LLC, 2012 U.S. Dist. LEXIS 29534 (S.D. Ala.)........................................................ 18

*Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.)....................... 18

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) ................................. 7, 16-17 & 25-27

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ......................................... 7

*Douglas v. Alabama*, 380 U.S. 415, 418 (1965)..................................................... 20

*F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001) ......................................................... 5, 9 & 11-14

*Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1988)............ 12

*Franz v. U.S. Powerlifting Federation*, 836 F.2d 1063 (7th Cir. 1987)................... 7

*Grine v. Chambers*, 439 B.R. 461 (Bankr. N.D. Ohio 2010) ................................. 25

*Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) .............................................................................................................. 12

*Helmac Products Corp. v. Roth Plastics, Corp.*, 150 F.R.D. 563 (E.D. Mich. 1993) .............................................................. 15-19

*Hudson v. Moore Business Forms, Inc.*, 898 F.2d 684 (9th Cir. 1990) ................... 7

*In re DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002) ............................................. 7-9

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)............................................................... 8

*Kirshner v. Uniden Corp. of America*, 842 F.2d 1074 (9th Cir. 1988) .......... 21 & 22

*Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992) ............................................ 24-28

*Mackler Products v. Cohen*, 146 F.3d 126 (2d Cir. 1998) .................................... 7-9

*Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d 456 (9th Cir. 2010)............................................ 24-28

Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399 (1923) ...........................26

*United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.) .......................18

*United States v. Searcy*, 284 F.3d 938, 943 (8th Cir. 2002)....................................12

*United States v. Walker*, 601 F.2d 1051 (9th Cir. 1979) .........................................21

**Statutes**

U.S. Constitution, Fifth Amendment ..............................................................11 & 14

Bankruptcy Act, 11 U.S.C. § 303 ..................................................................... 24-27

Bankruptcy Rule 9011 ......................................................................................7 & 8

Fed. Rule Civ. Proc.  11....................................................................1, 6-10 & 24-25

# ARGUMENT[1]

It appears that Appellee's counsel does not have a clear understanding of appellate practice. This is an appeal from two orders that imposed sanctions and an excessive supersedeas bond requirement on Appellants. Appellee's counsel devotes the largest portion of his Revised Answering Brief to the insertion of unsubstantiated factual assertions that are intended to vilify Appellants for using the copyright laws to vindicate Plaintiffs' rights in several adult films that were improperly downloaded over the internet. However, Appellants were not sanctioned for filing these lawsuits.

The District Court imposed sanctions on the Appellants for: (a) alleged misrepresentations made by Brett Gibbs ("Gibbs") regarding the size of a house and the authenticity of a non-essential signature on a copyright assignment; and (b) Gibbs' alleged violation of a discovery order. (ER24-ER26.) Neither the District Court, nor Appellee, contests the fact that Plaintiffs held protectable interests in these films or that they were entitled to

---

[1] For consistency, Appellants adopt the same citation references as those used in their Opening Brief. (Applt. Br. at 1, n.1.) In addition, Appellants' Opening Brief will be cited as "Applt. Br. at __." Appellee's Revised Answering Brief will be referred to as the "Answer" and will be cited as "Ans. at ___". Appellee, John Doe's, Supplemental Excerpts of the Record will be cited as "Doe Supp. ER__". Appellants' Supplement Excerpts of Record will be cited as "Applt. Supp. ER__". Plaintiffs AF Holdings and Ingenuity 13 will sometimes be referred to jointly as the "Plaintiffs"; and, Federal Rule of Civil Procedure 11 will be referred to as "Rule 11".

protect those interests.

Gibbs' alleged misrepresentation regarding the size of a house was made in a filing submitted by Gibbs' retained counsel during the Order to Show Cause proceedings, and cannot possibly be attributed to Appellants under any theory. (*Compare* ER24 *with* Applt. Supp. ER5-8.)

Gibbs misrepresentation regarding the non-essential signature on a copyright assignment was recently and persuasively undermined in a decision from the District of Minnesota. *See AF Holdings LLC v. Doe*, Nos. 12-cv-1445–1449 (D. Minn., Mar. 31, 2014).

The final ground, the alleged violation of the District Court's rescission of an early discovery order (ER26), does not implicate any of the Appellants. In other words, it appears that over this minor alleged discovery violation, the individual Appellants (who never even appeared in the case) and the Plaintiffs (who were represented by Gibbs) were sanctioned over $80,000 and referred to a panoply of federal agencies for further investigation.

In addition to being irrelevant, a number of Appellee's additional factual assertions are supported by nothing more than a citation to his counsel's oral argument to the District Court. Other assertions are solely supported by citation to unauthenticated documents that are not part of the

record on appeal. In one critical instance, Appellee cites to an email exchange in a Georgia proceeding, but fails to cite a repudiating affidavit submitted in the instant case by the email's author.

There is a heavy sense of irony to the litigation over these sanctions. Gibbs was Plaintiffs' sole counsel in each of the five consolidated cases on appeal. Any representations made to the District Court were made by Gibbs himself. Indeed, Gibbs was the sole target of the District Court's initial Show Cause Order.

In the time period since these appeals were filed, the District Court has amended its Sanctions Order to exclude Gibbs. Thus, the sanctioned conduct was directly performed by the one person who has been dismissed. What remains is a Sanctions Order against the parties whom Gibbs represented and against three individual Appellants whose only nexus to the five consolidated cases is Gibbs' own testimony, untested by cross-examination, that two of these individuals directed or supervised his conduct.

Appellee's Response does literally nothing to dispel Appellants' demonstration that the District Court: violated procedural due process requirements; improperly extended its inherent authority to the individual Appellants, who had never appeared as counsel or parties in any of the

consolidated cases; and imposed sanctions that included non-compensable attorneys' fees incurred in pursuing these sanctions.

Appellee's request that this Court abandon its prior case law demonstrates that affirming the District Court's sanctions and bond orders would require a sea-change in case law of both the Supreme Court and of this Court regarding the rights of persons subjected to criminal sanctions and the extent of a District Court's inherent authority.

## I.    SHORT OF RE-WRITING CRIMINAL DUE PROCESS CASE LAW, THE DISTRICT COURT'S SANCTIONS VIOLATE CONSTITUTIONAL PROTECTIONS.

Of the various errors asserted in this Appeal, the District Court's imposition of criminal sanctions without the Constitutionally-mandated procedural safeguards has the broadest policy implications.  (Applt. Br. at 37-53.)

Appellants' argument can be succinctly capsulized:

1.    Under prior case law, the District Court's monetary sanctions were criminal in nature.  (Applt. Br. at 38-42.)

2.    Under its inherent authority, a District Court can only impose such sanctions after affording the sanctioned party criminal due process rights required in a criminal contempt proceeding.  (*Id.* at 42-43.)

3.    Those rights include: a prohibition against drawing adverse inferences from a defendant's decision not to testify; the appointment of an impartial prosecutor; the right to cross-examine witnesses; and the right to present a defense and call witnesses.  (*Id.* at 44-53.)

4

4.    The District Court provided none of these due process protections. (*Id.*)

For the most part, the parties agree to all but the first of these four points.   Both parties cite the very same language in *F.J. Hanshaw Enterprises v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001) in which this Court has described the procedural due process protections that must be given to a party before a District Court can impose criminal sanctions. (*Compare* Applt. Br. at 43 *with* Ans. at 45-46.)  Indeed, Appellee states:

> The *Hanshaw* court held that before a fine that is "criminal in nature" may be imposed, the sanctioned party must be afforded the same due process available in a criminal contempt proceeding. *Hanshaw*, 244 F.3d at 1139.  The court explained that this includes: (i) an independent prosecutor, (ii) jury trial, and (iii) reasonable-doubt standard of proof.  *Id.* at 1140–42.

(Ans. at 46-47; *see also id.* at 63-64.)

Further, Appellee does not deny that the District Court failed to observe any of these procedures.  The District Court admitted as much, asserting that its only procedural obligation was to provide notice and an opportunity to be heard.  (ER194.)

However, Appellants and Appellee disagree as to whether the monetary sanctions imposed by the District Court were criminal in nature. Even here, the area of disagreement is narrow.  Appellee does not attempt to

distinguish the case law which holds that a sanction that is neither compensatory nor coercive is criminal in nature. (*Compare* Applt.'s Br. at 39-42 *with* Ans. at 46-47.) Nor does Appellee address Appellants' rather obvious assertion that a sanction set at twice the amount of total attorneys' fees incurred (including non-compensable fees), and imposed after the consolidated cases have been dismissed, cannot possibly be either compensatory or coercive. (Applt.'s Br. at 40-41.)

However, Appellee asks this Court to depart from its prior decisions and hold that a District Court, under its inherent authority, may impose criminal sanctions, without observing criminal due process protections, so long as the sanctions were intended to deter future conduct. (Ans. at 57-71.)

Alternatively, Appellee asks that, if these sanctions cannot be sustained under the District Court's inherent authority, this Court justify the doubling of actual attorneys' fees as a lodestar enhancement of the actual fees (*id.* at 71-72) or remand the matter to the District Court so that Appellee can justify the sanctions under Rule 11 (*id.* at 59-61.)

And, as an ultimate fallback, Appellee suggests that this Court at least award him his actual attorneys' fees (including non-compensable fees) – without imposing the multiple. (*Id.* at 47.)

Each of these arguments suffers from its own unique infirmity.

### A.   Appellee Cannot Justify the District Court's Imposition of Criminal Sanctions under Its Inherent Authority by Relying on Rule 11 or Bankruptcy Rule 9011(c)(2) Case Law.

Citing or quoting six cases, Appellee asks this Court to hold, for the first time, that a district court, under its inherent authority, can impose punitive sanctions without observing due process requirements, so long as the sanctions are intended to have a deterrent effect. (Ans. at 57-64.) Three of these cases deal exclusively with sanctions under Rule 11, or Bankruptcy Rule 9011(c)(2), rather than a court's inherent authority.[2] (Ans. at 58-62.)

Appellee, on his own, torpedoes the relevance of these three cases. After stating that Rule 11 and Bankruptcy Rule 9011 are "parallel statutes" (Ans. at 60, n.17), Appellee notes that the sanctioning power under Bankruptcy Rule 9011 differs from that under the court's inherent authority. While noting that *In Re DeVille* held that penal sanctions necessary to deter future conduct was expressly authorized by Bankruptcy Rule 9011(c)(2) (Ans. at 59-60), Appellee acknowledges:

> [I]n *DeVille*, the bankruptcy appellate panel read *Mackler Prods.* and *Chambers* as suggesting that deterrent penalties are not allowed as a matter of the court's inherent authority, absent observance of criminal due process protections.

(Ans. at 61.)   Appellants could not have stated it any better.  Cases decided

---

[2] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *Franz v. U.S. Powerlifting Federation*, 836 F.2d 1063 (7th Cir. 1987); and *Hudson v. Moore Business Forms, Inc.*, 898 F.2d 684 (9th Cir. 1990)

under Bankruptcy Rule 9011(c) or its parallel, Rule 11, cannot justify the imposition of penal sanctions under a court's inherent authority.

The remaining three cases[3] cited by Appellees, each reversed the lower court's imposition of punitive sanctions under its inherent authority without observing criminal due process protections.

The rationale for requiring a court to provide criminal due process protections when imposing punitive sanctions was well expressed in *Mackler Products v. Cohen*, 146 F.3d 126 (2d Cir. 1998), in which the Court stated:

> [S]anctions and contempts raise certain similar concerns. Whether or not a finding of contempt is involved, unfairness and abuse are possible, especially if courts were to operate without any framework of rules or cap on their power to punish. In either case, the individual bears the risk of substantial punishment by reason of obstructive or disobedient conduct, as well as of vindictive pursuit by an offended judge. We conclude, notwithstanding the differences mentioned above, that the imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case.

146 F.3d at 130.

As Appellee states in his Answer, this Court expressly agreed with *Mackler* in its decision in *Hanshaw*.  (244 F.3d at 1139; see Ans. at 57.)  It

---

[3] *In re DeVille*, 280 B.R. 483 (9th Cir. B.A.P. 2002); *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003); *Mackler Products v. Cohen*, 146 F.3d 126 (2d Cir. 1998).

should also be noted that the monetary sanctions imposed in the instant case are far more "substantial" than those imposed in *Mackler*.  While the punitive sanction in *Meckler* was only $10,000, the punitive portion of the sanction in the instant case was $40,659.86 (even ignoring the fact that a large portion of these attorneys' fees are non-compensable).  (ER28.)

Appellee further asserts that the Supreme Court has not stated that, under a court's inherent authority, it may only issue sanctions that are compensatory or coercive, but not deterrent.  (Ans. at 64.)  Appellee simply ignores the fact that this Court has specifically made such a holding.  *In re DeVille*, 280 B.R. at 497-98.

Appellee cannot cite, and Appellants are unaware of, a single case from this Circuit, or any other Circuit, holding that a District Court, under its inherent authority, can impose a punitive sanction without observing criminal Due Process protections, regardless of whether the professed motive is deterrence.

### B.    Appellee's Request that the Case Be Remanded so that the District Court Can Consider Additional Rule 11 Sanctions Is a Nullity.

As an alternative, Appellee asks that, if this Court does not affirm the District Court's sanctions, the case be remanded so that the District Court can consider additional Rule 11 sanctions.  (Ans. at 73-74.)  This suggestion

suffers from multiple infirmities.

First, under Rule 11(c)(5)(B), a court cannot impose monetary sanctions on its own unless it issued a show-cause order prior to a voluntary dismissal of the case. The two show-cause orders were issued by the District Court on February 7, 2013, and March 14, 2013 (ER1 & ER16). The five consolidated cases were voluntarily dismissed on or before January 29, 2013. (ER153, ER155, ER158, ER161 & ER164.) Thus, under the very wording of Rule 11, the District Court could not issue monetary sanctions. The District Court acknowledged this fact in its Sanctions Order.[4] (ER25.)

Further, Rule 11(b), by its terms, only applies to an attorney or unrepresented party who has "present[ed] to the court a pleading, written motion, or other paper signing [by] filing, submitting, or later advocating it". The only person who signed any document submitted to the District Court was Brett Gibbs. Thus, in addition to being untimely, Rule 11 does not apply to any of the Appellants, rendering Appellee's suggestion a pure nullity.

---

[4] For some reason, Appellee thinks that it is of some relevance that he had contemplated a sanctions motion prior to Appellants' Notice of Appeal. (Ans. at 73.) Rule 11 is quite specific. If the Court imposes Rule 11 sanctions on its own, the only relevant dates are those of the show-cause order(s) and the date of the voluntary dismissal.

**C.    Appellee's Suggestion that the District Court's Doubling of Attorneys' Fees Can Be Sustained as a Lodestar Enhancement Is Legally and Logically Unsupportable.**

Appellee also suggests that, if the District Court's doubling of attorneys' fees cannot be sustained due to the failure to accord Appellants criminal due process protections, it should be sustained as a lodestar enhancement.   (Ans. at 71-72.)   There is neither logic nor case law supporting this suggestion.

If, as Appellants contend, the District Court violated procedural due process requirements, they have been denied important Constitutional protections that go to the very heart of the guilt-determining process – not the least of which are the District Court's decision to draw adverse inferences from the invocation of Fifth Amendment rights and the refusal to permit Appellants the ability to call and cross-examine witnesses.  (Applt. Br. at 44-46 & 49-53.)

Appellee's suggested use of a lodestar to get around a violation of Constitutional rights relegates the violation of rights recognized as mandatory in *Hanshaw* to the category of an easily-evaded inconvenience. Criminal due process protections exist for a reason.  The sanctions imposed by the District Court either are, or are not, criminal in nature.  If they are criminal sanctions, as they most certainly are, the case law imposes upon the

11

District Court certain procedural obligations. To pretend that the sanctions were merely enhanced compensatory sanctions is an unsupportable fiction, and one that renders Constitutional protection illusory and easily evaded.

The two cases that upon which Appellee relies [5] involve the application of a lodestar to an award of attorneys' fees pursuant to a statutory provision. Appellee cites no cases involving a lodestar as part of a sanction award – particularly where the lodestar is intended to cover-up the deprivation of Constitutional rights.[6]

> **D.    Because of the Procedural Posture of this Case, Appellee's Request that the Court Award the Compensatory Portion of Its Sanctions Is Improper.**

Citing to *Hanshaw*, as a last resort, Appellee appears to suggest that, if the Court finds that the District Court improperly awarded punitive sanctions, it should at least affirm the compensatory portion of the sanctions award. (Ans. at 47.) However, due to its procedural posture, *Hanshaw* provides no support for that request.

*Hanshaw* involved a dispute between two brothers. During the

---

[5] Appellee relies upon *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) and *Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1988). (Ans. at 71.)

[6] It should also be noted that there has been no fact-finding by the District Court necessary to support a lodestar, and it is not the job of an Appellate Court to conduct initial fact finding. *United States v. Searcy*, 284 F.3d 938, 943 (8th Cir. 2002).

litigation, the District Court found that one of the brothers had attempted to bribe the receiver appointed to oversee the dissolution of the brothers' partnership.  The District Court, pursuant to its inherent authority, imposed a $500,000 punitive penalty on that brother, payable to the United States, and a separate $200,000 compensatory sanction payment to the other brother. On appeal, this Court reversed the punitive sanction due to the failure to observe the criminal due process safeguards, but affirmed the compensatory sanction.

The instant case is unlike *Hanshaw* in at least two important respects. First, in *Hanshaw*, this Court imposed two separate and independent sanctions – each payable to different parties.  There was no contention that the compensatory sanction was miscalculated.  244 F.3d at 1142.  As a result, this Court did not have to unravel one single award and break it down into the allowable and non-allowable portion.

However, in the instant case, the District Court has amalgamated into one single set of sanctions, payable to a single party, an award that comingles punitive and compensatory sanctions.  (Applt. Br. at 53-58.) Further, within the category of compensatory, the District Court has included non-compensable expenses (*i.e.*, attorneys' fees incurred in pursuing sanction and a punitive component.  (*Id.*)

13

To unravel the District Court's sanction award, this Court would have to re-examine the record on appeal to determine what portion, if any, of the sanction award is allowable. In addition, this Court would, somehow, have to determine whether the number of hours and hourly rate claimed by Appellee's counsel on the allowable portion are reasonable.[7] It is not the job of an Appellate Court to make initial fact-finding.

Second, unlike *Hanshaw*, the District Court's errors in the instant case go to the very heart of the reliability of the fact-determining process. By threatening Appellants with incarceration in its show-cause order (ER11), Appellants were presented a Hobsons choice of waiving their Fifth Amendment rights or foregoing the presentation of testimony that would have: (a) demonstrated that none of the individual Appellants has an ownership interest in either AF Holdings or Ingenuity 13; and, (b) clarified the degree of autonomy that Gibbs exercised in his role as counsel of record in each of the five consolidated cases.

The District Court then exacerbated the prejudice by punishing Appellants for exercising their Fifth Amendment rights by: drawing unfavorable inferences from exercising those rights (ER21), and denying

---

[7] While Appellee submitted a petition for attorneys' fees (ER331-ER336), the District Court has never conducted a hearing on the reasonableness of the hours or hourly rates contained in the petition.

Appellants the ability to call witnesses at the April 2, 2013 Hearing (ER306-ER319).

Particularly prejudicial was the District Court's denial of the Appellants' ability to call Mark Lutz, who had consistently been identified as the actual manager of AF Holdings and Ingenuity13 throughout the proceedings[8] and who could have established that none of the individual Appellants owned any portion of either Plaintiff.  (ER184, ER265 & ER310.)  Such evidence was relevant to both the justification for (or lack thereof), and amount of, sanctions.

For these reasons, it would be both prejudicial and procedurally improper to merely award Appellee the portion of the sanctions award that the District Court errantly found to represent Appellee's actual attorneys' fees.

## II.   IN ATTEMPTING TO DEFEND THE DISTRICT COURT'S EXTENSION OF ITS INHERENT AUTHORITY TO THE INDIVIDUAL APPELLANTS, APPELLEE COMPLETELY AND TOTALLY MISSTATES THE HOLDING IN *HELMAC*.

Appellants assert that, under the widely-applied two-part test developed in *Helmac Products Corp. v. Roth Plastics Corp.*, 150 F.R.D.563, 565-66 (E.D. Mich. 1993), the District Court exceeded the scope of its

---

[8] Indeed, the District Court's March 5, 2013 Order to Appear identified Lutz as the "CEO of AF Holdings LLC and Ingenuity 13 LLC."  (ER14.)

15

inherent authority by imposing sanctions on the individual Appellants. (Applt. Br. at 29-34.)

Appellee neither disputes the wide acceptance of the *Helmac* test nor cites case law stating any alternative test. (*See* Ans. at 50.) Instead, Appellee argues that the *Helmac* test is only used to determine whether a court's inherent authority can be imposed on persons who are not subject to the court's personal jurisdiction. (Ans. at 50-51.) Beyond that, Appellee argues that the individual Appellants meet *Helmac*'s two-part test. (*Id.*)

With total, and genuine, respect for Appellee's counsel, their attempt to limit the scope of the *Helmac* test is contradicted by both *Helmac* itself and each of the subsequent decisions that have applied the *Helmac* test. Further, their contention that the individual Appellants meet the two prongs of the *Helmac* test are completely unsupported by the record on appeal.

A.    ***Helmac* Is Not Limited to Cases in which the Sanctioned Party Is Beyond the Court's Personal Jurisdiction.**

The very wording of *Helmac* contradicts Appellee's assertion that the decision is limited to cases in which the person to be sanctions is not subject to the personal jurisdiction of the court applying the sanction. (Ans. at 50-51.) The Court in *Helmac* described the issue as follows:

> I. DOES *CHAMBERS v. NASCO* PROVIDE AUTHORITY FOR THE COURT TO USE ITS INHERENT POWER TO SANCTION AN INDIVIDUAL WHO, WHILE

16

NOT A PARTY NOR SUBJECT TO COURT ORDER, DESTROYED DOCUMENTS IN A LAWSUIT IN WHICH HE HAD A SUBSTANTIAL INTEREST IN THE OUTCOME AND IN WHICH HE HAD SUBSTANTIALLY PARTICIPATED?

150 F.R.D. at 564.

Neither this language, nor any other portion of the decision, indicates that the *Helmac* test was limited to instances where the sanctioned party was beyond the court's personal jurisdiction.

The lack of any relationship between the *Helmac* test and personal jurisdiction is specifically demonstrated elsewhere in the decision. Roth, the sanctioned party, argued that he was not subject to the court's inherent authority because he was not subject to the court's compulsory process. 150 F.R.D. at 168. The Court summarily rejected that argument, stating that the Supreme Court's earlier decision in *Chambers v. Nasco*, Inc., 501 U.S. 32 (1991) had already established that a court's inherent authority extended to persons who were not subject to compulsory process. 150 F.R.D. at 569. Thus, if the issue was merely whether a court's inherent authority extends to persons who are not subject to the court's personal jurisdiction, the Supreme Court had already answered that issue. It would have been unnecessary for the Court in *Helmac* to develop its own two-part test. In short, the test in *Helmac* had nothing whatsoever to do with whether the sanctioned party was

17

subject to personal jurisdiction.

Subsequent decisions that have applied the *Helmac* test have done so in cases in which the issue of personal jurisdiction has never arisen. In *United States v. Henry*, 2013 U.S. Dist. LEXIS 133148 (E.D. Va.), the Court applied the *Helmac* test to determine whether the Court's inherent authority extended to a non-party who, as a Virginia resident (*id.* at *8), was clearly subject to the Court's personal jurisdiction. There was no discussion of personal jurisdiction. *See also Anz Advanced Techs., LLC v. Bush Hog*, LLC, 2012 U.S. Dist. LEXIS 29534 (S.D. Ala.) at *34 (applying the *Helmac* test to plaintiff's lead counsel who had appeared before the court); *Bartos v. Pennsylvania*, 2010 U.S. Dist. LEXIS 43937 (M.D. Pa.) at *18 (applying *Helmac* test to two non-party state employees of the same state as that of the District Court).

Each of the cases cited in the prior paragraph were also cited in Appellants' Opening Brief (Applt. Br. at 31). Appellee makes no attempt to discuss, much less distinguish, these cases. Even more important, Appellee cannot cite a single case which agrees with Appellee's interpretation of *Helmac*.

### B.  Under the *Helmac* Test, the Court's Inherent Authority Does Not Extend to the Individual Appellants.

As his Plan B, Appellee argues that, even if *Helmac* applies, the

18

individual Appellants meet the two-pronged test. (Ans. at 50-51.) In describing the test, the Court stated:

> To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered. This test will effectively limit the scope of the Court's inherent power to sanction to those individuals were either (1) parties, (2) subject to a court order, or (3) real parties in interest.

150 F.R.D. at 568.

Thus, in order for a non-party to be subject to the District Court's inherent authority, the party must both (a) have a substantial interest in the outcome of the litigation *and* (b) substantially participate in the proceedings.

### 1. There is no admissible evidence indicating that the individual Appellants substantially participated in the proceedings.

The District Court's only indication that Steele and Hansmeier participated in the proceedings was the testimony of Gibbs, who testified that Steele and Hansmeier supervised his work. (ER264.) Gibbs, the sole subject of the initial Show Cause Order (ER1), had every incentive to deflect responsibility to the individual Appellants. Thus, the District Court's refusal to allow Appellants' counsel to cross-examine Gibbs (ER192–ER194) renders his testimony particularly unreliable. Under these condition, Gibbs' self-serving statements, untested by cross-examination, that Steele and

Hansmeier indirectly participated in the consolidated cases by supervising his work, cannot be the basis (and the sole basis at that) to support the District Court's extension of its inherent authority to these two Appellants. *See Douglas v. Alabama*, 380 U.S. 415, 418 (1965).

Further, there is not a shred of evidence indicating that Duffy played any role at all in the consolidated cases.  (ER264 & ER297.)

> ## 2. There is no evidence in the record that any of the individual Appellants had an ownership interest in either AF Holdings or Ingenuity 13.

Appellee takes issue with Appellants' contention that there is *absolutely no* evidence that they had a financial interest in either Plaintiff. (*See* Applt. Br. at 33.)  Indeed, Appellee goes so far as to state that Appellants' "challenge . . . to the district court's findings . . . that the Prenda Principals are the *de facto* owners of the plaintiff entities and of Prenda (E.R. 21–22), without refuting or even addressing the parts of the record supporting those findings is sanctionable in and of itself." (Ans. at 51.)

The problem is that there are no supporting parts of the record.  The District Court's conclusion is stated without a single cite to supporting evidence of any kind.  (E.R. 21–22.)  Appellee attempts to cure this deficiency, relying on three documents:  (1) mystery documents submitted to the District Court by Gibbs five months after the Notices of Appeal were

filed (Ans. at 39-41); (2) a letter sent to the Florida Bar by an attorney representing Steele (*id.at 38*); and (3) an email exchange between other counsel and opposing counsel in a proceeding in Georgia (*id.*).

The Gibbs' documents consist of a declaration by Gibbs with attached exhibits (Doe Supp. ER 887–919), including profit-loss statements that purports to report receipts and dispersals by Prenda (*id.* at Doe Supp. ER 904-919).

Procedurally, these documents are not part of the record on appeal. The last of the Notices of Appeal in these consolidated appeals was filed on June 12, 2013. (ER601-ER603.) Gibbs filed his declaration with exhibits on November 18, 2013. (Doe Supp. ER 887.) This Court has held, on numerous occasions, that documents submitted to a District Court after a Notice of Appeal has been filed are not part of the record on appeal. *See Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1077 (9th Cir. 1988) and cases cited therein.[9]

---

[9] Amusingly, Appellee's counsel argues that, despite *Kirshner*, he is entitled to cite and rely upon Gibbs' documents because he "warned" Appellants that he considered these documents to be part of the record on appeal. (Ans. at 40-41.) In *Kirshner* this Court stated: "Papers submitted to the district court *after* the ruling that is challenged on appeal should be stricken from the record on appeal. *See Walker*, 601 F.2d at 1055 ("We are here concerned only with the record before the trial judge *when his decision was made*.") (emphasis added) . . ." 842 F.2d at 1077. *Kirshner* defines the scope of the record on appeal, the "warning" of Appellee's counsel notwithstanding.

From an evidentiary perspective, these documents are inadmissible. Appellee relies most heavily on the profit-loss statements (Ans. at 39-41), which are of unknown origin. Gibbs' declaration states that these balance sheets simply appeared in his internet DropBox file in early 2013. (Doe Supp. 888.) No one, including Gibbs himself, claims to have any idea as to who created these profit-loss statements, for what reason, and using what data. (*Id.*)

Moreover, Gibbs' declaration is pure hearsay. It is an out-of-court declaration, relied upon by Appellee for the truth of the matters asserted, that has never been subjected to cross-examination, and does not fall within any hearsay exception. As such, it is inadmissible under Fed. R. Ev. 802.

Perhaps most importantly, the profit and loss statements make no claim that any of the three individual Appellants own any portion of either Plaintiff. At most, they merely purport to show the receipt and distribution of proceeds from a law firm, not its clients. They are not probative as to whether the individual Appellants' owned any portion of the Plaintiffs.

As with Gibbs' mystery documents, the letter sent to the Florida Bar by Steele's counsel (Ans. at 38) is both non-probative and inadmissible. The letter neither states nor implies that Steele, or any of the individual Appellants, has an ownership interest in either Plaintiff. (Doe Supp.

22

ER730.)    Moreover, the letter is unauthenticated and, therefore, inadmissible.

However, Appellee's reliance on an email exchange in a Georgia proceeding is particularly misleading.   In the email exchange, Jacques Nazaire, AF Holdings' counsel, stated that Steele has an "interest" in AF Holdings.  (Doe Supp. ER745.)  The word "interest", in this context, did not indicate ownership.  Appellee does not disclose to this Court that Nazaire filed an affidavit with the District Court in the instant case in which he made this point clear:

> I have no reason to believe that Mr. John Steele has any ownership interest in any client I have ever represented.
>
> Any statement I may have previously made about John Steele having an interest in AF Holdings was not based on my personal knowledge.

(Applt. Supp. ER4.)

Appellants further emphasize that Mark Lutz was not allowed to testify at the April 2, 2013 hearing (ER306-ER319) even though he:  was these companies' manger (ER14, ER184 & ER265); had specifically been identified to the District Court as "present" (ER310); and was the person best-suited to provide testimony as to the ownership of the Plaintiffs.

### III. APPELLEE'S REQUEST FOR FEES INCURRED IN PURSUING SANCTIONS AND IN DEFENDING SANCTIONS ON APPEAL WOULD REQUIRE THIS COURT TO LITERALLY RE-WRITE ITS PRIOR HOLDINGS.

As stated in Appellants' Opening Brief, this Court has previously held that a District Court, under its inherent authority, cannot award sanctions that include attorneys' fees incurred in pursuing sanctions or defending a sanctions award on appeal. (*See* Applt. Br. at 53-58, citing *Orange Blossom Limited Partnership v. Southern California Sunbelt Developers, Inc.*, 608 F.3d 456, 466-67 (9th Cir. 2010) and *Lockary v. Kayfetz*, 974 F.2d 1166, 1177-78 (9th Cir. 1992)). Under these cases, it was clear error for the District Court to award Appellee attorneys' fees incurred in pursuing their sanctions or in defending those sanctions in this appeal.

Appellee takes issue with Appellants' reliance on *Orange Blossom*. Specifically, Appellee: suggests that the case ignored amendments to Rule 11 (Ans. at 52-53); asserts that the case has been criticized by other courts (*id.* at 53); claims that the case should be limited to issues involving Section 303 of the Bankruptcy Code (*id.*); and, asks this Court to distinguish the case (from the instant case) on the basis of the conduct at issue (*id.* at 53-54).

Appellee implies, somewhat obliquely, that *Orange Blossom* was badly reasoned, stating that the decision relied upon this Court's earlier decision in *Lockary*, despite the 1993 amendments to Rule 11. (Ans. at 52-

24

53.) That characterization is somewhat misleading.

*Orange Blossom* acknowledged that the portion of *Lockary* dealing with Rule 11 sanctions was overruled by the 1993 amendments. However, the Court held that the limitation stated in *Lockary* regarding the types of sanctions that may be imposed under a court's inherent authority were unaffected by the 1993 amendments to Rule 11. 608 F.3d at 467, n.6.

Appellee's assertion that *Orange Blossom* was critiqued in *Grine v. Chambers*, 439 B.R. 461 (Bankr. N.D. Ohio 2010) is also misleading. (Ans. at 53.) The opinion of the Bankruptcy Court for the Northern District of Ohio is, of course, only relevant to the extent that this Court finds its reasoning to be persuasive. As Appellee candidly states, the critique did not relate to the issue before this Court: the type of sanctions that a court can impose under its inherent authority. Rather, it dealt with the *Orange Blossom* court's application of Bankruptcy Code § 303(i). *Grine v. Chambers*, 439 B.R. at 470. Neither the critique in *Grine* nor the case itself had absolutely anything to do with the extent of a court's inherent authority. To the extent that it is even relevant, nothing in *Grine* can be read as a criticism of *Orange Blossom's* discussion of the type of sanctions that a court can award under its inherent authority.

Appellee's attempt to limit the holding in *Orange Blossom* to cases

involving Section 303 of the Bankruptcy Code (Ans. at 53) suffers from a fatal flaw.  It is utterly illogical.

Appellee notes that the decision in *Orange Blossom* does not cite or refer to the Supreme Court's decisions in *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) or *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923). (Ans. at 53.)  Because Appellee considers these decisions to be seminal cases regarding a court's inherent authority, he contends that the lack of citation to these cases implies that *Orange Blossom* was only intended to apply to cases involving Section 303 of the Bankruptcy Code.  (Ans. at 53.)

Actually, there is a simpler explanation why *Orange Blossom* did not cite these cases.  Neither case has anything to do with the issue of whether a court, under its inherent authority, can award attorneys' fees incurred in pursuing sanctions or defending sanctions on appeal.  *Chambers* does not discuss or refer to this issue.  *Toledo Scale* does not even mention a court's inherent authority.

Further, *Orange Blossom* is not this Court's only, or first, case holding that a court, under its inherent authority, cannot award attorneys' fees incurred in pursing sanctions or defending them on appeal.  This Court made that determination 18 years earlier in *Lockary v. Kayfetz*, *supra*.  *Orange Blossom* merely followed the holding in *Lockary*.  Appellee's logic for

limiting the holding in *Orange Blossom* (for what it is worth) cannot be applied to *Lockary*, which did discuss *Chambers v. Nasco, Inc., supra*.

Appellee's argument is also contradicted by the very structure of the decision in *Orange Blossom*. The decision has separate sections discussing the type of sanctions that a court may impose under Section 303 of the Bankruptcy Code (608 F.3d at 461-65) and those that may be imposed under the court's inherent authority (608 F.3d at 466-67). The decision, by its very language, is not limited to cases involving Section 303 of the Bankruptcy Code.

Appellee's final salvo is that *Orange Blossom* is distinguishable from the instant case due to the allegedly greater severity of the conduct in the instant case. (Ans. at 53-54.) Appellee misreads *Orange Blossom*. The holding in that case was that the Bankruptcy Court did not, under its inherent authority, have the ability to award sanctions that include attorneys' fees incurred in pursuing sanctions. Period. There was no suggestion in the decision that this limitation was dependent upon, or varied with, the type of conduct at issue. Nothing in *Orange Blossom* suggests that it is distinguishable on the basis of the conduct sanctioned.

It should also be re-emphasized that, regarding the District Court's imposition of a supersedeas bond sufficient to reimburse Appellee for his

appellate attorneys' fees, both *Lockary* and *Orange Blossom* have held that attorneys' fees incurred in defending a sanctions award on appeal are not caused by the sanctioned conduct and are, therefore, not recoverable as sanctions. (Applt. Br. at 57-58.) While this holding is both cited and quoted in Appellants' Opening Brief, Appellee makes no attempt to address this holding.

## IV. APPELLEE'S ADDITIONAL FACTUAL ASSERTIONS HAVE NO RELEVANCE TO THIS CASE AND ARE LARGELY UNSUPPORTED BY THE RECORD ON APPEAL.

After acknowledging that Appellants' Statement of Facts is "technically accurate in most respects" (Ans. at 13), Appellee then devotes the next 29 pages of his Answer to a litany of sundry accusations. (Ans. at 13-41.)

Because Appellee's additional factual assertions represent such a large portion of his Answer, it is incumbent upon Appellants to comment on Appellee's assertions. The vast majority of Appellee's assertions, while inflammatory, are not based in fact and are completely unrelated to the District Court's reasons for imposing sanctions.

### A. Appellee's Additional Assertions Are Unrelated to Either the Alleged Reasons for the Sanctions Imposed Or to the Issues in this Appeal.

The vast majority of Appellee's factual statements arise from his

personal view of copyright enforcement as "plundering the citizenry" (Ans. at 52), and, in particular, his criticism of copyright holders for:  filing a large number of copyright infringement cases to protect their copyrights (*id.* at 14-16); and not pursuing those cases that were not economically viable to pursue (*id.* at 14-15).  While these accusations echo the District Court's indignation toward Appellants (ER19-ER29), they were not the bases for sanctions.  Appellants were sanctioned for the alleged indirect role they played in Gibbs' so-called misrepresentations and discovery order violation. (ER24-ER27.)

In point of fact, Appellee's accusations could not have been the bases for sanctions.  Plaintiffs either do or do not have a protectable interest in their adult films; and, neither the District Court nor Appellee denies that Plaintiffs hold valid, protectable copyrights.  Further, so long as a plaintiff asserts a valid claim, there is no authority allowing a court to impose sanctions for voluntarily dismissing a valid claim because the cost of discovery will exceed the compensatory damages.

Of equal importance, these additional accusations have nothing whatsoever to do with the issues on appeal.  Appellee's accusations cannot justify the District Court's denial of criminal due process protections; the over-extension of the District Court's inherent authority to the individual

29

Appellants; or the District Court's allowance of attorneys' fees incurred in pursuing sanctions and defending them on appeal. Unless this Court intends to abandon its prior holdings, Appellee's accusations are irrelevant to these issues on appeal.

**B.     Appellee's Most Egregious Assertions Are Unsupported by Valid Citations to the Record on Appeal.**

Appellee's most egregious assertions are fundamentally flawed. In support of his accusations that AF Holdings and Ingenuity 13 are merely "shell companies", that the "shell companies" are a shield to support "dubious" copyright infringement lawsuits and that the "shell companies" are not "actual, known pornography producers", Appellee literally cites to nothing. (Ans. at 15.) Nor does he attempt to link these assertions to any of the conduct that was sanctioned by the District Court. When Appellee does cite to the record, it is predominantly to his counsel's own oral and written presentations. (*See, e.g.,* Ans. at 14-15, 25 & 29.)

When Appellee does cite to items other than his counsel's written and oral submissions, these citations are largely to items that are outside the record on appeal. Appellee, for example, devotes nearly eight pages of his Statement of the Case to discussing post-Sanctions Order events, including his counsel's e-mail exchanges with Appellants' counsel, not to mention the mystery documents submitted by Gibbs over five months after the Notices of

Appeal had been filed.  (Ans. at 34-41.)  None of this is probative to the issues on appeal.

In short, Appellee's Statement of the Case does not reflect the reality of the case below, but instead what Appellee wishes it was.  Each of Appellee's most egregious accusations is fundamentally flawed.[10]  None of them are relevant to this appeal.

## CONCLUSION

The record on appeal and the applicable case law leaves no doubt that the District Court:  did not observe mandatory criminal due process procedures; improperly imposed its inherent authority over the individual Appellants;  improperly awarded attorneys' fees incurred in pursuing sanctions and,  required Appellants to post an excessive supersedeas bond designed to guarantee Appellee attorneys' fees incurred in this appeal.

---

[10] An exhaustive rebuttal of Appellee's accusations is far beyond the scope of this Reply. However, a single example illustrates the liberties taken in Appellee's Statement of the Case. Under the subheading, "More Information About Yet Another Prenda Straw Man", Appellee accuses "Prenda" of usurping the identity of an individual named Allan Mooney in an unrelated case. (Ans. at 28.) For that extreme accusation, Appellee's "evidence" consists of little more than citations to the briefing submitted in that case and a newspaper article. Appellee avoids mentioning that *his own counsel's* arguments in that case were considered and *rejected* by the court to which they were presented. Further, the so-called victim of the alleged scheme repudiated Appellee's counsel's narrative and affirmed his role in the case.

For these reasons, Appellants ask this Court to vacate the Sanctions and Bond Orders; require the bond proceeds to be returned to Appellants; dismiss the individual Appellants; and, if a remand is deemed to be necessary, to direct that it be assigned to a different District Court Judge.

Dated:  April 28, 2014                Respectfully submitted,

VOELKER LITIGATION GROUP
Daniel J. Voelker, Esq.


By:  /s/Daniel J. Voelker_____
Daniel J. Voelker
Attorney for Appellants:  Ingenuity 13, LLC;  AF Holdings, LLC; Prenda Law, Inc.; Paul Duffy, Esq.; Paul Hansmeier, Esq.; and John Steele, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, in accordance with Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, Appellants' Opening Brief is proportionally spaced and has a typeface of 14 points.  According to the word-count feature in Microsoft Word software used to prepare this brief, it contains 6,988 words, including footnotes, and is double spaced.  This brief, therefore, complies with the 7,000 word type-volume limit established by Fed. R. App. P. 32(a)(7)(B).

Dated:  April 28, 2014            Respectfully submitted,

                                VOELKER LITIGATION GROUP
                                Daniel J. Voelker, Esq.


                                By:  /s/Daniel J. Voelker_____
                                Daniel J. Voelker
                                Attorney for Appellants:  Ingenuity 13,
                                LLC;  AF Holdings, LLC; Prenda Law, Inc.;
                                Paul Duffy, Esq.; Paul Hansmeier, Esq.; and
                                John Steele, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 28, 2014.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  April 28, 2014         /s/Daniel J. Voelker_____
                                         Daniel J. Voelker