Case No. 12-57302

In the
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

**CINDY LEE GARCIA,**

**Plaintiff-Appellant,**

**v.**

**GOOGLE INC. AND YOUTUBE, LLC,**

**Defendants-Appellees,**

_____

Hon. Michael W. Fitzgerald , United States District Court Judge
For the Central District of California in
CV-12-8315-MWF

_____

*AMICUS CURIAE* **BRIEF IN SUPPORT OF DEFENDANTS-APPELLEES
GOOGLE INC. AND YOUTUBE, LLC BY CALIFORNIA
BROADCASTERS ASSOCIATION**

Lee S. Brenner
Allison S. Brehm
Ken D. Kronstadt
**KELLEY DRYE & WARREN LLP**
10100 Santa Monica Boulevard., Twenty-Third Floor
Los Angeles, California 90067
Telephone:  (310) 712-6100, Facsimile:  (310) 712-6199

Counsel for *Amicus Curiae* California Broadcasters Association

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(c) of the Federal Rules of Appellate Procedure, *Amicus Curiae* California Broadcasters Association hereby states that it has no parent corporation, and no publicly held company owns 10% or more of its stock.

DATED: April 11, 2014

Respectfully submitted,
KELLEY DRYE & WARREN LLP
  Lee S. Brenner
  Allison S. Brehm
  Ken D. Kronstadt

By   s/ Allison S. Brehm
      Allison S. Brehm
Attorneys for *Amicus Curiae* California
Broadcasters Association

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ........................1

II.   AN INDIVIDUAL PERFORMANCE IN A FILM OR TELEVISION PROGRAM IS NOT SEPARATELY PROTECTABLE BY COPYRIGHT ................................................................................................4

      A.    An Individual Performance Within A Work is Not Independent Of That Work ....................................................................................4

      B.    The Opinion Is Inconsistent With Well-Established Ninth Circuit Authority Regarding "Authorship" ...........................................6

III.  ABSENT CLARIFICATION, THE MAJORITY OPINION CREATES CONFUSION FOR COURTS AND COPYRIGHT LITIGANTS WITHIN THE NINTH CIRCUIT ...........................................7

IV.  THE COURT SHOULD GRANT GOOGLE'S REQUEST FOR A REHEARING EN BANC, AT A MINIMUM ...............................................10

V.   CONCLUSION......................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 1999) ...................................................................6, 7, 10

*Burrow-Giles Lithographic Co. v. Sarony*
  ("*Burrow-Giles*"), 111 U.S. 53 (1883) ........................................................6, 7

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ...........................................................................10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..............................................................................................6

*Oddo v. Ries*,
  743 F.2d 630 (9th Cir. 1984) ...............................................................................5

**STATUTES**

17 U.S.C. § 101 ...............................................................................................4, 10

47 U.S.C. § 230(c)(1).............................................................................................10

47 U.S.C. § 230(f)(3) .............................................................................................10

**OTHER AUTHORITIES**

1 Melville B. Nimmer & David Nimmer,
  *Nimmer on Copyright* § 6.05 (1990)....................................................................4

2 William F. Patry,
  *Patry on Copyright* § 5:6 .....................................................................................4
  *Patry on Copyright* § 5:7 .....................................................................................5

Federal Rules of Appellate Procedure
  Rule 29(c)(5)........................................................................................................12
  Rule 32(a)(7)(B)...................................................................................................12

Ninth Circuit Rule 29-2..........................................................................................12

# I.
# <u>INTRODUCTION AND INTEREST OF *AMICUS CURIAE*</u>

Amicus Curiae California Broadcasters Association (the "CBA") submits this brief to address issues raised by this Court's Opinion dated February 26, 2014. By holding that Plaintiff-Appellant Cindy Lee Garcia ("Garcia") likely owns a separate copyright in her brief performance within the film entitled "Innocence of Muslims" (the "Film"), the panel majority created uncertainty for entertainment companies involved in the broadcast, exhibition, and distribution of content created by and licensed from others regarding whether individual performances within entertainment works such as motion pictures and television programs may be entitled to copyright protection separate and apart from that of the work as a whole.

The CBA respectfully submits that the panel majority's decision conflicts with the Copyright Act, well-established Ninth Circuit precedent, and the Copyright Office's longstanding practices (as the Copyright Office expressly recognized in refusing to register Garcia's claim in her individual performance in the Film). The panel majority has opened the door for any performer to claim sole ownership of a small piece within a larger work, attempt to enjoin distribution of the larger work, and sue not only the filmmaker or creator but any downstream distributor. Such a performer would then wield far more power over the distribution and licensing of the entire work than even a co-author thereof. While litigants seeking to rely on the majority opinion in cases involving less incendiary

1

facts may be unlikely to succeed, the trial-and-error period will be costly and time consuming for content broadcasters, exhibitors, and distributors.

Emphatically, the CBA does not condone Mark Basseley Youssef's ("Youssef") actions or the hardship his conduct visited on Garcia, nor does the CBA fault the Court for its desire to remedy the wrong Garcia suffered. The Opinion related to an actress who had been deceived and unwillingly included in an abhorrent piece of hate speech, and the Court understandably felt compelled to fashion a remedy. It is evident from the Opinion that the panel majority appropriately endeavored to limit its holding to the deeply troubling facts before it. Nevertheless, the panel majority's holding is wrong as a matter of law, creates uncertainty and unpredictability for content broadcasters, exhibitors, and distributors, and exposes them to litigation from performers who were not mistreated as Garcia was but still claim an individual copyright in their own performances. There are remedies available to the Garcia, but they are – correctly – against the wrongdoer (Youssef), not against third parties.

The CBA has a compelling and unique interest in the issues raised by the panel majority's holding, which holding affects broadcasters', exhibitors', and distributors' respective abilities to distribute and exploit creative works. As a trade association representing the interests of state television broadcasters, the CBA suffers immediate effects from significant changes in the application of

2

United States copyright law. The panel majority's opinion could significantly and adversely affect the CBA's businesses and the industry in which it operates. Specifically, a finding that individual performances within films and television programs may be entitled to copyright protection creates uncertainly for entertainment media creators and distributors—an overwhelming number of which reside within the Ninth Circuit. The resulting uncertainty and risk of liability threatens to stifle the creativity that the Copyright Act serves to foster. Consequently, the CBA has a considerable interest in the outcome of this action.

As detailed below, the CBA respectfully supports Google and Youtube's request for rehearing *en banc* on the grounds that Garcia's individual performance is not separately copyrightable. Absent clarification, the decision creates confusion over the scope of copyright protection and threatens to dramatically increase meritless copyright litigation initiated by performers, however miniscule their contributions to the copyrighted work.

This brief was authored only by the CBA and its counsel. No party or its counsel authored this brief in whole or in part or contributed money to fund this brief.

## II.
## <u>AN INDIVIDUAL PERFORMANCE IN A FILM OR TELEVISION PROGRAM IS NOT SEPARATELY PROTECTABLE BY COPYRIGHT</u>

**A.     An Individual Performance Within A Work is Not Independent Of That Work**

The panel majority's holding that Garcia likely owns a separate copyright in her brief performance in the Film is a departure from well-settled copyright law. The panel majority acknowledged that a film is typically viewed as a joint work. February 26, 2014 Opinion, Dkt. No. 39-1 ("Opn.") at 6. A "joint work" is "prepared by two or more authors with the intention that their contributions will be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Motion pictures and television programs, which synthesize the contributions of "the writer . . . , the director, the photographer, the actors, and , arguably, other contributors such as the set and costume designers," are the quintessence of joint works. 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 6.05 (1990). For these and similar works, "the collaborators' contributions are woven into a whole, and the individual contributions cannot be separated into different works." 2 William F. Patry, *Patry on Copyright* § 5:6. Indeed, the panel majority implicitly recognized that, absent such a distinction, "any analysis of the rights that might attach to the numerous creative contributions that make up a film can quickly become entangled in an impenetrable thicket of copyright." Opn. at 10-11.

In denying Garcia's claim that she has a copyrightable interest in the Film, after the panel issued the Opinion, the Copyright Office stated in no uncertain terms:

> [A]n actor's or actress' performance in the making of a motion picture is an integrated part of the resulting work, the motion picture as a whole. . . . If her contribution was neither a work made for hire nor the requisite authorship to warrant a claim in a joint work, Ms. Garcia has no separable claim to copyrightable authorship in her performance.

March 6, 2014 letter at 2, attached hereto.

Normally, as a co-owner in the work as a whole, a joint author can utilize the work "without the other's permission and indeed over the other author's objection." 2 *Patry on Copyright* § 5:7. Indeed, each co-owner has an independent right to use of the copyright without the other co-owner's consent. *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984). The panel majority, however, held that an actress whose only contribution to a motion picture was a 5-second performance has 100% control of that island within the Film. The result: as the sole "owner" of the 5-second performance, the performer has more power than a joint author of a motion picture or television program to try to prevent the distribution and licensing of the *entire* work.

**B.      The Opinion Is Inconsistent With Well-Established Ninth Circuit Authority Regarding "Authorship"**

The panel majority sidestepped established Ninth Circuit precedent under which an actress reciting lines written by another, under the direction of another, is unlikely to be deemed an "author."  As this Court explained in *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 1999), "authorship is not the same thing as making a valuable and copyrightable contribution."  *Id*. at 1233.  Indeed, "[a] creative contribution does not suffice to establish authorship[.]"  *Id*.   Rather, as the Supreme Court held long ago in *Burrow-Giles Lithographic Co. v. Sarony* ("*Burrow-Giles*"), 111 U.S. 53, 58 (1883), the author is the person who "'superintend[s]' the work by exercising control . . . or 'the inventive or master mind' who 'creates, or gives effect to the idea.'"  *Id*. at 1234 (quoting *Burrow-Giles*, 111 U.S. at 58 (1883)); *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991).

Here, the panel majority questioned whether Youssef exercised creative control over the manner in which the film was shot.  Opn. at 12.  More fundamentally, as the Dissent observed, Garcia herself had no creative control over the script or her performance and therefore she (putting aside Yousef) cannot be considered an "inventive or master mind" of her performance.  *See* Opn. at 25-26.  While the panel majority concluded that Garcia's artistic contributions were

sufficiently creative based on acting manuals, *see* Opn. at 8-9, this conclusion does not comport with existing Ninth Circuit law.

In *Aalmuhammed*, this Court analogized the authorship of a movie to the authorship of the photograph at issue in *Burrow-Giles*. In *Burrow-Giles*, the Supreme Court deemed the photographer to be the author of a photograph even though the lithographer and Oscar Wilde, the subject of the photograph, each made *substantial* copyrightable creative contributions. *Burrow-Giles Lithographic Co.*, 111 U.S. at 61. Following the Court's analogy from *Aalmuhammed*, Garcia posed but made no substantial copyrightable creative contributions and therefore should not be deemed an author.

### III.
### ABSENT CLARIFICATION, THE MAJORITY OPINION CREATES CONFUSION FOR COURTS AND COPYRIGHT LITIGANTS WITHIN THE NINTH CIRCUIT

The majority opinion places a tremendous burden on content creators to ensure that actors and actresses sign work-for-hire or other agreements based on its assumption that "copyright interests in the vast majority of films are covered by contract, the work for hire doctrine or implied licenses." Opn. at 11. This observation, while reasonable in theory, does not account for the real-life circumstances that content providers face on a daily basis. Although studios and production companies with legal departments and experienced personnel endeavor to ensure that persons appearing on screen execute formal agreements, releases, or

assignments, human error and technical glitches are inevitable in a fast-paced production environment. Such companies are frequently working under tremendous pressure while racing toward rapidly approaching deadlines. And emerging genres such as reality television, "mockumentaries," and "docufiction" – each of which is frequently filmed in public – can further hinder these companies' ability to guarantee that not a single agreement slips through the cracks. As the panel majority recognizes, "every schmuck with a videocamera" can potentially become "a movie mogul." Opn. at 12-13. Copyright is not limited to major studios with robust in-house legal departments. Nor are copyright-infringement suits.

In the wake of the panel majority's holding, content providers within the Ninth Circuit are left to wonder whether a performance within a motion picture or television program is an integrated part of the work as a whole – as well-settled authority and the Copyright Office direct – or whether the performance is separately copyrightable. The panel majority offered no guidance as to the prerequisites, if any, needed for a performer to claim a separate copyright in her performance. If every person appearing in a film or television program can claim an undifferentiated (but not joint) copyright interest in their small piece within a larger work, and thereafter sue for alleged unlawful use of that small piece

8

(however *de minimis* the use), litigation within the Ninth Circuit will undoubtedly increase unless and until the court provides clarity.

The need for clarity is amplified when the interests of content broadcasters, exhibitors, and distributors are considered. Such companies often have no way of knowing whether every filmmaker or creator of every work in its system obtained a license from every performer appearing in that work. Unless the Court clarifies the panel majority's opinion, such companies are at risk of being sued as infringers by any performer claiming independent ownership of his or her individual performance.

Permitting individual performances to be copyrightable puts content broadcasters, exhibitors, and distributors to a Hobson's choice: demand the right to edit individual performances out of works over the vehement protests of creators of the work as a whole, or demand to be provided every release, license, or work-for-hire agreement before making the work available to the public. While broadcasters, exhibitors, and distributors can demand indemnities from studios, such an indemnity cannot prevent repeated litigation and attempted injunctions; it can only reallocate, between entertainment companies, the hefty costs of prolonged litigation on an *ex post* basis.

## IV.
## THE COURT SHOULD GRANT GOOGLE AND YOUTUBE'S REQUEST FOR A REHEARING EN BANC, AT A MINIMUM

For commendable reasons, the panel majority wedged a square peg into a round hole. The CBA does not for a moment dispute that Garcia has been mistreated by Youssef and should have her day in court. But Garcia's recourse is against Youssef for using Garcia's likeness without her permission, not against Google or other third-party distributors of the Film. Garcia cannot pursue such a claim against Google because it has immunity under Section 230 of the Communications Decency Act for claims regarding Youssef's conduct. 47 U.S.C. §§ 230(c)(1), 230(f)(3); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). This is as it should be. Other than federal intellectual property law, courts do not hold providers of online services liable for the torts of third parties. *See id.* Yet Garcia and the panel majority, deciding correctly that Youssef's actions require redress, have improperly distorted copyright law to the point that it is unrecognizable to the Copyright Office or when compared against Ninth Circuit precedent.

The proper course here is for the Court to follow *Aalmuhammed*, or hold that there is no fixation of Garcia's work in the first instance, [1] or both. Alternatively,

---

[1] The Copyright Act requires that the fixation be "of more than transitory duration," and done "by or under the authority of the author." 17 U.S.C. § 101 (definition of "fixed"). Garcia's 5-second performance was of a transitory

10

if the Court believes that the District Court failed to address all of the relevant factors in finding that Garcia was unlikely to succeed on the merits of her copyright claim, it should remand the case for further proceedings and clarification. Otherwise, the Court should grant Google and Youtube's Petition for Rehearing En Banc to address the issues raised in Google and Youtube's Petition and discussed herein.

## V.
## <u>CONCLUSION</u>

For all the foregoing reasons, the CBA respectfully submits that rehearing en banc should be granted.

DATED: April 11, 2014

Respectfully submitted,
KELLEY DRYE & WARREN LLP
  Lee S. Brenner
  Allison S. Brehm
  Ken D. Kronstadt

By   s/ Allison S. Brehm
      Allison S. Brehm
Attorneys for *Amicus Curiae* California
Broadcasters Association

---

duration. It was not fixed on its own, but through the fixation of the Film as a whole. If Garcia's copyright in her performance is independent of the Film's copyright, and if Youssef's use of her independent copyright was unauthorized, then common sense dictates that she cannot claim that the fixation of the Film was an *authorized* fixation of her performance. The Copyright Office recognized this when it denied Garcia's claim, stating "[Garcia's] performance was one of many actors' performances that was . . . fixed by others in the creation of the motion picture as a whole." March 6, 2014 Letter at 3.

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure Rules 29(c)(5) and 32(a)(7)(B), Ninth Circuit Rule 29-2, and the Court's March 13, 2014 Order (Dkt Entry No. 61), I certify that this Amicus Curiae Brief is proportionally spaced, has a typeface of 14 points and contains approximately 2,408 words (within the 2,500 word limit) excluding the title page, table of contents, table of authorities, certificate of compliance, corporate disclosure statement, and certificate of service.

DATED: April 11, 2014                    Respectfully submitted,
                                         KELLEY DRYE & WARREN LLP
                                          Lee S. Brenner
                                          Allison S. Brehm
                                          Ken D. Kronstadt


                                         By    s/ Allison S. Brehm
                                         _____
                                             Allison S. Brehm
                                         Attorneys for *Amicus Curiae* California
                                         Broadcasters Association

## <u>CERTIFICATE OF SERVICE VIA CM/ECF</u>

I hereby certify under penalty of perjury that on April 11, 2014, I electronically filed the foregoing document entitled *AMICUS CURIAE* **BRIEF IN SUPPORT OF DEFENDANTS-APPELLEES GOOGLE INC. AND YOUTUBE, LLC BY CALIFORNIA BROADCASTERS ASSOCIATION** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: April 11, 2014

Respectfully submitted,
KELLEY DRYE & WARREN LLP
 Lee S. Brenner
 Allison S. Brehm
 Ken D. Kronstadt

By    s/ Allison S. Brehm
        Allison S. Brehm
Attorneys for *Amicus Curiae* California
Broadcasters Association



**United States Copyright Office**
Library of Congress   101 Independence Avenue SE   Washington, DC 20559-6000   www.copyright.gov


Mr. M. Cris Armenta
The Armenta Law Firm
11900 Olympic Blvd., Suite 730
Los Angeles, CA 90064

March 6, 2014


Dear Mr. Armenta:


On December 18, 2012, Ms. Laura Lee Fischer, Chief of the Performing Arts Division of the United States Copyright Office's Registration Program, wrote to you in response to the claim by Ms. Garcia in a copyrightable interest in her dramatic performance in a motion picture, "Desert Warrior." Ms. Fischer's letter stated that "[f]or copyright registration purposes, a motion picture is a single integrated work." It went on to state that "[a]ssuming Ms. Garcia's contribution was limited to her acting performance, we cannot register her performance apart from the motion picture." The letter concluded by stating that "[i]f you feel that Ms. Garcia has the right to claim copyright in the entire motion picture, please state the reasons for your position. Otherwise, we must refuse registration."

On March 13, 2013, you replied to Ms. Fischer by stating that you believed that Ms. Garcia "has a copyrightable interest in her dramatic performance in the work, 'Desert Warrior,'" and attached a brief to the United States Court of Appeals for the Ninth Circuit that you stated "fully briefed" the matter. You did not, however, respond to Ms. Fischer's specific question or acknowledge that the U.S. Copyright Office clearly stated that it views dramatic performances in motion pictures to be only a part of the integrated work -- the motion picture.

In accordance with the Office's previous letter, the Office must refuse registration. Although you asked the Office to await the decision of the Ninth Circuit before taking any action, the Office finds that the Copyright Act vests exclusive authority in the Register of Copyrights to render a decision as to whether to issue a certificate of registration or refuse an application for registration. 17 U.S.C. § 410. Moreover, Congress expressly envisioned that registration decisions by the Register of Copyrights would precede adjudication in the courts. 17 U.S.C. § 411. If infringement actions are instituted prior to registration determinations by the Register of Copyrights, not only will the evidentiary presumption be lost when certificates are issued, but more importantly, where the Office finds a claim to be invalid, the Register's statutory right to intervene in an action instituted pursuant to a refusal to register is nullified. 17 U.S.C. § 411(a).

1

The U.S. Copyright Office's longstanding practices do not allow a copyright claim by an individual actor or actress in his or her performance contained within a motion picture. The rationale behind this position is clear: an actor or actress in a motion picture is either a joint author in the entire work or, as most often is the case, is not an author at all by virtue of a work made for hire agreement. This view is supported by the legislative history of section 201 of the Copyright Act:

> The definition of "joint works" has prompted some concern lest it be construed as converting the authors of previously written works, such as plays, novels, and music, into coauthors of a motion picture in which their work is incorporated. *It is true that a motion picture would normally be a joint rather than a collective work with respect to those authors who actually work on the film, although their usual status as employees for hire would keep the question of coownership from coming up.* On the other hand, although a novelist, playwright, or songwriter may write a work with the hope or expectation that it will be used in a motion picture, this is clearly a case of separate or independent authorship *rather than one where the basic intention behind the writing of the work was for motion picture use.* In this case, the motion picture is a derivative work within the definition of that term, and section 103 makes plain that copyright in a derivative work is independent of, and does not enlarge the scope of rights in, any pre-existing material incorporated into it. There is thus no need to spell this conclusion out in the definition of "joint work."

> H.R. Rep. 94–1476 at 120 (emphasis added).

While a novelist, playwright, or screenwriter may create distinct works that are later adapted or incorporated into a motion picture, i.e., a new derivative work, an actor's or actress' performance in the making of a motion picture is an integrated part of the resulting work, the motion picture as a whole. An actor's or actress' performance is either joint authorship or is a contribution under a work made for hire agreement. There is no question that Ms. Garcia's performance was not a stand-alone motion picture that was subsequently adapted into another motion picture. Rather, it was a part of the creation of "Desert Warrior", subsequently re-named, "Innocence of Muslims". There is also no question that Ms. Garcia intended her contribution or performance to "be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §101. If her contribution was not as a work made for hire, she may assert a claim in joint authorship in the motion picture, but not sole authorship of her performance in a portion of the work. If her contribution was neither a work made for hire nor the requisite authorship to warrant a claim in a joint work, Ms. Garcia has no separable claim to copyrightable authorship in her performance.

The Office has identified at least one exception to the general rule on treating motion pictures as integrated works. Where a separate portion of a motion picture is commissioned, such as a special effects scene that qualifies as a discrete work in itself that is later incorporated into a motion picture, such a separate work may be neither a joint work nor a work made for hire, but rather a work created by an independent contractor. Such an exception is premised on the creation of a stand-alone work that is independently authored, fixed, and sufficiently creative to

2

be considered a separate claim within one or more of the statutory categories of authorship in section 102(a).

The Office's view on this matter is not limited to motion pictures. The same reasoning would apply to the musicians, vocalists or production specialists on a sound recording. The Office would refuse an authorship claim by an individual musician who contributed an individual performance to a sound recording unless the claim was as a joint author. An exception would exist where a discrete sound recording was made by a musician that was later incorporated into a new, derivative sound recording.

Ms. Garcia's performance was not a discrete or separate motion picture that was incorporated into "Desert Warrior". Instead, her performance was one of many actors' performances that went into the making of the integrated motion picture that was fixed by others in the creation of the motion picture as a whole. As such, the Office must refuse registration in Ms. Garcia's claim in her individual performance in the motion picture.

Sincerely,

Robert J. Kasunic
Associate Register of Copyrights and
Director of Registration Policy and Practices
United States Copyright Office

3