NOS. 12-57302

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CINDY LEE GARCIA,

PLAINTIFF-APPELLANT,

V.

GOGGLE, INC., YOUTUBE LLC, et al.,

DEFENDANTS-APPELLEES,

AND

NAKOULA BASSELEY NAKOULA, an individual, a.k.a. Sam Bacile, et al.,

DEFENDANTS.

On Appeal From The United States District Court
for the Central District of California
D.C. No. 2:12-cv-08315-MWF-VBK

The Honorable Michael W. Fitzgerald, District Court Judge

*BRIEF OF AMICI CURIAE* FLOOR64 INC. AND ORGANIZATION FOR TRANSFORMATIVE WORKS IN SUPPORT OF GOOGLE, INC. AND YOUTUBE, LLC'S PETITION FOR REHEARING EN BANC

Catherine R. Gellis, Esq.
150 Harbor Dr. #2477
Sausalito, CA 94965
Telephone: 202-642-2849
Email: cathy@cgcounsel.com

*Counsel for Amici Curiae*

# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, both *amicus curiae* Floor64 Inc. and *amicus curiae* Organization for Transformative Works state that they do not have a parent corporation, and that no publicly held corporation owns 10% or more of the stock of either *amicus*.

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................................... 1

INTRODUCTION ...................................................................................................... 2

ARGUMENT .............................................................................................................. 3

I.     CONGRESS FORECLOSED THE PANEL'S ORDER. ...................................... 3

A.     SECTION 230 PRECLUDED THE INJUNCTION. ........................................... 3

B.     THE DMCA ALSO PRECLUDED THIS INJUNCTION. ................................. 5

II.     ENJOINING GOOGLE FRUSTRATES CONGRESS'S INTENT TO PROMOTE ONLINE FREE SPEECH BY PROTECTING INTERMEDIARIES. ............................... 8

A.     WHEN INTERMEDIARIES HAVE TO FEAR LIABILITY FOR USER-GENERATED CONTENT, IT HARMS PUBLIC DISCOURSE. ............................................................ 8

B.     THE INJUNCTION AGAINST GOOGLE SIGNALS THAT INTERMEDIARIES NOW NEED TO FEAR LIABILITY FOR HOSTING USER-GENERATED CONTENT. ..... 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**
*Blockowicz v. Williams*, 630 F. 3d 563 (7th Cir. 2010) ............................................. 4
*Fair Housing Council of San Fernando Valley v. Roommate.com*, 521 F. 3d 1157
   (9th Cir. 2008) ............................................................................................................ 5
*Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102 (9th Cir. 2007) ........................... 7, 9
*Scott v. WorldStarHipHop, Inc.,* 102 U.S.P.Q.2d 1725 (S.D.N.Y. 2012) ................. 9
*UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F. 3d 1006 (9th Cir. 2013) 7

**Statutes**
17 U.S.C. § 107 .............................................................................................................. 8
17 U.S.C. § 512 ......................................................................................................... 2, 6
17 U.S.C. § 512(c) ........................................................................................................ 6
17 U.S.C. § 512(c)(1) ................................................................................................... 6
17 U.S.C. § 512(c)(3)(A)(v) ........................................................................................ 7
17 U.S.C. § 512(j)(1)(A)(i) .......................................................................................... 6
17 U.S.C. § 512(j)(1)(A)(ii) ......................................................................................... 6
17 U.S.C. § 512(j)(1)(A)(iii) ........................................................................................ 7
17 U.S.C. § 512(m)(1) .................................................................................................. 7
47 U.S.C. § 230 ............................................................................................................. 2
47 U.S.C. § 230(a)(1) ................................................................................................... 3
47 U.S.C. § 230(a)(3) ................................................................................................... 3
47 U.S.C. § 230(c)(1) ............................................................................................... 3, 4
47 U.S.C. § 230(c)(2) ................................................................................................... 5
47 U.S.C. § 230(e)(2) ........................................................................................... 4, 6, 8

**Other Authorities**
S.Rep. No. 105-190 (1998) .......................................................................................... 6

## STATEMENT OF INTEREST

*Amicus* Floor64 Inc. is a corporation that regularly advises and educates innovative technology startups on a variety of issues, including intermediary liability and the important free speech aspects of safe harbors. Floor64's online publication, Techdirt.com, includes over 50,000 discussions on similar topics, totaling more than one million third party comments, and regularly receives over 3 million monthly impressions. The site depends on the statutory protection for intermediaries to enable the robust public discourse found on its pages.

*Amicus* Organization for Transformative Works ("OTW") is a 501(c)(3) nonprofit organization dedicated to protecting and preserving noncommercial fanworks: works created by fans based on existing works, including popular television shows, books, and movies. OTW's nonprofit website hosting transformative noncommercial works, the Archive of Our Own ("AO3"), has over 300,000 registered users and receives almost 50 million page views per week. The OTW submits this brief to make the Court aware of the impact of its decision upon nonprofit intermediaries that facilitate transformative speech.

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no one, except for undersigned counsel, has authored the brief in whole or in part, or contributed money towards the preparation of this brief.

This brief is filed pursuant to this Court's Order, Docket No. 61.

1

## INTRODUCTION

There is no dispute that Plaintiff Garcia has been victimized by Defendant Nakoula, first by being fraudulently coerced into enabling his inflammatory cinematic project without her awareness or consent, and then by wrongfully being held accountable by people who construe religious insult as a justification for violence. Garcia appealed to the courts to remediate her injury, including by forcing Google to remove from the world all evidence of it.

But courts can only provide remedies the law allows, and here the law explicitly restricted those that could be imposed on intermediaries like Google. Congress deliberately insulated them from both monetary and equitable remedies with respect to content others put on their systems when it enacted 47 U.S.C. § 230 ("Section 230") and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, as part of a conscious effort to protect and advance online public discourse. By nonetheless providing Garcia the remedy she sought, just though it may have seemed under these circumstances, the Panel undermined Congress's goal of fostering online speech by effectively stripping intermediaries of the statutory protection they depend on to deliver it.

The order requiring Google to "take down all copies" and "take all reasonable steps to prevent further uploads" of the offending content should thus be reviewed in light of Congress's express prohibition against such a command.

## ARGUMENT

**I. Congress foreclosed the Panel's order.**

    **A. Section 230 precluded the injunction.**

The Internet would be nothing without its intermediaries. Intermediaries are what carry, store, and serve every speck of information that makes up the Internet. From the banal to the erudite, every single thing the world relies on the Internet to provide exists only because some site, server, or system has intermediated that content so the world can have access to it.

Congress understood this value, finding that "[t]he rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens," § 230(a)(1), and that "[t]he Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." § 230(a)(3). To ensure that intermediaries could continue to provide this benefit Congress enacted Section 230, which stands for the proposition that intermediaries are only responsible for what they themselves communicate through their systems – not what others use them for. § 230(c)(1).

3

Section 230 is therefore unequivocal in the immunity it provides intermediaries,[1] decreeing that, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1). This immunity not only relieves intermediaries for monetary damages claims arising from the content appearing on their systems, but it also prevents them from being compelled to modify or delete that content (provided it had been supplied by others, as is the case here). *Blockowicz v. Williams*, 630 F. 3d 563, 568 (7th Cir. 2010) (finding Federal Rule of Civil Procedure 65 precludes "an injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.").

While Section 230's bright-line rule may sometimes mean that unsavory content can linger online when the intermediary opts not to delete it, were intermediaries subject to a compulsion to delete then more legitimate content would invariably end up being prospectively deleted. Congress deliberately structured Section 230 to allow intermediaries to exercise discretion over the content others posted to them by not requiring them to delete any of it.

---

[1] While Section 230's immunity is unequivocal there are a few exceptions to its applicability, including for claims involving intellectual property. § 230(e)(2). However, even if Garcia's copyright claim were valid, the principles underlying Section 230 remain central to the present dispute. *See* discussion *infra* I.B, II.A.

§ 230(c)(2); *see also Fair Housing Council of San Fernando Valley v. Roommate.com*, 521 F. 3d 1157, 1163-64 (9th Cir. 2008).

Even in cases like this one where the content in question is noxious Section 230 provides for no exception from its coverage, nor can the defects of the content provide any justification for denying intermediaries the discretion Section 230 immunity affords them. On the contrary, for Section 230 to provide any meaningful protection intermediaries have to be able to rely on it holding in the hard cases as much as the easy ones. Exceptions to this immunity cannot be borne without eviscerating it entirely. *See id.* at 1174. To do otherwise would be as foolhardy as shooting the messenger who has carried a message someone else sent based solely on the content of that message, and, worse, as in this case, simply because of the boorish behavior of society's lesser angels in response to it. If too many intermediaries find themselves facing such dire consequences for delivering others' content, soon none will be left willing to deliver any more.

Yet that is what this Panel has done in enjoining Google, and for this reason its order should be reviewed.

### B. The DMCA also precluded this injunction.

Even if Garcia did have a valid copyright in the film, the remedy ordered by the Panel to "take down all copies" and "take all reasonable steps to prevent further uploads" goes beyond what Congress permitted be compelled of Google.

5

Although Congress did exempt intellectual property claims from Section 230, § 230(e)(2), it did not want intermediaries to necessarily be liable for the copyright infringement that might be manifest in the content it hosted at the direction of others. S.Rep. No. 105-190, at 8 (1998). As with Section 230, Congress understood that if it wanted to intermediaries to remain available to facilitate users' expression it needed to craft a law that aligned everyone's interests by ensuring intermediaries had sufficient protection from litigation and liability with respect to that expression. *Id.* at 20.

To meet this policy objective Congress amended the copyright statute with the DMCA. 17 U.S.C. § 512. Part of the protection it offers to intermediaries, in addition to relief from monetary damages, is a limit on injunctive exposure. § 512(c)(1) ("A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief…"). Because this Panel made no finding that Google was unable to avail itself of the safe harbor requirements articulated at § 512(c),[2] the injunctions it could issue were limited to (1) disabling access "to infringing material or activity *residing at a particular online site* on the provider's system or network," § 512(j)(1)(A)(i), (2) terminating specifically-identified users, § 512(j)(1)(A)(ii), or (3) "[s]uch other injunctive relief as the court may consider necessary to prevent or restrain infringement of

---

[2] To the extent the propriety of the order hinges on this issue, rehearing should be granted so that it may be properly litigated.

copyrighted material specified in the order of the court *at a particular online location…*" § 512(j)(1)(A)(iii) (emphasis added). All of these limitations therefore preclude the broad injunction issued by the Panel to "take down all copies" everywhere.

Furthermore, the DMCA explicitly relieves intermediaries from having to police for infringing content. § 512(m)(1); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F. 3d 1102, 1114 (9th Cir. 2007). Thus the order to "take all reasonable steps to prevent further uploads" imposes a duty on Google that goes far beyond what Congress contemplated being appropriate and at the expense of the same free speech concerns that Congress worried about in the Section 230 context. Under the DMCA an intermediary only needs to take down specific copies of content that were not "authorized by the copyright owner, its agent, or the law." § 512(c)(3)(A)(v); *see also UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F. 3d 1006, 1021-22 (9th Cir. 2013). But copyright analysis is inherently contextual; the question is never as simple as whether a copy has been made, but whether the specific copy has been made without entitlement, something the intermediary is least equipped to know. *Id.* Some copies may, for example, have been posted by other individuals under the principles of fair use, a particularly salient concern here given the immense public discussion this controversy has spawned. *See id.* In nevertheless ordering Google to prevent the existence of each

7

and every possible copy, whether infringing or not, the Panel has ignored the statutory limitations imposed by the DMCA and 17 U.S.C. § 107, in contravention of the First Amendment principles enshrined in the latter and general desire of Congress to encourage online discourse by protecting intermediaries through the former. These concerns are significant enough to warrant further judicial review.

## II. Enjoining Google frustrates Congress's intent to promote online free speech by protecting intermediaries.

### A. When intermediaries have to fear liability for user-generated content, it harms public discourse.

It is not idle speculation to believe that if intermediaries' immunity were not complete the vibrant marketplace of ideas they enable would be compromised. There is one key way their immunity has already been compromised, with readily-visible resulting harm.

Because Section 230 puts user-generated content beyond the reach of court orders for deletion, plaintiffs often try to bypass its reach by recasting their state law claims, for which intermediaries would be immune from requirements to take it down, as intellectual property claims, for which intermediaries are not. § 230(e)(2). This Circuit has already reasonably found that this exception refers only to federal intellectual property and not any of the state-created quasi-intellectual property claims Garcia may legitimately have against Nakoula arising from his film and for which, pursuant to Section 230's language and legislative

8

goals, Google is immune from any judicial action associated with hosting it. *CCBill*, 488 F. 3d at 1118-19 ("[P]ermitting … any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes.").

But because this exemption clearly applies to federal copyright claims it has become very easy for people to censor content they don't like by simply by framing their displeasure as a copyright claim, however speciously, because doing so targets the intermediary's un-immune Achilles heel. *See*, *e.g.*, *Scott v. WorldStarHipHop, Inc.,* 102 U.S.P.Q.2d 1725 (S.D.N.Y. 2012). The rationally risk-adverse intermediary will thus be inclined to over-censor potentially important public discourse in order to avail themselves of the lesser, conditional protection of the DMCA and avoid the specter of being held liable for content someone else provided.[3]

While in deleting the content intermediaries may be protecting themselves, their doing so sacrifices the important public interest Congress sought to protect when it codified Section 230. Congress recognized the public also has an interest in having access to online speech and the subsequent discourse it spawns, but when

---

[3] This concern is exacerbated by this ruling, which removes any incentive for intermediaries to weed out specious claims, as doing so will only risk exposing themselves to expensive litigation.

9

a copyright claim can be used as a virtual delete button the public loses out on that benefit. It is thus crucially important that courts not aid and abet these attempts at censorship, even in cases with egregious content like this one.

In fact, rather than justifying Garcia's attempt to evade Section 230's intermediary protection the facts of this case actually serve to validate its applicability. As this Court itself noted in creating the special docket page for this case there is an above average level of interest in it. Nearly every aspect is a matter of public concern, from the abuse by Nakoula, to the abuse wrought by Garcia's attackers, to the effect this case may have on future speakers, intermediaries, and speech itself. Striking from the public record all evidence of the film (to the extent the injunction against Google would actually achieve this end) won't make it cease to exist or the matter any less important. This bell cannot be un-rung, and attempting to do so by putting the squeeze on the intermediary serves only to chill public discussion, not only with regard to this matter but any future matters involving determined plaintiffs tempted to mask their state law claims under the guise of copyright. Indeed, a ruling allowing even worthy victims like Garcia to force intermediaries to destroy all record of their victimization actually gives future wrongdoers the tools to suppress evidence and commentary about their wrongdoing thus enabling further victimization. In light of these harms, this order should be reviewed.

### B. The injunction against Google signals that intermediaries now need to fear liability for hosting user-generated content.

Granting Garcia the injunction against Google changed the rules governing intermediaries. In ordering a remedy beyond the bounds Congress authorized the Panel has left intermediaries as vulnerable as they would have been had there been no Section 230 or DMCA at all. Although it was an injunction and not a monetary remedy, if the laws preventing the former can be circumvented today then they can be circumvented to allow the latter tomorrow.

Such a ruling frustrates Congress's express intention to protect intermediaries by rendering this protection illusory. Protecting intermediaries in exchange for the speech they enabled was a bargain Congress consciously struck in order to prevent them from being tempted to over-censor or even outright ban substantial amounts of legitimate, valuable content, no matter how valuable or legitimate that content might actually be. This is a policy whose wisdom has been born out: by relieving intermediaries of liability connected with content that passes through their systems intermediaries have been able to develop into increasingly rich resources that might not have been able to take root had they felt it necessary to police every byte that passed through them out of the fear that if they didn't, and the wrong bit got through, crippling legal sanction could be just around the corner.

While Google may have had the finances and fortitude to fully fight Garcia's legal demands, many smaller, start-up, or non-profit intermediaries do not. Having

11

to defend themselves against the reach of the courts for issues arising from any of the myriad user-generated content they host can be devastating, but in opening gaps in the safe harbors of Section 230 and the DMCA the Panel has opened up intermediaries to that likelihood. The Panel's order necessarily challenges their current and future ability to facilitate the rich and diverse discourse they've heretofore been able to facilitate and must thus be reviewed in light of how it breaches Congress's purposeful promise to shield them.

## CONCLUSION

Because this order disregards the statutory protections afforded intermediaries by Section 230 and the DMCA and therefore exposes them all to heightened risk born from uncertainty, in conflict with Congress's clear intent to provide them with generous legal protection to preserve the social value of online free speech, this case should be reheard so the court can reconsider whether its order is consistent with Congress's legislative instructions.

Dated: April 14, 2014

By: /s/ Catherine R. Gellis
Catherine R. Gellis, Esq.
150 Harbor Dr. #2477
Sausalito, CA 94965
Telephone: 202-642-2849
Email: cathy@cgcounsel.com

*Counsel for Amici Curiae*
*Floor 64 Inc. and Organization for*
*Transformative Works*

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS
PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.   This Brief of Amici Curiae Floor64 Inc. and Organization for Transformative Works In Support Of Google, Inc. and YouTube, LLC's Petition for Rehearing En Banc complies with the word limit of this Court's March 13, 2014 order because this brief contains 2500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated: April 14, 2014                By:  /s/ Catherine R. Gellis__

                                     Catherine R. Gellis

                                     *Counsel for Amici Curiae
                                     Floor64 Inc and Organization for
                                     Transformative Works*_____

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 14, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 14, 2014                By:  /s/ Catherine R. Gellis

                                     Catherine R. Gellis

                                     *Counsel for Amici Curiae*
                                     *Floor64 Inc. and Organization for*
                                     *Transformative Works*