**No. 12-57302**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CINDY LEE GARCIA,

*Plaintiff-Appellant,*

v.

GOOGLE INC. AND YOUTUBE, LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
Hon. District Judge Michael W. Fitzgerald
Case No. 2:12-cv-8315-MWF (VBK)

**BRIEF OF ADOBE SYSTEMS INC.; AUTOMATTIC INC.; EBAY INC.; FACEBOOK INC.; GAWKER MEDIA, LLC, IAC/INTERACTIVECORP; KICKSTARTER, INC.; PINTEREST INC.; TUMBLR INC.; TWITTER, INC.; AND YAHOO!, INC. AS AMICI CURIAE IN SUPPORT OF GOOGLE AND YOUTUBE'S PETITION FOR REHEARING EN BANC**

Andrew P. Bridges (CSB No. 122761)
abridges@fenwick.com
Kathryn J. Fritz (CSB No. 148200)
kfritz@fenwick.com
Todd R. Gregorian (CSB No. 236096)
tgregorian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300

*Counsel for the Amici Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Amici Curiae Adobe, Automattic, eBay, Facebook, IAC/InterActiveCorp, Kickstarter, Pinterest, Twitter, and Yahoo! hereby state that they have no parent corporations and there is no publicly held corporation that owns 10% or more of their stock.

Amicus Curiae Gawker Media, LLC hereby states that it is a wholly owned subsidiary of the privately held Gawker Media Group, Inc. No publicly held corporation owns 10% or more of its stock.

Amicus Curiae Tumblr hereby states that Yahoo! is its parent corporation and owns 100% of its stock.

# TABLE OF CONTENTS

Page

**CORPORATE DISCLOSURE STATEMENT** ...................................................... i

**INTEREST OF THE AMICI CURIAE** ............................................................... 1

**ARGUMENT** ........................................................................................................ 2

**INTRODUCTION** ................................................................................................ 2

I. An Injunction To Prevent Future Uploads Of Material Is At Odds With Congressional Policy And Established Principles Limiting The Duties Of Online Services .................................................................... 4

II. The Court's Order To Suppress All Appearances Of A Copyrighted Work Is Overbroad And Thwarts The Public's Right To Receive Information On A Matter Of Public Interest ....................................... 6

III. An Injunction To Prevent All Appearances Of Material Contradicts This Court's Contributory Copyright Infringement Standard And Subjects Online Services To Grave Risks Of Contempt ............................ 8

IV. An Injunction Requiring Replacement Or Editing Of User Contributions Is Similarly Unworkable ......................................................... 10

V. The Court Should Disavow The Use Of Gag Orders Regarding Copyright Law Decisions ................................................................................ 10

**CONCLUSION** .................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cariou v. Prince*,
   Case No. 11-1197-cv (2d Cir. Apr. 25, 2013) ........................................................7

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ...............................................................................................7

*Golan v. Holder*,
   565 U.S. __, 132 S.Ct. 873 (2012) ........................................................................7

*New Era Publications International, ApS v. Henry Holt & Co.*,
   695 F. Supp. 1493 (S.D.N.Y. 1988) ....................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   487 F.3d 701 (9th Cir. 2007) .................................................................................9

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ...............................................................................5

*Salinger v. Colting*,
   607 F.3d 68 (2d. Cir. 2010) .................................................................................11

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
   718 F.3d 1006 (9th Cir. 2013) ..........................................................................6, 8

*Zeran v. America Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) .................................................................................5

**STATUTES**

17 U.S.C. § 512(c)(3)(A)(i)-(vi) & (B)(i) ...................................................................5

17 U.S.C. § 512(c)(3)(A)(v) .......................................................................................8

17 U.S.C. § 512(m) ....................................................................................................5

47 U.S.C. § 230(c)(1) .................................................................................................5

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

**RULES**

Fed. R. App. P. 29(c)(5) ................................................................................1

NINTH CIRCUIT RULE 29-2 ...........................................................................1

**OTHER AUTHORITIES**

U.S. CONST. amend. I. ..........................................................................*passim*

DIGITAL MILLENNIUM COPYRIGHT ACT .............................................*passim*

SENATE REPORT NO. 105-190 (1998) .........................................................7

## INTEREST OF THE AMICI CURIAE

These Amici Curiae ("Amici") are leading online platforms and service providers in the areas of social media and networking, publishing, and e-commerce. Many of them compete with Google and YouTube, and with each other, but on the issues at stake in this appeal they unanimously urge the Court to rehear the appeal *en banc* and to reconsider its troublesome orders and opinion.

All these Amici have businesses that involve user-generated content, and together they receive and process millions of "takedown" requests each year. These Amici promote responsible conduct on the part of online services, their customers, and copyright holders in cooperative efforts to safeguard and balance copyright interests, free speech, and due process. In this brief, Amici urge respect for Congressional policies against imposing on online services the obligation to monitor their services and for the First Amendment, which copyright law protects in its fair use doctrine.

Amici submit this brief under Circuit Rule 29-2 and the Court's March 13, 2014 Order. (Dkt. No. 61.)

Amici disclose that none of the circumstances in Rule 29(c)(5), Fed. R. App. P., exist with respect to this brief.

## ARGUMENT

## INTRODUCTION

The Court's injunction directed Google to take all reasonable steps to prevent future uploads of "Innocence of Muslims" to any platform under its control. The decision and order are alarming.

First, the decision and order are at odds with long established copyright jurisprudence and Congressional policy that the obligation of identifying infringements belongs to copyright holders and that service providers do not have to monitor their services for all possible copyright infringements. Second, the overbreadth of the order is contrary to Ninth Circuit precedent and denies the public's interest in free expression and access to information. Third, practical realities make the Court's order unworkable for online service providers, and the ruling also poses a serious threat to online service providers' businesses.

The panel's decision failed to consider these points. Amici therefore urge this Court to revisit the crucial examination of the balance of hardships and the public interest in this appeal from denial of a motion for preliminary injunction. The Court should bear in mind Congress's policy decision to protect online services from burdens of monitoring or controlling their services, and it should reconsider the severe burdens and risks the Court's decision imposes on Google. In weighing the public interest, the Court should recognize that a requirement to

2

prevent all future uploads of a challenged work may suppress important fair uses (and other permissible uses such as pursuant to license), not merely in this case but in general, and thus trample upon both fundamental copyright principles and related First Amendment interests.

Several points illustrate the improper burdens and impractical elements of the panel's decision:

- An online service cannot guarantee compliance with an order preventing all new appearances of material. Any combination of technological efforts and (at great expense) manual efforts would surely fall short.
- Many online services, in particular smaller or newer competitors, lack resources, technology, staffing, or the appropriate architecture to attempt even partial compliance with the decision and order.
- The added threat of contempt sanctions would compel services to suppress lawful materials or withdraw their services, and the effect would be either censorship of legitimate speech or a loss of competition and choice in the online marketplace.
- As problematic as this single order may be, a precedent that would allow orders like it to become standard would be intolerable to the industry as a whole and to the public.

3

These Amici also express grave concern about the Court's use of a secret gag order to block public knowledge about the Court's injunction. The goal of the gag order was to keep the public in the dark about a court-ordered takedown of a film that has been at the center of massive public and political debate and also the subject of a newsworthy lawsuit for over a year. In this era of secret court orders, service providers legitimately fear that government overreach may jeopardize their standing in the public, harming both their businesses and the marketplace of free speech and public inquiry. There is no place for this type of order in a copyright case.

Focusing their observations entirely on the impropriety of the injunction and the secrecy order, Amici urge the Court to rehear the divided panel decision *en banc* and to vacate the injunction. Amici harbor concerns about the copyright infringement ruling, but they leave that for the Appellees and others to address directly.

**I.　AN INJUNCTION TO PREVENT FUTURE UPLOADS OF MATERIAL IS AT ODDS WITH CONGRESSIONAL POLICY AND ESTABLISHED PRINCIPLES LIMITING THE DUTIES OF ONLINE SERVICES.**

In enacting the Digital Millennium Copyright Act ("DMCA"), Congress established a core principle that service providers have no obligation to monitor

their services for infringement. 17 U.S.C. § 512(m).[1] Instead, the DMCA created a notice-and-takedown process, requiring rightsholders to provide notice of specific instances of infringement in order to prompt a service provider seeking DMCA protection to take down the identified infringements. 17 U.S.C. § 512(c)(3)(A)(i)-(vi) & (B)(i).

In other words, a rightsholder cannot satisfy the notification requirement by merely stating that unspecified infringement is occurring in some form somewhere on a platform. Nor should a court issue an order that substitutes for a rightsholder's notifications. To shift the policing function onto online services, forcing them to search for unidentified instances of infringement without any notice from a rightsholder identifying the specific infringements, would be contrary to Ninth Circuit law: "[t]he DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007);

---

[1] This policy is not unique to copyright law: similarly, but in a different context, the Communications Decency Act, 47 U.S.C. § 230(c)(1), protects online services from the burdens of monitoring or filtering material from other sources. "The purpose of this statutory immunity is not difficult to discern…. Section 230 was enacted, in part, to maintain the robust nature of Internet communication." *Zeran v. America Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997). "It would be impossible for service providers to screen each of their millions of postings for possible problems." *Id.* at 331. The same points apply in the copyright context.

*see also UMG Recordings, Inc. v. Veoh Networks, Inc.,* 718 F.3d 1006 (9th Cir. 2013).

The order here, which requires Google actively to monitor its service for infringing material, without any notice of specific infringements, thus conflicts with the structure and purpose of the DMCA and wrongly assesses the balance of hardships. It imposes on Google the duty to seek out infringements of Ms. Garcia's asserted copyright, notwithstanding the legal principles squarely placing enforcement responsibilities on copyright holders.

## II. THE COURT'S ORDER TO SUPPRESS ALL APPEARANCES OF A COPYRIGHTED WORK IS OVERBROAD AND THWARTS THE PUBLIC'S RIGHT TO RECEIVE INFORMATION ON A MATTER OF PUBLIC INTEREST.

The Court's order also fails to take into account that, while one person's upload may be infringing, other uploads may be subject to license, constitute fair use, or otherwise be lawful. Infringement depends on many facts that will not be clear on the surface of any activity, and an injunction requiring prospective blocking of all uploads, without distinguishing lawful from unlawful uploads, is plainly overbroad.

The panel majority sidestepped this difficult issue, offering only the platitude that the First Amendment does not protect copyright infringement. But the panel failed to consider non-infringing uses within the injunction's scope, such

6

as a use that describes the controversy over this very case.[2] Because fair use is a "built-in First Amendment accommodation[]," *see Eldred v. Ashcroft,* 537 U.S. 186, 219 (2003); *Golan v. Holder,* 565 U.S. __, 132 S.Ct. 873, 890 (2012), the Court's injunction amounts to a ruling that fair use can never apply with respect to the work.

Even enjoining a service provider from ever hosting *unlawfully* (not just all, as here) uploaded material would impose an impossible burden because only a rightsholder itself – not a third party such as an online service provider – can determine whether the rightsholder's work is being infringed in any particular instance. *See* S. Rep. No. 105-190 (1998), at 48 (service providers "could not be expected... to determine whether [a work] was still protected by copyright or was in the public domain...; whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine."). Accordingly, this Court's precedent wisely rejected the requirement that a service provider identify all infringements, "declin[ing] to shift [that] substantial burden from the copyright

---

[2] Courts regularly reproduce original works to explain their analysis and results. *See, e.g., Cariou v. Prince,* Case No. 11-1197-cv, Slip Op. at 6-7 (2d Cir. Apr. 25, 2013), available at *http://www.ca2.uscourts.gov/decisions/isysquery/2e365706-a3cb-4c2f-af33-1453246f2e70/1/doc/11-1197_complete_opn.pdf.* Public discussions of the legal controversies naturally often reproduce the copyrighted works at issue, even beyond the reproductions the court included. *See, e.g., http://www.artnet.com/magazineus/news/corbett/prince-wins-right-to-appeal-in-cariou-v-prince.asp.*

owner to the provider." *Veoh*, 718 F.3d at 1022. The Court should not shift that burden now.

Moreover, no technology can cure the difficulties of distinguishing lawful from unlawful uses or justify new obligations of online services. Court-ordered technical measures to prevent all future unlawful appearances of a work, without the active participation and initiative of rightsholders in a notification system, will inevitably prevent many lawful appearances of a work.

Even where a court determines a service provider has failed to take down infringing material, the appropriate remedy is not to mandate that the service block *all* instances, infringing and lawful, of the work. The DMCA acknowledges that not all online uses are infringing, and it therefore requires rightsholders to state specifically in their notifications that the use they challenge "is not authorized by the copyright owner, its agent, *or the law*." 17 U.S.C. § 512(c)(3)(A)(v) (emphasis added). Ordering removal of all instances of a work takes consideration of lawful uses out of the picture and harms the public interest.

### III. AN INJUNCTION TO PREVENT ALL APPEARANCES OF MATERIAL CONTRADICTS THIS COURT'S CONTRIBUTORY COPYRIGHT INFRINGEMENT STANDARD AND SUBJECTS ONLINE SERVICES TO GRAVE RISKS OF CONTEMPT.

Requiring service providers to "take all reasonable steps to prevent further uploads" also contradicts copyright law in this Circuit, presents significant practical problems, and threatens serious consequences.

8

In *Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 7239 (9th Cir. 2007), the Court held that an online service provider may face liability for failure to take "simple measures" after it has actual knowledge that specific infringing material is on its system. Unlike takedowns in response to DMCA notifications, proactive monitoring and filtering of online services, as the Court ordered here, are hardly "simple measures": they pose formidable challenges, and even sophisticated services may stumble in compliance efforts. Google's efforts to comply with this Court's orders are telling. Ms. Garcia sought contempt sanctions notwithstanding Google's extensive resources and efforts focused on a single work.

Furthermore, while large service providers may have at their disposal various content recognition tools, even the most advanced of these tools have technical flaws. The most robust tools are simply too expensive for many providers, are still imperfect, and cannot properly address the dynamic nature of content or fair uses.

Because of these technical limitations on automated detection, to be safe a service provider must divert employees manually to search and review material on its systems continuously. Such costs of manual policing against further appearances of a work could be enormous, given that many services host literally billions of uploads, and manual processes invite error. In addition, the extraordinary cost and burden with respect to one item in one case would multiply

9

if courts were to issue stay-down orders frequently. The largest service providers would face a complex burden even attempting compliance, without guarantee of success or accuracy; but most service providers simply would not have the personnel or financial resources even to attempt compliance.

For these reasons, the financial constraints combined with the risks involved in complying with an order like the Court's could drive some online services out of business.

## IV. AN INJUNCTION REQUIRING REPLACEMENT OR EDITING OF USER CONTRIBUTIONS IS SIMILARLY UNWORKABLE.

To the extent the panel envisioned Google's editing the "Innocence of Muslims," that is not a practical alternative in general or at scale. Online services are not editors of their users' works. They do not have the capacity or desire to edit works at scale; it is not their competence; and they do not wish to risk new legal attacks over alterations in order to comply with an injunction that allows altered material.

## V. THE COURT SHOULD DISAVOW THE USE OF GAG ORDERS REGARDING COPYRIGHT LAW DECISIONS.

The panel's original order required a secret takedown of material. This creates a troubling precedent, and Amici urge the Court not to repeat the mistake.

Online service providers have historically promoted openness regarding requests they receive to remove content on their platforms. This has become

10

especially important in recent years, where government secrecy – especially judicial secrecy – has provoked public outcry. Some services now issue public reports about various requests they receive, and some forward requests to publications or clearinghouses for public disclosure. Others publicly disclose, at the place the material previously appeared, why the material has disappeared.

Openness about responses to outside demands is important for trust between online service providers and their users, and copyright law enforcement deserves robust debate that public disclosure facilitates. The panel's use of a secret takedown order in response to a very public, long-simmering copyright claim frustrates these purposes. Without the power to disclose the reasons for its actions, a service loses credibility: a sudden and unexplained disappearance of a newsworthy item will create an inference that the service provider yielded to pressure from a private interest.

"[T]he justification of the copyright law is the protection of the commercial interest of the []author. It is not to [] protect secrecy, but to stimulate creation by protecting its rewards." *Salinger v. Colting*, 607 F.3d 68, 81 n.19 (2d. Cir. 2010) (quoting *New Era Publications International, ApS v. Henry Holt & Co.*, 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988)). The Court should not, *in the name of copyright*, issue a secret order directing an online service to censor its site secretly or preventing it from explaining a disappearance of material.

## CONCLUSION

Because the panel decision conflicts with established copyright law protecting online services from monitoring burdens, is overbroad and threatens First Amendment interests, and is unworkable as a practical matter and therefore dangerous to services, the Court should rehear the appeal *en banc* and vacate the decision and injunction.

Dated: April 14, 2014          Respectfully submitted,

By: s/ *Andrew P. Bridges*

Andrew P. Bridges
Kathryn J. Fritz
Todd R. Gregorian
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300

Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that the attached brief is proportionally spaced, has a typeface of 14 points or more, and contains 2,442 words (based on the word processing system used to prepare the brief).

Dated: April 14, 2014              Respectfully submitted,


                                   By: s/ *Andrew P. Bridges*

                                       Andrew P. Bridges
                                       Kathryn J. Fritz
                                       Todd R. Gregorian
                                       FENWICK & WEST LLP
                                       555 California Street, 12th Floor
                                       San Francisco, CA 94104
                                       Telephone: (415) 875-2300

                                       Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I caused the electronic filing of this paper with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and therefore will be served by the appellate CM/ECF system.

Dated: April 14, 2014            Respectfully submitted,

By: s/ *Andrew P. Bridges*

    Andrew P. Bridges
    Kathryn J. Fritz
    Todd R. Gregorian
    FENWICK & WEST LLP
    555 California Street, 12th Floor
    San Francisco, CA 94104
    Telephone: (415) 875-2300

    Counsel for *Amici Curiae*