**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| ROBERT RADCLIFFE; CHESTER CARTER; MARIA FALCON; CLIFTON C. SEALE, III; ARNOLD LOVELL, JR., *Plaintiffs-Appellants*, | No. 11-56376 D.C. No. 8:05-cv-01070-DOC-MLG |
| CHRISTY DRIVER; IVONNE MARTINEZ; KELLY J. PORTER; LISA BRISBANE; BRENDA MELENDEZ; RALPH MICHAEL PORTER, *Objectors-Appellants*, | |
| and | |
| KATHRYN PIKE; BERTRAM ROBISON; ROBERT RANDALL; JOSE HERNANDEZ, *Plaintiffs*, | |
| WALTER ELLINGWOOD, NANCY SEGARRA; MARIA L. BORBON; MARCIA GREEN; JIMMY GREEN; THOMAS A. CARDER; GLENDA W. SCHILLECI; STEVEN C. SINGER; NAOMI SANDRES, *Objectors*, | |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS INC.; TRANSUNION, LLC; EQUIFAX | |

2        RADCLIFFE V. EXPERIAN INFO. SOLUTIONS

INFORMATION SERVICES LLC,
                *Defendants-Appellees.*

MARIA L. BORBON,                              No. 11-56387
                *Objector-Appellant*,
                                              D.C. No.
                v.                            8:05-cv-01070-
                                              DOC-MLG
JOSE HERNANDEZ; KATHRYN PIKE;
ROBERT RANDALL; BERTRAM
ROBISON,
                *Plaintiffs-Appellees*,

                and

EXPERIAN INFORMATION SOLUTIONS
INC.; TRANSUNION, LLC; EQUIFAX
INFORMATION SERVICES LLC,
                *Defendants-Appellees.*

TERRI N. WHITE,                               No. 11-56389
                *Plaintiff*,
                                              D.C. No.
                                              8:05-cv-01070-
JOSE HERNANDEZ; ROBERT                        DOC-MLG
RANDALL; BERTRAM ROBISON;
KATHRYN PIKE,
                *Plaintiffs-Appellees*,

                and

EXPERIAN INFORMATION SOLUTIONS
INC.; TRANSUNION, LLC; EQUIFAX
INFORMATION SERVICES LLC,
                    *Defendants-Appellees*,

                    v.

GLENDA W. SCHILLECI; THOMAS A.
CARDER,
                    *Objectors-Appellants*.

---

TERRI N. WHITE,                              No. 11-56397
                    *Plaintiff*,
                                             D.C. No.
JOSE HERNANDEZ; ROBERT                       8:05-cv-01070-
RANDALL; BERTRAM ROBISON;                    DOC-MLG
KATHRYN PIKE,
                    *Plaintiffs-Appellees*,

                    and

EXPERIAN INFORMATION SOLUTIONS
INC.; TRANSUNION, LLC; EQUIFAX
INFORMATION SERVICES LLC,
                    *Defendants-Appellees*,

                    v.

CHARLES JUNTIKKA, Esquire,
                    *Objector-Appellant*.

4        RADCLIFFE V. EXPERIAN INFO. SOLUTIONS

| | |
|---|---|
| TERRI N. WHITE,<br>*Plaintiff*,<br><br>JOSE HERNANDEZ; ROBERT RANDALL; BERTRAM ROBISON; KATHRYN PIKE,<br>*Plaintiffs-Appellees*,<br><br>and<br><br>EXPERIAN INFORMATION SOLUTIONS INC.; TRANSUNION, LLC; EQUIFAX INFORMATION SERVICES LLC,<br>*Defendants-Appellees*,<br><br>v.<br><br>STEVEN C. SIGNER,<br>*Objector-Appellant*. | No. 11-56400<br><br>D.C. No.<br>8:05-cv-01070-DOC-MLG |
| ROBERT RADCLIFFE; CHESTER CARTER; ARNOLD LOVELL, JR.; MARIA FALCON; CLIFTON C. SEALE, III; JOSE HERNANDEZ; ROBERT RANDALL; BERTRAM ROBISON; KATHRYN PIKE,<br>*Plaintiffs-Appellees*,<br><br>and<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANSUNION, | No. 11-56440<br><br>D.C. No.<br>8:05-cv-01070-DOC-MLG |

LLC; EQUIFAX INFORMATION
SERVICES LLC,
                    *Defendants-Appellees*,


                    v.


WALTER ELLINGWOOD,
                    *Objector-Appellant*.


---

TERRI N. WHITE,                          No. 11-56482
                    *Plaintiff*,
                                         D.C. No.
ROBERT RADCLIFFE; CHESTER                8:05-cv-01070-
CARTER; ARNOLD LOVELL, JR.; JOSE         DOC-MLG
HERNANDEZ; CLIFTON C. SEALE, III;
MARIA FALCON; ROBERT RANDALL;
BERTRAM ROBISON; KATHRYN PIKE,           OPINION
                    *Plaintiffs-Appellees*,


                    and


EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANSUNION,
LLC; EQUIFAX INFORMATION
SERVICES LLC,
                    *Defendants-Appellees*,


                    v.


MARCIA GREEN; JIMMY GREEN,
                    *Objectors-Appellants*.

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
March 4, 2013—Pasadena, California

Filed April 22, 2013

Before: Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and Sam E. Haddon, District Judge.[*]

Opinion by Judge Gould;
Concurrence by Judge Haddon

## SUMMARY[**]

### Class Action Settlement

The panel reversed the district court's approval of the settlement of a class action against credit reporting agencies under the Fair Credit Reporting Act because the class representatives and class counsel did not adequately represent absent class members.

---

[*] The Honorable Sam E. Haddon, District Judge for the U.S. District Court for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that the settlement agreement created a divergence of interests between the named representatives and the class where incentive awards were conditioned on the class representatives' support for the settlement and significantly exceeded in amount what absent class members could expect to get upon settlement approval.

Concurring, District Judge Haddon joined in Judge Gould's opinion but would disqualify class counsel from participation in any fee award ultimately approved by the district court upon resolution of the case on the merits.

## COUNSEL

George F. Carpinello (argued) and Adam R. Shaw, Boies, Schiller & Flexner LLP, Albany, New York; Daniel Wolf, Daniel Wolf Law Offices, Washington, D.C.; Charles Juntikka, Charles Juntikka & Associates LLP, New York, New York, for Plaintiffs-Appellants Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Arnold E. Lovell and Objectors-Appellants Christy Driver, Ivonne Martinez, Kelly J. Porter, Lisa Brisbane, Brenda Melendez, and Ralph Michael Porter.

Steven A. Miller, Steven A. Miller, PC, Denver, Colorado, for Objector-Appellant Steven C. Singer.

Joseph Darrell Palmer, Darrell Palmer Law Offices, Solana Beach, California, for Objector-Appellant Maria L. Borbon.

8         RADCLIFFE V. EXPERIAN INFO. SOLUTIONS

Charles M. Thompson, Charles M. Thompson, PC, Birmingham, Alabama; R. Stephen Griffis, R. Stephen Griffis Law Offices, Hoover, Alabama, for Objectors-Appellants Thomas A. Carder and Glenda Schilleci.

John William Davis, John W. Davis Law Offices, San Diego, California; Steven F. Helfand, Helfand Law Offices, San Francisco, California, for Objector-Appellant Walter Ellingwood.

C. Benjamin Nutley and James Garrett Kendrick, Kendrick & Nutley, Pasadena, California, for Objectors-Appellants Marcia Green and Jimmy Green.

Gregory A. Beck and Scott L. Nelson, Public Citizen Litigation Group, Washington, D.C., for Appellant Charles Juntikka.

Michael A. Caddell (argued) and Cynthia Chapman, Caddell & Chapman, Houston, Texas; Michael W. Sobol, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; Stuart T. Rossman and Charles M. Delbaum, National Consumer Law Center, Boston, Massachusetts; Leonard A. Bennett and Matthew Erausquin, Consumer Litigation Associates, P.C., Newport News, Virginia; Lee A. Sherman, Callahan, Thompson, Sherman & Caudill, LLP, Irvine, California; Mitchell A. Toups, Weller, Green, Toups & Terrell, L.L.P., Beaumont, Texas, for Plaintiffs-Appellees.

Daniel J. McLoon (argued) and Michael G. Morgan, Jones Day, Los Angeles, California, for Defendant-Appellee Experian Information Solutions, Inc.

RADCLIFFE V. EXPERIAN INFO. SOLUTIONS        9

Cindy D. Hanson, Kilpatrick Townsend & Stockton LLP, Atlanta, Georgia, for Defendant-Appellee Equifax Information Services LLC.

Julia B. Strickland, Stephen J. Newman, Brian C. Frontino, and Catherine Huang, Stroock & Stroock & Lavan LLP, Los Angeles, California, for Defendant-Appellee TransUnion LLC.

## OPINION

GOULD, Circuit Judge:

Several named plaintiffs and objectors appeal the district court's approval of a class-action settlement. The settlement agreement, like others we have approved in the past, granted incentive awards to the class representatives for their service to the class. But unlike the incentive awards that we have approved before, these awards were conditioned on the class representatives' support for the settlement. These conditional incentive awards caused the interests of the class representatives to diverge from the interests of the class because the settlement agreement told class representatives that they would not receive incentive awards unless they supported the settlement. Moreover, the conditional incentive awards significantly exceeded in amount what absent class members could expect to get upon settlement approval. Because these circumstances created a patent divergence of interests between the named representatives and the class, we conclude that the class representatives and class counsel did not adequately represent the absent class members, and for this reason the district court should not have approved the class-action settlement. We have jurisdiction under 28 U.S.C.

§ 1291, and we reverse the district court's approval of the settlement.

## I

The plaintiffs below—consumers who have been through bankruptcy—allege that Defendants Experian Information Systems, Inc., TransUnion LLC, and Equifax Information Services LLC issued consumer credit reports with negative entries for debts already discharged in bankruptcy. In other words, Defendants allegedly issued credit reports that stated that the plaintiffs were delinquent in making payments on debts that had been extinguished in bankruptcy. A smaller subset of the plaintiffs also contends that the credit-reporting agencies did not investigate these errors, even after the plaintiffs had notified the agencies of the errors on their reports. Defendants allegedly violated the Fair Credit Reporting Act and its California state-law counterparts because (1) they did not use "reasonable procedures to assure maximum possible accuracy" in reporting debts discharged in bankruptcy, 15 U.S.C. § 1681e(b), and (2) after being informed of the credit-report errors, Defendants did not "conduct a reasonable reinvestigation to determine whether the disputed information [was] inaccurate," 15 U.S.C. § 1681i(a). *See also* Cal. Civ. Code §§ 1785.14(b), 1785.16; Cal. Bus. & Prof. Code § 17200.

The cases began as multiple lawsuits filed in 2005 and 2006.[1] The district court consolidated the suits, which raised

---

[1] The procedural history of the litigation is complex but not relevant for our purposes because we reach only one issue raised in this consolidated appeal—the effect of the conditional incentive awards to class representatives.

similar claims, and the parties began mediation.  In April 2008, the parties reached a settlement for injunctive relief, which the district court approved in August 2008.  As part of that settlement, Defendants agreed to implement procedures that would presume the discharge of certain pre-bankruptcy debts.  No appellant challenges this settlement.

In February 2009, the parties reached an agreement for monetary relief.  The monetary settlement creates a common fund of $45 million, $15 million contributed by each of the three defendants.  After the costs of settlement administration are deducted, the rest of the fund will be distributed as follows: First, the settlement fund will pay "actual-damage awards" to class members who demonstrate that they were actually harmed by Defendants' conduct.  Class members denied employment will receive $750, those denied a mortgage or housing rental will receive $500, and those denied credit or auto loans will receive $150.  About 15,000 class members claimed actual-damage awards.  Second, the settlement fund will pay the class representatives and class counsel for their service in prosecuting the suit.  The agreement provides for incentive awards:

> On or before October 19, 2009, Proposed 23(b)(3) Settlement Class Counsel shall file an application or applications to the Court for an incentive award, to each of the Named Plaintiffs serving as class representatives in support of the Settlement, and each such award not to exceed $5,000.00.

The agreement also states that class counsel should petition the court for an award of attorneys' fees and costs, to be paid out of the monetary-settlement fund.  The agreement does not

specify the amount of such fees and costs. Third, the remainder of the fund will be distributed to the rest of the class as "convenience awards." Claimants simply need to attest that they qualify as class members to receive convenience awards. Approximately 755,000 class members submitted these claims. Each claimant will receive about $26.

The court preliminarily approved the settlement and provisionally certified the settlement class on May 7, 2009. After two rounds of notice to the class, the district court held a series of fairness hearings on the settlement. Several named plaintiffs—formerly class representatives—and objectors (collectively "Objecting Plaintiffs") challenged the settlement. The district court considered but rejected their objections and found that the settlement was fair, reasonable, and adequate. The court issued an order granting final approval of the monetary-relief settlement on July 15, 2011. *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086 (C.D. Cal. 2011). The court also awarded attorneys' fees and costs to class counsel. Objecting Plaintiffs appealed.

On appeal, Objecting Plaintiffs give several arguments as to why the settlement was not fair, reasonable, and adequate. But we only reach the issue of whether class representatives and class counsel are adequate where the settlement agreement conditions payment of incentive awards on the class representatives' support for the settlement.

## II

We review the district court's approval of a class-action settlement for abuse of discretion. *Rodriguez v. W. Pub. Corp.* (*Rodriguez I*), 563 F.3d 948 (9th Cir. 2009). Under

abuse-of-discretion review we "must affirm unless the district court applied the wrong legal standard or its findings of fact were illogical, implausible, or without support in the record." *Rodriguez v. Disner* (*Rodriguez II*), 688 F.3d 645, 653 (9th Cir. 2012) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

### III

Objecting Plaintiffs contend that the settlement agreement, which provides for incentive awards to named plaintiffs "in support of the [s]ettlement," created a conflict of interest between the class representatives and the class. Objecting Plaintiffs also assert that, as a result of this conflict, class counsel engaged in conflicted representation by continuing to represent the settling class representatives ("Settling Plaintiffs" or "class representatives") and the class at large after the two groups developed divergent interests. Objecting Plaintiffs thus contend that the class representatives and class counsel were inadequate to represent the absent class members.  *See* Fed. R. Civ. P. 23(a)(4), 23(g)(1)(B). Upon review of the record and reflection on our precedents, we agree.

### A

Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.  *See Rodriguez I*, 563 F.3d at 958–59; *see also* 2 McLaughlin on Class Actions § 6:28 (9th ed. 2012).  In cases where the class receives a monetary settlement, the awards are often taken from the class's recovery.  *See id*.  Although we have approved incentive awards for class representatives in some cases, we have told district courts to scrutinize carefully the

awards so that they do not undermine the adequacy of the class representatives. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Settling Plaintiffs misinterpret the scope of our precedent about incentive awards, so we begin by reviewing that precedent.

In *Staton v. Boeing Company*, 327 F.3d at 975–78, we reversed the district court's approval of a class-action settlement because the settlement provided for disproportionately large payments to class representatives. The settlement awarded the 29 class representatives up to $50,000 each. We noted that in some cases incentive awards may be proper but cautioned that awarding them should not become routine practice: "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id*. at 975 (alteration in original) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)). The settlement in *Staton* magnified the risks associated with incentive awards because the awards there were much larger than the payments to individual class members, "eliminat[ing] a critical check on the fairness of the settlement for the class as a whole." *Id*. at 977. Where a class representative supports the settlement and is treated equally by the settlement, "the likelihood that the settlement is forwarding the class's interest to the maximum degree practically possible increases." *Id.* But if "such members of the class are provided with special 'incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." *Id*. We held that the awards in *Staton* were so disproportionate to the class's recovery that the

district court abused its discretion in finding that the settlement agreement was fair, adequate, and reasonable. *Id.* at 978.

In *Rodriguez I*, we again confronted improper incentive awards. At the start of the litigation, several class representatives signed retainer agreements that required class counsel to request incentive awards that increased on a sliding scale as the class's monetary recovery increased. *Rodriguez I*, 563 F.3d at 957. The awards maxed out at $75,000 if the total settlement amount was $10 million or more. *Id.* "We expressed disapproval of these incentive agreements, and stated that [the agreements] 'created an unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other.'" *Rodriguez II*, 688 F.3d at 651 (quoting *Rodriguez I*, 563 F.3d at 960). The named plaintiffs had no incentive to settle for anything other than monetary relief of $10 million, and they had no incentive to go to trial and risk their incentive awards, even if going to trial was best for the class. More than a "typical" incentive award, the provisions in the retainer agreements "ma[de] the contracting class representatives' interests actually different from the class's interests." *Rodriguez I*, 563 F.3d at 959. The class representatives thus did not adequately represent the class. *Rodriguez II*, 688 F.3d at 656–67. Moreover, we held that the retainer agreements "implicate[d] California ethics rules that prohibit representation of clients with conflicting interests." *See Rodriguez I*, 563 F.3d 948, 960; *see also Rodriguez II*, 688 F.3d at 656–60.[2]

_____

[2] In *Rodriguez I*, we remanded "for the district court to consider whether counsel could represent both the class representatives with whom there was an incentive agreement, and absentee class members, without

**B**

As in *Staton* and *Rodriguez I*, the incentive awards here corrupt the settlement by undermining the adequacy of the class representatives and class counsel.  In approving the settlement agreement, the district court misapprehended the scope of our prior precedents.  We once again reiterate that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives.  The conditional incentive awards in this settlement run afoul of our precedents by making the settling class representatives inadequate representatives of the class.

The settlement agreement explicitly conditions the incentive awards on the class representatives' support for the settlement.  This interpretation is clear from the language of the agreement.[3]  Settling Plaintiffs contend that the settlement agreement did not explicitly condition the incentive awards

---

affecting the entitlement to fees." *Rodriguez I*, 563 F.3d at 968.  In *Rodriguez II*, the case returned to us after the district court, relying on *Rodriguez I*, found "that the incentive agreements gave rise to a conflict of interest between the class representatives and the other members of the class that tainted [class counsel's] representation, and . . . [therefore denied] attorneys' fees." *Rodriguez II*, 688 F.3d at 652 (internal quotation marks omitted).  We affirmed. *Id*. at 960.  The district court here did not have the benefit of our decision in *Rodriguez II*.

[3] We must presume that Settling Plaintiffs knew the contents of the settlement agreement that they supported in the district court.  *See Bingham v. Holder*, 637 F.3d 1040, 1045 (9th Cir. 2011) ("[A] party who signs a written contract 'in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.'" (quoting 27 Richard A. Lord, *Williston on Contracts* § 70:113 (4th ed. 2009))).

on support of the settlement but was merely descriptive of those named representatives who were seeking judicial approval of the agreement. We disagree that the language is susceptible to this interpretation. But if there were any doubt, the conduct and communications of class counsel confirmed this interpretation. Counsel told a plaintiff below that he would "not be entitled to anything" and that he would "jeopardize the $5,000 [he] would receive [under the settlement]" if he did not support the settlement. Class counsel also told the district court that they had told other plaintiffs that they "don't see a way for people who don't support the settlement to receive an incentive award." On appeal, Settling Plaintiffs' argument for an alternative interpretation is unpersuasive.

With the prospect of receiving $5,000 incentive awards only if they supported the settlement, Settling Plaintiffs had very different interests than the rest of the class. Like the agreements in *Rodriguez*, the conditional incentive awards changed the motivations for the class representatives. Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness and a promise of no reward if they opposed the settlement. The conditional incentive awards removed a critical check on the fairness of the class-action settlement, which rests on the unbiased judgment of class representatives similarly situated to absent class members.

Although the conditional incentive awards themselves are sufficient to invalidate this settlement, the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict

of interest caused by the conditional incentive awards. As the district court below noted, "[c]oncerns over potential conflicts may be especially pressing where, as here, the proposed service fees greatly exceed the payments to absent class members." *White*, 803 F. Supp. 2d at 1112. There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards. Under the agreement, if the class representatives had concerns about the settlement's fairness, they could either remain silent and accept the $5,000 awards or object to the settlement and risk getting as little as $26 if the district court approved the settlement over their objections. The conditional incentive awards at issue here, like the disproportionately large awards in *Staton*, fatally alter the calculus for the class representatives, pushing them to be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Staton*, 327 F.3d at 977.

The class representatives' divergent interests, as a result of the conditional incentive payments, undermined their ability to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is rooted in due-process concerns—"absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees." *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010).

Where, as here, the class representatives face significantly different financial incentives than the rest of the class because of the conditional incentive awards that are built into the structure of the settlement, we cannot say that the representatives are adequate. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) ("The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation . . . .").

Settling Plaintiffs counter this analysis through three arguments, but we reject each of these arguments. First, Settling Plaintiffs claim that incentive awards for named plaintiffs are typical, so any distortion in the interest of Settling Plaintiffs is common to all class actions. Although incentive awards may be common, *see Rodriguez I*, 563 F.3d at 958, explicitly conditioning incentive awards to named representatives on their support for the settlement is not at all typical. Professor William Rubenstein, a class-action expert, testified before the district court that in his experience such provisions are "not common" and that his research revealed "not one" settlement agreement that "contain[ed] a restriction on an incentive award like the one here that permits incentive awards be sought only for those representatives 'in support of the settlement.'" Brad Seligman, another expert witness, testified that he had "reviewed literally hundreds of class actions settlements" but could "not recall ever seeing a class settlement that expressly states only that class representatives who support the settlement are entitled to an incentive payment." Thus, we are not confronted with run-of-the-mill incentive awards, but rather a settlement provision that weighs on the class representatives' independent judgment on whether to support the settlement by calling for the denial of incentive awards if they do not support it.

20        RADCLIFFE V. EXPERIAN INFO. SOLUTIONS

Second, Settling Plaintiffs point out that the district court—not the settlement agreement—determines who receives incentive awards and in what amount and that Objecting Plaintiffs could have sought their own incentive awards from the district court. They therefore contend that the provision in the settlement agreement is irrelevant. But this argument misapprehends the nature of the adequacy inquiry. That Objecting Plaintiffs could have petitioned for incentive awards is irrelevant to the conflict created by the settlement agreement. We are concerned about the destruction of the "shar[ed] . . . interests between the representatives and absentee[]" class members as a result of the conditional incentive awards. *Rodriguez I*, 563 F.3d at 960 (quoting *Molski*, 318 F.3d at 955). We examine the class representatives' incentives based on both the settlement agreement and the final awards approved by the district court. Here, our analysis focuses on the agreement. There is a lack of congruent interests between Settling Plaintiffs and the class at large because the class representatives would be expected to support the settlement so that class counsel would request awards on their behalf. *See id.* That the award ultimately must come from the district court is of no moment because the district court may want to rely on the judgment of the class representatives supporting a settlement. *See Staton*, 327 F.3d at 977.

Third, Settling Plaintiffs contend that even if the conditional incentive awards created a potential conflict of interest with the class, no actual conflict developed. To support this assertion, Settling Plaintiffs point to their own testimony that their decisions to support the settlement were not influenced by the prospect of incentive awards. Again, Settling Plaintiffs misapprehend our holding in *Rodriguez I*. Our inquiry in *Rodriguez I* was not whether there was an

actual injury to the class in the form of a lower settlement amount because of the improper incentive-awards agreements. *See Rodriguez I*, 563 F.3d at 960; *see also Rodriguez II*, 688 F.3d at 658. Rather, the adequacy of the *Rodriguez* plaintiffs' representation was undermined by the presence of the agreements that created the conflict of interest. In fact, the settlement in *Rodriguez I*—$49 million—was much larger than the amount that would maximize the incentive awards under the incentive-awards agreements—$10 million. *See id.* at 956–57. But that did not change the fact that the incentive agreements themselves created a conflict of interest by tying the incentive awards to the settlement amount. That the ultimate settlement amount was $49 million instead of $10 million did not eliminate the conflict of interest. The same is true here. The conditional-incentive-awards provision in the settlement agreement made the interests of the class representatives actually different than those of the rest of the class.

In *Rodriguez I*, after holding that the retainer agreements created a conflict of interest, we "conclude[d] that the presence of conflicted representatives was harmless" because two other class representatives had retainer agreements that did not contain the incentive-awards agreements that created the conflict. *Rodriguez I*, 563 F.3d at 961. Here, however, the conflict created by the conditional incentive awards in the settlement is not harmless. It affected all class representatives who supported the settlement. We conclude that the settlement must be reversed because the interests of class representatives who would get incentive awards diverged from the interests of the absent class members. We reverse the district court's approval of the monetary-relief

settlement.[4]  Because we reverse the settlement, we also reverse the awards of attorneys' fees and costs.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011).

## C

Having determined that Settling Plaintiffs did not adequately represent the class, we now turn to the question of whether the class representatives' lack of adequacy—based on the conditional incentive awards—also made class counsel inadequate to represent the class.  We hold that it did.

Class counsel has a fiduciary duty to the class as a whole "and it includes reporting potential conflict issues" to the district court.  *Rodriguez I*, 563 F.3d at 948; *see also id*. at 968 ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995))).  Under the district court's local rules, California law governs whether an ethical violation has occurred.  *See* C.D. Cal. R. 83–3.1.2; *see also Rodriguez II*, 688 F.3d at 656.  California Rule of Professional Conduct 3–310(C) prohibits the representation of clients with actual or potential conflicts of interest absent an express waiver.  *See Rodriguez II*, 688 F.3d at 656–57 (collecting California cases); *see also Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998) (noting that "[s]imultaneous representation of clients with conflicting

---

[4] Because we reverse based on the conditional incentive awards, we express no opinion on the reasonableness and adequacy of the $45 million settlement presented.

interests (and without informed written consent) is an automatic ethics violation in California"); *Flatt v. Superior Court*, 885 P.2d 950, 955 (Cal. 1994).

As soon as the conditional-incentive-awards provision divorced the interests of the class representatives from those of the absent class members, class counsel was simultaneously representing clients with conflicting interests. *See Rodriguez I*, 563 F.3d at 959; *Rodriguez II*, 688 F.3d at 656. Class counsel made no attempt to obtain a waiver for the conflict or to contain the conflict by alerting the district court. *See Rodriguez I*, 563 F.3d at 959. Instead, class counsel took the position that a conflict did not even exist. Moreover, the conditional-incentive-awards provision affected all settling class counsel. *Cf. Rodriguez I*, 563 F.3d at 961. Class counsel thus was not adequate and could not settle the case on behalf of the absent class members. Conflicted representation provides an independent ground for reversing the settlement and the awards of attorneys' fees and costs.[5] *Cf. Rodriguez II*, 688 F.3d at 656–60.

But this case is different than *Rodriguez I* and *Rodriguez II* because the conditional incentive awards at issue here did not create a conflict "from day one." *Rodriguez I*, 563 F.3d at 959. Rather, the conflict developed late in the course of representation. On remand, the district court should determine when the conflict arose, if the conflict continues under any future settlement agreement, and how the

---

[5] To be clear, we reverse both awards of attorneys' fees and both awards of costs.

conflicted representation should affect any attorneys' fees awards.[6]  *See Rodriguez I*, 563 F.3d at 967–68.

## IV

In sum, we hold that the district court abused its discretion in approving this settlement where the class representatives and class counsel did not adequately represent the interests of the class.  We must be vigilant in guarding against conflicts of interest in class-action settlements because of the "unique due process concerns for absent class members" who are bound by the court's judgments.  *In re Bluetooth*, 654 F.3d at 946 (quoting *Hanlon*, 150 F.3d at 1026).  And where, as here, the "settlement agreement is negotiated *prior* to formal class certification . . . , there is an even greater potential for a breach of fiduciary duty owed the class." *Id.*  "Accordingly, such agreements must withstand an

---

[6] We hold that settling class counsel ultimately represented parties that had a conflict of interest and therefore class counsel could not adequately represent the class and are entitled to no fees for their legal efforts during the conflicted representation.  But upon a resolution of this case, the district court will have discretion to award fees for any non-conflicted representation that created a benefit for the class.  *See Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefited [sic] the fund—whether they tended to create, increase, protect or preserve the fund." (internal quotation marks omitted)); *cf. Rodriguez II*, 688 F.3d at 653–58.

Finally, because we reverse the settlement based on the conditional incentive awards, we do not reach the issue of whether the subset of class counsel who brought the *Acosta* and *Pike* suits, which were consolidated with this case, faced an independent conflict of interest because of the fee-sharing agreement they executed with the rest of class counsel.  The district court should revisit that issue in light of our holding.

even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* We hold that the settlement at issue here cannot withstand this scrutiny, and it was therefore an abuse of discretion for the district court to approve the settlement.[7]  Although this case does not go back to square one, the settlement cannot be approved.  The case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.

HADDON, District Judge, concurring:

I join in the decision to reverse approval of the settlement for the reasons clearly stated in Judge Gould's well-written opinion.  However, class counsels' actions in orchestrating and advocating the disparate incentive award scenario without any concern for, or even recognition of, the obvious conflicts presented underscore, in my opinion, that class counsel were singularly committed to doing whatever was

---

[7] Because we reverse the settlement and the award of attorneys' fees and costs on account of the conditional incentive awards, we do not reach the other arguments raised in this appeal.  In particular, we decline to review Attorney-Appellant Charles Juntikka's challenge to the district court's order restricting his ability to contact his former clients.  The issue is moot because we reverse the order approving the settlement that Juntikka opposes and the issue may not arise again on remand.  If it does, the district court should address whether any new restrictions on speech comply with *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), and *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1439–42, *modified*, 742 F.2d 520 (9th Cir. 1984).

26        RADCLIFFE V. EXPERIAN INFO. SOLUTIONS

expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees.[1]

Such adherence to self-interest, coupled with the obvious fundamental disregard of responsibilities to all class members—members who had little or no real voice or influence in the process—should not find favor or be rewarded at any level. Although within the discretion of the district court in the first instance, I conclude that class counsel should be disqualified from participation in any fee award ultimately approved by the district court upon resolution of the case on the merits.

---

[1] The total fees approved were $16,747,147.68.