# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BEVERLY SEVCIK; et al., | No. 12-17668 |
| Plaintiff-Appellant, | USDC Las Vegas No. 2:12-cv-00578-RCJ-PAL |
| v. | |
| BRIAN SANDOVAL, in his official capacity as Governor of the State of Nevada, et al., | |
| Defendants-Appellees, | |
| and | |
| COALITION FOR THE PROTECTION OF MARRIAGE, | |
| Intervenor-Defendant-Appellee. | |

## MOTION FOR LEAVE TO WITHDRAW BRIEF

Defendant-Appellee the Governor of the State of Nevada, by and through his attorneys Catherine Cortez Masto, Nevada Attorney General, and Solicitor General C. Wayne Howle (hereafter the State), hereby submit this motion to withdraw the answering brief filed in this court on January 21, 2014 as DktEntry: 113. This application is made pursuant to FED. R. APP. P. Rules 27 and 28(j) and is based upon the following Memorandum of Points and Authorities and the papers and pleadings on file herein.

1

MEMORANDUM OF POINTS AND AUTHORITIES

The State, by and through the undersigned attorneys, presents this (1) notice of supplemental authority pursuant to FED. R. APP. P. Rule 28(j); and (2) motion for leave to withdraw the State's answering brief, pursuant to FED. R. APP. P. Rule 27.

When the district court decided this case in November 2012, *see Sevcik v. Sandoval,* 911 F. Supp. 2d 996 (D. Nev. 2013), the law regarding treatment of same-sex couples under traditional marriage laws was uncertain and was open to interpretation.

In June 2013, authoritative and relevant precedent was established by the U.S. Supreme Court in *Windsor v. United States,* 570 U.S. ___, 133 S.Ct. 2675 (2013). The Court, in its analysis of the treatment of same-sex couples under traditional marriage laws, referenced the "dignity and integrity of the person," 133 S.Ct. at 2694, "the stability and predictability of basic personal relations," *id.*, the "unstable position of being in a second-tier marriage," *id.*, "couple[s], whose moral and sexual choices the Constitution protects," *id.*, "the integrity and closeness of [a same-sex marriage] and its concord with other families," *id.*

Ultimately, *Windsor* held that:

> The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws. [Citations omitted.] While the Fifth Amendment itself

2

> withdraws from Government the power to degrade or demean in the way this law does, the equal protection guarantee of the Fourteenth Amendment makes that Fifth Amendment right all the more specific and all the better understood and preserved.

133 S.Ct. at 2695.  This single passage carries meaning for both due process and equal protection guarantees and signifies that discrimination against same-sex couples is unconstitutional.

Dissenting Justices in *Windsor* did not think the decision went so far.  For example, Justice Alito wrote, "The Constitution, however, does not dictate that choice [whether same-sex couples may marry]."  133 S.Ct. at 2711.  Justice Scalia stated, "the Constitution neither requires nor forbids our society to approve of same-sex marriage."  *Id.* at 2707.   But these are the voices of the dissent, and their view did not prevail.

The State attempted to distinguish *Windsor* in its answering brief.  Given the law at the time its brief was written, the arguments were plausible.  The State followed Justice Scalia's invitation to "distinguish away."   133 S.Ct. at 2709 (Scalia, J., dissenting).

Any uncertainty regarding the interpretation of *Windsor* was recently dispelled by the Ninth Circuit's decision in *SmithKline Beecham v. Abbott Laboratories*, Case No. 11-17357, 2014 WL 211807 (9th Cir. January 21, 2014), which, by coincidence, was issued the same day that the State filed its answering

brief. The decision in *SmithKline* is being brought to the Court's attention pursuant to FED. R. APP. P. Rule 28(j), and in all candor it appears that *Windsor*, viewed through the *SmithKline* lens, is dispositive.

In the decision below in this case, the district court granted the State's motion to dismiss based upon the precedent established in *Baker v. Nelson*, 409 U.S. 810 (1972). In the alternative, the district court held that Nevada's laws only required rational basis review, and granted summary judgment on that basis. Both of these holdings have been vitiated by *SmithKline*.

On the same day the State posited that rational basis review applied and that *Baker* controlled, *SmithKline* decided whether it was improper in a civil action to strike a juror on the basis of his sexual orientation. A three judge panel of this Court determined that it was. In order to reach this conclusion, the Court first examined whether laws categorizing on the basis of sexual orientation are entitled to heightened scrutiny. The Court concluded in the affirmative, effectively overruling this court's decision in *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir. 1990), on which the State relied in its brief.

The *SmithKline* panel determined that *United States v. Windsor* "is dispositive of the question of the appropriate level of scrutiny in this case," 2014 WL 211807 at *5, and that "*Windsor's* heightened scrutiny applies to

classifications based on sexual orientation." *Id.* at \*9. The district court's decision was reversed and remanded for a new trial. *Id.* at \*14.

*SmithKline's* holding sets a new standard of review for cases in the Ninth Circuit. Because the State's argument was grounded upon equal protection and relied on *High Tech,* and thus was constructed upon the premise that only rational basis review applied to laws categorizing on the basis of sexual orientation, the State's argument cannot withstand legal scrutiny.

*SmithKline* holds additional significance for the case at bar. To find that *High Tech* did not control and that heightened scrutiny applied, the *SmithKline* panel first reasoned that it was appropriate to disregard *High Tech*: "Our earlier cases applying rational basis review to classifications based on sexual orientation cannot be reconciled with *Windsor*. . . . Because we are bound by controlling, higher authority, we now hold that *Windsor's* heightened scrutiny applies to classifications based on sexual orientation." 2014 WL 211807, at \*9. The *SmithKline* panel referenced *Romer v. Evans*, 517 U.S. 620 (1996), *Department of Agriculture v. Moreno*, 413 U.S. 528 (1973), and *Lawrence v. Texas,* 539 U.S. 653 (2003), which decisions it considered as culminating in the *Windsor* decision. *Id.*

Subsequent doctrinal developments may vitiate any force a summary decision might have had. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975); *Jones v. Bates*, 127 F.3d 839, 852 n.13 (9th Cir. 1997). The legal evolution referenced by

5

*SmithKline* is undeniably a "doctrinal development" that vitiates the State's position. Thus not only is the State's equal protection argument undermined, so is its *Baker v. Nelson* argument. Therefore the basis of the State's arguments is rendered inapposite by this Court's holding in *SmithKline*.

The decision in *SmithKline* is controlling, and as a result, the State has determined that its arguments grounded upon equal protection and due process are no longer sustainable.

The State recognizes the technical possibility that *SmithKline* might yield before the mandate issues. "The opinion is 'not yet fixed as settled Ninth Circuit law' until the mandate issues." *Federal Appellate Practice: Ninth Circuit, Second Edition* § 9:18 (Supp. 2013), citing *United States v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991). However, a "Ninth Circuit opinion has 'interim validity' prior to issuance of the court's mandate." *Id.* Furthermore, there is a high probability that the *SmithKline* decision will stand even if rehearing is granted. There is little doubt that there is a broad, emerging judicial consensus since *Windsor,* not only in the Ninth Circuit but by other courts as well. *See e.g. McGee v. Cole,* No. 3:13–24068, 2014 WL 116013, at *9 (S.D.W.Va. Jan. 29, 2014) ("[d]octrinal developments since *Baker* justify a finding that *Baker* is nonbinding.), *Bishop v. United States,* No. 04–CV–848, 2014 WL 116013, at *17 (N.D.Okla. Jan. 14, 2014) ("the Court concludes that *Baker* is no longer a binding summary dismissal

6

as to those issues"), *Kitchen v. Herbert*, No. 2:13–cv–217, 2013 WL 6697874, at *9 (D. Utah Dec.20, 2013) ("*Baker v. Nelson* is no longer controlling precedent").

Moreover, it is not in the State's interest to postpone the relief sought here, awaiting the outcome of legal proceedings in *SmithKline*. Post-decisional proceedings in *SmithKline* could extend well beyond the date of argument in this appeal. Together with the thirty-day extension given to petition for rehearing in *SmithKline*,[1] the time required for briefing and argument if a petition is granted, and the time for any decision to issue, could delay the proceedings by several months.

Finally, the State submits that retraction of its brief will not affect the ability of the Court to properly decide this appeal. *See* Fed. R. App. P. 31(c), *U.S. v. Everett,* 700 F.2d 900, 902 n.5 (3rd Cir. 1983) (if an appellee after proper notice fails to file brief, court of appeals may decide case on brief of appellant only). *See also Yuan Gao v. Mukasey,* 519 F.3d 376 (7th Cir. 2008). *See generally* Wright & Miller: Federal Prac. & Proc. s 3977.2. Further, the remaining briefs canvass the arguments against the Appellants' position and the related policy considerations.

///

///

---

[1] The period to petition for rehearing and rehearing en banc was extended thirty days by order on motion made by Respondent Abbott Laboratories. *See* Order of January 27, 2014 in Case No. 11-17357, DktEntry: 87.

## CONCLUSION

For these reasons, the State respectfully moves this Court for permission to withdraw its responding brief in its entirety.

DATED this 10th day of February 2014.

>	CATHERINE CORTEZ MASTO
>	Attorney General
>	By:   /s/ C. Wayne Howle
>	C. Wayne Howle
>	Solicitor General
>	Nevada State Bar #3443
>	100 North Carson Street
>	Carson City, Nevada  89701
>	(775) 684-1227
>	(775) 684-1108 (f)
>	*Attorneys for Governor Brian Sandoval*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 10, 2014.

Participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

                                        s/ Vicki Beavers
                                        Vicki Beavers, an employee of the office of the Attorney General for the State of Nevada